IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| JASON FARMER,<br><br>    Plaintiff,<br>v.<br><br>MIKE HUNSINGER, in his individual capacity; KEVIN EPPS, individually; JON MILLS, individually, JAMES FARMER, individually<br><br>    Defendants. | |

**COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS
(42 U.S.C. § 1983) AND STATE TORT CLAIMS**

COMES NOW Plaintiff Jason Farmer and files this Complaint against Defendants Mike Hunsinger, Kevin Epps, Jon Mills, and James D. Farmer for violations of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983, and for state law torts of false arrest and false imprisonment under Georgia law, as follows:

NATURE OF THE ACTION

1.    This civil rights action arises from the false arrest and imprisonment of Jason Farmer on August 8, 2025, pursuant to a "Bench Warrant" issued by Defendant Hunsinger without subject matter jurisdiction and without affording Plaintiff any prior hearing or due process. Defendant Hunsinger, a probate judge whose jurisdiction is strictly limited to non-disputed estate property, issued contempt orders and an arrest warrant commanding Plaintiff's incarceration for his refusal to surrender *disputed* property over which the probate court had no jurisdiction to adjudicate title. Defendants Epps, Mills, and James D. Farmer, as opposing counsel and antagonist in the underlying estate litigation, secretly coordinated with Defendant Hunsinger through *ex parte* communications before the warrant was issued, jointly acting under color of state law in a conspiracy to deprive Plaintiff of his constitutional rights.

2. The Georgia Court of Appeals granted emergency relief on August 12, 2025, ordering Plaintiff's immediate release in connection with Jason Farmer's contention that Plaintiff's arrest was ordered by Defendant Hunsinger without subject matter jurisdiction or judicial power. This action seeks compensatory and punitive damages for the constitutional violations Plaintiff suffered during his unlawful arrest and deprivation of liberty based on detention in the Oconee County Jail from August 8 through August 12, 2025.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Middle District of Georgia pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in Oconee County, Georgia, which is within this judicial district, and because Defendants reside in this district.

5. Jason Farmer's arrest violated Fourth Amendment due process based on an arrest without a prior hearing, which is a procedural violation independent of any pending state-court appellate request to overturn the judgment finding him in contempt.

6. At all times relevant to this Complaint, Plaintiff resided at 2101 Malcom Bridge Road, Bogart, Georgia 30622.

7. Defendant Mike Hunsinger is an adult resident of Oconee County, Georgia, and at all times relevant to this Complaint served as Judge of the Probate Court of Oconee County, State of Georgia. Defendant Hunsinger is sued in his individual capacity based on the exception to judicial immunity for the issuance of an order for Jason Farmer's arrest in the clear absence of subject matter jurisdiction or judicial power conferred by the Georgia Constitution.

8. Defendant Kevin Epps is an adult resident of Oconee County, Georgia, and at all times relevant to this Complaint was a licensed attorney practicing law in Georgia, representing James Farmer in connection with probate proceedings in Case Nos. F-183 and F-189 pending before the Probate Court of Oconee County. Defendant Epps is sued in his individual capacity.

9. Defendant Jon Mills is an adult resident of Oconee County, Georgia, and at all times relevant to this Complaint was a licensed attorney practicing law in Georgia, purportedly acting as administrator with will annexed in Probate Court Case Nos. F-183

and F-189 pending before the Probate Court of Oconee County.[1] Defendant Mills is sued in his individual capacity.

10. Defendant James D. Farmer is an adult resident of Oconee County, Georgia, residing at 1150 Ridgeway Road, Bogart, Georgia 30622. Defendant James D. Farmer is the disinherited[2] son of the decedents whose estates are at issue in the underlying probate proceedings. At all times relevant to this Complaint, Defendant James D. Farmer acted through his attorney and agent, Defendant Kevin Epps, while also directly participating in the conspiracy to deprive Jason Farmer of his constitutional rights. Defendant James D. Farmer is sued in his individual capacity.

## FACTUAL ALLEGATIONS

*Background: The Underlying Probate Proceedings*

11. This action arises from contested probate proceedings in the Estate of Bobby James Farmer (Case No. F-183) and the Estate of Judy Lenora Farmer (Case No. F-189), pending in the Probate Court of Oconee County, Georgia.

12. Defendant Mills purportedly serves as a neutral administrator with will annexed for both estates.

13. Jason Farmer is the owner of certain property and equipment in his possession that Defendant Farmer, Defendant Epps, and Defendant Mills sought to include as estate assets.

14. The central dispute in the probate proceedings concerns ownership and title to certain cranes, equipment, and other property currently in Jason Farmer's possession. Jason Farmer contends that this property belongs to him and is not part of the decedents' estates, as evidenced by the writing signed by Judy Lenora Farmer during her life in connection with her legal authority to impart with possession in Jason Farmer's favor. Defendants contend the property belongs to the estates in substance, while alleging otherwise in formal filings and orders that purport to separate legally inseparable

---

[1] Despite the actions he has taken to the contrary, including the decision to accept $40,000 in "loans" to the Estate from James Farmer to fund three separate lawsuits against Jason Farmer, Defendant Mills is not legally qualified and appointed as administrator with will annexed for the Estate of Judy Lenora Farmer. A legal appointment for that role may only be made in connection with the administration and subscription of a strictly-construed "Oath" – contained in a standard probate form - which Defendant Mills and Defendant Hunsinger expressly modified at the time his appointment, without initials, to purportedly abrogate Mills' requisite acknowledgement and execution of the directions contained in Mrs. Farmer's Will.

[2] The corruption and collusion cited herein was a scheme to bill hundreds of thousands of dollars in attorney's fees to transmogrify Defendant James D. Farmer from someone whose parents divested him of all of their property and standing to complain into a so-called "interested party." With that foot in the door - and confederation with those who were required by law to shut it – Defendant James D. Farmer could "flood the zone" in two different courts at the same time to distract from his disinterested status and bludgeon his siblings with anguish and expense through abuse of process until they gave up their property.

incidents of ownership from ownership, itself.

15.    This property dispute involves claims of title that are contested on substantive grounds, not merely procedural objections to estate administration.

*James D. Farmer's Financial Backing and Control of the Conspiracy*

16.    Defendant James D. Farmer – who labels himself an "heir" in proceedings relating to the probate of wills, rather than the administration of intestate estates, has no beneficial interest or standing because he was disinherited of a vested interest in real and personal property by his parents' wills.   In addition to expressing the intention to disinherit him of any vested interest in property, Defendant James D. Farmer's parents also designated his younger siblings to act as executrix or backup executor in lieu of an appointment of their oldest child to that role.

17.    Defendant James D. Farmer filed an action asserting various claims against his siblings in superior court in 2021 citing to illusory interests in "trust property" that he ultimately conceded was never owned by his late mother's trust, and in which he filed no fewer than 39 deposition notices.  In probate court, Defendant James D. Farmer urged the appointment of Defendant Mills' to represent his parents' estates in lieu of his sister.  Once Defendant Mills was legally appointed for Bobby Farmer's Estate – and illegally appointed for Judy Lenora Farmer's Estate, beginning in February 2023 and continuing through at least October 2023, Defendant James D. Farmer secretly provided substantial financial backing to fund Defendant Mills' legal actions against his siblings, including the contempt proceedings that led to Jason Farmer's false arrest.

18.    These financial arrangements were structured as purported "loans" from Defendant James D. Farmer to his deceased mother's estate, documented through a series of promissory notes that were not initially disclosed to anyone besides Defendant James D. Farmer, Defendant Epps, and Defendant Mills.

19.    On February 23, 2023, Defendant James D. Farmer executed a promissory note "loaning" $5,000.00 to the Estate of Judy Lenora Farmer, with a balloon payment due March 1, 2024.

20.    On February 23, 2023, Defendant James D. Farmer executed a second promissory note "loaning" $10,000.00 to The Irrevocable Trust of Judy Lenora Farmer, with a balloon payment due March 1, 2024.

21.    On October 10, 2023, the day following undersigned counsel's introduction as replacement counsel for Jason Farmer, James D. Farmer executed an amended and restated promissory note increasing the loan to the Estate of Judy Lenora Farmer from $5,000.00 to $15,000.00, with a balloon payment due December 1, 2024.

22. On October 10, 2023, the day following undersigned counsel's introduction as replacement counsel for Jason Farmer, Defendant James D. Farmer executed an amended and restated promissory note increasing the loan to The Irrevocable Trust of Judy Lenora Farmer from $10,000.00 to $25,000.00, with a balloon payment due December 1, 2024.

23. The details of the purported loan transactions, totaling $40,000.00, were deliberately kept secret from Jason Farmer and other participants and counsel in the estate proceedings.

24. The existence and source of these financial arrangements was not disclosed by Defendants James D. Farmer, Mills, or Epps until March 21, 2024, when Defendant Mills revealed them in response to a threat of a request for a request for sanctions.

25. Despite the fact that Defendant Mills was purportedly appointed by the court as a neutral fiduciary whose compensation would come from statutory administrator fees based on a percentage of estate assets, Defendant Mills used the funds provided by Defendant James D. Farmer – at least in part - to bill attorney's fees for pursuing contempt proceedings or other actions against Jason Farmer and his sister in the name of the Estate of Judy Lenora Farmer.

26. This financial arrangement created an undisclosed conflict of interest and transformed what was supposed to be neutral estate representation into a personally funded campaign by Defendant James D. Farmer against his siblings intended to abuse process and harass them until they relinquished the property his parents formed the explicit intention to give them.

27. The secret financial backing provided by Defendant James D. Farmer gave him effective control over Defendant Mills' legal strategy and actions, including the decision to pursue contempt proceedings and seek Jason Farmer's arrest.

28. Defendant James D. Farmer, through his agent Defendant Epps and his financial control over Defendant Mills, directed and coordinated the legal actions that culminated in Jason Farmer's false arrest and imprisonment.

29. All actions taken by Defendant Epps in the underlying probate proceedings were taken at the direction of and as agent for his principal, Defendant James D. Farmer.

30. Defendant James D. Farmer is therefore directly liable for all actions taken by Defendant Epps under the legal principle of respondeat superior and agency law.

*The Probate Court's Limited Jurisdiction*

31. The Probate Court of Oconee County derives its subject matter jurisdiction exclusively from the Georgia Constitution and Georgia statutes, specifically O.C.G.A. §

15-9-30 and related provisions.

32. Under Georgia law, probate courts have jurisdiction over property belonging to an estate when ownership is uncontested, or when the probate court can make that determination without resolving disputed title questions.

33. However, Georgia law clearly establishes that probate courts lack subject matter jurisdiction to adjudicate disputes over title to property. When property ownership is contested, the matter must be resolved in a court of competent jurisdiction (typically superior court) before the probate court can exercise any jurisdiction or authority over that property, or those who might possess it.

34. The Georgia Court of Appeals has definitively held: "As the probate court is without jurisdiction to determine matters respecting title to personal property, this issue must be decided in the proper forum in order to confer authority upon the probate court to determine whether such property belongs in the estate." *In re Estate of Adamson*, 215 Ga. App. 613, 613, 451 S.E.2d 501, 502 (1994).

35. The *Adamson* court further held: "An order of contempt cannot be based on noncompliance with a void order. Where the pleadings show on their face that the court is without jurisdiction of the subject-matter ... any preliminary order or final judgment rendered therein is void; and disobedience of a void mandate, order, or judgment, ... is not contempt of court." Id. at 502 (citations omitted).

36. Despite these clear jurisdictional limitations, expressed in multiple objections to ultra vires actions by special appearance, and otherwise, filed in the Court's record, Defendant Hunsinger purported to exercise jurisdiction over the disputed property, issued orders directing Jason Farmer to surrender property to which Farmer claimed title, and ultimately issued contempt orders and an arrest warrant for Farmer's refusal to comply with orders the probate court had no jurisdiction to issue.

*The Void "Protective Order" and Contempt Proceedings*

37. On July 14, 2023, Defendant Hunsinger entered a "Protective Order" in the probate proceedings that purported to prevent Jason Farmer from using, moving, or transferring certain equipment and property that Farmer claimed to own unless he complied with a litany of conditions precedent in connection with a "lease" of the property from the subject estate.

38. This Protective Order was entered without any determination by a court of competent jurisdiction regarding title to the disputed property. It was also purportedly entered as a "consent" order despite the absence of a signature by Jason Farmer, or his counsel, and – as proposed by Defendant Mills and Defendant Epps - purportedly waived

Jason Farmer's Seventh Amendment right to a civil jury trial in connection with his claim of ownership.

39. Jason Farmer maintained his position that the property belonged to him, not to the estates, and continued to use equipment in his possession in the ordinary course of his business operations.

40. On September 3, 2024, following multiple objections by Jason Farmer by special appearance to contest the probate court's jurisdiction over title disputes, Defendant Hunsinger issued an "Interim Order Finding Jason Farmer in Contempt of Court."

41. This contempt order found Jason Farmer in "willful contempt" of the July 14, 2023 Protective Order and directed him to take various actions to "purge his contempt," including paying $30,000 to the estate within twenty-four hours, providing an accounting of equipment use, and allowing inspection of equipment.

42. Critically, the contempt order related entirely to Jason Farmer's alleged failure to comply with orders regarding disputed property over which genuine title questions existed.

43. The contempt order made no finding that title to the disputed property had been adjudicated in any court of competent jurisdiction.  Instead, the contempt order substantively determined ownership in favor of the estate while employing sophistry presented by Defendant Mills and Defendant Epps that purported to do otherwise by separating a determination of ownership from the incidents that legally comprise it.

44. Following issuance of the contempt order, various interested parties initiated appellate and judicial review proceedings in superior court and the Georgia Court of Appeals.

45. On August 1, 2025, the Superior Court of Oconee County issued an order granting a Motion to Dismiss filed by James Farmer concerning a Petition for Judicial Review filed by Jason Farmer and others.

*The Secret Coordination and Ex Parte Communications*

46. Immediately following remittitur of the case to Probate Court in early August 2025, Defendants Epps, Mills, and James D. Farmer coordinated secretly with Defendant Hunsinger regarding enforcement of the contempt order through arrest and incarceration of Jason Farmer.

47. On August 6, 2025, Defendant Mills filed a "Notice of Non-Compliance" with the probate court, alleging that Jason Farmer had failed to comply with various requirements of the contempt order.  The "Notice" contained no verification or certification as to the

truth or correctness of the allegations of fact therein, as an affidavit competent for consideration by any court in any proceeding might require.

48.     On August 7, 2025, Defendant Epps, acting as agent for Defendant James D. Farmer, spoke with a deputy from the Oconee County Sheriff's Office *by radio* at approximately 1:00 p.m., immediately prior to Defendant Epps' arrival at the Oconee County Courthouse.

49.     During this communication, which was captured on courthouse video surveillance, Defendant Epps stated words to the effect that he was "bringing an order to arrest Jason Farmer for Judge Hunsinger to sign."

50.     The deputy confirmed that the Sheriff's Office would assist in executing any arrest order.

51.     Also during this communication, Defendant Epps offered the deputy box seat tickets to Atlanta Falcons football games, stating words to the effect of "for all the shit you do for me," and instructing the deputy to "go arrest this motherfucker."

52.     These statements and the offer of valuable tickets to a law enforcement officer occurred before any arrest order had been presented to or signed by Defendant Hunsinger, demonstrating that the arrest was coordinated between opposing counsel (acting as agent for Defendant James D. Farmer) and law enforcement prior to judicial authorization.

53.     At approximately 1:34 p.m. on August 7, 2025, Defendant Epps entered the Offices of the Probate Court, which include Defendant Hunsinger's chambers and the clerk personnel whose actions are regarded as indivisible from his own as a matter of law.

54.     Defendant Epps remained in Offices for approximately one hour, until approximately 2:36 p.m., during a period when no court proceedings were scheduled and when no other parties or counsel were present besides Defendant Mills.

55.     During this private meeting, Defendant Epps was not on the record and no transcript or recording was made of communications between Defendant Epps, Defendant Mills, and Defendant Hunsinger.

56.     Neither Jason Farmer nor his counsel were notified of this meeting or given any opportunity to be present or to respond to any presentations made by Defendant Epps or Defendant Mills to Defendant Hunsinger.

57.     At approximately 2:36 p.m., Defendant Epps left Defendant Hunsinger's chambers accompanied by Defendant Mills and by a deputy from the Oconee County Sheriff's Office who was carrying an envelope.  Defendant Epps or Defendant Mills can then be heard discouraging verbal communications based on acknowledged video surveillance,

saying "camera…camera."

58. Video surveillance footage on a lower floor of the courthouse then shows the same deputy later reviewing a signed order taken from that envelope.

59. Also at approximately 2:25 p.m. on August 7, 2025—while Defendant Epps was still in Defendant Hunsinger's chambers—an "Order for Continuance" was entered in the probate proceedings stating that a hearing scheduled for August 8, 2025 regarding "why Jason Farmer should not be incarcerated" would be continued "until a late date to be determined by the Court."

60. This Order for Continuance was emailed to all counsel at approximately 2:30 p.m. on August 7, 2025, creating the appearance that the issue of Jason Farmer's potential incarceration had been postponed and that no immediate action would be taken.

61. Unknown to Jason Farmer or his counsel, however, Defendant Hunsinger had also signed—on that same day, August 7, 2025, during or immediately after Defendant Epps' and Defendant Mills' private meeting—a "Bench Warrant and Arrest Order" commanding the Sheriff of Oconee County to arrest Jason Farmer and hold him in the Oconee County Jail indefinitely "until further order of this Court…"

62. This Bench Warrant and Arrest Order was withheld from Jason Farmer's counsel on August 7, 2025 when it was signed, and it was not disclosed until August 11, 2025.

63. This Bench Warrant and Arrest Order was likewise withheld from the probate court docket until August 11, 2025, four days after it was signed and three days after Jason Farmer was arrested pursuant to it on Friday afternoon, August 8, 2025.

64. The Bench Warrant and Arrest Order made no provision for any hearing before Jason Farmer's arrest, provided no notice to Jason Farmer or his counsel before execution, and directed immediate incarceration without any opportunity for Jason Farmer to be heard.

65. The Bench Warrant and Arrest Order was issued despite the fact that Jason Farmer had been notified to appear in court on August 8, 2025, for a show-cause hearing—a hearing that was then continued by the Order for Continuance, demonstrating that there was no flight risk or emergency necessitating arrest without a hearing.

66. The timing, secrecy, and coordination of these events—including Defendant Epps' statement that he was bringing an arrest order before meeting privately with Defendant Hunsinger, the gifts to law enforcement, the simultaneous issuance of an unsworn "Notice", a continuance order, and a secret arrest warrant, and the failure to serve or docket the arrest warrant—establish that Defendants Epps, Mills, James D. Farmer, and Hunsinger acted in concert pursuant to an agreement or meeting of minds to deprive Jason

Farmer of due process[3] and to effect his false arrest and imprisonment.

67.  Defendant James D. Farmer, as principal, is vicariously liable for all actions taken by his agent Defendant Epps in furtherance of this conspiracy.

*The False Arrest and Imprisonment*

68.  On August 8, 2025, Jason Farmer was at his place of business in Athens, Clarke County, Georgia.

69.  Officers from the Athens-Clarke County Police Department seized Jason Farmer based on a verbal request for assistance from personnel with the Oconee County Sheriff's Department, rather than based on notice of the Bench Warrant. When Jason Farmer telephoned undersigned counsel to alert him to the seizure and request was then made to the Officers to produce an arrest warrant, the Officers admitted they did not have one. The Officers then made a radio call to request a warrant via email from the Oconee County Sheriff's Department; but, the request was not granted. Instead, a representative of the Sheriff's Department asked the Officers to hold Jason Farmer until they could take custody of him.

70.  Jason Farmer was then transferred to the custody of deputies from the Oconee County Sheriff's Office.

71.  Jason Farmer was transported to and confined in the Oconee County Jail, where he was held in custody from August 8, 2025 through August 12, 2025.

72.  At no time before his arrest was Jason Farmer afforded notice and an opportunity for a hearing regarding whether he should be arrested and incarcerated.

73.  At no time before his arrest did any neutral magistrate make a probable cause determination based on sworn testimony or affidavit regarding whether Jason Farmer should be arrested.

74.  The arrest was effected solely on the basis of the Bench Warrant and Arrest Order issued by Defendant Hunsinger without jurisdiction and without affording due process.

75.  Jason Farmer was conscious of his confinement, did not consent to his confinement, and repeatedly sought his release during the period of his detention.

---

[3] By maintaining the Bench Warrant in secrecy, Defendants prevented the filing of an appeal and the attachment of superseding appellate jurisdiction that would either prevent Jason Farmer's arrest, or require his immediate release following arrest. Defendants' decision to issue the Bench Warrant through secret ex. parte interactions without a prior hearing or notice ensured that Jason Farmer spent four days in jail instead of four hours.

*The Emergency Relief from the Georgia Court of Appeals*

76. On August 8, 2025, prior to 5 p.m. on the same day he was arrested, Jason Farmer's counsel filed a Notice of Appeal and request for a supersedeas order from Defendant Hunsinger that would stay incarceration pending appeal.

77. Georgia law, specifically O.C.G.A. § 5-6-13, provides that when a defendant in a contempt proceeding files written notice of intent to appeal, "it shall not be in the discretion of any trial court judge to grant or refuse a supersedeas in cases of contempt."

78. Despite this mandatory statutory requirement, Defendant Hunsinger refused to grant a supersedeas bond for three days, until finally entering a conditioned release on posting a bond in the amount of $500,000.00.[4]

79. On August 11, 2025, Jason Farmer filed an Emergency Motion for Supersedeas Bond or Mandamus Order in the Georgia Court of Appeals, case number A26E0016.

80. On August 12, 2025, the Georgia Court of Appeals issued an order granting the emergency motion and ordering Jason Farmer's immediate release.

81. The Court of Appeals found that "this issue involves the incarceration of a litigant, which cannot be undone if we find error in a docketed appeal," and exercised its "inherent authority under Court of Appeals Rule 40(b)" to address the matter.

82. The Court of Appeals ordered the trial court to "VACATE its Order for Supersedeas Bond and issue an order granting [Jason] Farmer's application for supersedeas without such bond required."

83. Most significantly, the Court of Appeals further ordered "that he be released from custody instanter and that enforcement of the contempt order be stayed until such time as the underlying appeal is docketed and resolved on the merits."

---

[4] The collusion amongst Defendants appeared to be unapologetic in broad daylight when Defendant Hunsinger manipulated a proposed release order initially "prepared by" Jason Farmer's counsel, who was asked by personnel on behalf of Defendant Hunsinger to prepare an order for Jason Farmer's release on August 11th in "word format." Jason Farmer's counsel emailed the Court a release order without.condition.of. payment.and.copied.to.all.counsel.involved¡.. Upon receipt, Defendant Hunsinger manipulated the document originally presented by Jason Farmer's counsel to provide for the appearance that it was "prepared by" counsel to.condition.his.Client's.release.upon.payment.of.P¡066?666¡66. The manipulation of the release order formed the basis of Defendant Epps' subsequent misrepresentation to the Court of Appeals in a motion for reconsideration to set aside an unconditional emergency release issued using the Court of Appeals inherent emergency powers: "On August 11, 2025, the Probate Court entered an order entitled "Order for Supersedeas Bond," which was prepared by Petitioner's counsel…Petitioner's counsel drafted the provisions requiring Petitioner to post a supersedeas bond in the amount of $500,000.00. A true and correct copy of the Order…is attached…" (Court of Appeals Case No. A26E0016, "Motion for Reconsideration" filed by Defendant Epps, p. 4) (emphasis added)

84. The Court of Appeals specifically noted its concern that Defendant Hunsinger had required a supersedeas bond "seemingly in contravention of OCGA § 5-6-46(a)" and had therefore failed to follow mandatory statutory requirements regarding supersedeas in contempt cases.

85. The Court of Appeals' findings and its decision to grant emergency relief, vacate the bond requirement, and order immediate release indicate that the Court found the underlying contempt proceedings and arrest order to be procedurally and substantively defective, including likely defects in subject matter jurisdiction.

86. Jason Farmer was released from the Oconee County Jail on August 12, 2025, following four days of unlawful detention.

87. The Georgia Court of Appeals' appeal remains pending as of the filing of this Complaint, with the contempt order stayed pending resolution of that appeal.

Defendants' Actions Were Taken Under Color of State Law

88. Defendant Hunsinger's actions in issuing the contempt orders and Bench Warrant and Arrest Order were taken under color of his authority as a Georgia probate judge and under color of Georgia law.

89. Defendants Epps, Mills, and James D. Farmer, although private attorneys and a private party, acted under color of state law through their joint participation with Defendant Hunsinger, a state judicial officer, in the coordinated scheme to deprive Jason Farmer of constitutional rights.

90. The Supreme Court has held that "private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of [§ 1983]." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).

91. Defendants Epps, Mills, and James D. Farmer's ex parte communications with Defendant Hunsinger, their coordination regarding the timing and content of the arrest order, their provision of gifts and incentives to law enforcement officers, their secret financial arrangements to fund the prosecution of Jason Farmer, and their joint action with Defendant Hunsinger to secure Jason Farmer's arrest without notice or hearing establish that they were "jointly engaged" with a state official in depriving Jason Farmer of constitutional rights.

92. The coordinated nature of Defendants' actions, the secrecy surrounding the issuance of the arrest warrant, the improper ex parte communications, the gifts to law enforcement personnel, and Defendant James D. Farmer's financial control over the proceedings through secret loans demonstrate an agreement or meeting of minds among all Defendants to use the machinery of state judicial process to effect Jason Farmer's arrest

and detention in violation of his constitutional rights.

*Defendant Hunsinger Acted in the Clear Absence of All Jurisdiction*

93.     Defendant Hunsinger's contempt orders and Bench Warrant and Arrest Order were issued in the clear absence of all jurisdiction over the subject matter of the dispute.

94.     As established by Georgia law, particularly *In re Estate of Adamson*, 215 Ga. App. 613, 451 S.E.2d 501 (1994), probate courts lack subject matter jurisdiction to adjudicate disputes regarding title to property.

95.     The contempt orders and arrest warrant in this case related entirely to Jason Farmer's refusal to comply with orders regarding property to which he claimed title and ownership.

96.     No court of competent jurisdiction had adjudicated title to the disputed property before Defendant Hunsinger issued orders directing Jason Farmer to surrender that property or be held in contempt.

97.     Defendant Hunsinger's actions in purporting to determine merely "possession" or "control" of disputed property in formal language while making an obvious substantive "ownership determination", ordering surrender of that property, and holding Jason Farmer in contempt for refusing to comply with those orders were actions taken in a matter clearly and completely outside the probate court's subject matter jurisdiction.

98.     A reasonable judge in Defendant Hunsinger's position would have known that probate courts lack jurisdiction to adjudicate disputed title to property and that any orders issued regarding such property would be void, particularly in light of the multitudinous and explicit objections to *ultra vires* acts interposed by special appearance and contained in the Probate Court Record.

99.     The Georgia Court of Appeals' preliminary and implicit finding that the probate court likely acted without jurisdiction further confirms the absence of subject matter jurisdiction over these matters.

100.    Because Defendant Hunsinger acted in the clear absence of all jurisdiction, he is not entitled to judicial immunity for his actions.

101.    Even if Defendant Hunsinger's actions could be characterized as judicial acts, they were undertaken in the complete absence of jurisdiction and therefore fall outside the protection of judicial immunity.

COUNT I - VIOLATION OF FOURTH AMENDMENT RIGHTS
42 U.S.C. § 1983 – False Arrest and Imprisonment
(Against All Defendants)

102. Plaintiff realleges and incorporates by reference all allegations contained in paragraphs 1 through 101 as if fully set forth herein.

103. The Fourth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, protects individuals against unreasonable seizures, including arrest and detention without probable cause.

104. Jason Farmer was seized within the meaning of the Fourth Amendment when he was arrested on August 8, 2025, and was continuously seized during his detention through August 12, 2025.

105. This seizure was effectuated without probable cause because it was based solely on a Bench Warrant and Arrest Order that was *void ab initio* due to Defendant Hunsinger's complete lack of subject matter jurisdiction over the underlying dispute.

106. An arrest warrant issued by a court acting in the clear absence of all jurisdiction is void and cannot provide probable cause or legal authority for arrest and detention.

107. Defendants Epps, Mills, and James D. Farmer, acting jointly with Defendant Hunsinger and under color of state law, participated in and effectuated this unconstitutional seizure through their coordination, *ex parte* communications, secret financial arrangements, and conspiracy to secure Jason Farmer's arrest without proper legal authority.

108. Defendant James D. Farmer is vicariously liable for the actions of his agent, Defendant Epps, under the doctrine of respondeat superior.

109. Defendants' actions in causing Jason Farmer's arrest and imprisonment without probable cause violated his clearly established Fourth Amendment rights.

110. As a direct and proximate result of Defendants' violations of his Fourth Amendment rights, Jason Farmer suffered damages including loss of liberty, emotional distress, humiliation, damage to reputation, and other injuries.

COUNT II - VIOLATION OF FOURTEENTH AMENDMENT RIGHTS
42 U.S.C. § 1983 – Procedural Due Process
(Against All Defendants)

111. Plaintiff realleges and incorporates by reference all allegations contained in paragraphs 1 through 110 as if fully set forth herein.

112. The Fourteenth Amendment to the United States Constitution guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law."

113. Jason Farmer has a clearly established liberty interest protected by the Due Process Clause.

114. Before a person can be arrested and imprisoned for civil contempt, due process requires notice and an opportunity to be heard before a neutral judicial officer.

115. Defendants deprived Jason Farmer of his liberty by causing his arrest and imprisonment without affording him prior notice or an opportunity for a hearing regarding whether he should be arrested and detained.

116. The Bench Warrant and Arrest Order was issued and executed without any hearing, without notice to Jason Farmer or his counsel, and without any opportunity for Jason Farmer to present evidence or argument before being deprived of his liberty.

117. This deprivation of liberty without prior notice and hearing violated Jason Farmer's clearly established right to procedural due process under the Fourteenth Amendment.

118. Defendants' actions in coordinating the issuance and execution of the arrest warrant through secret *ex parte* communications, without notice to opposing counsel or the affected party, further violated fundamental principles of due process requiring equal access to judicial decision-makers.

119. Defendant James D. Farmer is vicariously liable for the actions of his agent, Defendant Epps, under the doctrine of respondeat superior.

120. As a direct and proximate result of Defendants' violations of his Fourteenth Amendment rights, Jason Farmer suffered damages including loss of liberty, emotional distress, humiliation, damage to reputation, and other injuries.

## COUNT III - CONSPIRACY TO VIOLATE CIVIL RIGHTS
## 42 U.S.C. § 1983
### (Against All Defendants)

121. Plaintiff realleges and incorporates by reference all allegations contained in paragraphs 1 through 120 as if fully set forth herein.

122. Defendants Hunsinger, Epps, Mills, and James D. Farmer reached an agreement or meeting of minds to deprive Jason Farmer of his constitutional rights to be free from false arrest, to be free from imprisonment without probable cause, and to receive due process before being deprived of liberty.

123. In furtherance of this conspiracy, Defendants engaged in the following overt acts, among others:

   a. Defendant James D. Farmer secretly provided $40,000 in loans to his mother's estate and trust to fund Defendant Mills' prosecution of Jason Farmer, creating an undisclosed conflict of interest and giving Defendant James D. Farmer effective control over the legal strategy against Jason Farmer;

   b. Defendant Epps, acting as agent for Defendant James D. Farmer, coordinated with law enforcement regarding Jason Farmer's arrest before obtaining judicial authorization for that arrest;

   c. Defendant Epps offered gifts and incentives to law enforcement personnel to secure their cooperation in arresting Jason Farmer;

   d. Defendant Epps met privately with Defendant Hunsinger and/or clerk's staff who act for him and on his behalf in the Probate Court Offices on August 7, 2025, without notice to opposing counsel and without any record of their communications;

   e. Defendants Epps and Mills coordinated with Defendant Hunsinger regarding the timing and content of the arrest warrant;

   f. Defendant Hunsinger issued a Bench Warrant and Arrest Order on the same day as the secret meeting with Defendant Epps, commanding Jason Farmer's immediate arrest without any prior hearing or notice;

   g. Defendants caused the arrest warrant to be kept secret from Jason Farmer and his counsel to prevent an opportunity to obtain a supersedeas order, while simultaneously issuing a continuance order creating the false appearance that no immediate action would be taken;

   h. Defendants caused the arrest warrant to be executed without prior notice to

Jason Farmer or his counsel and without affording any hearing; and

    i. Defendants caused Jason Farmer to be arrested and imprisoned for four days in violation of his constitutional rights.

124.   As a direct and proximate result of this conspiracy, Jason Farmer was arrested without probable cause, imprisoned without due process, and deprived of his constitutional rights.

125.   Defendants Epps, Mills, and James D. Farmer, although private parties, acted under color of state law through their joint participation with Defendant Hunsinger, a state judicial officer, in this conspiracy.

126.   Defendant James D. Farmer is vicariously liable for the actions of his agent, Defendant Epps, under the doctrine of respondeat superior.

127.   The conspiracy among Defendants to deprive Jason Farmer of constitutional rights violated 42 U.S.C. § 1983.

128.   As a direct and proximate result of Defendants' conspiracy, Jason Farmer suffered damages including loss of liberty, emotional distress, humiliation, damage to reputation, and other injuries.

COUNT IV - FALSE ARREST
Georgia Law (O.C.G.A. § 51-7-1)
(Against All Defendants)

129.   Plaintiff realleges and incorporates by reference all allegations contained in paragraphs 1 through 128 as if fully set forth herein.

130.   Under Georgia law, a person has a right of action for false arrest when arrested without probable cause, particularly when the arrest is malicious or when no valid legal authority existed for the arrest.

131.   Defendants caused Jason Farmer to be arrested on August 8, 2025, without probable cause.

132.   The arrest was based solely on a Bench Warrant and Arrest Order issued by Defendant Hunsinger without subject matter jurisdiction over the underlying dispute.

133.   An arrest warrant issued without jurisdiction is *void ab initio* and provides no legal justification for arrest.

134.    Defendants knew or should have known that the probate court lacked jurisdiction to adjudicate title disputes and that any orders issued regarding such disputes were void.

135.    Defendants' actions in coordinating the issuance and execution of an arrest warrant regarding a matter outside the court's jurisdiction, through secret ex parte communications, secret financial arrangements, and without affording due process, were malicious and undertaken with improper motives.

136.    Defendant James D. Farmer is vicariously liable for the actions of his agent, Defendant Epps, under the doctrine of respondeat superior.

137.    As a direct and proximate result of Defendants' false arrest, Jason Farmer suffered damages including loss of liberty, emotional distress, humiliation, damage to reputation, and other injuries.

## COUNT V - FALSE IMPRISONMENT
### Georgia Law (O.C.G.A. § 51-7-20)
### (Against All Defendants)

138.    Plaintiff realleges and incorporates by reference all allegations contained in paragraphs 1 through 137 as if fully set forth herein.

139.    Under Georgia law, false imprisonment is defined as the unlawful detention of a person without legal authority.

140.    Defendants caused Jason Farmer to be detained in the Oconee County Jail from August 8, 2025 through August 12, 2025.

141.    This detention was unlawful because it was effected pursuant to an arrest warrant issued without jurisdiction and therefore void ab initio.

142.    Jason Farmer was conscious of his confinement, did not consent to his confinement, and lacked any reasonable means of escape.

143.    Defendants' coordination to secure Jason Farmer's detention through a jurisdictionally void warrant, without prior notice or hearing, through improper ex parte communications, secret financial arrangements, and conspiracy, establishes willful, malicious, or corrupt conduct sufficient to pierce any claim of official immunity under Georgia law.

144.    Defendant James D. Farmer is vicariously liable for the actions of his agent, Defendant Epps, under the doctrine of respondeat superior.

145.    As a direct and proximate result of Defendants' false imprisonment, Jason Farmer

suffered damages including loss of liberty, emotional distress, humiliation, damage to reputation, and other injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jason Farmer respectfully requests that this Court:

A. Assume jurisdiction over this action;

B. Enter judgment in favor of Plaintiff and against all Defendants on all counts;

C. Award Plaintiff compensatory damages in an amount to be determined by the jury for all injuries suffered, including but not limited to loss of liberty, emotional distress, humiliation, and damage to reputation;

D. Award Plaintiff punitive damages against all Defendants in an amount sufficient to punish their willful, malicious, and reckless conduct and to deter similar conduct in the future;

E. Award Plaintiff his reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 for his federal claims and pursuant to O.C.G.A. § 9-15-14 and other applicable provisions for his state law claims;

F. Award Plaintiff pre-judgment and post-judgment interest as allowed by law;

G. Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

**Plaintiff demands a trial by jury on all issues so triable.**

Respectfully submitted this 1st day of October, 2025.

*/s/ John Baker*
Georgia Bar No. 033797
JOHN BAKER LAW
1551 Jennings Mill Road, Suite 3100B
Watkinsville, GA 30677
(706) 608-2406
john@johnbaker.law

*Attorney for Plaintiff Jason Farmer*