IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

JASON FARMER,

     Plaintiff,

v.                                                              3:25-cv-00154-TES

MIKE HUNSINGER, KEVIN EPPS,
JON MILLS, and JAMES FARMER

     Defendants.

**PLAINTIFF'S RESPONSE TO KEVIN E. EPPS' MOTION TO DISMISS**

<u>INTRODUCTION</u>

Defendant Epps seeks dismissal under the *Younger* abstention doctrine, but his motion fundamentally misapprehends both the nature of this action and the narrow scope of abstention principles. This case presents completed constitutional violations - a false arrest and four-day imprisonment that ended on August 12, 2025 - for which Plaintiff seeks only backward-looking monetary damages.

The Supreme Court has repeatedly emphasized that federal courts have a "virtually unflagging obligation" to exercise jurisdiction over such claims. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). The *Younger* doctrine does not permit federal courts to abdicate this duty merely because state appellate proceedings addressing different questions remain pending.

1

Moreover, Defendant Epps' alternative argument regarding judicial immunity reveals the fundamental jurisdictional defect that pervades this entire matter. The Georgia Court of Appeals explicitly held in *In re Estate of Adamson*, 215 Ga. App. 613, 451 S.E.2d 501 (1994), that probate courts lack subject matter jurisdiction to adjudicate title disputes. When a judge acts in such "clear absence of all jurisdiction," both absolute immunity and the foundation for *Younger* abstention collapse. Void orders cannot underpin valid contempt proceedings, and federal courts need not defer to state proceedings that are fundamentally without legal authority.

Pretermitting these jurisdictional issues, and even if Younger did apply, the Motion ignores the extraordinary circumstances presented by the allegations in the Complaint. Plaintiff has cited to multitudinous facts showing that **Defendant Epps and the other above-named Defendants confederated in secret to secure a "Bench Warrant" for Jason Farmer's arrest without notice or a hearing of any kind.** *That* violation of Jason's Constitutional rights provides Plaintiff with the right to seek redress in this Court, whether Judge Hunsinger had judicial power to enter a "Bench Warrant" for Jason Farmer's arrest in the first place, or not. That distinct issue and violation is dispositive to require the denial of the Motion to Dismiss, even if the Movant manifested the intention to ignore it.

<u>ARGUMENT</u>

I. YOUNGER ABSTENTION DOES NOT BAR COMPLETED VIOLATIONS

*A. Sprint Communications Confines Younger to Three Exceptional Circumstances That Do Not Include Damages Actions*

The Supreme Court unanimously clarified in *Sprint Communications* that *Younger*

abstention applies only in three exceptional circumstances: ongoing criminal prosecutions, civil enforcement proceedings akin to criminal prosecutions, and civil proceedings uniquely in furtherance of state courts' ability to perform their judicial functions. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 73, 78 (2013). The Court emphasized that these categories are exhaustive: "In short, to guide other federal courts, we today clarify and affirm that Younger extends to the three 'exceptional circumstances' identified in NOPSI, but no further." Id. at 81.

Justice Ginsburg, writing for a unanimous Court, reaffirmed the fundamental principle that abstention is "the exception, not the rule" and that federal courts possess a "virtually unflagging obligation" to exercise jurisdiction properly conferred. Id. at 77 (quoting *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236 (1984)). The Court stated: "Jurisdiction existing, this Court has cautioned, a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" Id.

This action does not fall within any of the three exceptional categories. It is not a criminal prosecution. It is not a civil enforcement proceeding akin to criminal prosecution. And it is not a proceeding uniquely in furtherance of state judicial functions. Rather, it is a damages action seeking compensation for completed constitutional violations—precisely the type of claim that Section 1983 was enacted to address and that federal courts are obligated to adjudicate.

*B. Pure Damages Claims for Past Injuries Fall Outside Younger's Scope*

The Supreme Court in *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 721 (1996), established the critical distinction between damages actions and equitable

proceedings. The Court held that abstention principles "have never supported the outright dismissal or remand of damages actions." Id. While abstention may permit staying proceedings seeking equitable or discretionary relief in certain circumstances, federal courts retain their obligation to adjudicate damages claims even when related state proceedings are pending.

This distinction reflects the fundamental difference between backward-looking and forward-looking relief. When a plaintiff seeks an injunction to halt ongoing state proceedings or prevent future state action, federal intervention directly interferes with state sovereignty. But when a plaintiff seeks only monetary compensation for a past injury that has already occurred, the federal court's adjudication does not interfere with any state proceeding. The injury is complete, the harm is done, and the federal court simply provides the forum that Congress mandated for redressing completed constitutional violations.

Here, Plaintiff Jason Farmer was arrested on August 8, 2025, and imprisoned for four days until his release on August 12, 2025. (Compl. ¶¶ 68-72, 86.) These are completed events. The deprivation of liberty has already occurred and cannot be undone. Plaintiff seeks only damages to compensate for this past harm—he does not seek to enjoin any state proceeding, vacate any state court order, or obtain any forward-looking relief that would interfere with state sovereignty. This backward-looking damages claim falls squarely outside Younger's scope.

*C. The Completed Injury Doctrine Defeats Younger Abstention*

The completed injury doctrine recognizes that once a constitutional violation has occurred and is finished, a federal damages claim seeking compensation for that completed

injury does not interfere with any ongoing state proceeding. *Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975), established that *Younger* does not apply when the federal claim challenges procedures that "could not be raised in defense of the criminal prosecution." The Court held: "The injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution. The order to hold preliminary hearings could not prejudice the conduct of the trial on the merits." Id.

This principle applies with equal force to damages claims for completed false arrest and false imprisonment. The Eleventh Circuit emphasized this non-interference principle in *Walker v. City of Calhoun*, 901 F.3d 1245, 1255-56 (11th Cir. 2018), holding that "Younger does not readily apply here because Walker is not asking to enjoin any prosecution. Rather, he merely seeks prompt bail determinations for himself and his fellow class members." The court distinguished between federal relief that would halt or interfere with state proceedings—which is subject to *Younger*—versus relief addressing separate procedural issues that would not prejudice state proceedings—which is not subject to *Younger*. Id.

Plaintiff's damages claim for the four days he spent in jail falls into the latter category. This Court is not being asked to enjoin, halt, or interfere with any state criminal proceeding or appeal. The Court is simply being asked to provide a forum for compensation for a completed constitutional violation—precisely what Section 1983 was designed to accomplish.

## II. THE THREE-PART YOUNGER TEST FAILS BECAUSE PLAINTIFF HAS NO ADEQUATE OPPORTUNITY IN STATE PROCEEDINGS TO OBTAIN DAMAGES FOR PAST INJURY

Even assuming arguendo that the traditional three-part *Younger* test applies - which it does not, given *Sprint Communications'* limitation of the doctrine - Defendant cannot satisfy the third prong. The Eleventh Circuit applies a three-part test derived from *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982): the proceeding must be ongoing, it must implicate important state interests, and there must be an adequate opportunity to raise constitutional challenges. *31 Foster Children v. Bush*, 329 F.3d 1255, 1274-75 (11th Cir. 2003).

The third prong fails here because the pending state appellate proceeding provides no mechanism for Plaintiff to obtain damages for his completed injury. The Georgia Court of Appeals is reviewing whether the probate court had subject matter jurisdiction to issue contempt orders regarding disputed property. That appellate proceeding may ultimately vindicate Plaintiff's position on the jurisdictional question, but it cannot compensate him for the four days he spent in jail.

The Supreme Court in *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973), held that Younger "naturally presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved." But a state criminal or civil appeal addresses the validity of underlying orders, not compensation for past deprivation of liberty through false arrest. By the time any appellate proceeding concludes—indeed, by the time Plaintiff was released on August 12, 2025—the harm from the false arrest and imprisonment was already complete and irreparable. The state appellate proceeding

provides no mechanism for obtaining monetary damages, which must be pursued in a separate civil action under Georgia law.

Therefore, the state proceeding does not provide an "adequate opportunity" to raise Plaintiff's damages claim, defeating the third prong of Younger abstention. As the Supreme Court held in *Patsy v. Board of Regents*, 457 U.S. at 504, no exhaustion of state remedies is required for Section 1983 claims. The 1871 Congress intended Section 1983 to "throw open the doors of the United States courts" to individuals who suffered deprivation of constitutional rights "and to provide these individuals immediate access to the federal courts notwithstanding any provision of state law to the contrary." Id.

### III. THE PROBATE COURT'S CLEAR ABSENCE OF JURISDICTION UNDERMINES BOTH JUDICIAL IMMUNITY AND YOUNGER ABSTENTION

*A. Probate Courts Lack Subject Matter Jurisdiction to Enter Orders for the Surrender of Property in the Possession of a Third-Party Who Claims to Ownership.*

Georgia law could not be clearer on this point. The General Assembly explicitly limited a probate court's subject matter jurisdiction to enter orders only relating to "…property **belonging to**…deceased persons' **estates."** O.C.G.A. § 15-9-30(4) (emphasis added)  The Georgia Court of Appeals held definitively in *In re Estate of Adamson*, 215 Ga. App. 613, 613, 451 S.E.2d 501, 502 (1994), that probate courts lack subject matter jurisdiction to adjudicate disputes regarding title to property, or more particularly–as the instant Defendants have maintained – to enter orders requiring a claimant in possession of disputed property to relinquish temporary control or possession of it to an executor while another Court decides ownership.

7

In Georgia, it is well-settled that probate courts do not have jurisdiction to adjudicate conflicting claims of title to real or personal property. Ga. Const. 1983, Art. VI, Sec. III, Par. I; OCGA § 15–9–30 et seq.; *Dix v. Dix*, 132 Ga. 630, 64 S.E. 790 (1909); *Johnson v. Johnson*, 199 Ga.App. 549(1), 405 S.E.2d 544 (1991). **The executor maintains that the trial court did not decide matters of title, but merely provided him with possession of the property** as allowed by OCGA § 53–4–10. The executor's position begs the question. OCGA § 53–4–10 allows an executor to "recover possession of any part of the estate from the heirs at law." Only property owned by the decedent becomes property of the estate which the executor or administrator has a right to possess. OCGA § 53–4–8. Therefore, **the probate court was without authority to give the executor possession of property unless such property was owned by the decedent.**

In re Est. of Adamson, 215 Ga. App. 613, 613, 451 S.E.2d 501, 502 (1994)

The *Adamson* court further held: "[a]s the probate court is without jurisdiction to determine matters respecting title to personal property, this issue must be decided in the proper forum in order to confer authority upon the probate court to determine whether such property belongs in the estate." Id.

Here, the publicly-accessible record in the Farmer Probate Court shows that the above-named Defendants were aware of the Probate Court's lack of subject matter jurisdiction.  Through counsel, James Farmer filed a "Motion to Compel Surrender of Personal Property" on April 14, 2023 maintaining that "the Estate of Bobby James Farmer is the proper owner of certain personal property."  (Oconee Estate F-183, James Farmer's Motion to Compel Surrender of Personal Property[1], April 14th, 2023)   James averred that the estate representative his own counsel urged the Probate Court to appoint in lieu of his

---

[1] James Farmer's Motion to Compel Surrender of Personal Property  This Court may take judicial notice of publicly available dockets and filings without conversion to summary judgment.  See *Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006).   Oconee County Estates F-183 (Estate of Bobby Farmer) and F-189 (Estate of Judy Farmer) are accessible to the public at "georgiaprobaterecords.com."

own sister, Jon Mills, "…is entitled to an order requiring Jason Farmer to **immediately surrender possession** of the Subject Personal Property…**belonging to the Estate of Bobby James Farmer** to Jon Mills without further delay." Id.  In the very same Motion, James alleged that "to the extent" Jason claimed ownership of the items of personal property in Jason's possession, "the issue relating to conflicting claims of title of personal property should be transferred."   The Motion prayed that "Jason Farmer be ordered to return the…Property to the…Administrator **for the benefit of Estate** of Bobby James Farmer…"

The same day, in the absence of a response to a motion requesting relief outside the Probate Court's subject matter jurisdiction and filed by someone unnamed in the governing Will, Judge Hunsinger ordered a "Hearing Notice to Show Cause" addressed "TO: JASON FARMER." The order – prepared by Mr. Epps James Farmer's counsel – stated "it appears that Jason Farmer may have possession and/or control of personal property **belonging to the Estate of Bobby James Farmer.**"   The order set a hearing for which Jason "shall appear" only five days later on April 19th, 2023 "to show cause, if any you can, why you should not be ordered to immediately surrender the personal property…of the Estate of Bobby James Farmer"; and, **"failure to comply with any such order may result in contempt sanctions."**

Importantly, the threat of contempt was unfounded from the very beginning because *Adamson* established that "[a]n order of contempt cannot be based on noncompliance with a void order. Where the pleadings show on their face that the court is without jurisdiction of the subject-matter, any preliminary order or final judgment rendered therein is void; and

**disobedience of a void mandate, order, or judgment is not contempt of court."** Id.
(emphasis added)

No court of competent jurisdiction - meaning the Superior Court of Oconee County
- adjudicated these title disputes before Judge Hunsinger issued the "show cause" order,
the "protective order", or any orders subsequent contempt orders directing Plaintiff to
surrender "possession and/or control" of his own property,  and holding him in contempt
for refusing to comply. (Compl. ¶¶ 36-43.)  Under *Adamson*, these orders were *void ab
initio*, and Plaintiff could not lawfully be held in contempt for disobeying void orders.

Jason Farmer maintained throughout the proceedings that the subject property
belonged to *him,* not an estate, based on a writing signed by his mother/decedent during
her life. (Compl. ¶¶ 13-15, 39.)   Under those circumstances, James Farmer had no right to
request relief, and – based on the clear absence of all jurisdiction - Judge Hunsinger had
no judicial power to grant it.

*B. Judges Acting in the Clear Absence of All Jurisdiction Lose Absolute
Immunity*

The Supreme Court in *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978), held that
while judges generally enjoy absolute immunity "even when such acts are in excess of their
jurisdiction, and are alleged to have been done maliciously or corruptly," this immunity
does not extend to acts taken "in the clear absence of all jurisdiction." Id.   The Court drew
a critical distinction: "A judge will not be deprived of immunity because the action he took
was in error, was done maliciously, or was in excess of his authority; rather, he will be
subject to liability only when he has acted in the "clear absence of all jurisdiction."' Id.

(quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1872)).

The Supreme Court provided a hypothetical directly applicable to this case: "If a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action." Id. at 357. The Court distinguished this from a judge who "convict[s] a defendant of a nonexistent crime"—who "would merely be acting in excess of his jurisdiction and would be immune." Id.

This case falls on the "clear absence" side of that line. Georgia law explicitly prohibits probate courts from adjudicating title disputes, in substance, through the intentional misuse of form and labels as window-dressing for the exercise of equitable powers relating to property not already "belonging to" an estate and therefore outside the courts' jurisdiction.  O.C.G.A. § 15-9-30 enumerates the specific powers of probate courts, property already "belonging to" estates, which necessarily excludes powers over property that is not already "belonging to" estates because title is disputed. When Judge Hunsinger issued contempt orders based on Plaintiff's refusal to comply with orders regarding disputed property title, he acted outside the statutory boundaries of probate court jurisdiction - not in error or excess of proper jurisdiction, but in the complete absence of any jurisdiction whatsoever conferred by the Georgia Constitution.

*C. Void Orders Cannot Support Valid Ongoing Proceedings Warranting Federal Deference*

As Chief Justice Marshall wrote: "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other

11

would be treason to the constitution." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821). This principle, reaffirmed in *Sprint Communications*, suggests that federal courts cannot abstain from exercising their proper jurisdiction when the state proceeding itself is fundamentally void. Here, the state contempt process originated from a patent absence of jurisdiction. Defendant Epps's "wait and see" argument (urging this Court to stay its hand until the State appeal concludes) essentially asks the Court to ignore Georgia's clear jurisdictional limits - something neither the Georgia Court of Appeals nor this Court should do.

Indeed, the Georgia Court of Appeals has already signaled the opposite approach. It granted emergency relief to Jason Farmer in light of these jurisdictional defects. The appellate court found that "this issue involves the incarceration of a litigant, which cannot be undone if we find error in a docketed appeal," and exercised its "inherent authority" to order Plaintiff's immediate release. (Compl. ¶¶ 80–83.) The Court of Appeals further ordered "that he be released from custody instanter and that enforcement of the contempt order be stayed until such time as the underlying appeal is docketed and resolved *on the merits*." (Compl. ¶ 83.)

This extraordinary intervention shows that the Georgia Court of Appeals recognized something was profoundly amiss with the contempt and arrest - so much so that it refused to allow those orders to remain effective pending appeal. Notably, that court has already rejected two motions by Mr. Epps attempting to undo the emergency relief. (See Ga. Ct. App. Case No. A26E0016, Epps's Motion to Stay, and Motion for Reconsideration (arguing that "any purported appeal of the Contempt Order and the enforcement thereof, cannot now

be sustained"), both denied by the Court of Appeals.) In short, the Georgia Court of Appeals appears to view the probate court's actions as at least likely void or improper; it has **not** deferred to Judge Hunsinger's orders, and neither should this Court.

IV. ARREST WITHOUT PRIOR NOTICE OR HEARING CONSTITUTES A DISTINCT PROCEDURAL VIOLATION

Plaintiff's federal claim includes a distinct procedural due process challenge to the manner in which his arrest was effectuated  - **without any prior notice or hearing**. This procedural violation is separate from any challenge to the merits of the underlying contempt order.

The Supreme Court in *Cooke v. United States*, 267 U.S. 517 (1925), established the foundational due process requirements for contempt proceedings. The Court held that when contempt is not committed in open court, "there is no such right or reason in dispensing with the necessity of charges and the opportunity of the accused to present his defense by witnesses and argument." Id. The Court emphasized: "If the contempt charged has been committed outside of the presence of the court, the accused has a right to be fully advised of the accusation and to be heard before being condemned." Id.

Most recently, *Turner v. Rogers*, 564 U.S. 431, 445 (2011), reaffirmed that freedom "from bodily restraint" lies "at the core of the liberty protected by the Due Process Clause." The Court applied the *Mathews v. Eldridge* balancing test and held that due process in civil contempt proceedings requires either appointed counsel or alternative procedural safeguards to assure a fundamentally fair determination before incarceration. *Turner*, 564 U.S. at 447.

Here, Plaintiff's arrest and jailing violated these basic due process principles. The bench warrant was issued on August 7, 2025, during a secret ex parte meeting between Defendant Epps and Judge Hunsinger (and/or his staff), with no notice to Plaintiff or his counsel. (Compl. ¶¶ 53–64.) The warrant was not disclosed or docketed until August 11, 2025 — three days after Plaintiff's arrest. (Compl. ¶¶ 62–63.) Plaintiff was given **no hearing** before his arrest, no opportunity to present evidence or argument, and no neutral magistrate ever made a probable cause determination based on sworn testimony before he was seized. Instead, Judge Hunsinger signed a "Bench Warrant" despite the fact that Jason Farmer had not "failed to appear in court after ... the person has otherwise been notified of the time and place to appear..." See O.C.G.A. § 17-7-90 (authorizing bench warrants for failure to appear) (Compl. ¶¶ 72–74).

This deprivation of liberty without prior notice and hearing violated clearly established procedural due process rights under the Fourteenth Amendment — a violation that is temporally and analytically distinct from any challenge to the underlying contempt order. Even if the contempt order were ultimately deemed valid on its merits (which it is not, given the jurisdictional defects discussed above), the procedure used to effectuate the arrest – a secret, ex parte warrant obtained without prior hearing or notice – independently violated due process. This completed procedural violation falls outside Younger's scope because it could not have been raised as a defense in the underlying state proceedings (one cannot retroactively object in the state forum to a lack of pre-arrest process).

14

## V. THE CONSPIRACY CLAIMS AGAINST PRIVATE DEFENDANTS    FALL ENTIRELY OUTSIDE YOUNGER'S REACH

Plaintiff's claims against Defendants Epps, Mills, and James Farmer are premised on their conspiracy and joint action under color of state law to deprive Plaintiff of constitutional rights. The Supreme Court in *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980), unanimously held that "private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of [Section 1983]." The Court stated: "To act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents." Id.

The Complaint alleges extensive factual detail regarding the conspiracy among Defendants, including: secret financial arrangements where James Farmer provided forty thousand dollars to fund the prosecution of Plaintiff (Compl. ¶¶ 16-30); ex parte communications between Epps and Judge Hunsinger on August 7, 2025, without notice to opposing counsel (Compl. ¶¶ 53-56); coordination with law enforcement before obtaining judicial authorization for arrest, including gifts of valuable Falcons tickets to deputies (Compl. ¶¶ 48-52); and the secret issuance of a bench warrant that was deliberately withheld from both counsel and the court docket to prevent Plaintiff from obtaining appellate relief (Compl. ¶¶ 61-66).

These allegations establish a classic §1983 conspiracy and joint action under color of state law by private parties. Setting aside Mr. Epps' attempt to raise Judge Hunsinger's immunity (an issue he obviously has no standing to assert), Younger has never been

15

extended to bar a damages claim against private conspirators simply because the state judicial officer with whom they conspired might later claim immunity. The potential harm from denying a federal forum in such cases is high: it would leave victims without redress for constitutional injuries whenever a private actor colluded with an immune judge. Meanwhile, allowing the suit to proceed does not offend comity in the same way enjoining a state proceeding would. As the Supreme Court stated in *Dennis v. Sparks*: "The potential harm to the public from denying immunity to coconspirators if the factfinder mistakenly upholds a charge of a corrupt conspiracy is outweighed by the benefits of providing a remedy against those private persons who participate in subverting the judicial process and, in so doing, inflict injury on other persons." 449 U.S. at 31–32. In other words, public policy favors adjudicating claims against private co-conspirators, and *Younger* presents no obstacle to doing so.

Notably, Epps (a private attorney) is the one invoking *Younger* here. He essentially seeks to shelter behind the ongoing state appeal and Judge Hunsinger's potential immunity. But *Younger* abstention exists to protect legitimate state interests and proceedings, not to shield private parties from federal scrutiny. A §1983 action against private individuals who conspired with a judge can proceed in federal court even if the judge is immune and even if related state proceedings are pending. There is no case extending *Younger* to such circumstances, and this Court should decline Epps' invitation to be the first.

## VI. THE CIRCUMSTANCES HERE PRESENT THE EXTRAORDINARY CIRCUMSTANCES EXCEPTION TO YOUNGER

Even if *Younger* abstention would otherwise apply (which it does not), the

extraordinary circumstances exception requires this Court to exercise jurisdiction. The Complaint describes Judge Hunsinger and the private Defendants engaging in corrupt, coordinated conduct through secret ex parte communications and undisclosed financial arrangements, all to deprive Plaintiff of his rights. (Compl. ¶¶ 16–30, 46–67, 122–23.) This goes far beyond a routine dispute or a bona fide state proceeding - it depicts a proceeding fundamentally tainted by bad faith and an absence of fair process.

The Supreme Court has recognized that Younger abstention does not apply when state proceedings are conducted in bad faith, for purposes of harassment, or under such flagrantly unconstitutional circumstances that irreparable injury would occur. See *Younger v. Harris*, 401 U.S. 37, 53–54 (1971) (bad faith and harassment exceptions); *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982) (noting exceptions for "bad faith, harassment, or other unusual circumstances"). When private parties corrupt the judicial process through conspiracy with state officials — particularly via secret financial control, ex parte communications, and deliberate procedural manipulation as alleged here - federal courts can and must intervene to protect constitutional rights.

The allegations here go far beyond garden-variety claims of judicial error. They describe an extraordinary abuse: a coordinated effort to use the machinery of the state court to effect a false arrest and imprisonment as leverage - to coerce a settlement in the underlying estate dispute, even though James Farmer had no lawful entitlement to the property he sought. Such conduct exemplifies the kind of bad faith and irreparable injury that fall within *Younger's* exceptions. Plaintiff was not merely subjected to an unfair

process; he was **jailed for four days** under conditions that no court had lawful authority to impose. This is the type of irreparable harm and egregious misconduct that federal courts need not ignore.

In sum, abstaining in the face of these well-pleaded allegations would reward an alleged conspiracy to violate constitutional rights. Younger does not require that result. The exception for bad faith or extraordinary circumstances exists to prevent it.

CONCLUSION

For the foregoing reasons, this Court should **deny Defendant Epps' motion to dismiss**. The Supreme Court has made clear that federal courts have a virtually unflagging obligation to exercise jurisdiction over damages claims for completed constitutional violations. Plaintiff seeks only backward-looking monetary compensation for the four days he was unlawfully imprisoned following a false arrest – he seeks no forward-looking interference with any state proceeding. The pending state appeal provides no forum for obtaining damages, and the underlying state court orders were void for lack of subject matter jurisdiction under clearly established Georgia law.

The *Younger* abstention doctrine does not permit federal courts to close their doors to victims of constitutional violations based on the mere allegation of parallel state proceedings. This Court should exercise the jurisdiction that Congress mandated and provide Plaintiff the federal forum that Section 1983 guarantees.

[Signature Appears on Following Page]

Respectfully submitted this 3rd day of November, 2025.

/s/ John Baker
Georgia Bar No. 033797
JOHN BAKER LAW
1551 Jennings Mill Road, Suite 3100B
Watkinsville, GA 30677
john@johnbaker.law

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of November, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted this 3rd day of November, 2025.

/s/ John Baker
Georgia Bar No. 033797
JOHN BAKER LAW
1551 Jennings Mill Road, Suite 3100B
Watkinsville, GA 30677
john@johnbaker.law
*Attorney for Plaintiff Jason Farmer*