IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| JASON FARMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MIKE HUNSINGER, in his ) | |
| individual capacity; ) | CIVIL ATION FILE NO. |
| KEVIN EPPS, individually; ) | Case 3:25-cv-00154-TES |
| JON MILLS, individually, ) | |
| JAMES FARMER, ) | |
| individually ) | |
| ) | |
| Defendants. ) | |

**BRIEF IN SUPPORT OF DEFENDANT
JUDGE MIKE HUNSINGER'S
MOTION TO DISMISS**

Defendant Hon. Mike Hunsinger, Probate Judge of Oconee County, Georgia ("Judge Hunsinger"), sued here in his individual capacity, moves to dismiss all claims asserted against him under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support of this Motion, Judge Hunsinger shows the Court as follows:

**I. INTRODUCTION**

Plaintiff asks this Court to impose personal civil liability on a sitting state probate judge based entirely on judicial rulings entered during ongoing estate proceedings in the Probate Court of Oconee County. Said rulings include protective orders preserving disputed property, an interim contempt order for noncompliance with those orders, and a bench-warrant order enforcing the contempt finding. Long-settled federal and Georgia law squarely forecloses such claims.

Under Supreme Court and Eleventh Circuit precedent, a judge is absolutely immune from suit for damages for acts taken in a judicial capacity unless he acted in the clear absence of all jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). Judicial immunity is immunity from suit, not just liability, and it applies even when the challenged rulings are alleged to be legally erroneous, procedurally defective, malicious, or in excess of authority. *McCullough v. Finley*, 907 F.3d 1324, 1330–31 (11th Cir. 2018); *Murphy v. Stacy*, 809 F. App'x 677, 681–82 (11th Cir. 2020).

Here, the orders Plaintiff attacks were quintessential judicial acts: managing estate administration, entering protective orders, adjudicating contempt for failure to comply, and issuing a bench warrant to enforce the contempt order. Georgia probate courts plainly have subject-matter jurisdiction over estate administration and inherent authority to enforce their own lawful orders by contempt. See O.C.G.A. §§ 15-9-30, 15-9-34(a). Any complaint Plaintiff may have about the scope or correctness of those orders is a matter for the Georgia appellate courts, which, in fact, have already exercised jurisdiction by granting him emergency relief and staying enforcement of the contempt order pending appeal. See Court of Appeals Order, Ex. A.

As pled, Plaintiff's Complaint seeks only retrospective monetary relief and fees; it does not assert any claim for injunctive or declaratory relief against Judge Hunsinger. However, section 1983 itself prohibits injunctive relief against a judicial officer for acts taken in a judicial capacity unless a declaratory decree was violated or declaratory relief was unavailable, neither of which is alleged or true here. 42 U.S.C. § 1983. Any official-capacity theory is barred by the Eleventh Amendment. Moreover, established doctrines of federalism and comity—*Younger* abstention and *Rooker–Feldman* doctrine—independently foreclose Plaintiff's attempt to use this Court as a collateral forum to review or enjoin state-court orders arising from an active probate

matter and ongoing state appellate process. See *Younger v. Harris*, 401 U.S. 37 (1971); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

Because every claim against Judge Hunsinger arises from acts taken in his judicial capacity within the court's jurisdiction, the Complaint fails as a matter of law and should be dismissed with prejudice.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The relevant facts are drawn from the allegations of the Complaint (accepted as true solely for purposes of this Motion) and from public judicial records of the probate, superior, and appellate proceedings of which this Court may take judicial notice.

**A. Probate estates and protective orders.**

Plaintiff Jason Farmer is an heir and interested party in the probate estates of his parents, Bobby James Farmer and Judy Lenora Farmer, pending in the Probate Court of Oconee County, Georgia. In the course of those contested administrations, the administrator moved to compel Plaintiff to surrender various items of personal property, including certain silver and collector coins, a 2014 Toyota Avalon, and substantial construction equipment, on the ground that they were properly part of the estates rather than Plaintiff's separate property. At a June 14, 2023 hearing on the motion to compel, all interested parties and their counsel appeared, negotiated, and placed on the record a detailed stipulation governing possession, use, accounting, and ultimate distribution of the disputed property; Plaintiff's then-counsel advised the Probate Court that he had conferred with Plaintiff and that Plaintiff agreed to the proposed terms and to entry of corresponding protective orders. See Agreement Between the Parties and Transcript of June 14, 2023 Hearing ("Agreement"), Ex. B; Motion to Compel Surrender of Personal Property, Ex. C;

Consent Protective Order (Coins and Vehicle), Ex. D; Protective Order – Construction Equipment, Ex. E.

The probate protective, contempt, and enforcement orders that Plaintiff now challenges thus arose from an agreement he entered into on the record, with advice of counsel, and his subsequent refusal to comply with the agreed-upon terms.

**1. Consent Protective Order (coins and vehicle).**

In April 2023, after a show-cause hearing on a motion to compel surrender of personal property, the Probate Court entered a Consent Protective Order addressing certain silver and collector coins and a 2014 Toyota Avalon. *See* Consent Protective Order (Apr. 2023). The order memorialized the parties' on-the-record stipulation which was designed to preserve and safeguard the disputed property during the pendency of the probate proceedings while ownership was litigated in the proper forum. *Id.* Consistent with that purpose, the order identified the specific "Subject Coins" and "Subject Vehicle," directed the temporary administrator to take possession of and safeguard the coins for the benefit of the estates, and permitted limited use of the vehicle by a family member under court-supervised conditions. *Id.* Importantly, the order expressly acknowledged the Probate Court's lack of authority to adjudicate title disputes and provided that any ultimate ownership determination would be made by the Superior Court of Oconee County. *Id.*

**2. Protective Order – Construction Equipment.**

In June 2023, following another noticed and recorded hearing on a motion to compel surrender of construction equipment, the Probate Court approved and entered a Protective Order – Construction Equipment. *See* Protective Order Construction. At that hearing, counsel for all interested parties, including Plaintiff, recited the terms of a detailed stipulation in open court,

which the Probate Court later reduced to a written order. *Id.* The Protective Order identified specific items of "Subject Equipment," including cranes, skid steers, trucks, trailers, and related tools, and established interim controls to preserve the disputed property while estate administration continued. *Id.* The order required Plaintiff and his business to disclose the equipment's identity, location, and use; to permit inspection at reasonable times; and to provide regular monthly reporting and accounting. *Id.* It further allowed Plaintiff to continue using the Subject Equipment in his business, but only under strict, court-supervised conditions, including a per-job rental obligation and a minimum monthly rent payable to the estates. *Id.* The Protective Order also required Plaintiff to maintain insurance on the Subject Equipment and to provide prompt notice of any insurance claims, prohibited any transfer, sale, or encumbrance of the equipment, and directed that rent proceeds would ultimately be distributed in accordance with the Superior Court's later determination of ownership. *Id.*

As with the earlier consent protective order, the Probate Court expressly acknowledged that ultimate title to the construction equipment would be resolved in the Superior Court, but imposed these interim conditions to preserve, manage, and account for property claimed as estate assets during the pendency of the probate proceedings. *Id.*

**B. September 3, 2024 Interim Contempt Order.**

By late 2023, the estate administrator and other interested parties alleged that Plaintiff was failing to comply with the construction-equipment protective order. The administrator filed a verified Petition for Citation of Contempt and Other Relief, later amended and joined by James Farmer. See Interim Contempt Order for Jason Farmer, Ex. F. After evidentiary hearings beginning March 6, 2024, at which Plaintiff testified and his counsel appeared, the Probate Court entered an Interim Order Finding Jason Farmer in Contempt of Court on September 3, 2024. *Id.*

The Interim Contempt Order found Plaintiff in willful contempt of the July 14, 2023 Protective Order, directed him to fully comply with that order, and specified purge conditions, including:

1. <u>Within 24 hours</u>, identify the location of the subject equipment and allow inspection by the administrator;
2. Within seven days, pay $30,000 to the Estate of Judy Lenora Farmer as partial rent due under the Protective Order; and
3. Provide an accounting of his use of the equipment tied to income shown on admitted bank statements.

*Id.*

The order further provided that, should Plaintiff fail to purge his contempt by satisfying these requirements, he would be arrested and held in the Oconee County Jail until a further hearing could be held. *Id.*

**C. August 7, 2025 Notice of Non-Compliance and bench warrant.**

On August 7, 2025, the administrator filed a sworn Notice of Non-Compliance, detailing Plaintiff's failure to satisfy the purge conditions: he had not provided information about the equipment's identity or location, had not allowed the inspection, had not paid the $30,000, and had not provided the required accounting. See Bench Warrant Arrest Order, Ex. G. Based on that notice and the unresolved contempt findings, the Probate Court entered a Bench Warrant and Arrest Order on the same date. *Id.*

The order recited the July 14, 2023 Protective Order, the Interim Contempt Order, and the Notice of Non-Compliance, commanded the Sheriff of Oconee County to arrest Plaintiff and hold him in the Oconee County Jail "until further order of this Court, to be dealt with as the law

directs," and directed the Sheriff's Office to notify the court upon arrest. *Id.* Plaintiff was arrested on August 8, 2025. *Id.*

**D. Supersedeas and Georgia appellate proceedings.**

On August 11, 2025, Plaintiff (through counsel) filed in the Probate Court a Notice of Intent to Seek Review and Application for Supersedeas under O.C.G.A. § 5-6-13, and a Notice of Appeal to the Georgia Court of Appeals from the contempt order and arrest. See Notice of Appeal, Ex. H. On August 11, 2025, the Probate Court entered an Order for Supersedeas Bond, granting supersedeas but conditioning Plaintiff's release from custody on posting a $500,000 bond. See Order for Supersedeas Bond, Ex. I. That same day, Plaintiff filed in the Georgia Court of Appeals an Emergency Motion for Supersedeas or Mandamus under Court of Appeals Rule 40. See Emergency Motion to Dismiss, Ex. J. On August 12, 2025, the Court of Appeals issued an order in *Jason Farmer v. Mike Hunsinger, Judge*, A26E0016, granting emergency relief. See Court of Appeals Order, Ex. A.

The Court held that under O.C.G.A. § 5-6-13(a) a trial court "has no discretion to grant or refuse a supersedeas in cases of contempt" once a defendant submits written notice of intent to seek review of the adjudication of contempt, and that the Probate Court's imposition of a $500,000 bond appeared inconsistent with O.C.G.A. § 5-6-46(a). *Id*. The Court of Appeals ordered the Probate Court to vacate the Order for Supersedeas Bond, grant supersedeas without requiring a bond, release Plaintiff from custody instanter, and stay enforcement of the contempt order pending docketing and resolution of the appeal. *Id*. The Probate Court complied; Plaintiff was released; and enforcement of the contempt order remains stayed pending appeal.

**E. Superior Court proceedings and jurisdictional rulings.**

Separate from the appeal of the contempt order, Plaintiff and other family members filed in the Superior Court of Oconee County a Petition for Review seeking appellate-type review of various probate orders, including the construction- equipment protective order and the Interim Contempt Order. On August 1, 2025, Superior Court Judge H. Patrick Haggard granted James Farmer's motion to dismiss that petition for lack of jurisdiction, holding that because the estate administration remained ongoing and no final order had been entered, superior court lacked subject-matter jurisdiction to entertain the petition. See Superior Court Order, Ex. K.

The court relied on a November 26, 2024 Georgia Court of Appeals order dismissing related appeals for want of appellate jurisdiction and a May 6, 2025 Georgia Supreme Court order denying certiorari. *Id.* In short, Plaintiff's complaints about the probate contempt proceedings are the subject of ongoing, constitutionally adequate state processes, including a pending appeal in which he has already obtained release and a stay of the contempt order.

**III. ARGUMENT**

Plaintiff's claims against Judge Hunsinger fail as a matter of law for multiple, independent reasons. First and foremost, absolute judicial immunity bars all individual-capacity claims for damages. Second, § 1983 and binding Eleventh Circuit authority foreclose injunctive and declaratory relief against a judicial officer for judicial acts. Third, the Eleventh Amendment and Georgia's sovereign immunity bar any official-capacity and state-law claims. Finally, principles of comity and federalism, *Younger* abstention, and *Rooker–Feldman*, preclude this Court from exercising collateral review over ongoing, nonfinal state probate and contempt orders.

**A. Absolute judicial immunity bars all individual-capacity claims.**

**1. Legal standard.**

Judges are entitled to absolute immunity from suits for damages for acts performed in their judicial capacity unless they act in the clear absence of all jurisdiction. *Stump v. Sparkman*, 435 U.S. at 356–57; *Bradley v. Fisher,* 80 U.S. 335, 351 (1871).

Judicial immunity is "an immunity from suit, not just from ultimate assessment of damages," and is "not overcome by allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. at 11. (The Eleventh Circuit applies this rule repeatedly: *McCullough v. Finley*, 907 F.3d 1324, 1330–34 (11th Cir. 2018) (municipal judges absolutely immune for sentencing defendants to jail and imposing payment plans); *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005); *Murphy v. Stacy*, 809 F. App'x 677, 681–82 (11th Cir. 2020) (judicial immunity is immunity from suit itself); *Caldwell v. Downs*, 789 F. App'x 183, 185-86 (11th Cir. 2019) (Georgia superior court judges absolutely immune for signing orders and issuing bench warrant); *Takuma Owuo-Hagood v. Sullivan*, 388 F. App'x 953, 954–55 (11th Cir. 2010) (state judge absolutely immune in misdemeanor prosecution)).

Georgia courts apply the same standard. See *Withers v. Schroeder*, 304 Ga. 394, 397–99, 819 S.E.2d 49 (2018) (chief judge immune for reporting case status to DDS); *Robinson v. Becker*, 265 Ga. App. 692, 694–96, 595 S.E.2d 319 (2004) (superior court judge immune for order barring citizen from courthouse during criminal trial); *Wilson v. Moore*, 275 Ga. App. 493, 494–95, 621 S.E.2d 507 (2005) (judicial immunity bars civil suit arising from criminal case). Courts use a functional test: a judge is entitled to absolute immunity if (1) the challenged act is one normally performed by a judge and (2) the parties dealt with the judge in his judicial capacity. *Stump v. Sparkman*, 435 U.S. at 362; *Stevens v. Osuna*, 877 F.3d 1293, 1301–02 (11th

Cir. 2017); *Jarallah v. Simmons*, 191 F. App'x 918, 920 (11th Cir. 2006). The inquiry focuses on "the nature and function of the act, not the act itself." *Withers v. Schroeder*, 304 Ga. at 398. As to jurisdiction, the Eleventh Circuit holds that "a judge enjoys absolute immunity where he or she had subject-matter jurisdiction over the matter forming the basis for the suit," even if the judge lacked personal jurisdiction or allegedly violated procedural requirements. *Dykes v. Hosemann*, 776 F.2d 942, 945–49 (11th Cir. 1985) (en banc) (juvenile judge immune for dependency order entered without personal jurisdiction over mother). Judicial immunity is lost only when a judge acts in a non-judicial capacity or in the complete absence of all jurisdiction. *Wilson v. Moore*, 275 Ga. App. at 494.

**2. The acts challenged here are paradigmatic judicial acts.**

All of Plaintiff's allegations against Judge Hunsinger arise from acts taken in the course of ongoing probate proceedings over which the Probate Court indisputably had jurisdiction: administering the Farmer estates; entering protective orders to preserve disputed property; conducting contempt proceedings; entering an interim contempt order with purge conditions; and, upon continued noncompliance, issuing a bench warrant committing Plaintiff to jail until further order of the court. See Consent Protective Order; Protective Order Construction; Interim Contempt Order for Jason Farmer; Bench Warrant Arrest Order. These are "normal judicial functions." See *McCullough*, 907 F.3d at 1330–31; *Caldwell*, 789 F. App'x at 185-86; *Jarallah*, 191 F. App'x at 920–21. Georgia precedent confirms that managing proceedings, controlling litigants, enforcing orders, and even issuing orders that later prove erroneous are judicial acts protected by absolute immunity. *Withers v. Schroeder*, 304 Ga. at 398–99; *Robinson v. Becker*, 265 Ga. App. at 694–96; *Wilson v. Moore*, 275 Ga. App. at 494–95.

Plaintiff has no interaction with Judge Hunsinger outside of his role as litigant. The challenged acts were all done from the bench or by written orders in the Farmer estate cases. Under the functional test, they are quintessentially judicial.

**3. The Probate Court had subject-matter jurisdiction and power to enforce its orders.**

Plaintiff insists the Probate Court lacked subject-matter jurisdiction because, in his view, it could not adjudicate title to the disputed property. But that argument, even if it had merit, does not defeat judicial immunity. Georgia probate courts have subject-matter jurisdiction over decedents' estates, including administering estate assets, appointing personal representatives, and issuing orders necessary to preserve and administer estate property. See O.C.G.A. §§ 15-9-30, 53-7-40 et seq. The protective orders at issue expressly defer final title questions to the Superior Court while preserving and managing the property as part of ongoing estate administration. See Consent Protective Order; Protective Order Construction.

Probate judges also have inherent and statutory authority to enforce their lawful orders by contempt. O.C.G.A. § 15-9-34(a); *Withers v. Schroeder*, 304 Ga. at 398–99 ("to determine whether an act is judicial in nature, a reviewing court should consider (1) whether the act is one normally performed by judges, and (2) whether the complaining party was dealing with the judge in his judicial capacity"). The Interim Contempt Order and bench warrant were exercises of that authority. See Interim Contempt Order for Jason Farmer; Bench Warrant Arrest Order. Eleventh Circuit and Georgia decisions make clear that judicial immunity is not defeated by claims that a judge exceeded jurisdictional limits, misapplied statutes, or failed to afford perfect process, so long as the judge had at least colorable subject-matter jurisdiction. *Dykes v. Hosemann*, 776 F.2d at 945–49; *McCullough*, 907 F.3d at 1330–31; *Robinson v. Becker*, 265 Ga. App. at 694–96. At

most, Plaintiff alleges acts in excess of jurisdiction; he cannot plausibly allege that Judge Hunsinger acted in the "clear absence of all jurisdiction." Judicial immunity therefore applies.

**4. Allegations of bad faith, bias, or procedural error do not defeat immunity.**

Plaintiff accuses Judge Hunsinger of acting without proper notice, entering void orders in the clear absence of jurisdiction, and causing a 'false arrest' and 'false imprisonment. But it is black-letter law that judicial immunity is not overcome by allegations that a judge acted "maliciously or corruptly" or committed "grave procedural errors." *Stump v. Sparkman*, 435 U.S. at 356–57; *Mireles v. Waco*, 502 U.S. at 11. Disagreements with the Probate Court's rulings, even if framed as constitutional labels, must be raised in the state appellate system, where Plaintiff has already obtained substantial relief. See Court of Appeals Order, Ex. A.

They cannot serve as the basis for personal damages liability in federal court. See *Holt v. Crist*, 233 F. App'x 900, 902–03 (11th Cir. 2007) (affirming dismissal of § 1983 claims against state judge based on actions in criminal case). Because Plaintiff cannot plausibly allege that Judge Hunsinger engaged in non-judicial acts or acted in the clear absence of subject-matter jurisdiction, all individual-capacity damages claims must be dismissed with prejudice as barred by absolute judicial immunity.

**B. Plaintiff's prospective-relief requests are moot and barred by *Younger*, and *Rooker–Feldman*.**

To the extent Plaintiff can be read to seek any prospective relief related to his incarceration under the bench-warrant order, those requests are both moot and jurisdictionally barred. Any such claim is moot because the Georgia Court of Appeals has already ordered his immediate release and stayed enforcement of the contempt order pending appeal, and the Probate Court has complied. Having obtained the very relief he seeks as to release; Plaintiff can no

longer show a live controversy or any continuing injury traceable to Judge Hunsinger that this Court could redress.

Even if Plaintiff could articulate some forward-looking basis for federal intervention, fundamental comity doctrines independently foreclose it. First, *Younger* abstention requires federal courts to refrain from interfering with ongoing state judicial proceedings that implicate important state interests and provide an adequate opportunity to raise constitutional challenges. See *Younger v. Harris*, 401 U.S. 37 (1971); *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78–82 (2013). The probate administration and contempt enforcement at issue here are active state proceedings at the core of Georgia's sovereign interest in supervising estate administration and enforcing court orders. Plaintiff is presently pursuing, and has already benefited from, state appellate review of these same orders, confirming that the state system affords an adequate forum for his federal arguments. Federal relief would therefore constitute precisely the kind of intrusion *Younger* forbids.

Second, to the extent Plaintiff asks this Court to declare probate-court orders void, invalidate the contempt finding, or otherwise overturn state-court rulings, the *Rooker–Feldman* doctrine deprives this Court of subject-matter jurisdiction. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). A federal district court lacks authority to sit as an appellate tribunal over state-court judgments, whether styled as constitutional claims or requests for declaratory relief, if any. Plaintiff's exclusive avenue for that review lies in the Georgia appellate courts, where his appeal is already pending.

Accordingly, Plaintiff's claims for relief against Judge Hunsinger are moot, barred by abstention and jurisdictional doctrines, and must be dismissed.

**C. Sovereign immunity and judicial immunity bar any official-capacity and state-law claims.**

To the extent the Complaint can be read to assert claims against Judge Hunsinger in his official capacity as a probate judge, those claims are barred by the Eleventh Amendment. An official-capacity suit against a state judicial officer "is not a suit against the official but rather is a suit against the official's office," and thus "no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In *Simmons v. Conger*, the Eleventh Circuit applied this principle in a § 1983 case, holding that a damages award against a state judge in his official capacity was barred by "the sovereign immunity of his then employer, the State," and reversing the judgment on that basis. 86 F.3d 1080, 1085 (11th Cir. 1996).

In addition, Georgia law provides parallel protections for state-law theories. The State's sovereign immunity is preserved except to the limited extent the General Assembly expressly waives it, and judges are absolutely immune from state-law tort claims for judicial acts within their jurisdiction. *Withers v. Schroeder*, 304 Ga. at 397–99; *Robinson v. Becker*, 265 Ga. App. at 694–96; *Wilson v. Moore*, 275 Ga. App. at 494–95. Plaintiff's state-law "false arrest" and "false imprisonment" theories are premised entirely on judicial acts—the issuance and enforcement of probate protective, contempt, and bench-warrant orders—and are therefore barred by Georgia's judicial-immunity doctrine regardless of how Plaintiff styles the capacity in which Judge Hunsinger is sued.

In addition, Plaintiff bears the burden of showing that sovereign immunity has been waived. In the Georgia Tort Claims Act ("GTCA") context, the appellate courts have made clear that "the question of whether sovereign immunity has been waived under the GTCA is a threshold issue that must be decided at the outset of the case," and that "[a]s the party seeking to benefit from the GTCA's limited waiver of sovereign immunity, [the plaintiff] bears the burden

of establishing that sovereign immunity has been waived in this case." *McConnell v. Ga. Dep't of Labor*, 345 Ga. App. 669, 671–72 (2018); see also *McConnell v. Ga. Dep't of Labor*, 302 Ga. 18, 18–19 (2017) (requiring courts to address sovereign immunity before the merits).

Finally, while Plaintiff expressly states that he sues Judge Hunsinger "in his individual capacity," that pleading choice does not avoid immunity. A judge sued in his individual capacity for judicial acts within the court's jurisdiction is protected by absolute judicial immunity from § 1983 damages, and official-capacity relief is separately barred by the Eleventh Amendment. *Simmons v. Conger*, 86 F.3d at 1084–85; *Sibley v. Lando*, 437 F.3d 1067, 1073–74 (11th Cir. 2005). Because Plaintiff has not met his burden to show any waiver of sovereign immunity, and because Georgia judicial immunity independently bars state-law tort claims based on judicial acts, his state-law causes of action—including "false arrest" and "false imprisonment" premised on the bench warrant and related orders—must be dismissed for lack of subject-matter jurisdiction, in addition to the other defects addressed above.

**D. The Complaint otherwise fails to state a plausible claim against Judge Hunsinger.**

Even if the immunity doctrines did not apply (they do), the Complaint does not plausibly allege a violation of any clearly established federal right by Judge Hunsinger. Plaintiff's allegations merely repackage his disagreement with the Probate Court's rulings—disputes that are properly resolved in the Georgia appellate courts, not through a purported § 1983 damages action in federal court. To state a claim under § 1983, Plaintiff must show that Judge Hunsinger, acting under color of state law, personally deprived him of a constitutional right. Where, as here, the acts at issue are judicial rulings within the judge's jurisdiction, immunity and lack of a constitutional violation both defeat the claim. *McCullough*, 907 F.3d at 1330–31; *Holt v. Crist*, 233 F. App'x at 902–03.

In *Simmons v. Conger*, the Eleventh Circuit held that a § 1983 damages judgment could not stand against a state judge sued in his individual capacity where the challenged conduct (ordering a spectator to leave the courtroom during a domestic-relations hearing) was plainly a judicial act taken in a proceeding properly before the court and within the judge's jurisdiction; applying the *Stump* two-part test, the court reversed the damages award in both the judge's individual and official capacities on absolute judicial immunity and sovereign immunity grounds. 86 F.3d 1080, 1084–85 (11th Cir. 1996). The same analysis applies here: Plaintiff's § 1983 claims against Judge Hunsinger arise solely from judicial acts, issuing probate protective orders, an interim contempt order, and a bench-warrant order, in matters over which the Oconee County Probate Court indisputably had subject-matter jurisdiction. So, as in *Simmons*, absolute judicial immunity forecloses any individual-capacity damages claim under § 1983 against Judge Hunsinger.

To the extent Plaintiff asserts conspiracy theories or attempts to impose vicarious liability for actions taken by the sheriff, the administrator, or private parties, such conclusory allegations fall far short of the pleading standards of Rule 8 and Rule 12(b)(6) and cannot overcome judicial immunity in any event. Accordingly, even apart from immunity, the Complaint fails to state a claim on which relief can be granted against Judge Hunsinger.

## IV. CONCLUSION

For the reasons set forth above, Defendant Hon. Mike Hunsinger respectfully requests that the Court grant this Motion and dismiss with prejudice all claims asserted against him in Plaintiff's Complaint. In the alternative, should any claim survive this Motion, Judge Hunsinger requests that the Court stay further proceedings against him pending final resolution of the related state probate and appellate proceedings.

Respectfully submitted this 10th day of December, 2025.

        James Bates Brannan Groover LLP
        */s/ Casey C. Crumbley*
        Casey C. Crumbley (Ga. Bar No. 741428)
        Attorney for Defendant Hon. Mike Hunsinger

1 Press Place, Suite 200
Athens, GA 30601
(706) 215-8330
ccrumbley@jamesbatesllp.com

## CERTIFICATE OF SERVICE

I certify that on this date I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically notify all registered counsel of record.

This 10th day of December, 2025.

                James Bates Brannan Groover, LLP

                *s/ Casey C. Crumbley*
                Casey C. Crumbley
                Ga Bar No. 741428
                Attorney for Defendant Hon. Mike Hunsinger

1 Press Place, Suite 200
Athens, GA 30601
706-215-8330
ccrumbley@jamesbatesllp.com