In the Matter of:

Estate of Bobby James Farmer Proposed Ward

In Re Estate of Bobby James Farmer Proposed Ward

June 14, 2023

DATE FILED 7/12/23
TIME 10 AM
CLERK/JUDGE



490 N. Thomas St.
Athens, Georgia 30601
770-225-7663
www.athensreporting.com

1

IN THE PROBATE COURT OF OCONEE COUNTY
STATE OF GEORGIA

IN RE:  ESTATE OF            )   Estate No. F-183
                             )
BOBBY JAMES FARMER           )
PROPOSED WARD                )
_____)

Transcript of Proceedings heard before

the Honorable Mike Hunsinger

COPY

June 14, 2023
11:00 a.m.

23 North Main Street
Watkinsville, Georgia 30677

Reported by Debbie A. Eickhoff, RPR,
CCR 5090-9084-2699-3664

---

ATHENS REPORTING, LLC
490 N. Thomas Street
Athens, Georgia  30601
(770) 225-7663
www.athensreporting.com

In Re Estate of Bobby James Farmer Proposed Ward - June 14, 2023

---

**Page 2**

REPORTER DISCLOSURE OF NO CONTRACT

I, Debbie A. Eickhoff, Certified Court Reporter, do hereby disclose pursuant to Article 10.B of the Rules and Regulations of the Board of Court Reporting of the Judicial Council of Georgia that I am a Georgia Certified Court Reporter. Athens Reporting, LLC/I was contacted by the party taking the deposition to provide court reporting services for this deposition; Athens Reporting, LLC/I will not be taking this deposition under any contract that is prohibited by O.C.G.A. 15-14-37(a) and (b); and I am not disqualified for a relationship of interest under the provisions of O.C.G.A. 9-11-28(c).

There is no contract to provide reporting services between myself or any person with whom I have a principal and agency relationship nor any attorney at law in this action, party to this action, party having a financial interest in this action, or agent for an attorney at law in this action, party to this action, or party having a financial interest in this action. Any and all financial arrangements beyond my/Athens Reporting, LLC's, usual and customary rates have been disclosed and offered to all parties.

This, the 15th day of June, 2023.

_____
DEBBIE A. EICKHOFF, RPR,
CCR 5090-9084-2699-3664

---

**Page 3**

FIRM DISCLOSURE OF NO CONTRACT

I, Brenda P. Elwell, do hereby disclose pursuant to Article 10.B of the Rules and Regulations of the Board of Court Reporting of the Judicial Council of Georgia that Athens Reporting, LLC, was contacted to provide court reporting services for this deposition by Epps, Holloway, DeLoach & Hoipkemier, LLC, and there is no contract that is prohibited by O.C.G.A. 15-14-37(a) and (b) or Article 7C of the Rules and Regulations of the Board for the taking of this deposition.

There is no contract to provide reporting services between Athens Reporting, LLC and Epps, Holloway, DeLoach & Hoipkemier, LLC, or any person with whom Athens Reporting, LLC, has a principal and agency relationship nor any attorney at law in this action, party to this action, party having a financial interest in this action, or agent for an attorney at law in this action, party to this action, or party having a financial interest in this action. Any and all financial arrangements beyond Athens Reporting, LLC's usual and customary rates have been disclosed and offered to all parties.

This, the 15th day of June, 2023.

BRENDA P. ELWELL, PRESIDENT
ATHENS REPORTING, LLC

---

**Page 4**

APPEARANCES

On Behalf of James Farmer:
  MR. KEVIN E. EPPS, ESQ.
  Epps, Holloway, Deloach & Hoipkemier, LLC
  1220 Langford Drive
  Building 200-101
  Watkinsville, Georgia 30677
  706.508.4000
  kevin@ehdhlaw.com

On Behalf of Christie Lynn Mitchell:
  MR. J. ENRIQUE MORALES, ESQ.
  Robert W. Hughes & Associates, P.C.
  390 West Crogan Street
  Suite 230
  Lawrenceville, Georgia 30046-6913
  770.469.8887
  enrique@hughespclaw.com

On Behalf of Jason Farmer:
  MR. ADAM L. HEBBARD, ESQ.
  Attorney at Law
  The Law Offices of Adam L. Hebbard
  320 East Clayton Street
  Suite 500
  Athens, Georgia 30601
  706.549.9010
  adam@hebbardlaw.com

Temporary Administrator:
  JON MILLS, ESQ.
  Durden & Mills
  1551 Jennings Mill Road
  Suite 2200B
  Watkinsville, Georgia 30677
  706.543.4708
  jon@durdenmillspc.com

---

**Page 5**

THE COURT: We are on the record in Estate No. F-183 in the show cause hearing in the motion to compel surrender of personal property filed on behalf of James Dale Farmer towards Jason Farmer. Correct?

MR. EPPS: That's correct, Judge.

THE COURT: All right.

MR. EPPS: Judge, we have reached an agreement among the parties, and I guess -- just for the record, so that we know that everybody is here, I am Kevin Epps and I am here on behalf of Jamie Farmer. Mr. Hebbard is here on behalf of Jason Farmer. Mr. Mills is here in his capacity as the temporary administrator of Bobby Farmer's estate. And Mr. Morales is here on behalf of Christy Mitchell. So that's all the players that are here.

Judge, to give you just a little background of how we got to this settlement, a lot of it was tailored around a deposition that was taken of Mr. Jason Farmer. It was actually taken in the trust litigation that was ongoing in the superior court. But that deposition was taken back on August 31st of 2021. It was

Athens Reporting, LLC
770-225-7663

In Re Estate of Bobby James Farmer Proposed Ward - June 14, 2023

**Page 6**

1  ultimately continued, Judge.
2       And so as the trust litigation was
3  trucking along, as this court is very much
4  aware, there is litigation as it relates to
5  Judy Farmer, the matriarch of the family, Bobby
6  Farmer, who is the patriarch of the family.
7       And that trust litigation also has an
8  aspect on the estates, because ultimately there
9  is a residuary clause in Judy Farmer's where
10 that would all roll into the trust.
11      As the Court is aware, a couple months
12 ago, with Ms. Mitchell, there was an agreement
13 that was entered as it relates to certain
14 silver and a vehicle that was in the possession
15 of Ms. Mitchell. That agreement was entered
16 into the court by a consent order. And we are
17 sort of modeling what we are doing here after
18 that consent order that's before the Court.
19      And I know at that hearing the Court was
20 very much aware that the Court did not have
21 subject matter jurisdiction in order to decide
22 the ownership of the property. That rings true
23 here today.
24      Everything that I am going to announce to
25 the Court does not waive anything as it relates

**Page 7**

1  to the ownership. My understanding is
2  Mr. Mills will be filing a separate action as
3  it relates to Mr. Farmer and the ownership, the
4  ultimate ownership of this property, and that
5  will be hammered out in the superior court.
6       This is just talking about who will be
7  entrusted with the property. And as the Court
8  pointed out in the previous hearing, the
9  judge -- you of the probate court, you are just
10 to make sure that the assets of the estate are
11 protected until the ownership interest is
12 determined.
13      Mr. Mills in his previous order, and
14 Ms. Mitchell kind of laid that out, and that
15 will also be waived out. So nothing we
16 stipulated hereto is going to say, that now
17 determines ownership. So I want to make sure
18 of that. This is just about entrusting it with
19 Mr. Mills.
20      With that being said, and what was
21 learned in the deposition, there is a date,
22 there is a very specific date that's talked
23 about in the deposition. Really two dates,
24 actually. July 4th of 2020 and July 14th of
25 2020.

**Page 8**

1       At that point in time, Mr. Farmer had
2  passed away, but Ms. Judy Farmer was still
3  living at that time. And there is a dispute as
4  to what happened on those two days, ultimately,
5  as did Mr. Jason Farmer receive title to
6  certain equipment that has been used in his
7  business since those two dates.
8       But for the purposes of this consent
9  order that we are going off of, we are going to
10 use July 4th, 2020, as the date. Because we
11 believe, based on the deposition testimony,
12 that Mr. Farmer alleges that Judy Farmer turned
13 over certain titles, physical titles on that
14 date as it relates to the property.
15      As to when those were signed, who signed
16 them and that, that's still up for debate later
17 in the court. But there is -- that equipment
18 was physically taken by Mr. Farmer on or about
19 that date, Jason Farmer, and has subsequently
20 been used in his business. And that was all
21 laid out in the depositions that were taking
22 place on August 31st of 2020.
23      So here is the deal: If you will see in
24 Exhibit A that was attached to it has a list of
25 property in the return. That was the product

**Page 9**

1  of an agreement by the parties. Now, I know
2  Mr. Morales wasn't involved at that point,
3  because that was Mr. Timmons that was
4  representing Ms. Mitchell at that time.
5       But that was an agreement by the parties
6  inside the trust litigation that we were going
7  to let an independent appraiser by the name of
8  Eddie Christian go around and take a look at
9  all the property by which we knew that could
10 potentially be in Bobby Farmer's estate, which
11 would ultimately make its way into the trust.
12      So we went to various different sites. I
13 personally went with Mr. Hebbard out to one of
14 them; and ultimately Mr. Christian went to
15 other sites without us, took a list of the
16 inventory of the property and assigned a value
17 ultimately that he determined as to that.
18      We are not -- I don't think anybody here
19 is stipulating to that that value is correct
20 one way or the other. But I think what it does
21 is give you a universal picture of the property
22 that's in play, which would ultimately come
23 within this court's purview of protecting that
24 property.
25      So all of that property that's labeled in

In Re Estate of Bobby James Farmer Proposed Ward - June 14, 2023

**10**

1  the exhibit in the return of the property will
2  now be entrusted to Mr. Mills as the temporary
3  trustee -- temporary administrator of Bobby
4  Farmer's estate.
5       In exchange for that -- so he is going
6  to -- he is going to take that property.
7  Mr. Jason Farmer is going to be able to
8  continue to use the property, with an agreement
9  that he is going to lease it back to the estate
10 and -- well, the estate is going to lease it to
11 him.
12      And this is how the lease is going to
13 work: He is going to pay Bobby Farmer's estate
14 $5,000 per job that he does. Right now he is
15 on a job that will pay that $5,000. From what
16 my understanding is, we have got two more
17 coming down, next month and the month after
18 that. So that will be $5,000 for each of those
19 jobs.
20      In addition to that $5,000, there is
21 going to be a minimum of -- there is going to
22 be a $2,500-a-month just base rental that will
23 be paid every month --
24      MR. HEBBARD: It's not a base rental.
25 That's a minimum.

**11**

1       MR. EPPS: Minimum, yes. Sorry.
2       MR. HEBBARD: If he doesn't pay the
3  $5,000 for some job that he is taking it to, in
4  a given month, he would pay a minimum rental of
5  2,500 bucks for that month.
6       MR. EPPS: Thank you, Mr. Hebbard. It's
7  a minimum -- at a minimum, the estate is going
8  to receive $2,500 a month; but if there is a
9  job, it's $5,000 a job. So -- following on
10 that.
11      There will be a monthly report for the
12 location of the equipment to Mr. Mills by
13 Mr. Farmer.
14      There will be a notice prior to
15 relocation of that equipment to Mr. Mills. So
16 what happens in these crane jobs that they do
17 is essentially, as the Court may be aware, you
18 just bounce one to one. You finish up one,
19 you've got the next one going, the equipment
20 moves to that location and stays in that
21 location until the building is built.
22      So they will notify Mr. Mills --
23 Mr. Farmer, through his counsel, will notify
24 Mr. Mills about the relocation of this
25 equipment, so at all times we know where it's

**12**

1  going.
2       There is a restraining order entered in
3  that we all agreed to, that there is no sale,
4  transfer, and encumbering this equipment while
5  it is being leased by the estate to Mr. Farmer.
6       I have already said it, but I will just
7  say it again, since I have it written down,
8  this agreement is -- there is no admission as
9  relates to ownership by the lease that we are
10 doing and the consent order that's entered in
11 the court.
12      Now, going back to that date that I
13 talked to you about, on July 4th of 2020, we
14 are going to do an accounting of -- since
15 July 4th of 2020. So every job that Mr. Jason
16 Farmer has done since July 4th of 2020, he will
17 stipulate and pay a debt of $5,000 per job
18 since July 4th, 2020, moving all the way to
19 where the agreement stands today, about the
20 minimum of $2,500. So there will be an
21 accounting that Mr. Farmer will provide
22 Mr. Mills, and that will provide for that
23 $5,000.
24      And I will tell you how we got to that,
25 Judge, the reason we got to that, is inside the

**13**

1  deposition, Mr. Jason Farmer admits that that
2  was the agreement that he had with his parents
3  beforehand, that said, you know, when they let
4  me use the equipment, I would pay them $5,000 a
5  job.
6       So in the deposition -- which leads me to
7  the next point that will be part of this
8  consent order. In the deposition, I asked
9  Mr. Farmer, well, when Mrs. Farmer passed
10 away -- I mean, before Mrs. Farmer passed away
11 but after Mr. Farmer passed away, were you
12 working any jobs? And he admitted in the
13 deposition that prior to what he alleges the
14 transfer of the ownership, there was a job that
15 he was working on that he would have had to pay
16 $5,000 to Judy, to Judy Farmer.
17      So as part of this, we stipulate that at
18 least one $5,000 job prior to the July 4th,
19 2020, accounting will be paid to the Judy
20 Farmer estate. So I know we are here on
21 Bobby's, but that's legitimately $5,000 that
22 needs to go into Judy's estate.
23      Insurance: That Mr. Jason Farmer will
24 make sure that all the equipment is insured and
25 that the estate will be added as a payee and as

In Re Estate of Bobby James Farmer Proposed Ward - June 14, 2023

```
                                    14
 1   an additional insured under that policy, and
 2   that information will be provided to Mr. Mills
 3   so that can be confirmed.
 4       The funds: You know, I applaud Mr. Mills
 5   at this point for this job that he has taken on
 6   as county administrator, Judge, because -- you
 7   may have more complicated estates that are
 8   going on right now, but I would like to meet
 9   them. Because there is a lot of segregating
10   and things that he is having to do on these to
11   make sure that this -- and, quite frankly, it
12   would take a professional administrator in
13   order to do all of this.
14       The funds that are collected are going to
15   be segregated so that the property is -- that
16   this money is -- will be ultimately determined
17   as to who is going to receive this money, and
18   that's important. And I will tell you why.
19   And I think this is something that we are
20   all -- as counsel, are all stipulating to: Is
21   that when this -- when this ownership issue is
22   ultimately determined in the dec action -- so
23   Mr. Mills has to keep the money separate.
24       And then ultimately if Mr. Hebbard's
25   client prevails on the ownership, obviously, if
```

```
                                    15
 1   he has owned it since that day, the money would
 2   go back to his client. But if ultimately he
 3   fails on that, then you have got to follow the
 4   bouncing ball of where this all goes. The
 5   money would go from Bobby Farmer's estate to
 6   Judy Farmer's estate, which is ultimately in
 7   the residuary, and the residuary would flow
 8   into the trust.
 9       Well, then you've got to go into the
10   trust to determine what happens to the property
11   that ultimately -- this is only if Mr. Farmer
12   didn't prevail -- what would have happened to
13   the money that that property earned. Well, it
14   would have gone to the three beneficiaries, the
15   three sons: Jamie, Jason, and Jeremy. So that
16   money would ultimately make its way into a
17   trust, and we would -- if they lose the
18   ownership battle, we would stipulate that that
19   money would then go to those three heirs,
20   because they are the rightful owners of the
21   equipment at that point.
22       Does that make sense, Judge Hunsinger?
23       THE COURT: Yes.
24       MR. EPPS: Okay. So Jon is -- Mr. Mills
25   is going to have the right to inspect -- and I
```

```
                                    16
 1   am using the term "reasonable" here. He is
 2   going to have a reasonable right to inspect the
 3   property, inspect the equipment and take a look
 4   at it.
 5       I don't expect Mr. Mills to be out there
 6   every day, every week and that, but he will go
 7   to inspect it. And there will be an initial
 8   inspection of it, just to see what the state of
 9   all of it is, so that we can have a baseline of
10   where it is at.
11       Mr. Farmer, Jason Farmer, if there is any
12   damage to the property, of the equipment, if
13   anything happens to it, that he agrees that he
14   will upkeep it, repair any damages -- if it
15   sets on fire, he will -- that will all be taken
16   care of. Hopefully it will be insured, but
17   maintenance and all those things, Mr. Jason
18   Farmer will continue that so that we do not
19   burden the estate with the expenses of all of
20   that. That will be part of ultimately the
21   lease to it.
22       So then the consequences, right. What
23   happens if there is a falsification of
24   information from Mr. Jason Farmer to Mr. Mills?
25   If he says the property is in Oconee Connector
```

```
                                    17
 1   and in reality it's in Cary, North Carolina?
 2   So we have agreed that if Mr. Jason Farmer
 3   falsifies any information to Mr. Mills, that
 4   Mr. Mills can immediately seize the equipment.
 5   If that is determined that there is any type of
 6   falsification.
 7       Now, with anything else, as payment or
 8   any other requirement that's required under
 9   what I have laid out, Mr. Mills will give him a
10   five-day cure period. Will give him notice of
11   a five-day cure period. And then if he doesn't
12   cure the default, Mr. Mills will have the
13   option to seize the property.
14       If after two defaults -- let me say, if
15   after two notices of five days to cure, and so
16   that we are seeing a pattern of default in all
17   of this, Mr. Mills' can exercise his option to
18   seize the property if he deems that this is
19   just an ongoing issue and the estate's property
20   is not being properly kept.
21       So -- let's see. Make sure I caught all
22   of this. Yes. Judge, that's -- and,
23   Mr. Mills, if I have -- or Mr. Hebbard or
24   Mr. Morales, I am sure, if I missed something,
25   will jump in; but that's the framework.
```

In Re Estate of Bobby James Farmer Proposed Ward - June 14, 2023

**Page 18**

MR. MILLS: I think the only things to add is that there was an acknowledgement that there be leave to rent for the temporary administrator, because right now I don't believe that I have that authority.

And so I am orally requesting the right to comply with the terms of this consent order that would allow the temporary administrator -- because the Court has the authority to grant leave. Just I need to have that -- that will be part of the order as the administrator, is granted leave, within the same order, to enter into this sort of leaseback provision, which obviously is a compromise to sort of benefit the estate by having the protection of this protective order while we are going through the superior court litigation and also the financial benefit that flows through to what appears to -- what potentially is, is the rightful beneficiary of the property while we are in this litigation phase. But obviously I do have leave to be able to do that.

The monthly report, there is sort of two ongoing obligations of notice of where the property is. That's to make sure that I can

**Page 19**

monitor that we are collecting the right amount of fees for the jobs. So before it's moved, I am supposed to get notice, say, 24 hours' notice of a relocation.

So if he is going to move it from one job site to the next -- typically this equipment is there for like a month or several weeks. It's not a one-day job. These are big, big buildings.

And so they are going to give me notice of, hey, we are going to move it to this new location. So that way at all times I kind of know where it's at; and I can internally keep track of how many jobs are happening, which then has an impact on the rental fees that would be due.

In addition, at the end of the month, there will have to be a report, and I am going to attach a draft of the report to the order that Mr. Jason Farmer signs, saying, during the month here is all the locations where the equipment was. And then that's signed in a sworn capacity and turned over to me within ten days of the end of the month.

So by the 10th of each month following,

**Page 20**

he reports under oath, it's at this job site, or maybe was at two or whatever. That way that then sort of shows the rental bill that -- that, in fact, will create the rental bill.

And then we will be able to cross-reference those two things to make sure that if I go out to see the property at a job site and it's not there, and then he signs this sworn statement, that's where the falsification comes into play.

And we anticipate that Jason Farmer is going to be truthful with where he says the equipment is. But just so that we can have some accountability, that's why there is sort of two different ongoing obligations to report.

So the monthly report is due ten days after the last day of the month. And I am assuming the rents due for the prior month would be due at the same time. Is that fair?

MR. HEBBARD: Yes.

MR. MILLS: The tenth day after. And then the accounting for the past two years, or -- yeah, about the last two years, since July of 2020, that would be due 60 days or -- we didn't have a number.

**Page 21**

MR. HEBBARD: Of which one? For the July?

MR. MILLS: The back -- yes. 60 days?

MR. HEBBARD: I don't know that we had discussed a due date on that.

MR. MILLS: We didn't, so I'm -- I wrote it down.

MR. HEBBARD: Right. Yeah.

MR. MILLS: We just need to have a date.

MR. HEBBARD: Sure. You know, whatever it is. I don't know how much -- it could be, I guess, as much as $180,000. I don't think my client --

MR. MILLS: Sure. I am talking about the due date for the report.

MR. HEBBARD: Yeah, 60 days is fine.

MR. MILLS: 60 days. Okay. And then I think that was it.

MR. EPPS: Yes. And there is some other things that are collateral to all of this, but not before you, Your Honor.

MR. MILLS: And my understanding -- obviously, this was an agreement that sort of initially was reached with Mr. Hebbard and Mr. Epps. Then I was asked if I would join in

In Re Estate of Bobby James Farmer Proposed Ward - June 14, 2023

**Page 22**

1  this proposed consent order. And then I spoke
2  to Ms. Mitchell's attorney, Mr. Morales; and I
3  believe that he is prepared on her behalf to
4  acknowledge and agree to the terms of this
5  resolution, from her perspective.
6      So I guess if we could just make sure
7  that everybody is on the same page, that way
8  then I will draft an order, pass it by
9  everybody, and then have it signed by the
10 Judge.
11     MR. EPPS: So on behalf of my client,
12 Jamie Farmer, Your Honor, we will -- we consent
13 to the terms that -- as they have been
14 announced to the Court.
15     THE COURT: Gentlemen, I assume you
16 are stipulating to waiving the presence of your
17 client?
18     MR. HEBBARD: Yes, Judge. Unfortunately,
19 my client is over at the hospital with his
20 mother-in-law. They could not be here today,
21 but I have been communicating with him about
22 this agreement as we have gone through it. And
23 we will agree to those terms.
24     THE COURT: All right. Mr. Morales?
25     MR. MORALES: Likewise, Your Honor.

**Page 23**

1      THE COURT: All right. Mr. Mills, your
2  request to leave to rent is granted
3  immediately, but I will say that in the order
4  and sign it. The Court agrees to the consent
5  order as proposed.
6      Again, Mr. Hebbard, please -- you know,
7  your client needs to understand that this court
8  sees that property as part of the estate at
9  this point in time and -- just preserve it.
10     MR. HEBBARD: And we do, Judge. Whether
11 it is a part of the estate is kind of a tricky
12 issue. What we are doing is we are
13 surrendering possession.
14     THE COURT: I understand that.
15     MR. HEBBARD: In compromise of a claim.
16     THE COURT: My wording was not to
17 determine ownership or designate ownership.
18     MR. HEBBARD: It's just a habit. We have
19 been doing this same thing for --
20     THE COURT: Based on the evidence
21 previously provided to the Court, it is in the
22 best interests of all the parties that that
23 property be preserved.
24     MR. HEBBARD: Absolutely, Judge.
25     MR. MILLS: And one other thing I would

**Page 24**

1  like to add is that I would be happy to receive
2  notice of relocations or annual -- or monthly
3  reports or any communication from Mr. Hebbard
4  or his client. We have the ability to
5  communicate just fine, and so I don't want --
6  from a timeliness perspective, it probably just
7  needs to come as fast as possible if it is
8  going to be moved, and not be burdening
9  Mr. Hebbard.
10     Because you had said from counsel, but I
11 think either one. If Adam wants to do it,
12 that's fine, but I just --
13     THE COURT: Whatever works.
14     MR. HEBBARD: No issue --
15     THE COURT: I don't want to overburden my
16 county administrator any more than we already
17 do.
18     MR. HEBBARD: As long as Jon promises not
19 to pull any of those sneaky lawyer tricks when
20 he talks to my client.
21     (Laughter.)
22     MR. MILLS: So -- okay. Well, I plan to
23 draft an order. I will send it by everybody
24 and get it submitted hopefully before the end
25 of this week.

**Page 25**

1      THE COURT: I will be looking for that.
2      MR. EPPS: Judge, while we are all here,
3  I just want to make -- there is one other thing
4  that I wanted to address inside Bobby Farmer's
5  estate, if we can.
6      We have got the permanent letters
7  pending, and Mr. Farmer's estate for Mr. Mills,
8  I understand that Mrs. Mitchell has filed that
9  caveat. To my knowledge, I don't think we have
10 set that down. Is it set?
11     MR. MILLS: There is a status early part
12 of July, July 6th or something. And then there
13 is a hearing a few days later.
14     MR. EPPS: Got it. I just need to get
15 that. Understand that. So that's -- from your
16 perspective, you know, then, I mean, then you
17 won't have any -- that's the -- out of the two
18 pending estates before you, I think that's the
19 only other pending litigated matter before you,
20 so -- issue before you.
21     MR. HEBBARD: There's a stipulation in
22 Judy Farmer's estate; correct?
23     MR. EPPS: Correct.
24     MR. MILLS: Well, that order.
25     MR. EPPS: There was an order, but that

Athens Reporting, LLC
770-225-7663

In Re Estate of Bobby James Farmer Proposed Ward - June 14, 2023

Page 26

was before Mr. Morales was involved.
MR. HEBBARD: Right.
MR. MILLS: Declining to appoint her, which is how I got involved.
MR. HEBBARD: But that was on the permanent; right?
MR. EPPS: Permanent of Judy Farmers.
MR. HEBBARD: For Judy Farmer, yes.
THE COURT: Yes, we are still under the temporary for Bobby Farmer.
MR. MILLS: Pretrial conference in July --
MR. EPPS: I got it. I got it.
MR. MILLS: I did work with Ms. Mitchell and we got the silver transferred. I got pictures, and I'll share that with all the lawyers. It's in the safe at the house. We got the safe opened. It took a little while to get the safe opened, but I got it. We got the safe opened, and so that process has been completed.
MR. EPPS: And just so you also -- I mean, since we are here and everybody's counsel is represented, Mr. Mills and I last Friday went to Mr. Farmer's property where there were

Page 27

some tractors.
Mr. Mills secured all of those, and Mr. Farmer has throughout the process and continues to say that all of those tractors come back. They are actually in a place in which Mr. Farmer, Jamie Farmer, built to protect them. And they are safe, secure. They are locked down.
There is also a trailer, a lowboy that's locked down. And so all of that property has been locked down, and Mr. Mills has got the lock and key on that.
MR. MILLS: So, yeah, that -- there wasn't an action filed by him, because he agreed to surrender the property. These were tractors. I think there is eight plus two. They are a little different. That were removed before Judy's death, is my understanding.
I believe that Jason Farmer is the one that removed them and delivered them out to Jamie's house. But Jamie is claiming no superior claim to ownership. The problem is that they are tractors, like John Deere, and one is a Farmall, whatever it is. Farmall, I think it's red.

Page 28

Anyways, these are all tractors out there, but they haven't run in two years. And so in order to move them, we are going to have to like tinker to get them going. These are all old -- not -- they are not the key start ones.
And so the problem is that Jamie has said, you are welcome to have them relocated. But if he personally does it, then he is responsible for the mechanic work to get them going again, to get them onto a trailer, which he is not -- he told me he wasn't willing to assume at this time.
If I do it, if I pay a mechanic to come out there and start these tractors, it's going to cost money to the estate that seems to be imprudent, just to move them a couple miles down the road to be in a similar situation.
So I took chains and -- or, you know, locking cables and locked them all up. And so I have got pictures, shared that with all the attorneys. To temporarily, while we sort of move forward with this, that that's sort of secured out there.
And been trying to treat everybody sort

Page 29

of in the same way, that any property that's claimed by the estate is being either under some protective order or locked up.
And so that's the status of that. It just didn't seem prudent -- we don't have a lot of cash that we are working with. We are using borrowed money to do all of this. And so it didn't seem prudent to pay somebody to relocate this equipment back to the farm property at the current time.
But he has offered that at any time I wanted I can come pick it up. I just -- I personally don't have the ability to relocate it without paying a professional to move it, which seems to be not appropriate.
MR. EPPS: And, Judge Hunsinger, I want to be clear, because, you know, I know how serious the Court takes protection of any type of potential estate property, even though the ownership will have to be ultimately decided.
If Mr. Jason Farmer is going to take an ownership in those tractors and say they are his, that's his. But from Jamie Farmer's perspective, we never have and never will take any ownership interest in those tractors. And

In Re Estate of Bobby James Farmer Proposed Ward - June 14, 2023

---

**30**

1  whatever ultimately a court decides is the
2  ownership of those tractors, we will comply.
3      But everything that Mr. Mills said is
4  correct. I have been in communication with
5  Mr. Mills about this. And we are going to
6  enter into a formal stipulation as to what I
7  just said and then do that.
8      MR. MILLS: Can we just put it in this
9  protective order?
10     MR. EPPS: Well, I tell you what, Judge:
11 If everybody is okay, we will just add it to
12 this protective order. We can take care of
13 this now, and then that issue is resolved.
14     MR. MILLS: And that they won't move
15 without my permission.
16     MR. EPPS: Correct.
17     MR. MILLS: Until the order of the Court.
18     MR. EPPS: Yeah.
19     MR. MILLS: I mean, they are locked. So
20 if they move, I am going to know about it,
21 because it's my locks and my -- but there will
22 just be an order. And I don't think there is
23 any dispute about it.
24     MR. EPPS: Right.
25     MR. MILLS: But it's the most

**31**

1  cost-effective way right now to secure the
2  property.
3      MR. EPPS: So if we can add that to the
4  order, Judge, then ultimately what you have
5  just done is you have nipped it all in the bud.
6  You have got it. It's done.
7      THE COURT: Does that account for all the
8  property at this point then?
9      MR. MILLS: The only other issue that
10 there could be is some dispute about, there was
11 some knives and firearms that I think were
12 taken in -- there was this time period between
13 after Bobby Farmer died and the mom was really
14 sick and dying. She had cancer and was
15 struggling.
16     And then some of those items that
17 eventually were allocated to the boys; but I
18 think some of those got either gifted, taken,
19 something. They were removed from the home
20 prior to the death of Judy Farmer.
21     I don't think there is as much of an
22 accounting -- those are a little harder to
23 track. There is still some of that type of --
24 some of those types of items at the house that
25 I have sort of located all into one room, so at

**32**

1  some point we will be able to do something with
2  it. Knives and some ammunition and things like
3  that.
4      But I haven't -- we have not taken any
5  efforts to try to track down who was
6  potentially gifted a knife or a gun or took a
7  knife or a gun. Again, the clarity on that is
8  not -- it's a little different than equipment
9  that you can like go out and see.
10     THE COURT: Yeah.
11     MR. MILLS: And it has -- my
12 understanding is that nobody is asking or
13 requesting a re-collection of those types of
14 items. And the value, obviously, is minimal
15 compared to the expense of chasing them down.
16     THE COURT: Yes, there's enough of these
17 items to keep --
18     MR. HEBBARD: And I suspect that when you
19 file these dec actions that we are discussing,
20 that your intention will be to file -- like to
21 cover everything that you intend to enter in to
22 review about ownership, like as part of that
23 process.
24     MR. MILLS: Sure.
25     MR. HEBBARD: It's not going to be sort

**33**

1  of piecemealed out?
2      MR. MILLS: Correct. It will be
3  piecemealed out in different cases, because
4  like the one involving the car and the silver
5  is going to be a separate dec action than the
6  one involving this equipment with Mr. Jason
7  Farmer.
8      MR. HEBBARD: But we are not anticipating
9  a series of dec actions?
10     MR. MILLS: No.
11     MR. HEBBARD: Like we will do these --
12     MR. MILLS: We're going to try and do it
13 all at once.
14     MR. HEBBARD -- and then we'll talk about
15 another later and so on and so forth?
16     MR. MILLS: Just in full disclosure,
17 there is also a variety of -- or two claimants
18 regarding some personal property out at the
19 Farmer property. Arguably -- I mean, whether
20 or not it is under Judy's estate or Bobby's
21 estate is a little unclear. But there is stuff
22 out there that people are claiming, other than
23 the family.
24     One is some metal fabri- -- some metal --
25 building materials, we will say. And then one

In Re Estate of Bobby James Farmer Proposed Ward - June 14, 2023

**34**
1  is a vehicle. Perhaps some other items. But
2  those will also be addressed. If we can't have
3  a stipulation amongst the entire family,
4  because people don't have good title or some
5  other reason, then there is going to be a dec
6  action about that, too, to just get the
7  superior court to address all these open issues
8  so that we can move forward with administering
9  some of that surplus equipment out there.
10      MR. EPPS: And the only other -- I
11 shouldn't say the only other. But there -- and
12 the pending litigation regarding Mr. Jason
13 Farmer's, the one-third interest of the home,
14 the partition action, that is also pending,
15 Judge.
16      MR. MILLS: So that's pending. The
17 answer is due in about a week, based on a
18 stipulation for an extension. We have
19 agreed -- I think everybody has agreed that the
20 concept of litigating that action to a jury
21 trial doesn't make, but doing it through an
22 arbitration process to where -- because the
23 facts really aren't in dispute.
24      We just need to figure out, based on
25 these facts, what is a fair number. And so we

**35**
1  are going down that road, as far as trying to
2  come up with a plan to arbitrate that issue.
3  If we can't reach an agreement amongst
4  everybody, because that would need to be
5  something that really all the heirs acknowledge
6  a number as an appropriate value, because those
7  funds would be payable back to Judy's estate.
8  And so Christy Mitchell obviously has a
9  significant interest in that figure.
10     But there is a -- everybody seems to be
11 in agreement with that plan to avoid having
12 a -- the expenses associated with a partition
13 action. There is a partition action pending
14 but not actually going all the way through. It
15 is just very expensive to do those.
16     MR. EPPS: Just so you know, we have
17 agreed that that arbitration will be set to
18 give us a deadline, to start the process of
19 getting that portion resolved. As we chip away
20 at this, Judge Hunsinger, we are -- we are
21 starting to see -- we are starting to see the
22 real progress of chipping away at this, to get
23 this thing to a point of, we can see the end of
24 the tunnel at some point. It's coming. It has
25 just been a process, Judge Hunsinger.

**36**
1      THE COURT: Well, I just want what is
2  best for the entire family, and hopefully it
3  will be seen through that.
4      MR. EPPS: Yes, Your Honor.
5      MR. HEBBARD: Thank you, Judge.
6      THE COURT: Thank you, gentlemen.
7      MR. MILLS: Thank you.
8      MR. MORALES: Thank you, Judge.
9      (Proceedings were adjourned at
10 11:55 a.m.)

**37**
1              C E R T I F I C A T E
2  OCONEE COUNTY:
3  G E O R G I A:
4       The foregoing proceedings were taken down by
5  me as a Certified Court Reporter in the State of
6  Georgia, and the questions and answers thereto were
7  reduced to typewriting by me, personally. I hereby
8  certify that pages 1 through 36, inclusive, comprise a
9  complete and correct transcript of said proceedings.
10 I further certify that I am neither kin nor counsel
11 for any party; and am in no way interested in the
12 outcome of said case.
13
14       This, the 15th day of June, 2023.



23       DEBBIE A. EICKHOFF, RPR,
         CCR 5090-9084-2699-3664
24       Certified Court Reporter

Athens Reporting, LLC
770-225-7663

In Re Estate of Bobby James Farmer Proposed Ward - June 14, 2023

| $ | | | |
|---|---|---|---|
| **$180,000** 21:12 | account 31:7 | anticipating 33:8 | bill 20:3,4 |
| **$2,500** 11:8 12:20 | accountability 20:14 | appears 18:19 | Bobby 5:15 6:5 9:10 10:3, 13 15:5 25:4 26:10 31:13 |
| **$2,500-a-month** 10:22 | accounting 12:14,21 13:19 20:22 31:22 | applaud 14:4 | Bobby's 13:21 33:20 |
| **$5,000** 10:14,15,18,20 11:3,9 12:17,23 13:4,16, 18,21 | acknowledge 22:4 35:5 | appoint 26:3 | borrowed 29:7 |
| | acknowledgement 18:2 | appraiser 9:7 | bounce 11:18 |
| **1** | action 7:2 14:22 27:14 33:5 34:6,14,20 35:13 | arbitrate 35:2 | bouncing 15:4 |
| **10th** 19:25 | actions 32:19 33:9 | arbitration 34:22 35:17 | boys 31:17 |
| **11:55** 36:10 | Adam 24:11 | Arguably 33:19 | bucks 11:5 |
| **14th** 7:24 | add 18:2 24:1 30:11 31:3 | aspect 6:8 | bud 31:5 |
| | added 13:25 | assets 7:10 | building 11:21 33:25 |
| **2** | addition 10:20 19:17 | assigned 9:16 | buildings 19:9 |
| **2,500** 11:5 | additional 14:1 | assume 22:15 28:13 | built 11:21 27:6 |
| **2020** 7:24,25 8:10,22 12:13,15,16,18 13:19 20:24 | address 25:4 34:7 | assuming 20:18 | burden 16:19 |
| **2021** 5:25 | addressed 34:2 | attach 19:19 | burdening 24:8 |
| **24** 19:3 | adjourned 36:9 | attached 8:24 | business 8:7,20 |
| | administering 34:8 | attorney 22:2 | |
| **3** | administrator 5:15 10:3 14:6,12 18:4,8,11 24:16 | attorneys 28:22 | **C** |
| **31st** 5:25 8:22 | admission 12:8 | August 5:25 8:22 | cables 28:20 |
| | admits 13:1 | authority 18:5,9 | cancer 31:14 |
| **4** | admitted 13:12 | avoid 35:11 | capacity 5:14 19:23 |
| **4th** 7:24 8:10 12:13,15,16, 18 13:18 | agree 22:4,23 | aware 6:4,11,20 11:17 | car 33:4 |
| | agreed 12:3 17:2 27:15 34:19 35:17 | | care 16:16 30:12 |
| **6** | agreement 5:9 6:12,15 9:1,5 10:8 12:8,19 13:2 21:23 22:22 35:3,11 | **B** | Carolina 17:1 |
| **60** 20:24 21:3,16,17 | agrees 16:13 23:4 | back 5:25 10:9 12:12 15:2 21:3 27:5 29:9 35:7 | Cary 17:1 |
| **6th** 25:12 | alleges 8:12 13:13 | background 5:20 | cases 33:3 |
| | allocated 31:17 | ball 15:4 | cash 29:6 |
| **A** | ammunition 32:2 | base 10:22,24 | caught 17:21 |
| **a.m.** 36:10 | amount 19:1 | based 8:11 23:20 34:17,24 | caveat 25:9 |
| **ability** 24:4 29:13 | announce 6:24 | baseline 16:9 | chains 28:19 |
| **Absolutely** 23:24 | announced 22:14 | battle 15:18 | chasing 32:15 |
| | annual 24:2 | behalf 5:4,12,13,16 22:3, 11 | chip 35:19 |
| | anticipate 20:11 | beneficiaries 15:14 | chipping 35:22 |
| | | beneficiary 18:20 | Christian 9:8,14 |
| | | benefit 18:14,18 | Christy 5:16 35:8 |
| | | big 19:8 | claim 23:15 27:22 |

In Re Estate of Bobby James Farmer Proposed Ward - June 14, 2023

claimants 33:17
claimed 29:2
claiming 27:21 33:22
clarity 32:7
clause 6:9
clear 29:17
client 14:25 15:2 21:13 22:11,17,19 23:7 24:4,20
collateral 21:20
collected 14:14
collecting 19:1
communicate 24:5
communicating 22:21
communication 24:3 30:4
compared 32:15
compel 5:3
completed 26:21
complicated 14:7
comply 18:7 30:2
compromise 18:14 23:15
concept 34:20
conference 26:11
confirmed 14:3
Connector 16:25
consent 6:16,18 8:8 12:10 13:8 18:7 22:1,12 23:4
consequences 16:22
continue 10:8 16:18
continued 6:1
continues 27:4
correct 5:5,6 9:19 25:22, 23 30:4,16 33:2
cost 28:16
cost-effective 31:1
counsel 11:23 14:20 24:10 26:23
county 14:6 24:16

couple 6:11 28:17
court 5:1,7,24 6:3,11,16, 18,19,20,25 7:5,7,9 8:17 11:17 12:11 15:23 18:9,17 22:14,15,24 23:1,4,7,14, 16,20,21 24:13,15 25:1 26:9 29:18 30:1,17 31:7 32:10,16 34:7 36:1,6
court's 9:23
cover 32:21
crane 11:16
create 20:4
cross-reference 20:6
cure 17:10,11,12,15
current 29:10

D

Dale 5:4
damage 16:12
damages 16:14
date 7:21,22 8:10,14,19 12:12 21:5,9,15
dates 7:23 8:7
day 15:1 16:6 20:17,21
days 8:4 17:15 19:24 20:16,24 21:3,16,17 25:13
deadline 35:18
deal 8:23
death 27:18 31:20
debate 8:16
debt 12:17
dec 14:22 32:19 33:5,9 34:5
decide 6:21
decided 29:20
decides 30:1
Declining 26:3
deems 17:18
Deere 27:23

default 17:12,16
defaults 17:14
delivered 27:20
deposition 5:21,24 7:21, 23 8:11 13:1,6,8,13
depositions 8:21
designate 23:17
determine 15:10 23:17
determined 7:12 9:17 14:16,22 17:5
determines 7:17
died 31:13
disclosure 33:16
discussed 21:5
discussing 32:19
dispute 8:3 30:23 31:10 34:23
draft 19:19 22:8 24:23
due 19:16 20:16,18,19,24 21:5,15 34:17
dying 31:14

E

early 25:11
earned 15:13
Eddie 9:8
efforts 32:5
encumbering 12:4
end 19:17,24 24:24 35:23
enter 18:12 30:6 32:21
entered 6:13,15 12:2,10
entire 34:3 36:2
entrusted 7:7 10:2
entrusting 7:18
Epps 5:6,8,11 11:1,6 15:24 21:19,25 22:11 25:2,14,23, 25 26:7,13,22 29:16 30:10, 16,18,24 31:3 34:10 35:16 36:4

equipment 8:6,17 11:12, 15,19,25 12:4 13:4,24 15:21 16:3,12 17:4 19:6,22 20:13 29:9 32:8 33:6 34:9
essentially 11:17
estate 5:2,15 7:10 9:10 10:4,9,10,13 11:7 12:5 13:20,22,25 15:5,6 16:19 18:15 23:8,11 25:5,7,22 28:16 29:2,19 33:20,21 35:7
estate's 17:19
estates 6:8 14:7 25:18
eventually 31:17
everybody's 26:23
evidence 23:20
exchange 10:5
exercise 17:17
exhibit 8:24 10:1
expect 16:5
expense 32:15
expenses 16:19 35:12
expensive 35:15
extension 34:18

F

F-183 5:2
fabri- 33:24
fact 20:4
facts 34:23,25
fails 15:3
fair 20:19 34:25
falsification 16:23 17:6 20:9
falsifies 17:3
family 6:5,6 33:23 34:3 36:2
farm 29:9
Farmall 27:24

In Re Estate of Bobby James Farmer Proposed Ward - June 14, 2023

Farmer 5:4,5,12,13,22 6:5,6 7:3 8:1,2,5,12,18,19 10:7 11:13,23 12:5,16,21 13:1,9,10,11,16,20,23 15:11 16:11,18,24 17:2 19:20 20:11 22:12 26:8,10 27:3,6,19 29:21 31:13,20 33:7,19

Farmer's 5:15 6:9 9:10 10:4,13 15:5,6 25:4,7,22 26:25 29:23 34:13

Farmers 26:7

fast 24:7

fees 19:2,15

figure 34:24 35:9

file 32:19,20

filed 5:4 25:8 27:14

filing 7:2

financial 18:18

fine 21:16 24:5,12

finish 11:18

fire 16:15

firearms 31:11

five-day 17:10,11

flow 15:7

flows 18:18

follow 15:3

formal 30:6

forward 28:23 34:8

framework 17:25

frankly 14:11

Friday 26:24

full 33:16

funds 14:4,14 35:7

**G**

gentlemen 22:15 36:6

gifted 31:18 32:6

give 5:19 9:21 17:9,10 19:10 35:18

good 34:4

grant 18:9

granted 18:12 23:2

guess 5:9 21:12 22:6

gun 32:6,7

**H**

habit 23:18

hammered 7:5

happened 8:4 15:12

happening 19:14

happy 24:1

harder 31:22

hearing 5:2 6:19 7:8 25:13

Hebbard 5:12 9:13 10:24 11:2,6 17:23 20:20 21:1,4,8,10,16,24 22:18 23:6,10,15,18,24 24:3,9,14,18 25:21 26:2,5,8 32:18,25 33:8,11,14 36:5

Hebbard's 14:24

heirs 15:19 35:5

hereto 7:16

hey 19:11

home 31:19 34:13

Honor 21:21 22:12,25 36:4

hospital 22:19

hours' 19:3

house 26:17 27:21 31:24

Hunsinger 15:22 29:16 35:20,25

**I**

immediately 17:4 23:3

impact 19:15

important 14:18

imprudent 28:17

independent 9:7

information 14:2 16:24 17:3

initial 16:7

initially 21:24

inside 9:6 12:25 25:4

inspect 15:25 16:2,3,7

inspection 16:8

Insurance 13:23

insured 13:24 14:1 16:16

intend 32:21

intention 32:20

interest 7:11 29:25 34:13 35:9

interests 23:22

internally 19:13

inventory 9:16

involved 9:2 26:1,4

involving 33:4,6

issue 14:21 17:19 23:12 24:14 25:20 30:13 31:9 35:2

issues 34:7

items 31:16,24 32:14,17 34:1

**J**

James 5:4

Jamie 5:12 15:15 22:12 27:6,21 28:7 29:23

Jamie's 27:21

Jason 5:5,13,22 8:5,19 10:7 12:15 13:1,23 15:15 16:11,17,24 17:2 19:20 20:11 27:19 29:21 33:6 34:12

Jeremy 15:15

job 10:14,15 11:3,9 12:15,17 13:5,14,18 14:5 19:5,8 20:1,7

jobs 10:19 11:16 13:12 19:2,14

John 27:23

join 21:25

Jon 15:24 24:18

judge 5:6,8,19 6:1 7:9 12:25 14:6 15:22 17:22 22:10,18 23:10,24 25:2 29:16 30:10 31:4 34:15 35:20,25 36:5,8

Judy 6:5,9 8:2,12 13:16,19 15:6 25:22 26:7,8 31:20

Judy's 13:22 27:18 33:20 35:7

July 7:24 8:10 12:13,15,16,18 13:18 20:24 21:2 25:12 26:12

jump 17:25

jurisdiction 6:21

jury 34:20

**K**

Kevin 5:11

key 27:12 28:5

kind 7:14 19:12 23:11

knew 9:9

knife 32:6,7

knives 31:11 32:2

knowledge 25:9

**L**

labeled 9:25

laid 7:14 8:21 17:9

Laughter 24:21

lawyer 24:19

lawyers 26:17

leads 13:6

learned 7:21

lease 10:9,10,12 12:9 16:21

leaseback 18:13

In Re Estate of Bobby James Farmer Proposed Ward - June 14, 2023

leased 12:5
leave 18:3,10,12,22 23:2
legitimately 13:21
letters 25:6
Likewise 22:25
list 8:24 9:15
litigated 25:19
litigating 34:20
litigation 5:23 6:2,4,7 9:6 18:17,21 34:12
living 8:3
located 31:25
location 11:12,20,21 19:12
locations 19:21
lock 27:12
locked 27:8,10,11 28:20 29:3 30:19
locking 28:20
locks 30:21
long 24:18
lose 15:17
lot 5:21 14:9 29:5
lowboy 27:9

**M**

maintenance 16:17
make 7:10,17 9:11 13:24 14:11 15:16,22 17:21 18:25 20:6 22:6 25:3 34:21
materials 33:25
matriarch 6:5
matter 6:21 25:19
mechanic 28:10,14
meet 14:8
metal 33:24
miles 28:17
Mills 5:13 7:2,13,19 10:2

11:12,15,22,24 12:22 14:2,4,23 15:24 16:5,24 17:3,4,9,12,17,23 18:1 20:21 21:3,6,9,14,17,22 23:1,25 24:22 25:7,11,24 26:3,11,14,24 27:2,11,13 30:3,5,8,14,17,19,25 31:9 32:11,24 33:2,10,12,16 34:16 36:7
minimal 32:14
minimum 10:21,25 11:1,4,7 12:20
missed 17:24
Mitchell 5:17 6:12,15 7:14 9:4 25:8 26:14 35:8
Mitchell's 22:2
modeling 6:17
mom 31:13
money 14:16,17,23 15:1,5,13,16,19 28:16 29:7
monitor 19:1
month 10:17,23 11:4,5,8 19:7,17,21,24,25 20:17,18
monthly 11:11 18:23 20:16 24:2
months 6:11
Morales 5:16 9:2 17:24 22:2,24,25 26:1 36:8
mother-in-law 22:20
motion 5:3
move 19:5,11 28:3,17,23 29:14 30:14,20 34:8
moved 19:2 24:8
moves 11:20
moving 12:18

**N**

nipped 31:5
North 17:1
notice 11:14 17:10 18:24 19:3,4,10 24:2
notices 17:15

notify 11:22,23
number 20:25 34:25 35:6

**O**

oath 20:1
obligations 18:24 20:15
Oconee 16:25
offered 29:11
one-day 19:8
one-third 34:13
ongoing 5:23 17:19 18:24 20:15
open 34:7
opened 26:18,19,20
option 17:13,17
orally 18:6
order 6:16,18,21 7:13 8:9 12:2,10,13:8 14:13 18:7,11,12,16 19:19 22:1,8 23:3,5 24:23 25:24,25 28:3 29:3 30:9,12,17,22 31:4
overburden 24:15
owned 15:1
owners 15:20
ownership 6:22 7:1,3,4,11,17 12:9 13:14 14:21,25 15:18 23:17 27:22 29:20,22,25 30:2 32:22

**P**

paid 10:23 13:19
parents 13:2
part 13:7,17 16:20 18:11 23:8,11 25:11 32:22
parties 5:9 9:1,5 23:22
partition 34:14 35:12,13
pass 22:8
passed 8:2 13:9,10,11
past 20:22

patriarch 6:6
pattern 17:16
pay 10:13,15 11:2,4 12:17 13:4,15 28:14 29:8
payable 35:7
payee 13:25
paying 29:14
payment 17:7
pending 25:7,18,19 34:12,14,16 35:13
people 33:22 34:4
period 17:10,11 31:12
permanent 25:6 26:6,7
permission 30:15
personal 5:3 33:18
personally 9:13 28:9 29:13
perspective 22:5 24:6 25:16 29:24
phase 18:21
physical 8:13
physically 8:18
pick 29:12
picture 9:21
pictures 26:16 28:21
piecemealed 33:1,3
place 8:22 27:5
plan 24:22 35:2,11
play 9:22 20:10
players 5:17
point 8:1 9:2 13:7 14:5 15:21 23:9 31:8 32:1 35:23,24
pointed 7:8
policy 14:1
portion 35:19
possession 6:14 23:13
potential 29:19

In Re Estate of Bobby James Farmer Proposed Ward - June 14, 2023

potentially 9:10 18:19 32:6
prepared 22:3
presence 22:16
preserve 23:9
preserved 23:23
Pretrial 26:11
prevail 15:12
prevails 14:25
previous 7:8,13
previously 23:21
prior 11:14 13:13,18 20:18 31:20
probate 7:9
problem 27:22 28:7
proceedings 36:9
process 26:20 27:3 32:23 34:22 35:18,25
product 8:25
professional 14:12 29:14
progress 35:22
promises 24:18
properly 17:20
property 5:4 6:22 7:4,7 8:14,25 9:9,16,21,24,25 10:1,6,8 14:15 15:10,13 16:3,12,25 17:13,18,19 18:20,25 20:7 23:8,23 26:25 27:10,15 29:1,9,19 31:2,8 33:18,19
proposed 22:1 23:5
protect 27:7
protected 7:11
protecting 9:23
protection 18:15 29:18
protective 18:16 29:3 30:9,12
provide 12:21,22
provided 14:2 23:21

provision 18:13
prudent 29:5,8
pull 24:19
purposes 8:8
purview 9:23
put 30:8

R

re-collection 32:13
reach 35:3
reached 5:8 21:24
real 35:22
reality 17:1
reason 12:25 34:5
reasonable 16:1,2
receive 8:5 11:8 14:17 24:1
record 5:1,10
red 27:25
relates 6:4,13,25 7:3 8:14 12:9
relocate 29:8,13
relocated 28:8
relocation 11:15,24 19:4
relocations 24:2
removed 27:17,20 31:19
rent 18:3 23:2
rental 10:22,24 11:4 19:15 20:3,4
rents 20:18
repair 16:14
report 11:11 18:23 19:18,19 20:15,16 21:15
reports 20:1 24:3
represented 26:24
representing 9:4
request 23:2

requesting 18:6 32:13
required 17:8
requirement 17:8
residuary 6:9 15:7
resolution 22:5
resolved 30:13 35:19
responsible 28:10
restraining 12:2
return 8:25 10:1
review 32:22
rightful 15:20 18:20
rings 6:22
road 28:18 35:1
roll 6:10
room 31:25
run 28:2

S

safe 26:17,18,19,20 27:7
sale 12:3
secure 27:7 31:1
secured 27:2 28:24
sees 23:8
segregated 14:15
segregating 14:9
seize 17:4,13,18
send 24:23
sense 15:22
separate 7:2 14:23 33:5
series 33:9
set 25:10 35:17
sets 16:15
settlement 5:20
share 26:16
shared 28:21
show 5:2

shows 20:3
sick 31:14
sign 23:4
signed 8:15 19:22 22:9
significant 35:9
signs 19:20 20:8
silver 6:14 26:15 33:4
similar 28:18
site 19:6 20:1,8
sites 9:12,15
situation 28:18
sneaky 24:19
sons 15:15
sort 6:17 18:13,14,23 20:3, 14 21:23 28:22,23,25 31:25 32:25
specific 7:22
spoke 22:1
stands 12:19
start 28:5,15 35:18
starting 35:21
state 16:8
statement 20:9
status 25:11 29:4
stays 11:20
stipulate 12:17 13:17 15:18
stipulated 7:16
stipulating 9:19 14:20 22:16
stipulation 25:21 30:6 34:3,18
struggling 31:15
stuff 33:21
subject 6:21
submitted 24:24
subsequently 8:19
superior 5:24 7:5 18:17

27:22 34:7
supposed 19:3
surplus 34:9
surrender 5:3 27:15
surrendering 23:13
suspect 32:18
sworn 19:23 20:9

**T**

tailored 5:21
takes 29:18
taking 8:21 11:3
talk 33:14
talked 7:22 12:13
talking 7:6 21:14
talks 24:20
temporarily 28:22
temporary 5:14 10:2,3 18:3,8 26:10
ten 19:23 20:16
tenth 20:21
term 16:1
terms 18:7 22:4,13,23
testimony 8:11
thing 23:19,25 25:3 35:23
things 14:10 16:17 18:1 20:6 21:20 32:2
time 8:1,3 9:4 20:19 23:9 28:13 29:10,11 31:12
timeliness 24:6
times 11:25 19:12
Timmons 9:3
tinker 28:4
title 8:5 34:4
titles 8:13
today 6:23 12:19 22:20
told 28:12

track 19:14 31:23 32:5
tractors 27:1,4,16,23 28:1, 15 29:22,25 30:2
trailer 27:9 28:11
transfer 12:4 13:14
transferred 26:15
treat 28:25
trial 34:21
tricks 24:19
tricky 23:11
trucking 6:3
true 6:22
trust 5:23 6:2,7,10 9:6,11 15:8,10,17
trustee 10:3
truthful 20:12
tunnel 35:24
turned 8:12 19:23
type 17:5 29:18 31:23
types 31:24 32:13
typically 19:6

**U**

ultimate 7:4
ultimately 6:1,8 8:4 9:11, 14,17,22 14:16,22,24 15:2, 6,11,16 16:20 29:20 30:1 31:4
unclear 33:21
understand 23:7,14 25:8, 15
understanding 7:1 10:16 21:22 27:18 32:12
universal 9:21
upkeep 16:14

**V**

variety 33:17

vehicle 6:14 34:1

**W**

waive 6:25
waived 7:15
waiving 22:16
wanted 25:4 29:12
week 16:6 24:25 34:17
weeks 19:7
wording 23:16
work 10:13 26:14 28:10
working 13:12,15 29:6
works 24:13
written 12:7
wrote 21:6

**Y**

years 20:22,23 28:2