IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

JASON FARMER,

    Plaintiff,

v.

MIKE HUNSINGER, KEVIN EPPS,
JON MILLS, and JAMES FARMER

    Defendants.

3:25-cv-00154-TES

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT JAMES FARMER'S MOTION TO DISMISS

### INTRODUCTION

This Court recently addressed the interplay between 42 U.S.C. § 1983 and judicial immunity in *Lucas v. Connelly*, No. 3:25-cv-00146-TES, 2025 WL 2654957 (M.D. Ga. Sept. 16, 2025). There, the Court applied the *Sibley v. Lando* four-factor test and dismissed § 1983 claims against two Oconee County magistrate judges because they "acted within their judicial capacity when they set Plaintiff's bonds and determined when and how to hold hearings." *Id.* at *3. The Court confirmed, however, that judicial immunity does not apply when a judge acts in the "clear absence of all jurisdiction." *Id.* (quoting *Sibley v. Lando*, 437 F.3d 1067, 1070–72 (11th Cir. 2005)).

1

This case presents the exception that *Lucas* recognized but did not reach. In *Lucas*, magistrate judges set bonds and scheduled hearings; core judicial functions of courts with criminal jurisdiction. Here, a probate judge issued a criminal contempt order (rather than an "attachment") that is not a judicial function of any probate court in Georgia, and which is clearly outside the probate court's subject matter jurisdiction. The Supreme Court has identified this precise scenario as the paradigmatic example of acting in the "clear absence of all jurisdiction." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 352 (1872) ("[I]f a probate judge, with jurisdiction over only wills and their probate, should undertake to try parties for public offences, jurisdiction over which is vested in another tribunal, he would merely be acting as a private individual, not as a judge.").

As to Defendant James Farmer: he is not a judge. He has no claim to judicial immunity. His motion rests on the proposition that a bench warrant insulates all participants from constitutional liability, that adequate state remedies defeat Plaintiff's due process claims, and that the complaint fails to allege his personal participation. Each argument fails. James Farmer verified motions and complaints in the underlying litigation making himself a direct participant in the contempt prosecution. He paid disreputable counsel more than $200,000 to seek "bench warrants" while acknowledging the risk of federal liability. And his own sworn statement—"I have more money than God and I will keep you in court till you run

2

out!" - reflects the intent to weaponize judicial process against his own siblings by bullying them into capitulation. Under *Dennis v. Sparks*, 449 U.S. 24 (1980), that states a claim.

### STATEMENT OF FACTS

Plaintiff incorporates by reference the Factual Allegations set forth in the First Amended Complaint, which must be accepted as true at the motion to dismiss stage.

**The Probate Court lacked subject matter jurisdiction.** The July 14, 2023 Protective Order, by its own terms, concerned "the protection of ownership interests" in disputed construction equipment. (First Am. Compl. ¶ 24.) Under binding Georgia law, "probate courts do not have jurisdiction to adjudicate conflicting claims of title to real or personal property." *In re Estate of Adamson*, 215 Ga. App. 613, 613 (1994). The September 3, 2024 Contempt Order and the August 7, 2025 Bench Warrant were therefore void ab initio, because "disobedience of a void mandate, order, or judgment … is not contempt of court." *Id.*

**James Farmer was a direct participant in the contempt prosecution.**

James Farmer filed verified motions and complaints making himself a named party to the prosecution of criminal contempt against Plaintiff in an attempt to incarcerate his own brother. His attorney, Defendant Epps, explicitly sought

3

Plaintiff's arrest at the August 7, 2024 hearing, stating: "I was going to ask you to throw him in contempt and throw him in jail." Epps did so on James Farmer's behalf while James Farmer stood as a joined party. At the same hearing, Epps acknowledged the risk of "federal" civil rights liability, and sought the "warrants" anyway.

**James Farmer expressed intent to weaponize litigation.** Defendant James Farmer stated under oath: "I have more money than God and I will keep you in court till you run out!" (First Am. Compl. ¶ 15.) This is direct evidence of the specific intent required for conspiracy and abuse of process claims.

**The arrest was warrantless in practice and undocumented.** Athens-Clarke County Police Department records confirm no warrant was presented to arresting officers. Officers discussed on radio that they had only a "civil warrant" not entered in the Georgia Crime Information Center ("GCIC"). The Oconee County Sheriff's Office produced no arrest report, no incident report, and no documentation of legal authority for the seizure. Their booking records classify the detention as "PRE TRIAL MISD" with "NO BOND"—criminal classifications inconsistent with any legitimate civil contempt process.

**The Georgia Court of Appeals intervened to order release.** On August 12, 2025, the Georgia Court of Appeals exercised inherent authority under Rule

40(b) to order Plaintiff's immediate release, finding the Probate Court acted "seemingly in contravention of OCGA § 5-6-46(a)." (First Am. Compl. ¶ 3.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. The complaint must contain "sufficient factual matter, accepted as true, to state a claim … that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will survive under Rule 12(b)(6) "if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018). *See also Lucas*, 2025 WL 2654957, at *2 (applying this standard).

Rule 12(b)(6), "operating on the assumption that the factual allegations in the complaint are true, … streamlines litigation by dispensing with unnecessary discovery and factfinding." *Lucas*, 2025 WL 2654957, at *2 (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)). The Court does not weigh evidence or resolve factual disputes at this stage.

# ARGUMENT

## I. THIS COURT'S FRAMEWORK IN LUCAS CONFIRMS THAT THE "CLEAR ABSENCE OF ALL JURISDICTION" EXCEPTION APPLIES

Although James Farmer is not a judge and cannot claim judicial immunity, his motion's central premise, that the bench warrant was valid legal process, depends entirely on the issuing judge having acted within his jurisdiction. This Court's analysis in *Lucas* provides the framework for evaluating that premise.

### A. The Sibley Four-Factor Test Shows Hunsinger Acted Outside His Jurisdiction

In *Lucas*, this Court applied the Eleventh Circuit's four-factor test from *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005):

> [A] finding of judicial immunity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; or (4) the confrontation arose immediately out of a visit to the judge in her judicial capacity.

*Lucas*, 2025 WL 2654957, at *3 (quoting *Sibley*, 437 F.3d at 1070).

In *Lucas*, magistrate judges set bonds and scheduled hearings, acts that "clearly constitute exercises of judicial functions held in open court." *Id.* This Court had no difficulty concluding that those acts were protected by judicial immunity. The present case is fundamentally different under each factor:

**Factor 1: Normal judicial function.** Issuing a criminal contempt order, or "bench warrant", providing for indefinite incarceration is *not* a normal judicial function of a Georgia probate court. Probate courts are courts of limited jurisdiction whose powers are defined by O.C.G.A. § 15-9-30. They have no criminal jurisdiction over "ongoing estate matters." The Supreme Court itself identified this precise scenario in *Bradley v. Fisher*: "[I]f a probate judge, with jurisdiction over only wills and their probate, should undertake to try parties for public offences, jurisdiction over which is vested in another tribunal, he would merely be acting as a private individual, not as a judge." 80 U.S. at 352. *Stump v. Sparkman*, 435 U.S. 349, 357 n.7 (1978), cited this passage approvingly.

**Factor 2: Events in chambers or open court.** The "Bench Warrant" was issued on the same day as a Continuance Order, without a hearing, without notice to Plaintiff's counsel, and based solely on Defendant Mills's ex parte Notice of Non-Compliance. (First Am. Compl. ¶¶ 46–49.) This was not a ruling in open court. It was a secret arrest order.

7

**Factor 3: Case pending before the judge.** The underlying dispute regarding the possession and ownership of construction equipment was a matter clearly outside the probate court's subject matter jurisdiction. *Adamson* holds that probate courts lack jurisdiction over "conflicting claims of title to real or personal property." 215 Ga. App. at 613. A case that the court has no jurisdiction to hear is not properly "pending" or "ongoing" before it.

**Factor 4: Confrontation arose from judicial visit.** There was no confrontation. There was no hearing. The warrant was issued *ex parte*, in secret, and withheld from Plaintiff's counsel while a Continuance Order was entered as a distraction.

Under the *Sibley* framework that this Court applied in *Lucas*, the Bench Warrant fails every factor. This is not a case like *Lucas* where judges acted "in error, malicious, or in excess of [their] jurisdiction." *Lucas*, 2025 WL 2654957, at *3 (quoting *Higdon v. Tusan*, 746 F. App'x 805, 810 (11th Cir. 2018)). This is a case where a probate judge acted in the complete absence of jurisdiction. That distinction is dispositive.

**B.     Because the Warrant Was Void, It Provides No Defense to James Farmer**

James Farmer's motion rests on the proposition that a bench warrant bars Plaintiff's Fourth Amendment claims. But this Court's *Lucas* framework confirms

8

that the "clear absence of all jurisdiction" exception strips the issuing judge of immunity, and necessarily strips his so-called "warrant" of legal effect. A void warrant provides no "legal process" defense. The cases James Farmer cites - *Williams v. Aguirre* and *Sinnenweber v. Williams* - involve challenges to warrants issued by courts acting *within* their general jurisdiction. They are inapposite here.

The factual record reinforces this conclusion. Athens-Clarke County Police records show no warrant was presented to arresting officers. Radio traffic captured officers describing the instrument as a "civil warrant" not entered in GCIC—a legal instrument that does not exist in Georgia law as a basis for arrest. The Oconee County Sheriff's Office classified the detention as "PRE TRIAL MISD" with "NO BOND." A man was jailed for four days and the executing agency cannot produce legal authority for his seizure. That is the hallmark of a warrantless arrest, not a lawful execution of process.

## II.     JAMES FARMER IS LIABLE UNDER § 1983 AS A PRIVATE ACTOR WHO CONSPIRED WITH STATE OFFICIALS

James Farmer argues that as a private party he cannot be liable under § 1983. This ignores controlling Supreme Court authority. In *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980), the Court held that "private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the

statute." The private party in *Dennis* was alleged to have conspired with a state court judge to obtain an injunction. The Court held this stated a claim.

The parallel is exact. Plaintiff alleges that James Farmer conspired with Defendant Hunsinger (a state court judge acting, under the *Sibley* analysis, in the clear absence of all jurisdiction), Defendant Mills (a court-appointed administrator), and Defendant Epps to procure Plaintiff's arrest through void orders.

### A. James Farmer's Personal Participation Is Sufficiently Alleged

James Farmer argues the complaint lacks specific allegations about his conduct. The First Amended Complaint alleges far more than passive representation:

**Verified personal act:** James Farmer filed a verified motions in connection with Plaintiff's contempt prosecution. This was a personal, verified act.

**Direction and funding of the scheme:** Defendant Epps sought Plaintiff's arrest on James Farmer's behalf. When an attorney seeks a client's opponent's incarceration at the client's direction, while acknowledging in open court the constitutional risk of doing so, the client necessarily bears responsibility for the foreseeable consequences.

**Sworn statement of intent:** James Farmer stated under oath: "I have more money than God and I will keep you in court till you run out!" This is direct

evidence of a scheme to abuse judicial process to coerce a family member into surrendering property.

**Coordinated timing:** The Complaint alleges coordinated timing between the Notice of Seizure, the Continuance Order, and the secret Bench Warrant, all in the same day, designed to ensure arrest before Plaintiff could invoke supersedeas rights. (First Am. Compl. ¶ 54.) James Farmer, as the party who stood to benefit and who funded the strategy, is a co-conspirator.

This Court in *Lucas* dismissed claims against Oconee County because Plaintiff "failed to allege a single fact indicating that Oconee County has any policy or custom that has inflicted an injury upon him." 2025 WL 2654957, at *4. By contrast, the First Amended Complaint here identifies specific acts by James Farmer - his verified joinder, his sworn threats, his coordination with co-defendants - with the kind of factual specificity this Court requires. The distinction between *Lucas* (no facts alleged) and this case (extensive specific factual allegations) is precisely the distinction that matters at the 12(b)(6) stage.

## III. ADEQUATE STATE REMEDIES DO NOT DEFEAT PLAINTIFF'S DUE PROCESS CLAIMS

James Farmer argues that adequate state remedies bar Plaintiff's Fourteenth Amendment claims. This misapprehends the nature of the claim.

11

Plaintiff does not allege a procedural defect remediable by post-deprivation process. Plaintiff alleges a structural constitutional violation: deprivation of liberty by a court acting in the complete absence of subject matter jurisdiction. When a court acts entirely outside its constitutional authority, the injury is a fundamental jurisdictional defect that renders all proceedings *void ab initio*, rather than a procedural error curable by appeal.

The Supreme Court has squarely held that exhaustion of state remedies is not required for § 1983 claims. *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982). The existence of state court proceedings does not bar a federal constitutional challenge, especially when the state courts themselves are the source of the constitutional violation.

The inadequacy of state remedies is independently demonstrated by the facts: Plaintiff invoked every statutory protection designed to prevent exactly the injury he suffered. He asserted jurisdictional objections. He sought supersedeas. He filed appeals. He filed a special appearance challenging jurisdiction. The Probate Court overrode every protection. It took emergency intervention by the Georgia Court of Appeals - exercising inherent authority outside the normal appellate process - to secure Plaintiff's release after four days of incarceration. A system in which a man can be jailed for four days despite invoking every available protection is a system in which state remedies have proven inadequate.

## IV. YOUNGER ABSTENTION DOES NOT APPLY

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013), narrowed *Younger* abstention to three categories: (1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings; and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.

Plaintiff's § 1983 action falls into none of these categories. Plaintiff seeks damages for constitutional violations that have already occurred based on the four-day unconstitutional incarceration from August 8 through August 12, 2025. This is not an attempt to enjoin ongoing state proceedings. It is a damages action for completed constitutional injuries.

Even if *Younger* applied, its bad-faith exception would defeat abstention. Where state proceedings "are brought to harass or are conducted without a reasonable expectation of obtaining a valid conviction," *Younger* does not bar federal jurisdiction. *Younger v. Harris*, 401 U.S. 37, 54 (1971). Procuring an arrest warrant from a court that clearly lacks subject matter jurisdiction while Plaintiff's attorney was provided with notice of a continuance constitutes the type of bad faith that excepts the case from *Younger*.

## V.  PLAINTIFF'S STATE LAW CLAIMS ARE INDEPENDENTLY VIABLE

James Farmer's motion focuses primarily on the federal claims, but the state law claims for false arrest (Count IV), abuse of process (Count V), and intentional infliction of emotional distress (Count VII) survive independently.

Under O.C.G.A. § 51-7-20, "[a]n arrest under process of law, without probable cause, when made maliciously, shall give a right of action to the party arrested." Under O.C.G.A. § 51-7-21, "[a] judicial officer issuing a warrant in good faith shall not be liable for false imprisonment, provided that, when he has no jurisdiction, there is no presumption against such officer's good faith." When the issuing judge has no jurisdiction - as this Court's *Sibley* analysis confirms - the absence of any presumption of good faith extends to private parties who conspired to procure the void warrant.

The abuse of process claim is supported by direct evidence that James Farmer intended to use litigation as a coercive weapon ("more money than God"), that contempt proceedings were pursued in a court known to lack jurisdiction, and that the so-called "civil warrant' was procured through *ex parte* submissions without notice to Plaintiff's counsel.

As to intentional infliction of emotional distress, procuring the secret arrest and four-day incarceration of one's brother through a court known to lack

14

jurisdiction - while he suffers a cardiac emergency during the arrest - satisfies the "extreme and outrageous" standard under Georgia law.

## CONCLUSION

In *Lucas*, this Court applied well-established doctrine to hold that judges who set bonds and schedule hearings act within their judicial capacity and are immune from suit. The Court simultaneously reaffirmed that judicial immunity does not protect acts taken in the "clear absence of all jurisdiction." This case presents the exception that *Lucas* recognized.

The undisputed facts - accepted as true at this stage - are devastating. A probate judge without criminal jurisdiction issued a secret criminal bench warrant. No warrant was presented to arresting officers. No arrest report was created. Law enforcement described the instrument as a "civil warrant", which does not exist. A man was booked as "PRE TRIAL MISD" with "NO BOND." He was held for four days. And the Georgia Court of Appeals had to exercise emergency inherent authority to secure his release, otherwise he would have languished in jail until he paid "$500,000.00."

James Farmer was not a bystander. He filed verified motions making himself a party to the contempt prosecution. He funded the litigation strategy. His attorney sought the warrants while acknowledging the federal liability risk. And his own

words - "I have more money than God and I will keep you in court till you run out!" - explain why.

WHEREFORE the First Amended Complaint states plausible federal and state claims against James Farmer, and his motion should be denied.

Respectfully submitted this 10th day of February, 2026.

/s/ John Baker
John Baker
Georgia Bar No. 033797
JOHN BAKER LAW
1551 Jennings Mill Rd., Suite 3100B
Watkinsville, Georgia 30677
Telephone: (706) 608-2406
Email: john@johnbaker.law

*Attorney for Plaintiff Jason Farmer*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February, 2026, I caused a true and correct copy of the foregoing Plaintiff's Response in Opposition to Defendant James Farmer's Motion to Dismiss to be filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

Respectfully submitted this 10th day of February, 2026.

/s/ John Baker
John Baker
Georgia Bar No. 033797
JOHN BAKER LAW
1551 Jennings Mill Rd., Suite 3100B
Watkinsville, Georgia 30677
Telephone: (706) 608-2406
Email: john@johnbaker.law

*Attorney for Plaintiff Jason Farmer*