# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### ATHENS DIVISION

JASON FARMER,

    Plaintiff,

v.

MIKE HUNSINGER, KEVIN EPPS,
JON MILLS, and JAMES FARMER

      Defendants.

3:25-cv-00154-TES

## FIRST AMENDED COMPLAINT[1]

**1.** This is an action under 42 U.S.C. § 1983 and state law arising from the false arrest and four-day unconstitutional incarceration of Plaintiff Jason Farmer from August 8 through August 12, 2025. The arrest stemmed from a private party (James Farmer) without standing or interest in his parents' estates, who engaged counsel (Epps) to extort the property Plaintiff inherited through abuse of civil process, as well as criminal process. A probate judge (Hunsinger) unlawfully appointed a fiduciary (Mills), who presented him with a protective order wresting possession and control of Plaintiffs' property in the clear absence of subject matter jurisdiction.

**2.** That so-called "protective order" required Plaintiff to relinquish control of his property in favor of an unlawfully-appointed "administrator", who was allegedly conferred authority to "lease back" property of disputed ownership to Plaintiff, subject him to various interferences

---

[1] "A party may amend its pleading once as a matter of course no later than…21 days after service of a motion under Rule 12(b)."  Fed. R. Civ. P. 15; See Defendant James Farmer's Motion to Dismiss filed on January 30, 2026. (Doc. 23)

with enjoyment of his property, and compel him to surrender his own property under threat of contempt sanctions. On advice of undersigned counsel, Plaintiff did not comply with the "protective order" because"[t]he judgment of a court having no jurisdiction of the person or the subject matter or which is void for any other cause is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it." O.C.G.A. § 9-12-16

   **3.** Defendant Mills filed a petition in probate court seeking a finding that the individual was in contempt, while simultaneously asserting claims for the same property in superior court without standing to assert claims for an estate. Defendant Epps joined the petition on behalf of the private party and urged the court to incarcerate the Plaintiff over Plaintiff's objections citing to violations of civil rights and exceptions to judicial immunity. Defendant Hunsinger entered an order presented by Defendants Epps and Mills *ex parte*, adjudicating a purported self-executing order for "interim contempt", and providing for incarceration.

   **4.** Following appellate proceedings, the unlawfully-appointed fiduciary then acted in concert with the private attorney and probate judge to file an *ex parte* report triggering the issuance of a "Bench Warrant and Arrest Order" issued by the probate court in secret. The confederates withheld the order from Plaintiff and his counsel, and simultaneously sent counsel a continuance order indicating no hearing on the issue of Plaintiff's incarceration would take place until further notice.

   **5.** As captured on video, Defendants then involved Oconee County Sheriff's Deputies, who were also clients of Defendant Epps, and who were promised football tickets to his "skybox" worth thousands of dollars per ticket with "plenty of food, plenty of booze." All he asked for in return was for the Deputies to "arrest that motherfucker." Deputies harassed Plaintiff at his home that night until nearly midnight, which resulted in a reprimand from the Sheriff after

the late-night "civil warrant service" was also caught on video. Athens-Clarke Police Officers conducted a warrantless arrest of Plaintiff the following day, before an Oconee County Deputy drove outside the county to pick him up. Plaintiff was booked into Oconee County jail on a criminal misdemeanor classification, held without bond, and remained incarcerated for four days despite invoking every statutory mechanism designed to prevent exactly that outcome.

6. At no stage of these proceedings did Plaintiff receive a formal criminal charge, an indictment, a presentment, an arraignment, an appointed or retained criminal defense attorney, a preliminary hearing, a jury, a finding of guilt beyond a reasonable doubt, or a right against self-incrimination. The Probate Court's jurisdiction is defined by O.C.G.A. § 15-9-30 *et seq.* Those statutes do not authorize any of the foregoing procedures because those statutes do not contemplate proceedings that result in the physical arrest and incarceration of a person as punishment for past conduct.

7. Plaintiff was arrested without a prior hearing, without notice, and without due process, on the basis of a contempt order that was itself predicated on a "protective order" entered in the clear absence of jurisdiction over property subject to conflicting claims of title. Under binding Georgia appellate authority, "probate courts do not have jurisdiction to adjudicate conflicting claims of title to real or personal property," and "disobedience of a void mandate, order, or judgment ... is not contempt of court." *In re Estate of Adamson*, 215 Ga. App. 613, 613 (1994). (Exhibits 7, 9).

8. Defendants confederated to maintain the legal position that "interim protection" and "temporary possession" did not require a determination of ownership, in obvious disregard of the rule of law that "[t]he owner of personalty is entitled to its possession." O.C.G.A. § 51-10-1 They maintained that position even though subject-matter jurisdiction is clearly absent for a

probate court to compel a person who claims ownership of property to force them to give the property an estate administrator without a prior determination of ownership in superior court, including the right to a trial by jury that applies to such property disputes. *In re Estate of Adamson*, 215 Ga. App. 613, 613 (1994).

**9.** Defendants purported to justify their actions taken in the clear absence of subject matter jurisdiction by citing to "consent" for Plaintiff to part with possession of his own property based on informal stipulations of Plaintiffs' previous counsel. Defendants continued to do so for years after they were explicitly informed of the rule of law that "[p]arties may not give jurisdiction to a court by consent, express or implied, as to the person or subject matter of an action." O.C.G.A. § 15-1-2

**10.** The Georgia Court of Appeals intervened following an emergency request for mandamus on August 12, 2025, exercising its inherent authority under Court of Appeals Rule 40(b) to order Plaintiff's immediate release, finding that the Probate Court had violated mandatory supersedeas statutes "seemingly in contravention of OCGA § 5-6-46(a)." But this relief came only after four days of unconstitutional incarceration - an injury that cannot be undone. Plaintiff seeks compensatory damages, punitive damages, and attorney's fees under 42 U.S.C. § 1988. (Exhibit 14).

## JURISDICTION AND VENUE

**11.** This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights jurisdiction) over Plaintiff's claims arising under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the United States Constitution.

**12.** This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as the federal claims.

**13.** Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Oconee County and Athens-Clarke County, Georgia, which are within the Athens Division of the Middle District of Georgia.

## PARTIES

### *Plaintiff*

**14.** Plaintiff Jason Farmer is a citizen and resident of the State of Georgia, residing in Oconee County. At all times relevant to this action, Plaintiff operated a business using construction equipment in Athens-Clarke County and Oconee County, Georgia.

### *Defendant Mike Hunsinger*

**15.** Defendant Mike Hunsinger is the elected Judge of the Probate Court of Oconee County, Georgia. He is sued in his individual capacity for non-judicial actions taken in the clear absence of all jurisdiction over the subject matter, which removes judicial immunity under *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978). In particular, he is "a probate judge with jurisdiction over only wills and the settlement of estates who tried a criminal case…in clear absence of all jurisdiction." Id.

**16.** At all times relevant hereto, Defendant Hunsinger acted under color of state law within the meaning of 42 U.S.C. § 1983.

**17.** Defendant Hunsinger is liable and responsible for the actions of the clerks and other staff of the Oconee County Probate Court who hold their offices at his pleasure pursuant to

O.C.G.A. § 15-9-36. As set forth below, non-judicial administrative acts by Deputy Clerk Julie Jackson in furtherance of the conspiracy to violate Plaintiff's civil rights are attributable to Defendant Hunsinger.

**18.** Since the time of the filing of the original complaint, Defendant Hunsinger was recused from further participation in Oconee County Probate Court Estates F-183 and F-189. (Bobby and Judy Farmer) Defendant Hunsinger is the subject of a pending investigation by the Georgia Judicial Qualifications Commission.

### *Defendant Jon Mills*

**19.** Defendant Jon Mills is a licensed attorney and equity partner at Durden & Mills, P.C., with offices at 1551 Jennings Mill Rd., Suite 2200B, Watkinsville, Georgia 30677. Mills was purportedly appointed Temporary Administrator with Will Annexed in Probate Court Case Nos. F-183 (Estate of Bobby James Farmer) and F-189 (Estate of Judy Lenora Farmer) in September 2022. Defendant Mills has been sanctioned for engaging in dishonorable abusive litigation practices by at least one other probate court. Defendant Mills was charged with felony crimes of moral turpitude in Florida (burglary) prior to his admission to the Georgia Bar, ultimately resulting in an adjudication of misdemeanor "theft."

**20.** Defendant Mills intentionally avoided subscription to the legal oath required for an administrator with will annexed at the time of his appointment[2] and has never received a lawful appointment to act as administrator with will annexed for the Estate of Judy Lenora Farmer, or to represent the Estate in any other representative capacity. When Plaintiff raised this deficiency in

---

[2] Plaintiff alleges that this benefitted Mills' secret benefactor – Defendant James Farmer – because it allowed Mills to avoid swearing to the proper "Oath" that would constrain him to execute the directives of Judy Farmer's Will. Since Judy left her son James with no vested interest in her property and no authority to represent her Estate, James and Epps needed Mills to act for them. The scheme to involve Mills was also intended to circumvent the "no contest" provision in Judy Farmer's Trust Agreement.

Superior Court by motion, Defendant Hunsinger entered an order citing "inadvertence" that purported to confer a lawful appointment retroactively in an order that was not designated "nunc pro tunc." That order was null and void for lack of jurisdiction because it was issued during the attachment of appellate supersedeas and prior to the issuance of a remittitur. To this day, Defendant Mills has no lawful representative authority for the Estate of Judy Lenora Farmer. (Exhibits 3, 4). Defendant Mills continues to act to the contrary, as evidenced by his continued prosecution of four separately-filed petitions in superior court citing to a purported, representative capacity for the Estate of Judy Lenora Farmer.[3]

**21.** Although nominally serving as a neutral court-appointed fiduciary, Defendant Mills functioned as an extension of Defendant Kevin Epps's litigation team, consistently advancing positions favorable to Defendant James Farmer while pursuing contempt sanctions and the arrest of Plaintiff. Mills triggered the Bench Warrant and Arrest Order by filing a "Notice of Non-Compliance" on August 7, 2025, and simultaneously filed a "Notice of Seizure" claiming possession and control of construction equipment - thereby adjudicating ownership in substance while labeling it merely "protection" of "estate property" .

**22.** Defendant James Farmer secretly loaned Defendant Mills $40,000 to fund litigation against James's siblings, despite Mills's ostensible role as a neutral court-appointed fiduciary. This secret financial arrangement demonstrates that Mills was functioning as James Farmer's agent and litigation ally, not as a neutral administrator.

---

[3] In superior court, Plaintiff filed a motion to dismiss citing to Mills illegal appointment and lack of standing for his later mother's Estate more than a year ago that has not yet been addressed or decided.

### *Defendant Kevin Epps*

**23.** Defendant Kevin Epps is a licensed attorney and equity partner at Epps, Holloway, DeLoach & Hoipkemier, LLC, with offices at 1220 Langford Drive, Building 200-101, Watkinsville, Georgia 30677. Epps represents Defendant James Farmer in the underlying estate and trust litigation. After beginning his ignominious career by working for an attorney who was disbarred for misappropriation of client funds, Epps was later sued for fraud by another firm that employed him.

**24.** In the August 7, 2024, contempt hearing before Defendant Hunsinger, Defendant Epps explicitly referenced the prospect of "federal" claims and "1983 litigation" while simultaneously requesting that Defendant Hunsinger issue bench warrants for Plaintiff's arrest. This demonstrates Epps's knowledge that procuring an arrest warrant from a probate court acting without jurisdiction was legally problematic and could give rise to civil rights liability, yet he pursued that course of action anyway. .

### *Defendant James Dale Farmer*

**25.** Defendant James Dale Farmer is Plaintiff's brother and was the petitioner in Probate Court Case No. F-183 (Estate of Bobby James Farmer) and Case No. F-189 (Estate of Judy Lenora Farmer). James Farmer also initiated the Superior Court litigation (Case No. SUCV2021000056), which was ultimately dismissed on summary judgment in December 2024 for lack of standing. (Exhibits 5, 6).

**26.** Defendant James Farmer has made statements under oath reflecting his intent to use litigation to coerce his siblings, telling his sister words to the effect: "I have all the money in the world, and I will keep you in court long enough for you to go bankrupt and you will NEVER have Momma and Daddy's place because my money won't end and you won't ever be able to

keep up with me. I have more money than God and I will find a way to keep you in court till you run out!" James Farmer filed a verified "Motion for Joinder" in the contempt proceedings, making him a direct participant—not merely a passive observer represented by counsel—in the proceedings that led to Plaintiff's arrest. .

27. James Farmer takes no beneficial interest according to his parents' Wills. He consented through his counsel to the admission of his parents' Wills to probate in solemn form, thereby extinguishing any interest he may have had prior to that time based on descendant and/or intestacy rights. Bobby and Judy Farmer passed over James Farmer when nominating their executor/executrix, naming his younger siblings as backups instead, thereby disinheriting Defendant James Farmer of all property and all standing to complain. (Exhibit 1).

28. Defendant James Farmer swore to verifications under oath when asserting claims in Superior Court in 2021, citing items of so-called "trust property" that he was later constrained to admit did not exist. James Farmer lied under oath in an attempt to establish standing as a purported "named beneficiary," even though he had no vested interest in any property held in trust. Subsequently, Defendant James Farmer swore to the truth of the facts alleged in a "Motion to Compel Surrender" of his brother Jason's property by referring to the same items he had previously sworn were "trust property" in Superior Court as "estate property" in Probate Court—contradictory designations demonstrating the mislabeling pattern alleged herein.

29. Defendant James Farmer testified in deposition that he had no evidence that Jason Farmer had committed forgery, despite having alleged forgery under oath in his Superior Court complaint. This admission undermines the factual basis for the entire course of litigation James Farmer pursued against Plaintiff.

**30.** Upon information and belief, Defendant James Farmer paid Defendants Epps and Mills approximately $250,000 to concoct standing and claims against his siblings in an attempt to extort property from them through the abuse of process. This extraordinary expenditure on litigation against family members, combined with his statements regarding his intent to use wealth as a weapon, demonstrates the malicious purpose behind the coordinated scheme alleged herein. .

**FACTUAL ALLEGATIONS**

*A. The Estate and Trust Disputes*

**31. April 3, 2020**: Bobby James Farmer ("Mr. Farmer") died in Oconee County, Georgia. His Will and Estate were probated in the Probate Court of Oconee County, Case No. F-183.. Judy Farmer was Bobby's Executrix with full powers to dispose of his property.

**32. July 14, 2020**: Prior to her death, Judy Lenora Farmer executed an "Assignment and Bill of Sale" transferring ownership of farm and construction equipment - including a P&H crane, Sky Trak, and dump truck - to her son Jason Farmer (the Plaintiff). This document was notarized and acknowledged. .

**33. August 12, 2020**: Judy Lenora Farmer entered into a "Trust Agreement" with her daughter, Christie Lynn Mitchell, for an Irrevocable Trust ("the Trust"), naming Christie Lynn Mitchell as Trustee. The Trust provided for the distribution of, among other things, "any collection of fire arms, knives, and tractors as well as any construction equipment and supplies previously owned or held by Bobby James Farmer." (Exhibit 2). No such items were ever transferred to be held in trust, and no such items will ever be transferred to be held in trust unless at least three conditions precedent are satisfied, all of which are subject to the discretion of

10

parties other than James Farmer, who has no vested interest in items of "trust property" that do
not exist.

**34. November 22, 2020**: Judy Lenora Farmer died in Oconee County, Georgia.

**35. March 1, 2021**: Defendant James Farmer filed a civil action in the Superior Court of
Oconee County (Case No. SUCV2021000056) against Christie Lynn Mitchell (as Trustee) and
Jason Farmer, asserting claims related to the Trust and the disputed construction equipment.

### B. There Are No Ongoing Estate Proceedings in Estates F-183 and F-189

**36.** According to the Georgia Probate Records system, there are no ongoing estate
proceedings for Bobby and Judy Farmer. The Estate of Bobby James Farmer, Case No. F-183,
and the Estate of Judy Lenora Farmer, Case No. F-189, are reflected in the public record as
"CLOSED.". Defendants' repeated invocations of "ongoing probate proceedings" to justify the
exercise of jurisdiction are therefore belied by the public site for "Georgia Probate Records."

**37.** Even if that designation were incorrect, there are no ongoing estate proceedings that
implicate the subject matter of the Bench Warrant and Arrest Order.

**38.** Bobby Farmer's Estate was assigned and transferred to Judy Farmer's Estate. The
only beneficiary of Judy Farmer's Will is the Irrevocable Trust of Judy Lenora Farmer. The
adjudication of criminal contempt under the guise of "ongoing estate proceedings" relates to
property neither belonging to an estate, nor subject to orders presented to Defendant Hunsinger
by Defendants Epps (for James Farmer) and Mills for his ultra vires authorization. (Exhibits 1,
2).

**39.** There are no ongoing estate proceedings that interest Defendant Hunsinger, who was
recused from any further participation in those Estates as described in Paragraph 18 above. .

40. There are no ongoing estate proceedings that interest Defendant Mills, who has never received a lawful appointment as described in Paragraphs 19-20 above, and who has no representative authority for the Estate of Judy Lenora Farmer. There are no ongoing proceedings for the Estate of Bobby Farmer that interest Defendant Mills because Bobby's entire Estate was assigned and transferred to Judy Farmer's Estate. (Exhibits 3, 4).

41. There are no ongoing estate proceedings that interest Defendant Epps or his client, James Farmer. On behalf of Defendant James Farmer, Defendant Epps filed motions for an "heir" of <u>testate</u> decedents who had no status as an "interested party" following the admission of Bobby and Judy Farmer's Last Wills to probate in solemn form with James' consent. .

42. There are no ongoing estate proceedings that interest Defendant James Farmer, who takes no beneficial interest according to his parents' Wills as described in Paragraph 27 above. Likewise, Jason Farmer does not take a beneficial interest according to either of his parents' Wills. The adjudication of criminal contempt without due process resulting in the alleged "Bench Warrant" was entered in the clear absence of jurisdiction to adjudicate criminal contempt in connection with "estate proceedings" that do not exist. (Exhibit 1).

### C. The Probate Court's Jurisdictionally Void "Protective Order"

43. **July 14, 2023**: Defendant Hunsinger entered a "Protective Order" purporting to grant the Administrator mere "possession" and "control" of the disputed construction equipment – allegedly "without a determination of ownership" - pending resolution of the ownership dispute in Superior Court. (Exhibit 7).

44. The Protective Order itself acknowledged the jurisdictional limitation by stating that "the Superior Court of Oconee County has sole jurisdiction to determine the ownership of the construction equipment." Yet the order substantively determined ownership by stripping Plaintiff

of every incident of ownership: the right to possess, use, move, or exclude others from the equipment. Under established property law, possession and the right to exclude are the most fundamental "sticks in the bundle" of property rights.

**45.** Under binding Georgia appellate authority, the Probate Court lacked jurisdiction to enter any order adjudicating conflicting claims of title to personal property. "In Georgia, it is well-settled that probate courts do not have jurisdiction to adjudicate conflicting claims of title to real or personal property"; and, compelling someone to surrender possession of disputed property to an administrator is the model for such a *ultra vires* adjudication. *In re Est. of Adamson*, 215 Ga. App. 613, 613 (1994); *Cunningham v. Est. of Cunningham*, 304 Ga. App. 608, 697 S.E.2d 280 (2010).

**46.** Because the Probate Court clearly lacked subject matter jurisdiction over the disputed property, the Protective Order was void ab initio - not merely voidable. "Where the court has no jurisdiction over the subject-matter of a suit, parties cannot confer jurisdiction by agreement ... The judgment in such a case is void, and no consent or waiver of the parties litigant can make it a legal judgment." *O'Brien v. Harris*, 105 Ga. 732, 31 S.E. 745, 746 (1898); *see also* O.C.G.A. § 15-1-2 ("Parties may not give jurisdiction to a court by consent, express or implied, as to the ... subject matter of an action.").

**47.** Furthermore, Plaintiff did not consent to the Protective Order. Defendant Mills presented the order to the Court with the signature line reading "See Transcript 6-14-23" in lieu of Plaintiff's counsel's actual signature, in violation of Georgia Uniform Court Rule 5.3.4, which requires that an attorney of record sign any document filed on behalf of a represented party. Mills also inserted language into the proposed order purportedly waiving Plaintiff's right to a

jury trial - a right guaranteed by the Seventh Amendment - even though no such waiver was discussed at the June 14, 2023, hearing. (Exhibit 7).

### D. The "Interim" Contempt Order

**48. September 3, 2024**: Despite Plaintiff's counsel's repeated objections that the Probate Court lacked jurisdiction and that the Protective Order was void, Defendant Hunsinger entered an "Interim Order Finding Jason Farmer in Contempt of Court" ("Contempt Order"). The Contempt Order found "that Jason Farmer is in willful contempt of the Protective Order lawfully entered on July 14, 2023." (Exhibits 8, 9).

**49.** The Contempt Order was criminal, in substance, because it imposed incarceration not as a coercive sanction to compel compliance with a court order, but as punishment for past disobedience. The order directed that Plaintiff could be arrested and held indefinitely "until further order of this Court." Under the Supreme Court's holding in *International Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 828–29 (1994), and the Eleventh Circuit's analysis in *In re Hipp, Inc.*, 895 F.2d 1503, 1510 (11th Cir. 1990), contempt sanctions that are primarily punitive in character invoke criminal procedural protections, regardless of the label assigned by the issuing court. (Exhibit 9).

**50.** The adjudication of contempt was not "interim" in any meaningful sense. The Contempt Order stated that Jason Farmer "shall be arrested and held in the Oconee County Jail until such time that a hearing can be held regarding the same." This language committed the "keys to the jail" to the probate court's discretion to determine "such time that a hearing can be held," rather than providing Plaintiff with any purge condition through which he could secure his own release by compliance. This is the hallmark of criminal, not civil, contempt. (Exhibit 9).

14

**51.** The Contempt Order also required Jason Farmer to pay $30,000 to the Estate of Judy Lenora Farmer through the Administrator Jon Mills, despite the fact that Jason neither owed the Estate rental income on his own property, nor the fact that Jon Mills was not the lawfully appointed administrator of Judy's Estate or any other form of personal representative with powers to act for it. (Exhibits 3, 9).

**52.** Plaintiff timely appealed the Contempt Order through multiple avenues, including direct appeal to the Georgia Court of Appeals (Case No. A25A0690), certiorari to the Georgia Supreme Court (Case No. S25C0584), and petition for judicial review in the Superior Court of Oconee County (Case No. SUCV2024000326). Despite the inexplicable characterization of the adjudication of contempt as "interlocutory" based on the fictitious label of the order, rather than what it did, these appellate proceedings had a supersedeas effect under Georgia law, preventing execution of the Contempt Order. (Exhibits 10, 14, 15).

### E. The Simultaneous Continuance and Secret Arrest Warrant

**53. August 1, 2025**: The Superior Court of Oconee County granted James Farmer's Motion to Dismiss concerning Plaintiff's Petition for Judicial Review, thereby restoring jurisdiction to the probate court to schedule a hearing relating to the threat of incarceration.. Only weeks prior to that, Jason Farmer made a Facebook post alleged malfeasance relating to the administration of his Parents' Estates, naming all of the above-named Defendants, who confederated on a scheme to retaliate with the assistance of another one of Epps' clients, the Oconee County Sheriff Department.

**54. August 5, 2025**: At the request of Defendant Epps' firm, the Probate Court issued a Rule Nisi commanding the parties and their counsel to appear on August 8, 2025, as to "why Jason Farmer should not be incarcerated." This Rule Nisi was issued with only three days'

notice, in violation of the Probate Court's own Rule 10.5, which requires ten days' advance notice by first class mail for hearings on contested matters. .

**55. August 6, 2025**: At approximately 8 p.m., Defendant Jon Mills traveled to Plaintiff's job site and unilaterally seized one of Plaintiff's cranes that was subject to the Contempt Order, and filed a "Notice of Seizure" with the Probate Court claiming "possession and control of said equipment" and purporting to prohibit "any third party" from operating or relocating the equipment "without the advance, express permission of the undersigned." This seizure constituted a de facto determination of ownership - precisely the type of adjudication the Probate Court lacked jurisdiction to authorize..

**56. August 7, 2025**: On this date, the Probate Court entered two contradictory orders. First, the Court entered an "Order for Continuance" that stated the Court "will continue the hearing" as to "why Jason Farmer should not be incarcerated ... until a date to be determined by the Court." This Order for Continuance was served on all counsel by email on August 7, 2025.. The Order was a non-judicial "head fake."

**57.** On the same date - August 7, 2025 - the Probate Court secretly issued a "Bench Warrant and Arrest Order" commanding the Sheriff of Oconee County to "arrest Jason Farmer and to hold Jason Farmer in the Oconee County Jail until further order of this Court." Notice of this Bench Warrant was **withheld from Plaintiff's counsel and all parties** until August 11, 2025 - three days after Plaintiff had already been arrested and incarcerated..

**58.** Upon information and belief, the so-called "Bench Warrant" was prepared by Defendant Epps for his client, James Farmer, and presented to Defendant Hunsinger for signature. The document was not prepared by the Court or its staff in the ordinary course of judicial administration. (Exhibit 11).

**59.** The simultaneous issuance of a continuance order (served on counsel) and a secret bench warrant (withheld from counsel) demonstrates that the arrest was designed to prevent Plaintiff from exercising his legal rights, including the right to invoke automatic supersedeas under O.C.G.A. § 5-6-13 before being taken into custody. .

**60.** Defendant Mills triggered the Bench Warrant by filing a "Notice of Non-Compliance" on August 7, 2025, reporting to the Court that Plaintiff had "failed to comply with the July 14, 2023 Protective Order" and had "failed to meet the mandated requirements in order to purge himself from such contempt." This Notice of Non-Compliance was an *ex parte* submission - Plaintiff was afforded no opportunity to respond before the order issued. .

### F. The Arrest and Incarceration

**61. August 8, 2025**: Law enforcement officers from the Athens-Clarke County Police Department seized Plaintiff at his place of business in Athens-Clarke County, Georgia with no "warrant" or "arrest order" in hand. Plaintiff was held there until deputies of the Oconee County Sheriff's Office transported him to the Oconee County Jail, where he was incarcerated for a misdemeanor citing to an unrelated "state court" contempt order, rather than "probate court."[4] .

**62.** Radio communications between Athens-Clarke County Police and the Oconee County Sheriff's Office on August 8, 2025, described the instrument under which Plaintiff was arrested as a "civil warrant" - a category of process that does not exist in Georgia law as a basis for physical arrest. When Athens-Clarke County officers inquired about the warrant, they were told it was "not in GCIC" (the Georgia Crime Information Center database) "because it's a civil warrant.".

---

[4] The absence of subject matter jurisdiction is so clear in this case that it was impossible to connect to any statute.

17

63. Athens-Clarke County Police Officers stated that they had never heard of a "civil arrest warrant" before when they were asked to assist with "civil service" by seizing and holding Jason Farmer in Athens-Clarke County. The fact that experienced law enforcement officers had no frame of reference for the instrument being executed underscores the legal impossibility of what occurred in the clear absence of subject matter jurisdiction. .

64. The law enforcement characterization of the warrant as a "civil warrant" reveals the fundamental legal impossibility of what occurred: Georgia law does not authorize the arrest and physical detention of a person on a "civil warrant." If the process was civil in nature, it could not authorize arrest and indefinite detention without a bond, as Plaintiff was booked; if it authorized arrest and indefinite detention subject to bail , it was criminal in nature and required criminal procedural protections prior to arrest that were not provided. The Defendants cannot have it both ways, yet they invented labels out of thin air with the expectation that neither Plaintiff, his counsel, nor any judge would have the moral courage to stop them. .

65. Plaintiff's jail records classified him as "PRE TRIAL MISD"—a criminal misdemeanor classification. This classification is irreconcilable with Defendants' characterization of the proceedings as "civil" in nature. The jail's classification reflects the criminal reality of what occurred: Plaintiff was arrested and detained on a criminal charge—misdemeanor contempt—without criminal procedural protections..

66. The booking report in Oconee County cited a misdemeanor of contempt out of "State Court," rather than "Probate Court." This misidentification of the court of origin further demonstrates the irregular and unclassifiable nature of the purported warrant: the instrument could not be properly identified by any entity in the criminal justice system because no such instrument lawfully exists. .

67. Plaintiff was held in the Oconee County Jail without bond. His initial admission report reflected "NO BOND." At no point prior to arrest was Plaintiff afforded notice of the specific allegations against him, an opportunity to be heard, the right to counsel, or any of the procedural protections required for criminal contempt proceedings. .

68. Unlike a bench warrant issued by a court with jurisdiction, the order did not provide for an attachment to present the contemptor to a judge for a hearing. Instead, it required Jason Farmer to be booked into jail without bond of any kind, to be held indefinitely at the whims of Defendant Hunsinger and his confederates, rather than subject to compliance with purge conditions that would allow the contemptor to secure his own release. .

### G. Non-Judicial Administrative Acts of Defendant Hunsinger and His Staff

69. Defendant Hunsinger engaged in an administrative, non-judicial act by withholding the filing of the "Bench Warrant and Arrest Order"—which functioned as a final order of criminal contempt against Jason Farmer - in violation of O.C.G.A. § 15-9-40, which provides that "the proceedings shall always be kept on file." (Exhibit 15).

70. Liability is imputed to Defendant Hunsinger for the following non-judicial administrative acts of his Deputy Clerk Julie Jackson, who holds her office at his pleasure under O.C.G.A. § 15-9-36:

    a. Ms. Jackson withheld certification of the "entire record" on multiple appeals by Jason Farmer of probate court orders ;

    b. Ms. Jackson omitted records when transmitting the clerk's record to the Georgia Court of Appeals that showed that Jon Mills was not lawfully appointed as administrator with will annexed for the Estate of Judy Lenora Farmer ;

c. Ms. Jackson sent a recent supplement of records to the Georgia Court of
Appeals that she certified as the "entire record," even though it omitted a
word-formatted order emailed to the probate court proving that Jason
Farmer's counsel did not propose a $500,000 bond ;

d. Ms. Jackson file-stamped the "Bench Warrant" to show that it was filed on
August 7, 2025, retroactively, in an attempt to avoid discovery of the fact that
the "Bench Warrant" was intentionally withheld from the clerk's record and
the GCIC to avoid detection by Jason Farmer or his counsel prior to his arrest.
(Exhibit 15).

**71.** These administrative acts are not judicial in nature and are not protected by judicial
immunity. They constitute affirmative efforts to conceal the unlawful issuance of the bench
warrant, tamper with appellate records, and obstruct Plaintiff's ability to challenge the orders
giving rise to his incarceration. (Exhibit 15).

### H. The Emergency Supersedeas and Release

**72. August 8, 2025**: On the same day as Plaintiff's arrest, Plaintiff's counsel filed a
"Notice of Intent to Seek Review and Application for Supersedeas" in the Probate Court. Under
O.C.G.A. § 5-6-13(a), a trial court has no discretion to grant or refuse supersedeas in cases of
contempt where the defendant has submitted written notice of intent to seek review. The statute
"calls a mandatory halt [to punishment for contempt] as a matter of right." *Calvert Enterprises,
Inc. v. Griffin-Spalding County Hosp. Auth.*, 197 Ga. App. 727, 729 (1990). (Exhibit 12).

**73. August 11, 2025**: Three days after Plaintiff's arrest—and three days after the
supersedeas application was filed—Defendant Hunsinger finally entered an "Order for
Supersedeas Bond" conditioning Plaintiff's release on the posting of a **$500,000 supersedeas**

**bond**. This bond requirement was imposed in contravention of O.C.G.A. § 5-6-46(a), which provides that "it shall not be necessary that a supersedeas bond or other form of security be filed" unless the appellee files a motion seeking one. No appellee had filed such a motion. .

**74. August 11, 2025**: Plaintiff filed his formal Notice of Appeal to the Georgia Court of Appeals and filed an Emergency Petition for Supersedeas Bond or Mandamus Order with the Court of Appeals (Case No. A26E0016). (Exhibit 13).

**75. August 12, 2025**: The Georgia Court of Appeals granted Plaintiff's emergency motion, exercising its inherent authority under Court of Appeals Rule 40(b) because "this issue involves the incarceration of a litigant, which cannot be undone if we find error in a docketed appeal." The Court of Appeals ordered the Probate Court to **vacate** its Order for Supersedeas Bond and issue an order granting supersedeas **without bond**. The Court further ordered that Plaintiff "be released from custody instanter." (Exhibit 14).

**76.** Plaintiff was incarcerated for four days - from August 8 through August 12, 2025 - as a direct result of Defendants' conduct. (Exhibit 14).

### I. The Pattern of Intentional Mislabeling

**77.** Defendants engaged in a pattern of intentional mislabeling throughout these proceedings to circumvent jurisdictional and procedural requirements:

    a. Calling property adjudication "protection" instead of "ownership determination" to circumvent the clear absence of subject matter jurisdiction according to *In re Estate of Adamson*;

    b. Labeling criminal contempt as "civil contempt" to avoid criminal procedural protections;

    c. Calling an arrest warrant a "civil warrant" to avoid GCIC entry and scrutiny ;

d. Labeling items as "trust property" in Superior Court and "estate property" in

Probate Court as litigation strategy required

**78.** Each mislabeling served the same purpose: to allow the Probate Court to exercise

powers it does not possess while evading the procedural protections and appellate review that

proper exercise of those powers require.

### J. The "Bench Warrant" Is Not a Valid Bench Warrant

**79.** The so-called "Bench Warrant" Defendant Hunsinger signed was not a bench warrant

within the meaning of Georgia law. A true bench warrant is process issued by a court with

jurisdiction to compel the appearance of a person before the court. The instrument issued here

was fundamentally different in the following respects:

a. The instrument was prepared by Defendant Epps for his client James Farmer,

not by the Court or its staff in the ordinary course (Exhibit 11);

b. It was intentionally withheld from the GCIC to avoid detection by Jason

Farmer or his counsel prior to his false arrest (Exhibit 15)

c. Athens-Clarke County Police Officers stated they had never heard of a "civil

arrest warrant" when asked to assist with "civil service" by seizing and

holding Jason Farmer ;

d. The booking report in Oconee County cited a misdemeanor of contempt out of

"State Court" rather than "Probate Court," demonstrating that no entity in the

criminal justice system could properly classify the instrument ;

e. Unlike a bench warrant issued by a court with jurisdiction, the order did not

provide for an attachment to present the contemptor to a judge; instead, it

required Jason Farmer to be booked into jail without bond of any kind ;

f. The instrument allowed for indefinite incarceration at the whims of Defendant

Hunsinger and his confederates, rather than providing purge conditions

through which Plaintiff could secure his own release.. .

**80.** The instrument was, in substance, a criminal finding of contempt and order of

incarceration issued by a court without criminal jurisdiction. That is established in this case by

the binding judicial admission of Defendant Epps in his Answer regarding Plaintiff's **"guilt to**

**the charges that were brought against him."** (Epps Answer, Twelfth Defense, p. 30)

### *K. Defendants' Knowledge of Civil Rights Liability*

**81.** During the August 7, 2024, contempt hearing before Defendant Hunsinger one year

before Plaintiff's arrest, Defendant Epps explicitly discussed the prospect of "federal claims,"

"1983 litigation," and "false arrest and false imprisonment without judicial immunity" while

simultaneously requesting that Defendant Hunsinger issue bench warrants for Plaintiff and his

counsel. This is reflected in the transcript of the August 7, 2024 hearing.. All above-named

Defendants were present at that hearing.

**82.** Defendant Epps's statements demonstrate that Defendants were fully aware that

adjudicating a criminal contempt resulting in incarceration by a probate court acting without

jurisdiction over the subject matter would give rise to civil rights liability and that judicial

immunity would not protect the judge in such circumstances. Notwithstanding, Defendants

proceeded to do precisely that one year later.

### *L. The Conspiracy*

**83.** Beginning no later than 2023 and continuing through August 12, 2025, Defendants

conspired and acted in concert to deprive Plaintiff of his constitutional rights under the Fourth

and Fourteenth Amendments. The conspiracy involved:

a. Defendant Mills presenting the Protective Order to the Court with a fabricated consent signature, knowing the Court lacked jurisdiction (Exhibit 7);

b. Defendant Mills filing the Petition for Contempt despite being on notice that the Protective Order was void (Exhibit 8);

c. Defendant Epps filing a "Motion for Joinder" on behalf of James Farmer in the contempt proceedings, making James Farmer a direct participant in the prosecution ;

d. Defendant Epps requesting bench warrants at the August 7, 2024 hearing while simultaneously acknowledging the risk of federal liability ;

e. Defendant Epps preparing the "Bench Warrant and Arrest Order" for his client James Farmer and presenting it to Defendant Hunsinger for signature (Exhibit 11);

f. Defendant Mills filing the Notice of Non-Compliance on August 7, 2025, to trigger the arrest warrant ;

g. Defendant Hunsinger issuing the secret Bench Warrant on the same day as the Continuance Order, withholding notice from Plaintiff's counsel;

h. Deputy Clerk Julie Jackson retroactively file-stamping the Bench Warrant and omitting records from appellate transmissions (Exhibit 15)

i. The coordinated timing of the Notice of Seizure (August 6–7), the Continuance Order (August 7), and the secret Bench Warrant (August 7) to ensure Plaintiff's arrest before he could invoke his supersedeas rights ;

j. Defendant Hunsinger imposing a $500,000 supersedeas bond in violation of O.C.G.A. § 5-6-46(a) to prolong Plaintiff's incarceration ;

24

k. Defendant James Farmer secretly loaning Defendant Mills $40,000 to fund litigation against Plaintiff while Mills was ostensibly serving as a neutral court-appointed fiduciary ;

l. Defendant James Farmer paying Defendants Epps and Mills approximately $250,000 to concoct standing and claims against his siblings ;

m. Defendant James Farmer swearing to contradictory verifications under oath - characterizing the same items as "trust property" in Superior Court and "estate property" in Probate Court - to support whatever jurisdictional theory served the conspiracy's purposes at a given time.

**84.** Each overt act in furtherance of the conspiracy is attributable to all co-conspirators, regardless of which Defendant personally performed it.

### M. Color of State Law

**85.** Defendants Epps, Mills, and James Farmer, although private attorneys and a private party, acted under color of state law through their joint participation with Defendant Hunsinger in the coordinated scheme to deprive Plaintiff of constitutional rights. The Supreme Court has held that "private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of [§ 1983]." *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

**86.** The ex parte communications, coordinated timing, secret financial arrangements, and joint action to secure Plaintiff's arrest without notice or hearing establish that Defendants were "jointly engaged" with a state official in depriving Plaintiff of constitutional rights.

### N. Damages

**87.** As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer the following damages:

a. Physical restraint and loss of liberty for four days;

b. Humiliation and emotional distress from being arrested at his place of business in front of employees and associates;

c. Damage to personal and business reputation;

d. Lost income;

e. Attorney's fees and costs incurred in securing emergency mandamus relief from the Georgia Court of Appeals;

f. Ongoing impact on his physical health including stress-related hospitalizations for an aortic dissection and stroke, as well as mental health complications, stress, and mental anguish;

g. Consciousness of confinement throughout the four-day period of unconstitutional incarceration.

## CLAIMS FOR RELIEF

## COUNT I

## VIOLATION OF FOURTH AMENDMENT RIGHTS — FALSE ARREST
### 42 U.S.C. § 1983
### (Against All Defendants)

**88.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**89.** The Fourth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, protects persons against unreasonable seizures, including arrests without probable cause or legal authority.

**90.** Defendants, acting under color of state law and in concert with each other, caused Plaintiff to be arrested and detained from August 8 through August 12, 2025, pursuant to a Bench Warrant and Arrest Order issued by a court without subject matter jurisdiction over the

underlying dispute. The "warrant" was *void ab initio* because it was issued in the "clear absence of all jurisdiction" within the meaning of *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978).

91. A void warrant provides no "legal process" defense to a false arrest claim. The Bench Warrant was the product of a probate court purporting to exercise criminal contempt power, a power that Georgia probate courts clearly do not possess. *See* Ga. Const. of 1983, Art. VI, Sec. III, Par. I; O.C.G.A. § 15-9-30 et seq.

92. Defendant Hunsinger acted in "clear absence of all jurisdiction" within the meaning of *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978), and is not entitled to judicial immunity. The *Stump* Court itself recognized that "a judge of a probate court who held a criminal trial would act in clear absence of all jurisdiction." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 352 (1872).

93. Defendants Epps, Mills, and James Farmer are not judicial officers and are not entitled to judicial immunity. They participated in and procured Plaintiff's unconstitutional arrest through knowing abuse of the judicial process.

94. Potential "John Doe" Defendants executed the arrest warrant despite the fact that it was described by their own agencies as a "civil warrant", an instrument that does not exist in Georgia law as a basis for arrest. A reasonable officer would not execute an arrest warrant that his own agency could not properly classify or enter into GCIC.

95. As a direct and proximate result of Defendants' conduct, Plaintiff suffered the damages described herein.

**COUNT II**

**DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS**
**42 U.S.C. § 1983 (FOURTEENTH AMENDMENT)**
**(Against All Defendants)**

**96.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**97.** The Fourteenth Amendment prohibits states from depriving any person of liberty without due process of law.

**98.** Defendants, acting under color of state law and in concert with each other, caused Plaintiff to be deprived of his liberty from August 8 through August 12, 2025, without due process of law.

**99.** Plaintiff's deprivation of liberty occurred pursuant to void orders entered without subject matter jurisdiction. This is a structural constitutional violation, not a procedural defect subject to post-deprivation remedies.

**100.** The following due process violations occurred:

a. Plaintiff was afforded no hearing before the Bench Warrant and Arrest Order was issued on August 7, 2025 ;

b. The Bench Warrant was issued based solely on Defendant Mills's ex parte Notice of Non-Compliance, without affording Plaintiff notice or an opportunity to respond ;

c. The Bench Warrant was withheld from Plaintiff's counsel, preventing Plaintiff from exercising his right to seek supersedeas before arrest ;

d. The underlying Contempt Order was criminal in nature but was entered without the procedural protections required for criminal contempt, including proof

beyond a reasonable doubt, the right to jury trial, and the right against self-

incrimination (Exhibit 9);

e. O.C.G.A. § 5-6-13 mandates automatic supersedeas in contempt cases, but

Defendant Hunsinger violated this mandatory statute;

f. O.C.G.A. § 5-6-46(a) prohibits requiring supersedeas bonds in contempt cases,

but Defendant Hunsinger imposed a $500,000 bond to prolong Plaintiff's

incarceration. .

**101.** The inadequacy of state remedies is demonstrated by Plaintiff's four-day

incarceration despite invoking every statutory protection designed to prevent precisely that

injury. Emergency mandamus relief from the Georgia Court of Appeals was ultimately required

to secure Plaintiff's release.

**102.** As a direct and proximate result of Defendants' conduct, Plaintiff suffered the

damages described herein.

### COUNT III

### CONSPIRACY TO DEPRIVE CIVIL RIGHTS
### 42 U.S.C. §§ 1983 AND 1985(3)
### (Against All Defendants)

**103.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth

herein.

**104.** Defendants conspired and acted in concert to deprive Plaintiff of his constitutional

rights under the Fourth and Fourteenth Amendments. The conspiracy involved: (a) ex parte

communications between Defendant Epps, Defendant Mills, and Defendant Hunsinger regarding

the arrest warrant; (b) coordinated strategy among Defendants Mills, Epps, and James Farmer to

procure Plaintiff's arrest; (c) the knowing use of void orders to coerce Plaintiff; (d) the

concealment of the arrest warrant from Plaintiff's counsel; (e) the coordinated timing of the Notice of Seizure, the Continuance Order, and the secret Bench Warrant to ensure Plaintiff's arrest before he could invoke his supersedeas rights; and (f) the secret financial arrangements between James Farmer and Defendant Mills that corrupted Mills's ostensible role as neutral fiduciary.

**105.** The conspiracy was effectuated through overt acts including, but not limited to, each of the acts alleged in the Factual Allegations section above.

**106.** As a direct and proximate result of the conspiracy, Plaintiff suffered the damages described herein.

**COUNT IV**

**FALSE ARREST AND FALSE IMPRISONMENT**
**(Georgia State Law)**
**(Against All Defendants)**

**107.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**108.** Under Georgia law, an arrest without legal authority constitutes false arrest, and the subsequent detention constitutes false imprisonment. O.C.G.A. § 51-7-20 provides: "An arrest under process of law, without probable cause, when made maliciously, shall give a right of action to the party arrested."

**109.** Under O.C.G.A. § 51-7-21: "A judicial officer issuing a warrant in good faith shall not be liable for false imprisonment, provided that, when he has no jurisdiction, there is no presumption against such officer's good faith." Because Defendant Hunsinger acted without subject matter jurisdiction, there is no presumption of good faith, and the question of good faith is for the jury to determine.

**110.** The arrest warrant was issued without jurisdiction, without due process, and based on contempt of a void order. Defendants are jointly and severally liable for Plaintiff's false arrest and imprisonment.

**111.** As a direct and proximate result of Defendants' conduct, Plaintiff suffered the damages described herein, including four days' loss of liberty, humiliation, emotional distress, lost income, and reputational harm.

**COUNT V**

**ABUSE OF PROCESS**
**(Georgia State Law)**
**(Against Defendants Mills, Epps, and James Farmer)**

**112.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**113.** Defendants used legal process - the contempt and arrest proceedings - for an improper purpose: to coerce Plaintiff into surrendering property he owns, to punish him for asserting his legal rights, and to gain advantage in related civil litigation.

**114.** The abuse of process is evidenced by: (a) pursuing contempt proceedings in the Probate Court while knowing the court lacked jurisdiction; (b) procuring an arrest warrant through ex parte submissions without affording Plaintiff an opportunity to be heard; (c) concealing the arrest warrant while simultaneously issuing a continuance order to create a false sense of security; (d) seeking to strip Plaintiff of all incidents of property ownership under the guise of "protection"; and (e) Defendant James Farmer's statements regarding his intent to use wealth and litigation to coerce his siblings into surrendering property.

**115.** As a direct and proximate result of Defendants' abuse of process, Plaintiff suffered the damages described herein.

## COUNT VI

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Georgia State Law)**
**(Against All Defendants)**

**116.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**117.** Defendants' conduct - including the issuance of a secret arrest warrant, the four-day unconstitutional incarceration, the withholding of notice from counsel, the imposition of an unlawful $500,000 supersedeas bond, and the coordinated scheme to deprive Plaintiff of liberty - was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community.

**118.** Defendants acted intentionally or with reckless disregard for the probability of causing severe emotional distress to Plaintiff.

**119.** As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff suffered severe emotional distress, including anxiety, humiliation, fear, and ongoing psychological harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jason Farmer respectfully prays that this Court enter judgment in his favor and against Defendants, jointly and severally, as follows:

1. Compensatory damages in an amount to be proven at trial for all injuries suffered, including but not limited to loss of liberty, physical restraint, emotional distress, humiliation, reputational harm, lost income, and attorney's fees incurred in securing emergency relief;

2. Punitive damages against all individual-capacity Defendants in an amount sufficient to punish Defendants for their willful, wanton, and outrageous conduct and to deter similar conduct in the future;

3. Attorney's fees and costs pursuant to 42 U.S.C. § 1988;

4. Pre-judgment and post-judgment interest as allowed by law;

5. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted this 10th day of February, 2026.

*/s/ John Baker*
John Baker
Georgia Bar No. 033797
John Baker Law
1551 Jennings Mill Rd., Suite 3100B
Watkinsville, Georgia 30677
Telephone: (706) 608-2406
Email: john@johnbaker.law

*Attorney for Plaintiff Jason Farmer*


## CERTIFICATE OF SERVICE


I hereby certify that on this 10th day of February, 2026, I caused a true and correct copy of the foregoing First Amended Complaint and its accompanying Exhibit Index to be filed with

the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

_/s/ John Baker_
John Baker
Georgia Bar No. 033797
John Baker Law
1551 Jennings Mill Rd., Suite 3100B
Watkinsville, Georgia 30677
Telephone: (706) 608-2406
Email: john@johnbaker.law

_Attorney for Plaintiff Jason Farmer_