# EXHIBIT PACKAGE

Farmer v. Hunsinger

Case No. 3:25-cv-00154-TES

Middle District of Georgia, Athens Division

---

## TABLE OF CONTENTS

**Ex. 1.**   Last Will and Testament of Judy Lenora Farmer
**Ex. 2.**   Irrevocable Trust of Judy Lenora Farmer (August 12, 2020)
**Ex. 3.**   Administrator's Oath Records (or Absence Thereof)
**Ex. 4.**   Order Concerning Oath Citing 'Inadvertence'
**Ex. 5.**   James Farmer Verified Complaint, SUCV2021000056
**Ex. 6.**   Summary Judgment Order (December 2024)
**Ex. 7.**   Protective Order — Construction Equipment (July 14, 2023)
**Ex. 8.**   Citation/Petition for Contempt
**Ex. 9.**   Interim Order Finding Jason Farmer in Contempt (Sept. 3, 2024)
**Ex. 10.**  Jason Farmer's Amended Notice of Appeal — A25A0690
**Ex. 11.**  Orders Bearing 'ORDER PREPARED BY: Kevin Epps' Notation
**Ex. 12.**  Application for Supersedeas (Aug. 8, 2025) with Exhibits
**Ex. 13.**  Emergency Petition for Mandamus — A26E0016
**Ex. 14.**  Court of Appeals Emergency Order — Release 'Instanter' (Aug. 12, 2025)
**Ex. 15.**  Bench Warrant Filing / Appeal Record

*Each exhibit is a true and correct copy of its identified source.*

*Additional exhibits will be supplemented through discovery and open records responses.*

# EXHIBIT 1

---

## Last Will and Testament of Judy Lenora Farmer

Farmer v. Hunsinger, Case No. 3:25-cv-00154-TES
Middle District of Georgia, Athens Division

# LAST WILL AND TESTAMENT
## OF
### JUDY LENORA FARMER



I, Judy Lenora Farmer, of 2100 Malcolm Bridge Road, Bogart, Oconee County, Georgia 30622 revoke my former Wills and Codicils and declare this to be my Last Will and Testament.

## ARTICLE I
### PAYMENT OF DEBTS AND EXPENSES

I direct that my just debts, funeral expenses, and expenses of last illness be first paid from my estate or trust assets.

## ARTICLE II
### DISPOSITION OF PROPERTY

All the property that I own, or which shall become payable to my estate or my personal representatives, and any property that I have the power to dispose of under my Will shall be distributed to the Trustee of the Irrevocable Trust of Judy Lenora Farmer to be administered and distributed as provided under that Trust.

## ARTICLE III
### NOMINATION OF EXECUTOR

I nominate my Daughter, Christie Lynn Mitchell, as my personal representative ("Executor"), without bond or security. If such person or entity does not serve for any reason, I nominate my child, Jeremy Dale Farmer, as my successor Executor, without bond or security.

## ARTICLE IV
### EXECUTOR POWERS

My Executor, in addition to other powers and authority granted by law or necessary or appropriate for proper administration, shall have the right and power to lease, sell, mortgage, or otherwise encumber any real or personal property that may be included in my estate, without order of court and without notice to anyone.

My Executor shall have the right to administer my estate using "informal", "unsupervised", or "independent" probate, or equivalent legislation designed to operate without unnecessary intervention by the probate court.



DEFENDANT'S EXHIBIT 10 12/15/22
Farmer v. Mitchell
SUCV2021000 056

1

IN WITNESS WHEREOF, I have subscribed my name below, this 12th day of August 2020.

Testator Signature: X _Judy Lenora Farmer_
                        Judy Lenora Farmer

We, the undersigned, hereby certify that the above instrument, which consists of __4__ pages, including the page(s) which contain the witness signatures, was signed in our sight and presence by Judy Lenora Farmer (the "Testator"), who declared this instrument to be her Last Will and Testament and we, at the Testator's request and in the Testator's sight and presence, and in the sight and presence of each other, do hereby subscribe our names as witnesses on the date shown above.

Witness Signature: Sandra Goodrum
    Name: Sandra Goodrum
    City: Athens
    State: GA.

Witness Signature: Frances Allgood
    Name: Frances Allgood
    City: Statham
    State: GA

Subscribed, sworn to and acknowledged before me by Judy Lenora Farmer, the Testator; and subscribed and sworn to before me by _Sandra Goodrum_ and _Frances Allgood_, witnesses, this _12th_ day of _August_, 2020.

_____
Notary Public, or other officer authorized to take and certify acknowledgements and administer oaths

Thomas E. Greene III
NOTARY PUBLIC
Clarke County, Georgia

2

## SELF-PROVING AFFIDAVIT

STATE OF GEORGIA

COUNTY OF Oconee

Before me, the undersigned, on this day personally appeared Judy Lenora Farmer, Sandra Goodrum and Frances Allgood, known to me to be the Testator and the witnesses, respectively, whose names are signed to the foregoing instrument. All of these persons were first duly sworn by me. Judy Lenora Farmer, the Testator, declared to me and to the witnesses, in my presence, that the foregoing instrument is the Testator's Will and that the Testator willingly signed and executed such instrument in the presence of the witnesses, as the Testator's free and voluntary act for the purposes expressed in the instrument. Each of the witnesses declared in the presence and hearing of the Testator that the foregoing instrument was executed and acknowledged by the Testator as the Testator's Will in their presence and that they, in the Testator's presence, hearing and sight and at the Testator's request, and in the presence of each other, did subscribe their names to the instrument as attesting witnesses on the date of the instrument, and that to the best of the witness' knowledge, the Testator was eighteen years of age or older, of sound mind, under no constraint or undue influence, and mentally competent and the witnesses were of adult age and otherwise competent to be witnesses.

_Judy Farmer_                               X

Judy Lenora Farmer, Testator


Witness Signature:    _Sandra Broochum_

    Name:    Sandra Goodrum
    City:     Athens
    State:    GA


Witness Signature:    _Frances Allgood_

    Name:    Frances Allgood
    City:     Statham
    State:    GA

3

Subscribed, sworn to and acknowledged before me by Judy Lenora Farmer , the Testator; and subscribed and sworn to before me by _Sandra Goodrum_ and _Frances Allgood_ , witnesses, this _12_ day of _August_, 2020.

Notary Public, or other officer authorized to take and certify acknowledgements and administer oaths

4

# EXHIBIT 2

---

**Irrevocable Trust of Judy Lenora Farmer (August 12, 2020)**

Farmer v. Hunsinger, Case No. 3:25-cv-00154-TES
Middle District of Georgia, Athens Division

# IRREVOCABLE TRUST OF JUDY LENORA FARMER
2100 Malcolm Bridge Road
Bogart, GA  30622

This Irrevocable Trust Agreement ("Agreement"), dated *Aug. 12th 2020* between Judy Lenora Farmer (the "Grantor") and her daughter, Christie Lynn Mitchell (the "Trustee").

In consideration of the mutual covenants and promises set forth in this Agreement, the Grantor and the Trustee agree as follows:

**I. PURPOSE.** The purpose of this Agreement is to establish a Trust to receive and manage assets for the benefit of the Grantor during the Grantor's lifetime, and to further manage and distribute the assets of the Trust upon the death of the Grantor.

**II. NAME.** The Trust created hereby shall be known as the "Irrevocable Trust of Judy Lenora Farmer and is dated *August 12, 2020* . The assets and dealings of the Trust may, however, be held and conducted in the name of the Trustee and, to the extent otherwise permitted herein, also in the name of a nominee.

**III. FUNDING OF TRUST.** Grantor may, at her convenience, transfer, assign, convey and deliver to the Trustee  property, including insurance policies, which shall be made a part hereof; and said property and any and all other property which may be hereafter assigned, conveyed and delivered to said Trustee by the Grantor or another person as hereinafter provided, is intended to constitute the Trust estate and to be held by the Trustee IN TRUST for the uses and purposes and subject to the terms and conditions hereinafter set forth.

Grantor or any other person, with the consent of the Trustee, may at any time or from time to time deed, grant, devise, bequest, gift or otherwise, cause additional property to be transferred to and administered as a part of the Trust estate created hereunder. Any such transfer may be evidenced by the receipt of the Trustee, and each such receipt shall be conclusive evidence of the consent of said Trustee to the transfer thereof.

**IV. MANAGEMENT OF TRUST ASSETS.** The Trustee shall manage and distribute the Trust assets for the benefit of the Grantor and the Grantor's successors-in-interest in accordance with the terms of this Agreement.

**V. PAYMENTS DURING THE GRANTOR'S LIFETIME.** During the Grantor's lifetime, the Trustee shall pay all the net income of this Trust, such sums from principal or payments-in-kind as the Grantor may request, to or for the benefit of the Grantor, or as the Grantor may designate. The Grantor may change the amount of the payments at any time by providing written notice to the Trustee. Any excess income not distributed at Grantor's death shall be added to principal at the discretion of the Trustee.



DEFENDANT'S EXHIBIT
12/18/22
11
Farmer v. Mitchell
SUCV 2021000054

1

*A. Payments During a "Disability" of the Grantor.* During any period that the Grantor has a "disability", the Trustee shall pay to or for the benefit of the Grantor such amounts of income and principal as the Trustee believes, in the Trustee's sole discretion, to be required for (i) the Grantor's support, comfort and welfare, (ii) the Grantor's accustomed manner of living, or (iii) any purpose that the Trustee believes to be in the best interest of the Grantor. Furthermore, in the event of illness or other disability of Grantor, the Trustee may, in lieu of making payment of such income directly to the Grantor, use and apply for the benefit of the Grantor so much of such income and also the principal of the Trust estate for the proper care, comfort, medical or surgical attention, maintenance and support of Grantor. The Trustee, in such discretion, may pay over to any relative or legal guardian of the Grantor, all or any portion of such income or principal for any of said purposes in lieu of using and applying said funds for the benefit of Grantor.

*B. Disability Defined.* For the purposes of this Trust, "disability" shall mean a legal disability or the inability to provide prompt and intelligent consideration to financial matters by reason of illness or mental or physical disability. The determination of whether the Grantor has a disability shall be made by the Grantor's attending physician. The Trustee shall be entitled to rely on written notice of that determination.

**VI. DEATH OF THE GRANTOR.** Upon the death of the Grantor, and after the payment of the Grantor's just debts, funeral expenses, and expenses of last illness from all possible sources, including distributions from retirement and insurance plans, the following distributions shall be made:

*A. Specific Distributions.* Specific distributions listed in Schedule A shall be made from the assets of the estate and Trust.

*B. Residuary Assets.* The residuary assets of this Trust, whether real, personal, or mixed, of every kind, nature and description whatsoever, and wherever situated, which the Grantor may now own or hereafter acquire, or have the right to dispose of at the time of her death, by power of appointment or otherwise shall be distributed to the Grantor's daughter, Christie Lynn Mitchell ("Daughter"). If the Grantor's Daughter does not survive the Grantor, the residuary assets of this Trust shall be distributed to the Grantor's Daughter's spouse, and, if he shall not survive, then to the Grantor's Daughter's children equally, per stirpes. If a child or heir of the Grantor's Daughter is a minor at the time of the second to die of the Daughter and her spouse, such child's share shall be distributed to and managed by the then parent or guardian of said child solely for the benefit of the child's health, maintenance, support and education until said child is 22 years of age. If no child or heir of the Grantor's Daughter survives her death, the residuary assets of this Trust shall be to the Grantor's heirs-at-law, their identities and respective shares to be determined under the laws of the State of Georgia, then in effect, as if the Grantor had died intestate at the time fixed for distribution under this provision.

It is my intent throughout my personal planning, including the Power of Attorney I have given to my Daughter, Christie Lynn Mitchell, that it is my intent that, notwithstanding her fiduciary duties serving as my Trustee, she shall be fully entitled to possession of the

2

residual assets bequeathed in this Article VI and the powers granted in any other documents I execute.

C. *No Contest Clause*. Upon receiving oral or written notice that this Agreement contains a "No Contest Clause," if any beneficiary shall, in any manner, directly or indirectly, attempt or take any action to contest or oppose the validity of my Will of this date, or this Trust Agreement (including any amendment), including any actions against my preparing attorney Thomas E. Greene III (or his legal practice,) or commences, continues, or prosecutes any legal proceedings for the purpose of setting aside and/or seeking an interpretation of such Agreement(s) or any provision thereof, including a letter to or appearance before the presiding court for such purpose, then, such beneficiary shall forfeit his or her *entire* (italics for emphasis) Trust share (including both specific and/or residuary distributions) and cease to have any right or interest in the Trust estate and shall for purposes of this Agreement, be deemed to have predeceased the Grantor. The Grantor directs the Trustee to: (1) deliver oral notice of this No Contest Clause to all the beneficiaries at the earliest reasonably date/time after the death of the Grantor to reduce (but not exclude) the possibility that a beneficiary unknowingly violates this No Contest Clause, and (2) deliver this Agreement and any Will of the Grantor of the same date to all the beneficiaries as soon as reasonably possible. If any beneficiary violates this No Contest Clause, that beneficiary shall forfeit any and all rights in the Trust estate and the Trustee shall distribute the beneficiary's share according to the provisions accorded to the distribution of Residuary Assets under this Article VI.

**VII. TRUSTEE POWERS.** The Trustee, in addition to other powers and authority granted by law or necessary or appropriate for proper administration of the Trust, shall have the following rights, powers, and authority without order of court and without notice to anyone:

*A. Receive Assets.* To receive, hold, maintain, administer, collect, invest and re-invest the Trust assets, and collect and apply the income, profits, and principal of the Trust in accordance with the terms of this instrument.

*B. Receive Additional Assets.* To receive additional assets from other sources, including assets received under the Will of the Grantor or any other person.

*C. Standard of Care.* To acquire, invest, reinvest, exchange, retain, sell, and manage estate and Trust assets, exercising the judgment and care, under the circumstances then prevailing, that persons of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. Within the limitations of that standard, the Trustee is authorized to acquire and retain every kind of property, real, personal or mixed, and every kind of investment, specifically including, but not by way of limitation, bonds, debentures and other corporate obligations, and stocks, preferred or common, that persons of prudence, discretion and intelligence acquire or retain for their own account, even though not otherwise a legal investment for trust funds under the laws and statutes of the United States or the state under which this instrument is administered.

3

*D. Retain Assets.* To retain any asset, including uninvested cash or original investments, regardless of whether it is of the kind authorized by this instrument for investment and whether it leaves a disproportionately large part of the estate or Trust invested in one type of property, without regard to any legal limitations upon investments and the principals of diversification, for as long as the Trustee deems advisable.

*E. Dispose of or Encumber Assets.* To sell, option, mortgage, pledge, lease or convey real or personal property, publicly or privately, upon such terms and conditions as may appear to be proper, and to execute all instruments necessary to effect such authority.

*F. Settle Claims.* To compromise, settle, or abandon claims in favor of or against the Trust.

*G. Manage Property.* To manage real estate and personal property, borrow money, exercise options, buy insurance, and register securities as may appear to be proper.

*H. Allocate Between Principal and Income.* To make allocations of charges and credits as between principal and income as in the sole discretion of the Trustee may appear to be proper.

*I. Employ Professional Assistance.* To employ and compensate counsel and other persons deemed necessary for proper administration and to delegate authority when such delegation is advantageous to the Trust.

*J. Distribute Property.* To make division or distribution in money or kind, or partly in either including disproportionate in-kind distributions, at values to be determined by the Trustee, and the Trustee's judgment shall be binding upon all interested parties.

*K. Enter Contracts.* To bind the Trust by contracts or agreements without assuming individual liability for such contracts.

*L. Exercise Stock Ownership Rights.* To vote, execute proxies to vote, join in or oppose any plans for reorganization, and exercise any other rights incident to the ownership of any stocks, bonds or other properties of the Trust.

*M. Duration of Powers.* To continue to exercise the powers provided in this Agreement after the termination of the Trust until all the assets of the Trust have been distributed.

*N. Hold Trust Assets as a Single Fund.* To hold the assets of the Trust, shares, or portions of the Trust created by this instrument as a single fund for joint investment and management, without the need for physical segregation, dividing the income proportionately among them. Segregation of the various Trust shares need only be made on the books of the Trustee for accounting purposes.

4

*O. Loans to Beneficiaries.* To make loans to any Trust beneficiary for the purpose of providing the beneficiary with the funds necessary to take advantage of exceptional business opportunities or to provide for the needs of the beneficiaries and their families.

*P. Methods of Distribution.* To make payments to or for the benefit of any beneficiary (specifically including any beneficiary under any legal disability) in any of the following ways: (a) directly to the beneficiary, (b) directly for the maintenance, welfare and education of the beneficiary, (c) to the legal or natural guardian of the beneficiary, or, (d) to anyone who at the time shall have custody and care of the person of the beneficiary. The Trustee shall not be obliged to see to the application of the funds so paid, but the receipt of the person to whom the funds were paid shall be full acquittance of the Trustee.

**VIII. ADDITIONAL TRUSTEE PROVISIONS.** These additional provisions shall apply regarding the Trustee.

*A. Trustee.* At any time, the Trustee may appoint and empower an additional trustee to become effective immediately or upon any stated contingency, by making such designation in writing. Such designee shall become the co-Trustee or successor Trustee upon acceptance of the terms and conditions of this Agreement.

*B. Successor Trustee(s).* If at any time a Trustee cannot serve because of the Trustee's disability (as previously defined), death, or other reason, the Grantor's child, Jeremy Dale Farmer, is designated as the successor Trustee, to serve without bond. If such designee is unable to serve for any reason, the Grantor's Daughter's spouse, is designated as the successor Trustee, to serve without bond. Such designee shall become the successor Trustee upon acceptance of the terms and conditions of this Agreement.

*C. Resignation of Trustee.* Any Trustee may resign by giving written notice to the Grantor, a co or successor Trustee, a court with jurisdiction, or adult beneficiaries to whom income could then be distributed. Such resignation shall take effect on such date specified in the notice, but not earlier than thirty (30) days after the date of delivery of such written resignation unless an earlier effective date shall be agreed to by the income beneficiaries.

*D. Accounting.* The Trustee shall not be required to provide an accounting to the beneficiary (or beneficiaries). If a beneficiary has a "disability", the Trustee shall provide the accounting to a guardian or conservator, if any.

*F. Bond.* No bond shall be required of any Trustee except a corporate Trustee.

**IX. RIGHT TO DIRECT INVESTMENTS.** At any time that the Trust has investments, and provided that the Grantor does not have a "disability", the Grantor may direct any Trustee to purchase, sell, or retain any Trust investment.

**X. GOVERNING LAW.** This Agreement shall be construed in accordance with the laws of the State of Georgia.

5

Signature: _____ Judy Lenora Farmer, Grantor

Signature: _____ Christie Lynn Mitchell, Trustee
Christie mitchell

Witness Signature: Sandra GooDrum
Name: Sandra Goodrum
City: Athens
State: GA

Witness Signature: Frances allgood
Name: Frances Allgood
City: Statham
State: GA

STATE OF GEORGIA
COUNTY OF Oconee

On this 12th day of August, 2020, before me, personally appeared Judy Lenora Farmer, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same as Grantor for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

Notary Public
Notary Public
Title (and Rank)

My commission expires _____

7

**Schedule A**
*List of Specific Trust Distributions*

1) To my children, Jason E. Farmer and Jeremy D. Farmer equally, all that real property and all improvements thereon consisting of 6.186 acres as described as Tract 3 on a Plat recorder in Book 38, Page 190 in the Oconee County property records as tenants in common.

2) To my children James Dale Farmer, Jason E. Farmer, and Jeremy D. Farmer, any collection of fire arms, knives, and tractors as well as any construction equipment and supplies previously owned or held by my husband, Bobby James Farmer and as possessed at the time of my death. The Trustee shall divide said property equally (to the extent practical and reasonable) among each beneficiary based upon approximate value in a manner determined appropriate by the Trustee in her/his sole discretion. Any items not desired by said beneficiaries shall be sold (if valuable) and the net proceeds distributed equally among the beneficiaries. The Trustee shall not be required to have any items formally appraised; however, the Trustee may elect to have one or more items appraised with the cost of such appraisal to be paid by the estate.

8

# EXHIBIT 3

---

**Administrator's Oath Records (or Absence Thereof)**

Farmer v. Hunsinger, Case No. 3:25-cv-00154-TES

Middle District of Georgia, Athens Division

IN THE PROBATE COURT OF _____Oconee_____ COUNTY
STATE OF GEORGIA

IN RE: ESTATE OF )
)
Judy Lenora Farmer )    ESTATE NO. F-189
_____ , )
DECEASED/MINOR/ADULT WARD )

OATH

*[Initial applicable]*

*[Strike through those portions in parenthesis that are not applicable.]*

_____ **(EMERGENCY)(TEMPORARY)(TESTAMENTARY) GUARDIAN'S OATH**
I do solemnly swear (or affirm) that I will well and truly perform the duties required of me as (emergency)(temporary)(testamentary) guardian of the minor/adult ward named above.

_____ **(EMERGENCY)(TESTAMENTARY) CONSERVATOR'S OATH**
I do solemnly swear (or affirm) that I will well and truly perform the duties required of me as (emergency)(testamentary) conservator of the minor/adult ward named above and faithfully account to the minor/adult ward named above for his or her estate.

_____ **TEMPORARY ADMINISTRATOR'S OATH - O.C.G.A. § 53-6-32**
I do solemnly swear (or affirm) that the deceased died (testate)(intestate) and with an estate that is currently unrepresented, so far as I know or believe, and that I will well and truly administer on all the estate of the deceased and discharge to the best of my ability all my duties as temporary administrator. So help me God.

_____ **ADMINISTRATOR'S OATH - O.C.G.A. § 53-6-24**
I do solemnly swear (or affirm) that the deceased died ~~intestate,~~ so far as I know or believe and that I will well and truly administer the estate in accordance with the laws of Georgia. So help me God.

_____ **(ADMINISTRATOR WITH WILL ANNEXED) (EXECUTOR'S) OATH - O.C.G.A. § 53-6-16**
I do solemnly swear (or affirm) that this writing contains the true last will of the deceased, so far as I know or believe and that I will well and truly execute the same in accordance with the laws of Georgia. So help me God.

Sworn to and subscribed before me this

_29_ day of _September_, 20 _22_

_____
Fiduciary's Signature

_____
Judge/Clerk of the Probate Court

Jon Mills
_____
Printed Name of Fiduciary

GPCSF Supplement 4                              [1]                              Eff. July 2021

4

IN THE PROBATE COURT OF OCONEE COUNTY
STATE OF GEORGIA

IN RE:  ESTATE OF          )
                                 )
**JUDY LENORA FARMER,**   )     **ESTATE NO.  F-189**
**DECEASED**              )

### OATH[1]

*[Initial applicable]*

*[Strike through those portions in parenthesis that are not applicable.]*

——— ~~**(EMERGENCY)(TEMPORARY)(TESTAMENTARY) GUARDIAN'S OATH**~~
~~I do solemnly swear (or affirm) that I will well and truly perform the duties required of me as (emergency)(temporary)(testamentary) guardian of the minor/adult ward named above.~~

——— ~~**(EMERGENCY)(TESTAMENTARY) CONSERVATOR'S OATH**~~
~~I do solemnly swear (or affirm) that I will well and truly perform the duties required of me as (emergency)(testamentary) conservator of the minor/adult ward named above and faithfully account to the minor/adult ward named above for his or her estate.~~

——— ~~**TEMPORARY ADMINISTRATOR'S OATH – O.C.G.A. § 53-6-32**~~
~~I do solemnly swear (or affirm) that the deceased died (testate)(intestate) and with an estate that is currently unrepresented, so far as I know or believe, and that I will well and truly administer on all the estate of the deceased and discharge to the best of my ability all my duties as temporary administrator.  So help me God.~~

——— ~~**ADMINISTRATOR'S OATH – O.C.G.A. § 53-6-24**~~
~~I do solemnly swear (or affirm) that the deceased died intestate, so far as I know or believe and that I will well and truly administer the estate in accordance with the laws of Georgia. So help me God.~~

**(ADMINISTRATOR WITH WILL ANNEXED) ~~(EXECUTOR'S)~~ OATH - O.C.G.A. § 53-6-16**
I do solemnly swear (or affirm) that this writing contains the true last will of Judy Lenora Farmer, deceased, so far as I know or believe and that I will well and truly execute the same in accordance with the laws of Georgia.  So help me God.

Sworn to and subscribed before me this
**17** ___ day of February, 2025.

_____
Fiduciary's Signature

_____
Jon Mills, Administrator with Will Annexed

_____
Judge/Clerk of the Probate Court

_____
Printed Name of Fiduciary

[1] This is a Supplemental Oath to correct an error on the Oath form dated September 29, 2022 whereby the incorrect paragraph was initialed.

# EXHIBIT 4

---

## Order Concerning Oath Citing 'Inadvertence'

Farmer v. Hunsinger, Case No. 3:25-cv-00154-TES
Middle District of Georgia, Athens Division

IN THE PROBATE COURT OF OCONEE COUNTY
STATE OF GEORGIA

IN RE: ESTATE OF                )
                                  )
**JUDY LENORA FARMER,**     )     **ESTATE NO. F-189**
**DECEASED**                 )

## ORDER CONCERNING OATH

A hearing was held in the above-stated matter on September 27, 2022 concerning a Petition to Probate Will in Solemn Form filed by Christie Lynn Mitchell. An Order was thereafter entered on September 29, 2022 finding Christie Lynn Mitchell and Jeremy Dale Farmer were not qualified to serve as the personal representative of the estate. Instead, the Court appointed the County Administrator to serve as personal representative for the Estate of Judy Lenora Farmer.

The Oath was administered to Jon Mills, County Administrator, on September 29, 2022 as directed by the Court.

On September 30, 2022, the Court issued an Order Granting Petition to Probate Will in Solemn Form and for Letters of Administration with Will Annexed. Said order adopted the Last Will and Testament dated August 12, 2020 as the Last Will and Testament of the deceased, Judy Lenora Farmer.

It has since been brought to the Court's attention that the wrong paragraph was inadvertently initialed on the Oath form. The oath applicable for an Administrator with Will Annexed pursuant to O.C.G.A. § 53-6-16 has since been re-administered to the fiduciary with a supplemental Oath form being accepted by the Court as a record.

The Letters of Administration with Will Annexed dated September 30, 2022 shall remain in full force and effect. The mistaken initial on the oath form shall have no effect on the validity of the aforesaid Letters of Administration with Will Annexed or the authority of Administrator with Will Annexed since the original issuance of the letters.

SO ORDERED this 17th day of February, 2025.

Honorable Mike Hunsinger
Judge of the Probate Court

DATE FILED 2/17/25
TIME 1:14 PM
CLERK / JUDGE

5

# EXHIBIT 5

---

**James Farmer Verified Complaint,**
**SUCV2021000056**

Farmer v. Hunsinger, Case No. 3:25-cv-00154-TES
Middle District of Georgia, Athens Division

IN THE SUPERIOR COURT OF OCONEE COUNTY

STATE OF GEORGIA

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
OCONEE COUNTY, GEORGIA
SUCV2021000056
HPH
JAN 21, 2025 02:55 PM

Angela Elder-Johnson, Clerk
Oconee County, Georgia

JAMES FARMER,

      Plaintiff,

vs.

CHRISTIE LYNN MITCHELL,
Individually and in capacity as
Trustee of THE IRREVOCABLE
TRUST OF JUDY LENORA
FARMER DATED AUGUST 12,
2020, and JASON FARMER,

      Defendants.

CIVIL ACTION

FILE NO: SUCV-2021-000056

## NOTICE OF APPEAL

Pursuant to O.C.G.A. §§ 5-6-34(a)(1), 5-6-34(d), 5-6-37, 5-6-38(a),
Defendant Christie Lynn Mitchell files this, her independent appeal to the
Georgia Court of Appeals from the trial court's order of January 16, 2024,
denying her motion for summary judgment, which order was then
interlocutory and not subject to direct appeal; and from the trial court's order
of December 20, 2024, which was a final judgment terminating proceedings,
which did so without granting her the relief to which she was entitled by
virtue of her motion for summary judgment.

The Clerk will please omit nothing from the record. No further
transcripts will be filed.

The Court of Appeals has jurisdiction of this appeal under O.C.G.A. §
5-6-34(a)(1). The subject matter of this appeal does not come within the
jurisdiction of the Supreme Court or other courts.

Christie Mitchell-Notice of Appeal

1

Respectfully submitted this 21ˢᵗ day of January, 2025.

**ROBERT W. HUGHES & ASSOCIATES, P.C.**

By: /s/ *Robert W. Hughes, Jr.*
**Robert W. Hughes, Jr.**
**State of Georgia Bar No. 376311**
**Mark Stuckey**
**State of Georgia Bar No. 256603**
**Attorneys for Christie Mitchell**
**390 West Crogan Street, Suite 230**
**Lawrenceville, Georgia 30046**
**770-469-8887 Telephone**

Christie Mitchell-Notice of Appeal

**2**

# EXHIBIT 6

---

## Summary Judgment Order (December 2024)

Farmer v. Hunsinger, Case No. 3:25-cv-00154-TES
Middle District of Georgia, Athens Division

IN THE SUPERIOR COURT OF OCONEE COUNTY
STATE OF GEORGIA

🔔 **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
OCONEE COUNTY, GEORGIA
**SUCV2021000056**
HPH
JAN 16, 2024 03:20 PM

Angela Elder-Johnson, Clerk
Oconee County, Georgia

| | |
|---|---|
| **JAMES D. FARMER,** | * |
| **Plaintiff,** | * |
| | * |
| **v.** | * |
| | * |
| **CHRISTIE LYNN MITCHELL,** | * |
| **INDIVIDUALLY AND IN HER CAPACITY** | * |
| **AS TRUSTEE OF THE IRREVOCABLE** | * |
| **TRUST OF JUDY LENORA FARMER** | * |
| **DATED AUGUST 12, 2020, and** | * |
| **JASON E. FARMER,** | * |
| **Defendants.** | * |

CIVIL CASE NO. SUCV2021000056-HPH

## ORDER DENYING DEFENDANT CHRISTIE LYNN MITCHELL'S MOTION FOR SUMMARY

### JUDGMENT

This matter is before the Court on Defendant Christie Lynn Mitchell's ("Ms. Mitchell") Motion for Summary Judgment. A hearing on the motion was held October 12, 2023. At the conclusion of the hearing, the parties were given two weeks following the preparation of the transcript of this hearing and a hearing held December 15, 2022 to submit proposed orders. The transcripts have now been filed, and the parties have submitted proposed orders. For the reasons that follow, Ms. Mitchell's Motion for Summary Judgment should be **DENIED**.

### I.    Standard of Review

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." O.C.G.A. § 9–11–56 (c). "Thus, to prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law. A defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims." *McBee v. Aspire At West Midtown Apartments, L.P.*, 302 Ga. 662, 662-63 (2017).

SUCV2021000056                                                                                          1

## II.    Findings of Fact

While this case primarily concerns the Irrevocable Trust of Judy Lenora Farmer, the current status of the Estate of Bobby James Farmer, Ms. Farmer's husband who predeceased her, must also be considered in order to determine the merits of Plaintiff James D. Farmer's ("James") claims against Ms. Mitchell, as well as her Motion for Summary Judgment.

### A.    *The Estate of Bobby James Farmer*

On April 3, 2020, Bobby James Farmer ("Mr. Farmer") passed away. (Complaint at ¶ 16). Mr. Farmer's Will and Estate were probated in the Probate Court of Oconee County. *In Re: Estate of Bobby James Farmer, Deceased*, Estate No. F-183. Due to allegations that Defendant Jason E. Farmer ("Jason") was taking construction equipment that belonged to the Estate, James filed a Motion to Compel Surrender of Personal Property against Jason in the Probate Court. On July 14, 2023, John Mills, the Oconee County Administrator, was appointed the Administrator of Mr. Farmer's Estate. On the same day, the Probate Court entered a Protective Order concerning the temporary use of construction equipment that may belong either to Mr. Farmer's Estate or Jason. Until ownership is resolved, the Protective Order provides that Jason is permitted to lease the equipment, and he must pay rent for the use of the equipment. The Protective Order also states that the Superior Court of Oconee County has sole jurisdiction to determine the ownership of the construction equipment. On July 14, 2023, Mr. Farmer's Will was probated. (Petition for Declaratory Judgment, Ex. C).

### B.    *The Estate of Judy Lenora Farmer*

On August 12, 2020, Ms. Farmer executed the Irrevocable Trust of Judy Lenora Farmer ("Trust"). (Complaint ¶ 8, Attached Ex. A). The Trust named Ms. Mitchell as the Trustee. (Ex. A). On November 22, 2020, Ms. Farmer passed away. (Complaint ¶ 17). The Trust provides for the following distribution of property: (1) 6.186 acres of land equally to Jason and his brother, Jeremy D. Farmer ("Jeremy"); and (2) to James, Jason, and Jeremy "any collection of fire arms, knives, and tractors as well as any construction equipment and supplies previously owned or held by Bobby James Farmer and as possessed at the time of my [Ms. Farmer's] death."

SUCV2021000056                                                                                              2

(Trust, Schedule A). The residuary of the Trust went to Ms. Mitchell, and the contingent remainder beneficiaries were Ms. Mitchell's husband, Russell Mitchell, and her children. (Trust ¶ VI(B)).

The Trust grants Ms. Mitchell, acting as the Trustee, considerable authority and discretion to act or not act "without order of court and without notice to anyone." (Trust ¶ VII). For example, Ms. Mitchell has the authority "[t]o compromise, settle, or abandon claims in favor of or against the Trust." (Trust ¶ VII(F)). Ms. Mitchell may also "make division or distribution in money or kind, or partly in either including disproportionate in-kind distributions, at values to be determined by the Trustee, and the Trustee's judgment shall be binding upon all interested parties." (Trust ¶ VII(J)).

As to Ms. Mitchell's liability as Trustee, the Trust states:

> No fiduciary who is a natural person shall, in the absence of fraudulent conduct or bad faith, be liable individually to any beneficiary of the Grantor's Trust estate, and the Grantor's Trust estate shall indemnify such natural person from any and all claims or expenses in connection with or arising out of that fiduciary's good faith actions or nonactions of the fiduciary, except for such actions or nonactions which constitute fraudulent conduct or bad faith.

(Trust ¶ XIII(C)).

The Trust also includes an *in terrorem clause* that states:

> Upon receiving oral or written notice that this Agreement contains a "No Contest Clause," if any beneficiary shall, in any manner, directly or indirectly, attempt or take any action to contest or oppose the validity of my Will of this date, or this Trust Agreement (including any amendment), including any actions against my preparing attorney Thomas E. Greene III (or his legal practice,) or commences, continues, or prosecutes any legal proceedings for the purpose of setting aside and/or seeking an interpretation of such Agreement(s) or any provision thereof: including a letter to or appearance before the presiding court for such purpose, then, such beneficiary shall forfeit his or her *entire* (italics for emphasis) Trust share (including both specific and/or residuary distributions) and cease to have any right or interest in the Trust estate and shall for purposes of this Agreement, be deemed to have predeceased the Grantor.

(Trust ¶ VI(C)).

### C.   *Ms. Mitchell's Management of Potential Trust Assets*

Following the death of Mr. Farmer, Jason began taking equipment from the family property to use in his steel and fabrication business. (Complaint, Ex. B; Aff'd Christie Mitchell, Ex. B). James wanted Ms. Mitchell to sell trust assets to fund a lawsuit against Jason. (*Id.*). In a letter from Ms. Mitchell's former attorney, Mr. Thomas E. Greene III, James was informed that Trust assets would not be used to pursue a lawsuit. (Aff'd Christie

SUCV2021000056                                                                                              3

Mitchell, Ex. B). Instead, because the equipment may belong to James and Jeremy, they should pursue any legal action against Jason. (*Id.*). The letter from Mr. Greene also noted that James initially assisted Jason in removing the equipment. (*Id.*). Mr. Greene stated that the Trust would be interested in learning why James had a "change of heart." (*Id.*).

On February 2, 2021, a deed transferring certain property to Mr. and Ms. Mitchell included the 6.186 acres that were to go to Jason and Jeremy. (Aff'd Christie Mitchell at ¶ 3). On February 25, 2021, after the error was discovered, Mr. Greene filed a quitclaim deed that returned the property to the Trust. (Aff'd Christie Mitchell at ¶ 3, Ex. C). Mr. Greene acknowledged that he was responsible for the erroneous transfer of the property. (Ex. C).

On February 9, 2021, Mr. Greene sent the beneficiaries a Settlement Statement of Trustee to Beneficiaries of Irrevocable Trust of Judy Lenora Farmer ("Statement"). (Complaint, Ex. B). This Statement indicated on the front page that it was a "DRAFT FOR INTERNAL REVIEW ONLY." (*Id.*).

The Statement informed the beneficiaries that Ms. Mitchell, as Trustee, could not afford to pursue litigation against Jason for his alleged confiscation of construction equipment. (*Id.*). In the Statement, Mr. Greene explained: "Further, the Trust was left with no liquid cash assets. Since Judy's death, the Trustee, has personally lent out-of-her-own-pocket what she could afford to the Trust for such things as paying Judy's outstanding bills, and Trust and probate legal fees; but in spite of her efforts to move forward with the Trust settlement and Will administration, the debt of the Trust currently exceeds $15,000, and is growing. Further, Christie is unable to make additional personal loans to the Trust." (*Id.*). As to why Ms. Mitchell should not be required to use Residual Assets that she would take under the Trust to pursue the litigation, Mr. Greene stated:

> The words "residual assets" are only used to define the property that Christie is to receive. She is the only distributee, and not a specific distribution beneficiary, unlike in the above example. If Judy had intended that any costs or expenses be paid from Christie's share (or from the share of any of the other beneficiaries), the language would have said so. In fact, the language specifically didn't consider costs because neither Judy nor the drafter expected there would be any, other than minor amounts needed for simplified will probate. The property disputes created by Jason's actions were not anticipated in the drafting and there are no grounds to suggest that the costs of litigating with him should arbitrarily come out of Christie's or any beneficiary's share. If the affected parties independently choose to pursue action, that is their decision.

SUCV2021000056                                                                                                  4

(*Id.*). Mr. Greene then explained: "Therefore, absent asset sales, the only practical way that litigation can be undertaken would be if Jamie and Jeremy voluntarily choose to fund the costs, as unfair as that would be. In such event, the Trustee would support such litigation and extend its authority, name and assistance in any reasonable manner. If direct funding isn't possible, but there is a desire to consider selling assets, the Trust can also discuss options." (*Id.*).

As to any remaining property, the Statement proposes: "When appropriate, the Trustee intends to select a date when all the beneficiaries may come onto the [] property for a division of the remaining property pursuant the Trust distribution provisions. The Trustee's current plan is for the parties to draw straws to determine a party to choose first; and then for each beneficiary in sequence to choose an item, subject to 'fairness adjustments' by the Trust representative on the scene." (*Id.*).

James contends the Statement amounts to a declaration as to how the Trust assets will be distributed. Ms. Mitchell maintains the language in the Statement makes it evident that it was not intended as a final decision or ultimatum.

On June 8, 2021, Tracey Miller entered into a Right of First Refusal Agreement with Ms. Mitchell, as Trustee, to purchase the 6.186 acres. (Aff'd Tracey Miller at ¶ 2). The agreement expired on June 8, 2022 without the property being sold. (*Id.* at ¶ 3). Ms. Miller knew that Ms. Mitchell could not sell the property without the approval of her brothers. (*Id.* at ¶ 4).

At one point, Mr. Mitchell texted Mr. Samuel Green about purchasing the 6.186 acres. (Green Dep. at p. 25). Mr. Green knew the property was "tied up in an estate." (*Id.* at p. 24). Mr. Green also believed the Mitchell's "needed some money." (*Id.* at p. 24). Ultimately, Mr. Mitchell informed Mr. Green by text that the property was "not for sale anymore." (Id. at p. 25).

In early 2021, Ms. Mitchell falsely stated on an Affidavit of Inheritance of a Motor Vehicle, that neither Mr. Farmer nor Ms. Farmer left a will. (Response to Mot Sum. Judgment, Ex. A). On May 23, 2023, a Consent Protective Order was filed that required Ms. Mitchell to return the vehicle and several boxes of silver coins and

collectable coins to the Estate of Bobby Farmer. *In Re: Estate of Bobby James Farmer, Deceased*, Estate No. F-183.

Ms. Mitchell, as Executrix, sought to Probate Ms. Farmer's Will in Solemn Form. In an Order entered, September 29, 2022, the Oconee County Probate Court denied Ms. Mitchell's request. (Aff'd John Mills, attached Ex. A). The Probate Court found:

> Evidence provided in Mitchell's Petition to Probate Will in Solemn Form and testimony at the hearing substantiates her lack of a relationship with the estate's other heirs and clearly demonstrated a conflict of interest with those heirs. The testimony of Mitchell, and that of her previous attorney, Thomas E. Greene III, also provided evidence Mitchell has already accessed and mismanaged assets of the estate without authority and cannot be trusted as a fiduciary to act in the best interests of all persons who are interested in the estate and with due regard to their respective rights.

(*Id*. at pp. 1-2).

### D.    *Mr. John Mills' role as Temporary Trustee*

On September 29, 2022, the Oconee County Probate Court also appointed Mr. Mills the Administrator of Ms. Farmer's Estate. (*Id.*, attached Ex. C). On January 17, 2023, via a Consent Order, Mr. Mills was appointed Temporary Trustee of Ms. Farmer's Trust. On October 11, 2023, Mr. Mills filed a Petition for Declaratory Judgment and Other Relief in the Superior Court of Oconee County, and that case remains pending before the undersigned Superior Court Judge. *John Mills, as Administrator with Will Annexed for the Estate of Judy Lenora Farmer, and as Assignee of the Estate of Bobby James Farmer v. Jason E. Farmer and John/Jane Doe*, Case No. SUCV2023000327-HPH. The petition states that, prior to Ms. Farmer's death, Respondent Jason Farmer operated a steel and fabrication business on the Farmer's property. Mr. Mill's petition asks this Court to determine whether the construction equipment currently in Respondent Jason Farmer's possession belongs to him or should be reclaimed by Ms. Farmer's estate.

### III.    Conclusions of Law

In his amended complaint, James seeks the removal of Ms. Mitchell as Trustee due to (1) a conflict of interest (Count I); (2) breaching the Trust due to a conflict of interest that resulted in her failure to pursue litigation seeking the return of property from Jason (Count II); and (3) breaching her fiduciary duty as Trustee by seeking

SUCV2021000056                                                                                          6

to enrich herself by transferring the 6.186 acres to her and Mr. Mitchell and attempting to take assets from Mr. Farmer's Estate (Count III).  James also seeks punitive damages and attorney fees (Counts IV and IX).

In the First Amended Complaint and in a separate Motion to Add Party and Amend Caption, James attached a proposed Second Amended Complaint.  James contends Ms. Mitchell violated the in terrorem clause by alleging in her counter-claim that James violated the in terrorem clause by initiating this civil action.  (Motion, Ex. 1). The counter-claim also alleges that there is video of James removing trust property without permission or authority.  (*Id.*). Ms. Mitchell has amended her answer to withdraw any claim that James violated the in terrorem clause.  The issue is, therefore, no longer before the Court.

Ms. Mitchell argues that she is entitled to summary judgment because: (1) she has full discretion to decide whether to pursue litigation; (2) the 6.186 acres was returned prior to this action being filed; (3) James has no standing regarding the real property; (4) James has not presented evidence of fraud or bad faith and, absent such evidence, he cannot pursue a breach of fiduciary claim; (5) James has not been damaged by any action or inaction on the part of Ms. Mitchell; and (6) as James' tort claims fail, he is not entitled to punitive damages or attorney fees.

### A.    *Conflict of Interest – Counts I and II*

"Georgia trust law requires trustees to administer the trusts solely in the interests of the beneficiaries, and imposes upon them a duty of impartiality." *Peterson v. Peterson*, 352 Ga. App. 675, 679 (2019). "It is generally, if not always, humanly impossible for the same person to act fairly in two capacities and on behalf of two interests in the same transaction.  Consciously or unconsciously, he will favor one side as against the other, where there is or may be a conflict of interest.  If one of the interests involved is that of the trustee personally, selfishness is apt to lead him to give himself an advantage." *Id.* (internal quotation omitted). "It is not necessary to show that the fiduciary succumbed to temptation, but rather, it is sufficient to show that the fiduciary allowed herself to be placed in a position where her personal interest might conflict with the interests of other beneficiaries." *Id.* at 680 (internal quotation omitted).

Ms. Mitchell's potential commingling of funds, attempts to take personal property while Mr. Farmer's Will was still in probate, and her unexplained error in transferring the 6.186 acres to herself and her husband demonstrates a potential conflict of interest. Additionally, Ms. Mitchell's failure to use Trust assets to seek the return of construction equipment from Jason, was arguably motivated by her desire to preserve the residual assets she would receive under the terms of the Trust. Given this history, the question of whether Ms. Mitchell has a conflict of interest should be resolved by the trier of fact. Moreover, as discussed below, Ms. Mitchell may have damaged James. Again, the fact finder should determine whether James has been damaged as a result of Ms. Mitchell's potential conflict of interest.

### B.    *Breach of Fiduciary Duty – Count III*

James maintains Ms. Mitchell breached her fiduciary duty by transferring the 6.186 acres to herself and her husband and by failing to pursue legal action against Defendant Farmer.

"The trustee shall be accountable to the beneficiary for the trust property. A violation by the trustee of any duty that the trustee owes the beneficiary shall be a breach of trust." O.C.G.A. § 53-12-300. Similarly, "[i]t is well settled that a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Crawford v. Scott*, 368 Ga. App. 249, 253 (2023).

The Trust absolves Ms. Mitchell of liability absent a showing of bad faith. James maintains it is a question of fact as to whether Ms. Mitchell's actions as Trustee amounts to bad faith.

The Trust directs Ms. Mitchell to distribute the 6.186 acres to Jason and Jeremy. James has no real interest in the property, but Ms. Mitchell's decision not to use Jason's share of the property is possibly the result of bad faith. Taken alone, that accusation might be a reach. However, Ms. Mitchell's failure to use any Trust assets to seek return of the construction equipment could be the result of her desire to maximize her residual assets. The acts of taking the title of a vehicle by falsely declaring that neither of her parents left a will and attempting to seize personal property such as the coin collection may not only support a finding of a conflict of interest, but also one of bad faith in handling the Trust assets. Ms. Mitchell's act of transferring title of the 6.186 acres to

SUCV2021000056

8

herself and her husband may have also been an act of bad faith.  While Mr. Greene claims that it was an inadvertent error, no explanation as to why or how the error occurred has been offered.  Given the other acts previously discussed as possible evidence of a conflict of interest, the question of whether Ms. Mitchell acted in bad faith is one for the fact finder to resolve.  *See Citizens and Southern National Bank v. Haskins*, 254 Ga. 131, 136 (1985) (if there is evidence of breach of fiduciary duty by a trustee, "a jury question on the issue of breach of duty exists").

As to the question of damages and the related issue of standing, the Court notes that "[s]tanding is a jurisdictional prerequisite to a plaintiff's right to sue.  A plaintiff with standing is necessary to invoke a court's judicial power to resolve a dispute. . . ."  *Sons of Confederate Veterans v. Henry County Board of Commissioners*, 315 Ga. 39, 44-45 (2022).  "In order to have standing, a party must be able to show (1) an injury in fact that is concrete and particularized (meaning it affects the plaintiff in a personal and individual way); (2) a causal connection between the injury and the conduct; and (3) the likelihood that the injury will be redressed with a favorable decision."  *Franklin County v. Wasserman*, 367 Ga. App. 694, 696 (2023) (internal quotation omitted).

Additionally, "a litigant may assert the rights of a third party in exceptional circumstances.  To successfully establish third-party standing, a litigant must have suffered an 'injury in fact,' thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests."  *Id.* (internal quotation omitted).  However, merely being a beneficiary of a trust does not establish third-party standing.  *Ludwig v. Ludwig*, 281 Ga. 724, 726 (2007) (even if trustees "have not perfectly performed all of their administrative obligations under the trust and that they improperly expended trust assets on non-trust property . . ., the record [] establishes that appellants [beneficiaries] were not damaged thereby"); *SunTrust Bank v. Merritt*, 272 Ga. App. 485 (2005) (claim for breach of fiduciary duty requires proof of damage proximately caused by the breach).

James claims Ms. Mitchell could have sold some of the real estate to pay for litigation that would force Jason to return equipment he "stole" from the estate and potentially belonged to the Trust and ultimately James.

SUCV2021000056                                                                                                    9

Because Ms. Mitchell did not pursue this litigation, James states that he has been damaged by the loss of use of the property and in paying over $140,000.00 in attorney fees and expenses.

James also claims that he would be entitled to nominal damages. "To successfully bring a tort claim for breach of fiduciary duty, however, the claimant must show injury." *Willett v. Stookey*, 256 Ga. App. 403, 411 (2002). "Where no actual damage flows from the injury, nominal damages may be awarded. Yet, some injury — even if small or nominal — is necessary." *Id.*

To the extent there is a question for the finder of fact as to whether Ms. Mitchell acted in bad faith by choosing not to use assets from the Trust's residuary, James may have incurred injury by using his own funds to pursue litigation against Jason. Moreover, Ms. Mitchell's inaction regarding Jason may have already resulted in at least some loss to James. James has established standing and the amount of damages, if any, should be determined by the finder of fact.

Finally, Ms. Mitchell contends she is entitled to summary judgment because the property is not yet being held in the Trust. The property resides in Mr. Farmer's estate, which explains Plaintiff's decision to pursue relief by seeking the return of the property to Mr. Farmer's Estate in the Probate Court. The Probate Court also demonstrated that the property belongs with Mr. Farmer's Estate when it ordered Ms. Mitchell to return certain personal property that she would ultimately obtain under the Trust. Therefore, according to Ms. Mitchell, she has no authority to act as Trustee. James argues that since all of Mr. Farmer's Estate flows to Ms. Farmer's Estate, and that Estate's assets flow to the Trust, Ms. Mitchell currently possesses a duty to preserve Trust assets.

Ms. Mitchell's argument was not given by Mr. Greene when he explained that Ms. Mitchell simply could not afford to initiate litigation against Jason. Moreover, Ms. Mitchell has filed a cross-claim against Jason. Additionally, Mr. Farmer's Will was previously probated. The Oconee County Probate Court has also concluded, without dispute, that the Oconee County Superior Court has exclusive jurisdiction to determine ownership of the construction equipment. Subsequently, Mr. Mills, as the Administrator of Ms. Farmer's Will, filed an action in this Court seeking to determine ownership of the equipment allegedly taken by Jason. Finally, a Trustee has been able to bring an action even though an estate was not probated. *See Howell v. Bates as Trustee of Anne S. Florence*

SUCV2021000056                                                              10

*Revocable Trust*, 350 Ga. App. 708, 709 (2019) (because will provided for automatic transfer to trust, the estate was not probated).

### C.   *Punitive Damages, Attorney Fees, and the Expenses of Litigation – Counts IV and IX*

Ms. Mitchell contends James is not entitled to punitive damages, attorney fees, and litigation expenses. This argument requires a finding that Ms. Mitchell is entitled to summary judgment on Counts I, II, and III. As the undersigned has concluded that summary judgment is not appropriate on those issues, Ms. Mitchell is also not entitled to summary judgment on the award of punitive damages, attorney fees, and the expenses of litigation.

### IV.   Conclusion and Order

There being material questions of fact as to all Counts related to Ms. Mitchell,

**IT IS ORDERED** that Christie Lynn Mitchell's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED**, this ___16___ day of ___January___, 2024.

H. PATRICK HAGGARD
JUDGE, WESTERN JUDICIAL CIRCUIT
SUPERIOR COURT OF OCONEE COUNTY

Service Copies:   Stacey Ferris, Esq.; sferris@gplg.com
Sean S. Golan, Esq.; sgolan@gplg.com
Keven E. Epps, Esq.; kevin@ehdhlaw.com
Jon Mills, Esq.; jon@durdenmillsp.com
Tyler Gaines, Esq; tyler@ehdhlaw.com
Mark Stuckey, Esq; mark@hughespclaw.com

# EXHIBIT 7

**Protective Order — Construction Equipment (July 14, 2023)**

Farmer v. Hunsinger, Case No. 3:25-cv-00154-TES
Middle District of Georgia, Athens Division

**EXHIBIT**
**A-1**

## IN THE PROBATE COURT OF OCONEE COUNTY
## STATE OF GEORGIA

IN RE: ESTATE OF )
)
**BOBBY JAMES FARMER,**      )      **ESTATE NO. F-183**
**DECEASED**       )

### PROTECTIVE ORDER – CONSTRUCTION EQUIPMENT

The above-stated case came before the Court on June 14, 2023 for a show cause hearing on the Motion to Compel Surrender of Personal Property filed by James D. Farmer against Jason E. Farmer. Present at the hearing were the following:

    (1) James D. Farmer, who was represented by Kevin Epps;

    (2) Adam Hebbard on behalf of Respondent, Jason E. Farmer[1];

    (3) J. Enrique Morales on behalf of Christie L. Mitchell; and

    (4) Jon Mills, Temporary Administrator for the Estate of Bobby James Farmer.

As used herein, the term "Interested Parties" shall refer to James D. Farmer, Jason E. Farmer, Christie Mitchell and Jon Mills, in his representative capacity as Temporary Administrator for the Estate of Bobby James Farmer.

To the extent there is a pending petition concerning the appointment of a permanent administrator for the Estate of Bobby James Farmer, the role and rights of the Temporary Administrator set forth herein shall be handled by the permanent personal representative for the Estate of Bobby Farmer upon appointment. This role shall be referred to as "Estate Representative" for all purposes herein.

At the hearing on June 14, 2023, counsel for the parties recited the terms of the stipulation in open court which was thereafter approved by the Court. Thereafter, each of the respective attorneys confirmed in open court their approval of this stipulation and terms for this protective order. This colloquy was recorded by the Court Reporter and later transcribed. The Court and counsel for the parties have had the opportunity to review the transcript and the Court finds that this order is consistent with the terms of the stipulation announced in open court on June 14, 2023. Since that time, Mr. Hebbard, counsel for Jason E. Farmer, has not approved the terms of this order or provided any suggested changes. New counsel for Jason E. Farmer have opposed the entry of this order at this time suggesting Mr. Hebbard did not have authority to agree to some of the terms announced in open court. After considering this matter in a status conference on July 12, 2023 with counsel for all respective parties in attendance, the Court declines to delay entry of this order. The Court further finds Georgia law provides that attorneys have the apparent authority to enter into agreements on behalf of their clients, and those agreements are enforceable against the clients by other settling parties. See: *Groves v. Gibbs*, 367 Ga. App. 730, 732 (2023); O.C.G.A. § 15-19-5.

---

[1] Since the hearing on June 14, 2023, Jason E. Farmer has hired new counsel, Stacey L. Ferris and Sean S. Golan of Broel Law, LLC. They submitted their Entry of Appearance via mail on July 7, 2023. At the present time, Mr. Hebbard has not filed a motion to withdraw as counsel for Jason E. Farmer.



DATE FILED 7/14/23
TIME 8:30 AM
CLERK/JUDGE

In Re: Estate of Bobby James Farmer
Estate No. F-183
Protective Order – Construction Equipment

After the Court considered the stipulation of the Interested Parties as reflected in the transcript from the hearing on June 14, 2023, IT IS HEREBY ORDERED AS FOLLOWS:

1.
## SUBJECT EQUIPMENT

A claim on behalf of the Estate of Bobby James Farmer has asserted that certain construction equipment ("Subject Equipment") is property of the Estate of Bobby James Farmer. The Respondent, Jason E. Farmer has opposed the request and claimed to be the lawful owner of the Subject Equipment. Notwithstanding the disputed ownership, the Interested Parties have agreed to comply with the following until further order:

(a) Description: As used herein, the term Subject Equipment shall include the following items:

| Item Description | VIN/SN |
|---|---|
| 1986 P & H Omega 50 Ton Crane | |
| 1999 Skytrack 8042 | |
| 1986 GMC Dump Truck  ME6500 | 1GBT7D4G6GV115050 |
| 1994 Hooper Gooseneck Trailer | |
| LS 180 2003 New Holland Skid Steer | |
| LS 180 New Holland Skid Steer | |
| Exmark Zero Turn Lawn Mower | |
| Kubota B9200 Tractor | |
| Horton Black Enclosed Trailer | |
| Bandsaw from Shop | |
| Tension Control Wrench | |
| Forks for Skid Steer | |
| Auger for Skid Steer | |
| 12" Bit for Skid Steer | |
| 24" Bit for Skid Steer | |
| Ranger Mig Welder | |
| Skid Steer Trencher | |
| Part for Purabga Metal Fabrication Machine | |
| 1980 Loarrian 35 Ton Trane | 6101550104 |
| 1979 P & H Omega 30 Ton Crane (60k lbs) | |

(b) Possession: Until further order of this Court or until the issuance of an order entered by the Oconee County Superior Court declaring the proper owner of the Subject Equipment and

Page -2-

In Re: Estate of Bobby James Farmer
Estate No. F-183
Protective Order – Construction Equipment

subject to the lease terms set forth in subsection (d) below, the Estate Representative shall be permitted to take possession and safeguard the Subject Equipment for the benefit of the Estate until the ownership issue is resolved.

(c) Ownership Dispute: The issue concerning ownership of the Subject Equipment shall be decided by the Superior Court of Oconee County as the Probate Court lacks jurisdiction to decide same. See: *Cunningham v. Estate of Cunningham*, 304 Ga. App. 608 (2010). The Estate Representative may request a transfer order or initiate an independent Superior Court action to resolve same. The Interested Parties waive the right to seek a jury trial on issues concerning ownership of the Subject Equipment. Instead, the issue shall be resolved via bench trial, unless earlier resolved by summary judgment.

  i. No Admission Concerning Ownership: The Interested Parties agree that the consent to this Protective Order is done solely for the purposes of compromise and shall not be construed as an admission by Jason E. Farmer concerning ownership of the Subject Equipment.

(d) Lease Option: It is acknowledged by the Interested Parties that Jason E. Farmer ("Jason") uses the Subject Equipment in his steel building business operation. Jason operates his fabrication business under his personal name and through his limited liability company known as LBF Welding, LLC (collectively referred to as "Jason's Business").

  i. Use: Subject to full compliance with the terms of this Order, Jason shall be permitted to continue to utilize the Subject Equipment in his fabrication business.

  ii. Original Rent Payments: Jason acknowledges that prior to the passing of his father, Bobby James Farmer, in April 2020, he paid his father $5,000.00 per job for the benefit of utilizing his father's equipment to complete the job. After his father passed, Jason continued with the same arrangement and made the payments to his mother, Judy Lenora Farmer. As of the entry of this order, Jason acknowledges he owes $5,000.00 to the Estate of Judy Farmer related to a job that he was working in July 2020 prior to the purported transfer of the equipment in July 2020. This amount should be paid by Jason to the Estate of Judy L. Farmer within thirty (30) days.

  iii. Inspection: The Estate Representative shall be authorized to inspect the Subject Equipment at any time and at any location with or without notice. Jason authorizes the Estate Representative and any designated representatives to visit and inspect any of the Subject Equipment at such times and as often as may reasonably be desired and with or without reasonable advance notice.

  iv. Notice Prior to Relocation: Jason shall be obligated to provide notice to the Estate Representative via e-mail prior to relocating any of the Subject Equipment. The notice shall provide detailed information regarding the location where the Subject Equipment will be moved and the name of the project. This notice requirement is mandatory and intended to provide accountability regarding the project count for purposes of calculating the required rent. If all of the Subject Equipment is not located at the same job site or storage location, an itemized report shall be provided.

In Re: Estate of Bobby James Farmer
Estate No. F-183
Protective Order – Construction Equipment

v.  Monthly Reports: Jason shall be obligated to provide the Estate Representative with a sworn monthly report each month concerning the specific location / project where the equipment was located through the proceeding month. The monthly report shall be sent via e-mail to the Estate Representative on or before the 10th day of the following month. For example, the report for June 2023 shall be due on or before July 10, 2023. If all of the Subject Equipment is not located at the same job site or storage location, an itemized report shall be provided.

vi.  Rent Payment Obligation: Jason shall pay rent for use of the Subject Equipment in the amount of $5,000.00 per job. The rent payable for a particular job shall be "booked" based on the month the job is substantially completed and/or when the Subject Equipment is removed from the job site whichever is earlier.

   i.  It is anticipated that one or more jobs will be completed by Jason and/or Jason's Business each month. In the event there is no rent allocated for a job completion in a particular month, a minimum monthly rent of $2,500.00 shall be due and payable consistent with the rent due for completed jobs.

   ii.  Due Date: The rent due for each month shall be paid to the Estate Representative on or before the 10th day of the following month. For example, the rent payment for June 2023 shall be due on or before July 10, 2023.

   iii.  Calculation of Monthly Rent: The Monthly Report described in subjection (V) above shall also include a calculation for the rent amount owed pursuant to this Order for the month.

vii.  Prior Accounting: Jason acknowledges that rent has not been paid for the Subject Equipment since July 4, 2020. Jason acknowledges an obligation to pay rent of $5,000.00 per job since July 4, 2020 remains outstanding. Jason shall provide a sworn accounting to identify the jobs completed by Jason and/or Jason's Business since July 4, 2020 with the Subject Equipment.  The accounting shall be provided to the Estate Representative on or before August 15, 2023.

viii.  Insurance: Jason and/or Jason's Business shall maintain comprehensive insurance on the Subject Equipment at his expense until the ownership issue is resolved or further order of the Court. The insurance shall provide adequate coverage to the reasonable satisfaction of the Estate Representative for general liability coverage, plus comprehensive physical damage coverage for the Subject Equipment. Reasonable proof of the insurance shall be provided to the Estate Representative by Jason upon request. The Estate of Bobby James Farmer shall be listed as an "Additional Insured" on the insurance policy(s) regarding the Subject Property.

ix.  Notice of Insurance Claim: In the event the Subject Equipment is involved in an accident or other event that results in a possible insurance claim, Jason shall provide immediate notice thereof to the Estate Representative. Settlement of the claim shall be decided by mutual agreement of Jason and the Estate Representative. Unless otherwise ordered by the Court, any proceeds shall be held in the IOLTA Trust Account of the attorney for Estate Representative until the ownership issue is resolved. Any funds would be distributed pursuant to the Superior Court litigation.

Page -4-

In Re: Estate of Bobby James Farmer
Estate No. F-183
Protective Order – Construction Equipment

    x.    No Transfers or Encumbrances: Jason and/or Jason's Businesses shall not encumber, pledge, hypothecate, or otherwise transfer any interest in the Subject Equipment. It is acknowledged that the Subject Property is currently free and clear of all encumbrances.

(e) Disposition of Rent Proceeds: Upon the conclusion of the Superior Court litigation, the Estate Representative shall distribute the rent proceeds collected pursuant to this order as follows:

    i.    If it is determined in the Superior Court litigation that the Subject Equipment is the property of Jason, then the rent proceeds collected by the Estate Representative shall be distributed without deduction to Jason E. Farmer.

    ii.    If it is determined in the Superior Court litigation that the Subject Equipment is not the property of Jason, but instead the property of the Estate of Bobby Farmer and/or the Estate of Judy L. Farmer, then the rent proceeds collected by the Estate Representative shall be distributed outright and without deduction equally among James Dale Farmer, Jason E. Farmer, Jeremy D. Farmer.[2]

    iii.    This provision regarding the distribution of rent proceeds is not intended to resolve any issues or claims not specifically addressed herein.

(f) Violation of Order:

    i.    General Non-Compliance: In the event it is determined by Estate Representative that Jason and/or Jason's Business have not complied with any obligation pursuant to this order, the Estate Representative shall provide prompt notice thereof to Jason with a copy to Jason's legal counsel, if any, via e-mail. Thereafter, Jason shall have five (5) days to cure any deficiency. If the deficiency is not cured within the permitted period, then Jason's privilege to lease the Subject Equipment from the Estate of Bobby James Farmer shall be terminated indefinitely.

    ii.    Intentionally Misrepresentation: Notwithstanding the forgoing, in the event it is determined by Estate Representative that Jason and/or Jason's Business has misrepresented any fact issue concerning the whereabouts of the Subject Equipment, use of the Subject Equipment for a job, and/or the project count for calculating the outstanding rent owed, then Jason's privilege to lease the Subject Equipment from the Estate of Bobby James Farmer shall be terminated indefinitely.

    iii.    Return of Equipment: Upon termination of Jason's privilege to lease the Subject Equipment from the Estate of Bobby James Farmer, the Subject Equipment shall be returned to the control and possession of the Estate Representative. Upon notice of same, Jason and Jason's Business shall be responsible for promptly returning all of the Subject Equipment to the location designated by the Estate Representative. Additionally, the Estate Representative shall be permitted to take appropriate action to reclaim the Subject Equipment from wherever it is located to safeguard and return to the Farmer property on Malcom Bridge Road.

---

[2] This allocation is based on the terms of the Irrevocable Trust of Judy Lenora Farmer dated August 12, 2020.

In Re: Estate of Bobby James Farmer
Estate No. F-183
Protective Order – Construction Equipment

(g) Duration: This protective order shall remain in full force and effect throughout the duration of the Superior Court litigation until the ownership issue is resolved and the Subject Equipment is surrendered to the appropriate party.

SO ORDERED this ⌐∿⌐ day of July, 2023, nunc pro tunc to June 14, 2023.

_____
Honorable Mike Hunsinger
Judge, Oconee County Probate Court

Consented to by:                         Consented to by:

*Kevin E. Epps*                          *See Transcript 06-14-23*
_____                  _____
Kevin E. Epps                            Adam Hebbard
Attorney for James D. Farmer             Attorney for Jason E. Farmer
Ga. Bar No. 785511                       Ga. Bar No. 221050
*(by J. Mills with express permission)*

Prepared by:                             Consented to by:

*Jon Mills*                              *Mark Stuckey*
_____                  _____
Jon Mills                                Mark Stuckey/J. Enrique Morales
Temporary Administrator                  Attorney for Christie Mitchell
Ga. Bar No. 355356                       Ga. Bar No. 256603/480978
                                         *(by J. Mills with express permission)*

In Re: Estate of Bobby James Farmer
Estate No. F-183
Protective Order – Construction Equipment

    (g) Duration: This protective order shall remain in full force and effect throughout the duration of the Superior Court litigation until the ownership issue is resolved and the Subject Equipment is surrendered to the appropriate party.

    SO ORDERED this ___14___ day of July, 2023, nunc pro tunc to June 14, 2023.

Honorable Mike Hunsinger
Judge, Oconee County Probate Court

Consented to by:

*Kevin E. Epps*

Kevin E. Epps
Attorney for James D. Farmer
Ga. Bar No. 785511
*(by J. Mills with express permission)*

Prepared by:

*Jon Mills*

Jon Mills
Temporary Administrator
Ga. Bar No. 355356

Consented to by:

*See Transcript 06-14-23*

Adam Hebbard
Attorney for Jason E. Farmer
Ga. Bar No. 221050

Consented to by:

*Mark Stuckey*

Mark Stuckey/J. Enrique Morales
Attorney for Christie Mitchell
Ga. Bar No. 256603/480978
*(by J. Mills with express permission)*

Page -6-

# EXHIBIT 8

## Citation/Petition for Contempt

Farmer v. Hunsinger, Case No. 3:25-cv-00154-TES
Middle District of Georgia, Athens Division

IN THE PROBATE COURT OF OCONEE COUNTY
STATE OF GEORGIA

IN RE: ESTATE OF                    :
                                    :        **ESTATE NO. F-183**
BOBBY JAMES FARMER,                 :
DECEASED.                           :
                                    :
_____    :

IN THE PROBATE COURT OF OCONEE COUNTY
STATE OF GEORGIA

IN RE: ESTATE OF                    :
                                    :        **ESTATE NO. F-189**
JUDY LENORA FARMER,                 :
DECEASED.                           :
                                    :
_____    :

## ORDER DENYING JASON FARMER'S SPECIAL APPEARANCE TO CONTEST JURISDICTION AND QUASH SUBPOENAS

**WHEREAS,** this Court entered a protective order formalizing the agreement between the parties to protect the ownership interest of the above estates on July 14, 2023, pursuant to its jurisdictional duties in O.C.G.A. § 15-9-30(a)(4) & (7);

**WHEREAS,** then counsel for Jason Farmer, having no limitation to his authority to bind Mr. Farmer to an agreement, on June 14, 2023, announced his agreement to the protective order on the record[1];

**WHEREAS,** Administrator with Will Annexed, Jon Mills, filed a citation for contempt alleging that Jason Farmer has failed to comply with the terms of the order;

**WHEREAS,** John Baker, Counsel for Jason Farmer, accepted service of subpoenas for the appearance of Jason Farmer, Misty Farmer, and Landon Farmer on March 4, 2024, requiring that they appear before this Court for a hearing on the citation for contempt on March 6, 2024;

**WHEREAS,** a hearing was commenced on March 6, 2024, at which Jason Farmer, Misty Farmer, and Lanson Farmer appeared, and Jason Farmer began to testify before this Court;

_____

[1] See this Court's order entered on July 14, 2023.

2697

**WHEREAS,** this Court suspended the hearing due to the report of counsel for Jason Farmer that Mr. Farmer was having a medical emergency;

**WHEREAS,** this Court gave notice to the parties present on March 6, 2024, of a continuation of this hearing on April 10, 2024;

**WHEREAS,** Mark Stuckey, attorney for Christie Mitchell, filed a motion to remove Jon Mills on April 9, 2024, this Court continued the hearing until the motion to remove could be considered;

**WHEREAS,** the motion to remove Jon Mills was denied and this Court entered an order that this matter be heard on August 7, 2024, on May 13, 2024, giving notice to the parties;

**WHEREAS,** Mark Stuckey, attorney for Christie Mitchell, filed a notice of appeal to the Superior Court, of the order denying his motion to remove Jon Mills on May 14, 2024, but later dismissed that motion on July 18, 2024;

**WHEREAS,** counsel for Jason Farmer filed this motion to quash four minutes before the scheduled hearing, and failed to appear before this Court for the hearing;

**THEREFORE, IT IS HEREBY ORDERED,** that pursuant to the applicable law, the motion to quash and challenge to the Court's jurisdiction is denied;

**IT IS HEREBY FURTHER ORDERED THAT** counsel for Jason Farmer, John Baker, shall appear before this Court on the ____ day of _____, 2024, at _____ ___.M., to address his contemptuous behavior of not appearing before this Court and counseling others to complete contemptuous acts;

**IT IS HEREBY FURTHER ORDERED THAT,** counsel for Jason Farmer, John Baker shall provide all communications between he and Marck Stuckey of any sort, as requested in the Subpoena of this Court that he received on July 29, 2024, to the Court within five (5) days of this order for in camera inspection. Should the documentation of communication between John Baker and Mark Stuckey not be provided as ordered, a bench warrant shall issue for the arrest of John Baker;

2698

# EXHIBIT 9

## Interim Order Finding Jason Farmer in Contempt
## (Sept. 3, 2024)

Farmer v. Hunsinger, Case No. 3:25-cv-00154-TES
Middle District of Georgia, Athens Division

IN THE PROBATE COURT OF OCONEE COUNTY
STATE OF GEORGIA

IN RE: ESTATE OF             :
                                   :    **ESTATE NO. F-183**
**BOBBY JAMES FARMER,**     :
**DECEASED.**               :
_____:

IN THE PROBATE COURT OF OCONEE COUNTY
STATE OF GEORGIA

IN RE: ESTATE OF             :
                                   :    **ESTATE NO. F-189**
**JUDY LENORA FARMER,**     :
**DECEASED.**               :
_____:

## INTERIM ORDER
## FINDING JASON FARMER IN CONTEMPT OF COURT

**WHEREAS,** this Court entered a Protective Order on July 14, 2023, pursuant to an announced agreement by the parties for the protection of ownership interests in the above captioned estates;

**WHEREAS,** Jon Mills, Administrator with Will Annexed ("Administrator") for the above captioned estates filed a Petition for Citation of Contempt and other relief ("Petition") on December 14, 2023, alleging that Jason Farmer has failed to comply with the terms of the order;

**WHEREAS,** the Petition was amended on January 24, 2024, by attorney Jon Mills by adding a sworn verification;

**WHEREAS,** James Farmer, through counsel, joined the Petition on January 23, 2024;

**WHEREAS,** the hearing on the Petition began on March 6, 2024, wherein counsel for Jason Farmer, John Baker, admitted that his client was in contempt of this Court's July 14, 2023, order;

2700

**WHEREAS,** during the testimony of Jason Farmer he admitted that he was in willful non-compliance of this Court's July 14, 2023, order, and the Court took a recess in accommodation of a request by Jason Farmer to get some water;

**WHEREAS,** subsequent to the recess, the Court entered an order suspending the matter until April 10, 2024. That hearing was continued until August 7, 2024, and notices of the continuation were given to attorney John Baker for the attendance of Jason Farmer;

**WHEREAS,** attorney John Baker, counsel on behalf of Jason Farmer, filed a Special Appearance and Motion to Quash ten minutes before the scheduled hearing, and failed to appear before this Court for the hearing;

**WHEREAS,** the Court denied Jason Farmer's Special Appearance and Motion to Quash Subpoena;

**WHEREAS,** the Court then held the balance of the hearing receiving into evidence transcripts of sworn testimony from Marsha Hatch and Donald Couch, Jr., bank records of Jason Farmer reflecting business income, inclusive of dates immediately after his reported medical emergency that prevented him from continuing with his testimony on March 6, 2024;

**THEREFORE, THIS COURT HEREBY FINDS,** that Jason Farmer is in willful contempt of the Protective Order lawfully entered on July 14, 2023;

**IT IS HEREBY ORDERED,** that pursuant to the applicable law, Jason Farmer must fully comply with the terms of the Protective Order;

**IT IS HEREBY FURTHER ORDERED THAT,** to purge himself of contempt, Jason Farmer must: (1) upon receipt of this order via email and through his counsel, John Baker, within twenty-four (24) hours, identify the location of all equipment listed in the Protective Order and allow the inspection of the equipment listed in the Protective Order by Administrator Jon Mills,

(2) pay the amount of Thirty Thousand Dollars ($30,000.00) to Administrator Jon Mills[1]; (3) produce an accounting within seven (7) days of the receipt of this Order via email to his attorney for record, John Baker of use of the equipment which logically corresponds with the income shown on the admitted bank statements so that this Court may complete its findings regarding the appropriate arrearage due to the Administrator regarding the equipment listed in the Protective Order[2];

**IT IS HEREBY FURTHER ORDERED THAT,** the Administrator shall secure the equipment listed under the Protective Order and the Oconee County Sheriff shall aid in securing the equipment;

**IT IS HEREBY FURTHER ORDERED THAT,** Jason Farmer shall pay the costs of pursuit of this action by Jamie Farmer, including reasonable attorneys' fees. James Farmer shall submit an affidavit as to the costs no later than fourteen (14) days from the date of this order for the Court to consider the appropriate amount to be ordered;

**IT IS HEREBY FURTHER ORDERED THAT,** Jason Farmer shall pay to the Administrator a fee in the amount of 2.5% of the total rent due under the terms of the Protective Order as the cost of his pursuit of this matter. Seven hundred and fifty dollars shall be paid to Mr. Mills by Jason Farmer and that amount shall offset the total owed;

**IT IS HEREBY FURTHER ORDERED THAT,** should Jason Farmer fail to purge himself of his contempt of this Court's order, he shall be arrested and held in the Oconee County Jail until such time that a hearing can be held regarding the same.

So ordered, this _____ day of August, 2024.

---

[1] Said amount represents the minimum amount of rent payment due under the Protective Order. Said amount will offset the total amount due pursuant to further finding of this Court.

[2] Should an accounting not be provided as stated in this Order, Administrator Jon Mills and Movant James Farmer shall submit, within 30 days of this order, their findings of the amount owed by Jason Farmer.

2702

ORDER PREPARED BY:
Kevin Epps
Epps, Holloway, DeLoach & Hoipkemier, LLC
1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000

_____
Honorable Mike Hunsinger, Judge

2503

IN THE PROBATE COURT OF OCONEE COUNTY
STATE OF GEORGIA

IN RE: ESTATE OF      :
            :   **ESTATE NO. F-183**
BOBBY JAMES FARMER,  :
DECEASED.       :
————————————————:

IN THE PROBATE COURT OF OCONEE COUNTY
STATE OF GEORGIA

IN RE: ESTATE OF      :
            :   **ESTATE NO. F-189**
JUDY LENORA FARMER,   :
DECEASED.       :
————————————————:

## INTERIM ORDER
## FINDING JASON FARMER IN CONTEMPT OF COURT

**WHEREAS,** this Court entered a Protective Order on July 14, 2023, pursuant to an announced agreement by the parties for the protection of ownership interests in the above captioned estates;

**WHEREAS,** Jon Mills, Administrator with Will Annexed ("Administrator") for the above captioned estates filed a Petition for Citation of Contempt and other relief ("Petition") on December 14, 2023, alleging that Jason Farmer has failed to comply with the terms of the order;

**WHEREAS,** the Petition was amended on January 24, 2024, by attorney Jon Mills by adding a sworn verification;

**WHEREAS,** James Farmer, through counsel, joined the Petition on January 23, 2024;

**WHEREAS,** the hearing on the Petition began on March 6, 2024, wherein counsel for Jason Farmer, John Baker, admitted that his client was in contempt of this Court's July 14, 2023, order;

DATE FILED _9/3/2024_
TIME _9:45 AM_
CLERK/ JUDGE _____

$\partial \eta \cap \eta$

**WHEREAS,** during the testimony of Jason Farmer he admitted that he was in willful non-compliance of this Court's July 14, 2023, order, and the Court took a recess in accommodation of a request by Jason Farmer to get some water;

**WHEREAS,** subsequent to the recess, the Court entered an order suspending the matter until April 10, 2024. That hearing was continued until August 7, 2024, and notices of the continuation were given to attorney John Baker for the attendance of Jason Farmer;

**WHEREAS,** attorney John Baker, counsel on behalf of Jason Farmer, filed a Special Appearance and Motion to Quash ten minutes before the scheduled hearing, and failed to appear before this Court for the hearing;

**WHEREAS,** the Court denied Jason Farmer's Special Appearance and Motion to Quash Subpoena;

**WHEREAS,** the Court then held the balance of the hearing receiving into evidence transcripts of sworn testimony from Marsha Hatch and Donald Couch, Jr., bank records of Jason Farmer reflecting business income, inclusive of dates immediately after his reported medical emergency that prevented him from continuing with his testimony on March 6, 2024;

**THEREFORE, THIS COURT HEREBY FINDS,** that Jason Farmer is in willful contempt of the Protective Order lawfully entered on July 14, 2023;

**IT IS HEREBY ORDERED,** that pursuant to the applicable law, Jason Farmer must fully comply with the terms of the Protective Order;

**IT IS HEREBY FURTHER ORDERED THAT,** to purge himself of contempt, Jason Farmer must: (1) upon receipt of this order via email and through his counsel, John Baker, within twenty-four (24) hours, identify the location of all equipment listed in the Protective Order and allow the inspection of the equipment listed in the Protective Order by Administrator Jon Mills,

2718

(2) pay the amount of Thirty Thousand Dollars ($30,000.00) to the Estate of Judy Lenora Farmer through Administrator Jon Mills[1]; (3) produce an accounting within seven (7) days of the receipt of this Order via email to his attorney for record, John Baker of use of the equipment which logically corresponds with the income shown on the admitted bank statements so that this Court may complete its findings regarding the appropriate arrearage due to the Administrator regarding the equipment listed in the Protective Order[2];

**IT IS HEREBY FURTHER ORDERED THAT,** the Administrator shall secure the equipment listed under the Protective Order and the Oconee County Sheriff shall aid in securing the equipment;

**IT IS HEREBY FURTHER ORDERED THAT,** Jason Farmer shall pay the costs of pursuit of this action by Jamie Farmer, including reasonable attorneys' fees. James Farmer shall submit an affidavit as to the costs no later than fourteen (14) days from the date of this order, a hearing will thereafter be scheduled the Court to consider the appropriate amount to be ordered;

**IT IS HEREBY FURTHER ORDERED THAT,** Jason Farmer shall pay the costs of pursuit of this action by the Administrator, including reasonable attorneys' fees. The Administrator shall submit an affidavit as to the costs no later than fourteen (14) days from the date of this order, a hearing will thereafter be scheduled the Court to consider the appropriate amount to be ordered;

**IT IS HEREBY FURTHER ORDERED THAT,** should Jason Farmer fail to purge himself of his contempt of this Court's order, he shall be arrested and held in the Oconee County Jail until such time that a hearing can be held regarding the same.

---

[1] Said amount represents the minimum amount of rent payment due under the Protective Order. Said amount will offset the total amount due pursuant to further finding of this Court.
[2] Should an accounting not be provided as stated in this Order, Administrator Jon Mills and Movant James Farmer shall submit, within 30 days of this order, their findings of the amount owed by Jason Farmer.

2719

So ordered, this 3rd day of September, 2024.

ORDER PREPARED BY:
Kevin Epps
Epps, Holloway, DeLoach & Hoipkemier, LLC
1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000

Honorable Mike Hunsinger, Judge

2020

# EXHIBIT 10

**Jason Farmer's Amended Notice of Appeal —
A25A0690**

Farmer v. Hunsinger, Case No. 3:25-cv-00154-TES
Middle District of Georgia, Athens Division

**IN THE PROBATE COURT OF OCONEE COUNTY
STATE OF GEORGIA**

In Re: Estate of Bobby James Farmer,

Deceased

Estate No. F-183

**IN THE PROBATE COURT OF OCONEE COUNTY
STATE OF GEORGIA**

In Re: Estate of Judy Lenora Farmer,

Deceased

Estate No. F-189

## JASON FARMER'S AMENDED NOTICE OF APPEAL TO THE GEORGIA COURT OF APPEALS

COME NOW Jason Farmer and, pursuant to OC.G.A. §§§§ 5-6-13, 5-6-34(d), 5-6-35, 5-6-48(d)), 15-9-120, 15-9-123 and cases construing them, files his Notice of Appeal to the Georgia Court of Appeals.

Appellant appeals from the **void** September 23rd, 2024 and August 7, 2025 Orders providing for his incarceration for criminal contempt, and which did result in Appellant's false arrest and incarceration for criminal contempt without a show cause hearing or other due process on August 8, 2025.

DATE FILED 8/26/25
TIME 1:59 PM
CLERK JUDGE

1

Appellants will pay costs of appeal upon presentment of the same by the Court and/or Clerk.

> "the … notice of appeal serves as supersedeas when all costs in the trial court are paid. This automatic supersedeas deprives the trial court of jurisdiction to modify or alter the judgment in the case pending the appeal." … Therefore, any "subsequent proceedings purporting to supplement, amend, alter or modify the judgment, whether pursuant to statutory or inherent power, are without effect."

*Lawyers Title Ins. Corp. v. Griffin*, 302 Ga. App. 726, 728-729 (2010) (internal citations omitted).

The Clerk will please transmit to the Court of Appeals the entire record from the Probate Court of Oconee County.

Respectfully submitted this 26th day of August, 2025.

JOHN BAKER LAW

/s/ John Baker*
JOHN BAKER
Georgia Bar No. 033797
1551 Jennings Mill Road Suite 3100B
Watkinsville, Georgia 30677
(706) 608-2406
john@johnbaker.law
*Attorney for Petitioner Jason Farmer*

2

2

CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing Notice of Appeal to the Court of Appeals upon the following counsel of record by delivering same via hand delivery or by depositing same in the United States Mail with adequate postage affixed, addressed as follows:

Kevin Epps
Epps, Holloway, DeLoach & Hoipkemier, LLC
1220 Langford Drive, Bldg. 200-305
Watkinsville, Georgia 30677

Jon Mills
3651 Mars Hill Road, Suite 200A
Watkinsville, Georgia 30677

Mark Stuckey
Robbie Hughes
Hughes & Associates PC
390 West Crogan Street
Suite 230
Lawrenceville, GA 30046

This the 26th day of August, 2025.

JOHN BAKER LAW

/s/ John Baker
JOHN BAKER
Georgia Bar No. 033797
1551 Jennings Mill Road Suite 3100B
Watkinsville, Georgia 30677
(706) 608-2406
john@johnbaker.law
*Attorney for Petitioner Jason Farmer*

3

3

# EXHIBIT 11

---

## Orders Bearing 'ORDER PREPARED BY: Kevin Epps' Notation

Farmer v. Hunsinger, Case No. 3:25-cv-00154-TES

Middle District of Georgia, Athens Division

**IT IS HEREBY FURTHER ORDERED THAT** Jason Farmer, Misty Farmer, and Landon Farmer shall appear before this Court on the _____ day of _____, 2024, at _____ ___.M., to offer testimony regarding the use of the equipment subject to the protective order by Jason Farmer so that the Court can determine the correct amount of money to be paid by Jason Farmer and held by Jon Mills, pursuant to the protective order;

**IT IS HEREBY FURTHER ORDERED THAT** at said time, Jason Farmer, Misty Farmer, and Landon Farmer shall show cause why this Court should not hold them in contempt for failing to follow its duly ordered process;

**IT IS HEREBY FURTHER ORDERED THAT** costs and attorney's fees in regarding this motion shall be taxed against Jason Farmer in an amount to be determined at the above set time;

**IT IS HEREBY FURTHER ORDERED THAT** the Oconee County Sheriff personally serve, John Baker, Jason Farmer, Misty Farmer and Landon Farmer a copy of this order.

So ordered, this _____ day of August, 2024.

_____
Honorable Mike Hunsinger, Judge

ORDER PREPARED BY:

Kevin Epps
Epps, Holloway, DeLoach & Hoipkemier, LLC
1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000

2699

ORDER PREPARED BY:
Kevin Epps
Epps, Holloway, DeLoach & Hoipkemier, LLC

1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000

_____
Honorable Mike Hunsinger, Judge

2503

So ordered, this 3rd day of September, 2024.

ORDER PREPARED BY:
Kevin Epps
Epps, Holloway, DeLoach & Hoipkemier, LLC
1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000

Honorable Mike Hunsinger, Judge

2020

**WHEREAS,** counsel Stuckey has alleged that communications between counsel Stuckey and attorney John Baker are shielded by the privilege of attorney work product;

**WHEREAS,** counsel Stuckey provided some documents and communications responsive to the Subpoena to attorney Kevin Epps that counsel Stuckey demanded to not be protected by attorney work product;

**THEREFORE, IT IS HEREBY ORDERED,** that pursuant to the applicable law, the motion to quash and objections to subpoena are denied;

**IT IS HEREBY FURTHER ORDERED THAT** the Court will conduct an in camera inspection of any and all communications related to Judy Lenora Farmer, Bobby James Farmer, the Estate of Judy Lenora Farmer and/or the Estate of Bobby James Farmer from October 9, 2023 to present, to determine if any of this includes, but is not limited to, text messages, emails, letters, voice recordings and any other form of communication ("Communications") ;

IT IS HEREBY FURTHER ORDERED THAT the Communications shall be provided to this Court within seven (7) days of from the date of this order;

**IT IS HEREBY FURTHER ORDERED THAT,** this Court will review the Communications and redact or remove any that would otherwise be protected as attorney work product;

IT IS HEREBY FURTHER ORDERED THAT the issue of attorneys' fees shall be reserved until after the Court conducts its in camera inspection.

So ordered, this 3rd day of September, 2024.

ORDER PREPARED BY:
Kevin Epps
Epps, Holloway, DeLoach & Hoipkemier, LLC
1220 Langford Drive
Building 200-101
Watkinsville, Georgia 30677
(706) 508-4000

Honorable Mike Hunsinger, Judge

# EXHIBIT 12

---

**Application for Supersedeas (Aug. 8, 2025) with Exhibits**

Farmer v. Hunsinger, Case No. 3:25-cv-00154-TES
Middle District of Georgia, Athens Division

IN THE PROBATE COURT OF OCONEE COUNTY
STATE OF GEORGIA

In Re: Estate of Bobby James Farmer,

Deceased

Estate No. F-183

IN THE PROBATE COURT OF OCONEE COUNTY
STATE OF GEORGIA

In Re: Estate of Judy Lenora Farmer,

Deceased

Estate No. F-189

## JASON FARMER'S NOTICE OF APPEAL TO THE
## GEORGIA COURT OF APPEALS

COME NOW Jason Farmer and, pursuant to OC.G.A. §§§§ 5-6-13, 5-6-34(d),
5-6-35, 5-6-48(d)), 15-9-120, 15-9-123 and cases construing them, files his Notice of
Appeal to the Georgia Court of Appeals.

Appellant appeals from the **void** September 3, 2024 Order providing for his
incarceration for criminal contempt, and which did result in Appellant's false arrest and
incarceration for criminal contempt without a show cause hearing or other due process
on August 8, 2025.

DATE FILED  8/11/25
TIME 10:16 AM
CLERK / JUDGE

1

Appellants will pay costs of appeal upon presentment of the same by the Court and/or Clerk.

> "the ... notice of appeal serves as supersedeas when all costs in the trial court are paid. This automatic supersedeas deprives the trial court of jurisdiction to modify or alter the judgment in the case pending the appeal." ... Therefore, any "subsequent proceedings purporting to supplement, amend, alter or modify the judgment, whether pursuant to statutory or inherent power, are without effect."

*Lawyers Title Ins. Corp. v. Griffin*, 302 Ga. App. 726, 728-729 (2010) (internal citations omitted).

The Clerk will please transmit to the Court of Appeals the entire record from the Probate Court of Oconee County.

Respectfully submitted this 8th day of August, 2025.

JOHN BAKER LAW

/s/John Baker*
*by KSW w/express permission
JOHN BAKER*
Georgia Bar No. 033797
1551 Jennings Mill Road
Suite 3100B
Watkinsville, Georgia 30677
(706) 608-2406
john@johnbaker.law
Attorney for Petitioner Jason Farmer

.

2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Jason Farmer and John Baker's Notice of Appeal to Court of Appeals* shall be served upon all counsel of record via electronic mail notification to all counsel of record.

This the 8th day of August, 2025.

JOHN BAKER LAW

*/s/John Baker\**
*\*by KSW w/express permission*
JOHN BAKER*
Georgia Bar No. 033797
1551 Jennings Mill Road
Suite 3100B
Watkinsville, Georgia 30677
(706) 608-2406
john@johnbaker.law
*Attorney for Petitioner Jason Farmer*

3

### IN THE PROBATE COURT OF OCONEE COUNTY
### STATE OF GEORGIA

IN RE:  ESTATE OF                                *
                                                 *
**JUDY LENORA FARMER**                           *        ESTATE NO.  F-189
          Deceased                               *
                                                 *

### IN THE PROBATE COURT OF OCONEE COUNTY
### STATE OF GEORGIA

IN RE:  ESTATE OF                                *
                                                 *
**BOBBY JAMES FARMER**                           *        ESTATE NO.  F-183
          Deceased                               *
                                                 *

### NOTICE OF INTENT TO SEEK REVIEW AND APPLICATION FOR
### SUPERSEDEAS

      COMES NOW Jason Farmer, through below-signed counsel, pursuant to

O.C.G.A. § 5-6-13, and gives notice of the intent to appeal this Court's

adjudication of contempt relating to a void "protective order" entered without

subject matter jurisdiction and resulting in the **false arrest and incarceration of**

**Jason Farmer on August 8, 2025.**  Section 5-6-13 requires that supersedeas of

the contempt order be granted, upon this statutory application, such that **"It shall**

**not be in the discretion of any trial court judge to grant or refuse a**

**supersedeas in cases of contempt." Id.**

DATE FILED  8|8|25
TIME  4:52 pm
CLERK/JUDGE

## IN THE PROBATE COURT OF OCONEE COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **IN RE: ESTATE OF** | : | |
| | : | **ESTATE NO. F-183** |
| **BOBBY JAMES FARMER,** | : | |
| **DECEASED.** | : | |
| | : | |

## IN THE PROBATE COURT OF OCONEE COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **IN RE: ESTATE OF** | : | |
| | : | **ESTATE NO. F-189** |
| **JUDY LENORA FARMER,** | : | |
| **DECEASED.** | : | |
| | : | |

### BENCH WARRANT AND ARREST ORDER

**WHEREAS,** this Court finds that the above-styled cases are before the Court subsequent to this Court's September 3, 2024 *Interim Order Finding Jason Farmer in Contempt of Court* ("Contempt Order"), in which this Court found "that Jason Farmer is in willful contempt of the Protective Order lawfully entered on July 14, 2023;

**WHEREAS,** this Court further finds that the Contempt Order ordered Jason Farmer to (1) comply with this Court's July 14 ,2023 Protective Order and (2) set forth the requirements Jason Farmer was mandated to meet in order for Jason Farner to purge himself of contempt;

**WHEREAS,** this Court further finds that Administrator Jon Mills has reported to the Court that Jason Farmer has both (1) failed to comply with the July 14 ,2023 Protective Order and (2) has failed to meet the mandated requirements in order purge himself from such contempt as directed in the Contempt Order. Administrator Jon Mills' Notice of Non-Compliance is attached and incorporated herein as Exhibit "A."

**IT IS HEREBY ORDERED THAT,** the Sheriff of Oconee County, Georgia, or his lawful designee authorized to execute warrants, is·**COMMANDED** to arrest Jason Farmer and to hold Jason Farmer in the Oconee County Jail until further order of this Court, to be dealt with as the law directs. **HEREIN FAIL NOT.**

**IT IS HEREBY FURTHER ORDERED THAT,** the Oconee County Sheriff's Office, is required to notify this Court immediately upon the effectuation of said arrest.

Identifying data for Jason Farmer:

| | |
|---|---|
| Name: | **JASON FARMER** |
| Race: | **W** |
| Gender: | **M** |
| SSN: | **259-49-XXXX** |
| DOB: | **05/1973** |
| Residential Address: | **2101 MALCOM BRIDGE ROAD BOGART, GA 30622** |

**SO ORDERED,** this ⎯⎯ day of August, 2025.



**HONORABLE MIKE HUNSINGER, JUDGE**
**PROBATE COURT OF OCONEE COUNTY**

**WARRANT EXECUTION AND SERVICE**

The above-named JASON FARMER was arrested on the ⎯⎯⎯ day of ⎯⎯⎯⎯⎯⎯⎯⎯, 2025, by ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ (Printed Name of Arresting Official).

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Signature of Arresting Official

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Printed name of Law Enforcement Agency

Page 2 of 2



**EXHIBIT**

_A_

## IN THE PROBATE COURT OF OCONEE COUNTY
### STATE OF GEORGIA

IN RE:                          *
                                *
**BOBBY JAMES FARMER,**         *    **ESTATE NO: F-183**
        **Deceased.**           *
                                *
IN RE:                          *
                                *
**JUDY LENORA FARMER,**         *    **ESTATE NO: F-189**
        **Deceased.**           *

### NOTICE OF NON-COMPLIANCE

The undersigned, Jon Mills, as Administrator with Will Annexed for the Estate of Bobby James Farmer and the Estate of Judy Lenora Farmer provide notice to the Court as follows:

1. The Probate Court issued the *Interim Order Finding Jason Farmer in Contempt of Court* ("Contempt Order") on September 3, 2024 after various hearings conducted in these matters.

2. The Contempt Order required Jason Farmer to perform certain acts to purge his contempt. The Contempt Order relates to issues involving Jason Farm's non-compliance with various terms of the Protective Order entered by the Court on July 14, 2023 relating to certain items of equipment ("Equipment") as further identified within the Protective Order.

3. Subsequent to the Contempt Order being issued, various interested parties initiated appellate/judicial review.

4. The Superior Court of Oconee County issued an Order on August 1, 2025 granting a Motion to Dismiss filed by James Farmer concerning the Petition for Judicial Review filed by Jason Farmer, et. al.

5. On August 6, 2025, the undersigned was able to secure one of the cranes subject to the Contempt Order as more fully explained in the Notice of Seizure, same being simultaneously filed with the Court.

6. As of August 7, 2025, the undersigned provides notice of the following acts of non-compliance with the Contempt Order:

    a. Jason Farmer has not provided the undersigned with information concerning the identity of the Equipment as required by the Contempt Order.

In Re: Estate of Bobby Farmer – Estate No. F-183
In Re: Estate of Judy Farmer – Estate No. F-189
Notice of Non-Compliance

        b.  Jason Farmer has not provided the undersigned with the opportunity to conduct an inspection of the Equipment as required by the Contempt Order.

        c.  Jason Farmer has not paid $30,000.00 to the Estate of Judy Lenora Farmer as required by the Contempt Order.

        d.  Jason Farmer has not provided an accounting concerning the use of the Equipment as required by the Contempt Order.

This 7th day of August, 2025.

                                           Jon Mills
                                           Administrator for Estate of Bobby Farmer
                                          Administrator for Estate of Judy Farmer

Sworn to and subscribed to before me
this 7th day of August, 2025.

Notary Public, Oconee County, GA
My commission expires 04-27-2029

In Re: Estate of Bobby Farmer – Estate No. F-183
In Re: Estate of Judy Farmer – Estate No. F-189
Notice of Non-Compliance

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the *Notice of Non-Compliance* in the above styled case upon the opposing/interested parties in this matter, by Statutory Electronic Service to:

John Baker
john@johnbaker.law

Mark Stuckey
mark@hughespclaw.com

Robert Hughes
robby@hughespclaw.com

Kevin Epps
kevin@ehdhlaw.com

This 7th day of August, 2025.

Jon Mills
Georgia Bar No. 355356

Durden & Mills, P.C.
Attorneys at Law
1551 Jennings Mill Rd #2200B
Watkinsville, GA 30677
(706) 543-4708

# EXHIBIT 13

## Emergency Petition for Mandamus — A26E0016

Farmer v. Hunsinger, Case No. 3:25-cv-00154-TES
Middle District of Georgia, Athens Division

IN THE SUPERIOR COURT OF OCONEE COUNTY
STATE OF GEORGIA

JASON FARMER,

    Petitioner

v.

PROBATE COURT OF OCONEE
COUNTY, STATE OF GEORGIA,
JUDGE MIKE HUNSINGER

    Respondents.

## RULE 40 EMERGENCY MOTION FOR SUPERSEDEAS BOND or MANDAMUS ORDER

Petitioner Jason Farmer, by and through undersigned counsel, files this Emergency Petition for Supersedeas Bond pursuant to O.C.G.A. §§ 5-6-46 and 5-6-13 and request for exercise of the Court's Mandamus jurisdiction pursuant to Rule 40(a-c), showing the Court as follows:

### TIME SENSITIVITY AND NECESSITY

1.    Petitioner is presently incarcerated in the Oconee County Jail pursuant to an August 8, 2025 Bench Warrant and Arrest Order in connection with a judgment of criminal without prior notice or hearing, and without subject matter jurisdiction , judicial power under the Georgia Constitution, or due process. Each day of continued confinement constitutes irreparable harm per se, and this Court's immediate intervention is necessary to preserve its jurisdiction, prevent a continuation of a false arrest and false imprisonment, and abate potential mootness of substantive issues on Appeal.

2.      On August 5th, 2025 the Oconee County Probate Court issued a Rule Nisi setting a hearing three days later on August 8th, 2025[1] as to "why Jason Farmer should not be incarcerated" based on a previous "Interim Order" of contempt.

3.      On August 7th, 2025, the Court entered two separate Orders.  While purporting to stay the issue of Jason Farmer's incarceration based on an "Order for Continuance" that "…will continue the hearing" as to "…why Jason Farmer should not be incarcerated…until a..date to be determined by the Court.", the Court secretly[2] issued a "Bench Warrant and Arrest Order" commanding the Sheriff to arrest Jason Farmer without a prior hearing or due process.

4.      Jason Farmer was seized in Athens-Clarke County at his place of business on August 8th by Athens-Clarke County Police and held there for Deputies of the Oconee County Sheriff's Office, who incarcerated Jason in the Oconee County Jail.

5.      Jason Farmer was subjected to a false arrest because **the Probate Court's Orders relating to Jason Farmer's "contempt" were issued without subject matter jurisdiction** over disputed property, or any judicial power conferred by the Georgia Constitution.

> *As the probate court is without jurisdiction to determine matters respecting title to personal property, this issue must be decided in the proper forum in order to confer authority upon the probate court to*

---

[1] In doing so, the Court disregarded its Rules.   According to Rule 10.5, "Hearings on contested matters shall be set by the court upon the request of any interested party, at the next available hearing date, and notice shall be given by first class mail at least ten (10) days in advance to all interested parties."

[2] Although the Order for Continuance was emailed to all counsel when it was entered on August 7th, notice of the Bench Warrant and Arrest Order was withheld until it was emailed by the Court to all counsel earlier this morning, August 11, 2025.

> determine whether such property belongs in the estate, and therefore, in
> the executor's possession…
>
> ..An order of contempt cannot be based on noncompliance with a void
> order. "Where the pleadings show on their face that the court is without
> jurisdiction of the subject-matter ... any preliminary order or final
> judgment rendered therein is void; and disobedience of a void mandate,
> order, or judgment, ... is not contempt of court.

In re Est. of Adamson, 215 Ga. App. 613, 613, 451 S.E.2d 501, 502 (1994)

6.      Petitioner has timely applied for a supersedeas bond and submitted a

notice of appeal of the Probate Court's contempt and arrest orders to this Court –

including payment of costs - and now seeks supersedeas to stay his incarceration

pending appellate review.   (See Exhibits D and E)

7.      Petitioner, who has been incarcerated since August 8th, is currently

incarcerated in violation of Georgia and Federal law, and absent the grant of

supersedeas bond, his liberty will be wrongfully restrained before this Court can

consider the merits of his appeal.

7.      In Ramsey v. Ramsey, 231 Ga. 334, 201 S.E.2d 429 (1973), the Supreme

Court of Georgia held that appeals from contempt orders are directly appealable

and that supersedeas may issue to stay execution of incarceration pending

appellate determination.

8.      Even though O.C.G.A. § 5-6-13 expressly requires the Probate Court to

grant supersedeas in these circumstances, the Court has refused to issue a

reasonable bond since the application for supersedeas was provided to the Court

on August 8, 2025.[3]

9.      Without an emergency grant of supersedeas bond or an exercise of the

Court's mandamus powers, Petitioner will suffer immediate and irreparable loss

of liberty.

10.    The equities weigh overwhelmingly in favor of preserving the status quo

until jurisdictional and substantive issues can be reviewed on appeal.[4]

11.    No prejudice will accrue to Respondent by granting a supersedeas bond,

as the matter concerns civil enforcement and alleged property disputes, not

ongoing threats to public safety.

12.    Mandamus lies in this Court rather than in superior court because this

relief is necessary to protect the Court of Appeals' jurisdiction over Petitioner's

direct appeal from the contempt order. The Probate Court's refusal to grant a

mandatory statutory supersedeas directly impairs this Court's ability to decide the

appeal.

        WHEREFORE, Petitioner respectfully requests that this Court:

a.      Immediately grant this Emergency Petition for Supersedeas Bond, or, in

the alternative, exercise its Mandamus powers to compel the Probate Court to

issue a Supersedeas Bond;

b.      Stay all proceedings to execute the Probate Court's arrest order pending

---

[3] Just as Petitioner was set to e-file this Petition, he received a purported "Order for Supersedeas Bond" conditioning release on payment of "$500,000.00", which is attached hereto as an exhibit.
[4] Although other procedural aspects of this dispute were previously litigated in this Court without reaching the merits, this is the first request for relief in connection with the Probate Court's "Bench Warrant" issued on August 7th, 2025 issued without subject matter jurisdiction or judicial power and resulting in the false arrest of Jason Farmer.

resolution of Petitioner's appeal; and

c.      Grant such other and further relief as this Court deems proper.

Respectfully submitted this 11th day of August, 2025.

/s/ John Baker
John Baker
Georgia Bar No. 033797
JOHN BAKER LAW
1551 Jennings Mill Rd. Suite 3100B
Watkinsville, GA 30677
(706) 608-2406
john@johnbaker.law
Attorney for Jason Farmer

## CERTIFICATE OF SERVICE

I hereby certify that I have this 11 day of August, 2025, served a copy of

the foregoing Emergency Petition upon Respondents and all counsel of Record

by depositing it for mailing with the United States Postal Service with proper

postage attached thereto, and addressed to the following:


Judge Mike Hunsinger
Oconee County Probate Court
23 N. Main St.
Watkinsville, GA 30677

Jon Mills
Durden & Mills
1551 Jennings Mill Rd.
Watkinsville, GA 30677

Mark Stuckey
Hughes & Associates
390 West Crogan Street, Suite 230
Lawrenceville, GA 30046-6913

Kevin Epps
1220 Langford Drive
Bldg 200 Suite 101
Watkinsville, GA 30677


Respectfully submitted this 11th day of August, 2025.


**/s/ John Baker**
John Baker
Georgia Bar No. 033797
JOHN BAKER LAW
1551 Jennings Mill Rd. Suite 3100B
Watkinsville, GA 30677
(706) 608-2406
john@johnbaker.law
Attorney for Jason Farmer

# EXHIBIT 14

**Court of Appeals Emergency Order — Release 'Instanter' (Aug. 12, 2025)**

Farmer v. Hunsinger, Case No. 3:25-cv-00154-TES
Middle District of Georgia, Athens Division

# Court of Appeals
# of the State of Georgia

ATLANTA,  August 12, 2025

*The Court of Appeals hereby passes the following order:*

**A26E0016.  JASON FARMER v. MIKE HUNSINGER, JUDGE.**

Jason Farmer moves this Court for an emergency grant of supersedeas or a writ of mandamus to compel the trial court to stay his incarceration following the trial court's grant of a Bench Warrant and Arrest Order ("Arrest Order"). See Ga. Const. of 1983, Art. VI, Sec. 1, Par. IV; OCGA § 9-11-62 (e); Court of Appeals Rule 40. Based on a notice filed by the estate administrator on August 7, 2025, that Farmer had failed to comply with a 2024 contempt order, the trial court ordered that Farmer be arrested and held in jail until further order of the court.  The trial court signed the Arrest Order on August 7, 2025, but did not enter it until August 11, 2025. Farmer has been incarcerated since he was arrested pursuant to the Arrest Order on August 8, 2025. That same day, he filed a Notice of Intent to Seek Review and Application for Supersedeas in the trial court.

As provided in OCGA § 5-6-13 (a), a trial court has no discretion to grant or refuse a supersedeas in cases of contempt where the defendant has submitted written notice indicating his intent to seek review of the adjudication of contempt. See *Binkley v. Flatt*, 256 Ga. App. 263, 265-266 (2) (568 SE2d 95) (2002). "The statute calls a mandatory halt [to punishment for contempt] as a matter of right." *Calvert Enterprises, Inc. v. Griffin-Spalding County Hosp. Auth.*, 197 Ga. App. 727, 729 (1) (399 SE2d 287) (1990). Although the trial court granted Farmer's application for supersedeas on August 11, 2025, it included a supersedeas bond (of $500,000) seemingly in contravention of OCGA § 5-6-46 (a), which states that "it shall not be

necessary that a supersedeas bond or other form of security be filed" unless the appellee files a motion seeking one.

Because this issue involves the incarceration of a litigant, which cannot be undone if we find error in a docketed appeal, we (noting the expedited nature of this proceeding) find that it justifies the use of our inherent authority under Court of Appeals Rule 40 (b). We therefore GRANT Farmer's emergency motion and ORDER the trial court, the Probate Court of Oconee County, to VACATE its Order for Supersedeas Bond and issue an order granting Farmer's application for supersedeas without such bond required. We further ORDER that he be released from custody instanter and that enforcement of the contempt order be stayed until such time as the underlying appeal is docketed and resolved on the merits.



Court of Appeals of the State of Georgia
Clerk's Office, Atlanta, __08/12/2025_____

    I certify that the above is a true extract from the minutes of the Court of Appeals of Georgia.

    Witness my signature and the seal of said court hereto affixed the day and year last above written.

_Christina Coley Smith_____, Clerk.

# EXHIBIT 15

## Bench Warrant Filing / Appeal Record

Farmer v. Hunsinger, Case No. 3:25-cv-00154-TES
Middle District of Georgia, Athens Division

Case A26E0016   Filed 08/11/2025   Page 1 of 5 W 0070

IN THE PROBATE COURT OF OCONEE COUNTY
STATE OF GEORGIA

IN RE: ESTATE OF                    :
                                    :        **ESTATE NO. F-183**
**BOBBY JAMES FARMER,**              :
**DECEASED.**                        :
_____    :

IN THE PROBATE COURT OF OCONEE COUNTY
STATE OF GEORGIA

IN RE: ESTATE OF                    :
                                    :        **ESTATE NO. F-189**
**JUDY LENORA FARMER,**              :
**DECEASED.**                        :
_____    :

### BENCH WARRANT AND ARREST ORDER

**WHEREAS,** this Court finds that the above-styled cases are before the Court subsequent to this Court's September 3, 2024 *Interim Order Finding Jason Farmer in Contempt of Court* ("Contempt Order"), in which this Court found "that Jason Farmer is in willful contempt of the Protective Order lawfully entered on July 14, 2023;

**WHEREAS,** this Court further finds that the Contempt Order ordered Jason Farmer to (1) comply with this Court's July 14 ,2023 Protective Order and (2) set forth the requirements Jason Farmer was mandated to meet in order for Jason Farner to purge himself of contempt;

**WHEREAS,** this Court further finds that Administrator Jon Mills has reported to the Court that Jason Farmer has both (1) failed to comply with the July 14 ,2023 Protective Order and (2) has failed to meet the mandated requirements in order purge himself from such contempt as directed in the Contempt Order. Administrator Jon Mills' Notice of Non-Compliance is attached and incorporated herein as Exhibit "A."

Page **1** of **2**

**IT IS HEREBY ORDERED THAT,** the Sheriff of Oconee County, Georgia, or his lawful designee authorized to execute warrants, is·**COMMANDED** to arrest Jason Farmer and to hold Jason Farmer in the Oconee County Jail until further order of this Court, to be dealt with as the law directs. **HEREIN FAIL NOT.**

**IT IS HEREBY FURTHER ORDERED THAT,** the Oconee County Sheriff's Office, is required to notify this Court immediately upon the effectuation of said arrest.

Identifying data for Jason Farmer:

| | |
|---|---|
| Name: | **JASON FARMER** |
| Race: | **W** |
| Gender: | **M** |
| SSN: | **259-49-XXXX** |
| DOB: | **05/1973** |
| Residential Address: | **2101 MALCOM BRIDGE ROAD BOGART, GA 30622** |

**SO ORDERED**, this ⁊ day of August, 2025.



HONORABLE MIKE HUNSINGER, JUDGE
PROBATE COURT OF OCONEE COUNTY

### WARRANT EXECUTION AND SERVICE

The above-named JASON FARMER was arrested on the _____ day of _____, 2025, by _____ (Printed Name of Arresting Official).

_____
Signature of Arresting Official

_____
Printed name of Law Enforcement Agency

Page **2** of **2**

**IN THE PROBATE COURT OF OCONEE COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| **IN RE:** | * | |
| | * | |
| **BOBBY JAMES FARMER,** Deceased. | * | **ESTATE NO: F-183** |
| | * | |
| | * | |
| **IN RE:** | * | |
| | * | |
| **JUDY LENORA FARMER,** Deceased. | * | **ESTATE NO: F-189** |
| | * | |

**NOTICE OF NON-COMPLIANCE**

The undersigned, Jon Mills, as Administrator with Will Annexed for the Estate of Bobby James Farmer and the Estate of Judy Lenora Farmer provide notice to the Court as follows:

1. The Probate Court issued the ***Interim Order Finding Jason Farmer in Contempt of Court*** ("Contempt Order") on September 3, 2024 after various hearings conducted in these matters.

2. The Contempt Order required Jason Farmer to perform certain acts to purge his contempt. The Contempt Order relates to issues involving Jason Farm's non-compliance with various terms of the Protective Order entered by the Court on July 14, 2023 relating to certain items of equipment ("Equipment") as further identified within the Protective Order.

3. Subsequent to the Contempt Order being issued, various interested parties initiated appellate/judicial review.

4. The Superior Court of Oconee County issued an Order on August 1, 2025 granting a Motion to Dismiss filed by James Farmer concerning the Petition for Judicial Review filed by Jason Farmer, et. al.

5. On August 6, 2025, the undersigned was able to secure one of the cranes subject to the Contempt Order as more fully explained in the Notice of Seizure, same being simultaneously filed with the Court.

6. As of August 7, 2025, the undersigned provides notice of the following acts of non-compliance with the Contempt Order:

    a. Jason Farmer has not provided the undersigned with information concerning the identity of the Equipment as required by the Contempt Order.

In Re: Estate of Bobby Farmer – Estate No. F-183
In Re: Estate of Judy Farmer -- Estate No. F-189
Notice of Non-Compliance

      b.  Jason Farmer has not provided the undersigned with the opportunity to conduct an inspection of the Equipment as required by the Contempt Order.

      c.  Jason Farmer has not paid $30,000.00 to the Estate of Judy Lenora Farmer as required by the Contempt Order.

      d.  Jason Farmer has not provided an accounting concerning the use of the Equipment as required by the Contempt Order.

This 7th day of August, 2025.

_____
Jon Mills
Administrator for Estate of Bobby Farmer
Administrator for Estate of Judy Farmer

Sworn to and subscribed to before me
this 7th day of August, 2025.

_____
Notary Public, Oconee County, GA
My commission expires  04-27-2029

Page -2-

Case A26E0016    Filed 08/11/2025    Page 5 of 5

In Re: Estate of Bobby Farmer -- Estate No. F-183
In Re: Estate of Judy Farmer -- Estate No. F-189
Notice of Non-Compliance

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the *Notice of Non-Compliance* in the above styled case upon the opposing/interested parties in this matter, by Statutory Electronic Service to:

John Baker
john@johnbaker.law

Mark Stuckey
mark@hughespclaw.com

Robert Hughes
robby@hughespclaw.com

Kevin Epps
kevin@ehdhlaw.com
.

This 7th day of August, 2025.

Jon Mills
Georgia Bar No. 355356

Durden & Mills, P.C.
Attorneys at Law
1551 Jennings Mill Rd #2200B
Watkinsville, GA 30677
(706) 543-4708