IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| JASON FARMER,<br><br>　　Plaintiff,<br><br>v.<br><br>MIKE HUNSINGER, KEVIN EPPS,<br>JON MILLS, and JAMES FARMER<br><br>　　Defendants. | 3:25-cv-00154-TES |

**PLAINTIFFS' RENEWED MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT**

Plaintiffs Jason Farmer and Misty Farmer, through undersigned counsel, move this Court pursuant to Federal Rule of Civil Procedure 15(a)(2) and the Court's February 11, 2026 Order [Doc. 35] for leave to file an Amended Complaint. The proposed Amended Complaint is attached as Exhibit A. In support, Plaintiffs state the following:

**PROCEDURAL BACKGROUND**

On February 11, 2026, this Court scheduled a hearing on Defendants' motions to dismiss. The Court identified deficiencies in the operative complaint consistent with the Eleventh Circuit's prohibition on shotgun pleadings and directed Plaintiffs to file a renewed motion for leave to amend within ten days,

1

attaching a proposed amended complaint as an exhibit. [Doc. 35]. The Court further indicated that, upon the filing of a properly structured complaint, it would allow the parties to brief the issue of judicial immunity in connection with "futility" of amendment. This Motion is filed to comply with that order.

Additionally, in light of the Court's comments at the February 11 hearing regarding the exercise of supplemental jurisdiction over state-law claims, the proposed Amended Complaint **omits all state-law causes of action** that appeared in the original complaint. Plaintiffs intend to assert those claims in an appropriate state court. The proposed Amended Complaint is limited to federal claims arising under 42 U.S.C. §§ 1983, 1985, 1985 and the First, Fourth and Fourteenth Amendments to the United States Constitution.

## ARGUMENT

### I. Rule Requires That Leave Be Freely Given.

Federal Rule of Civil Procedure 15(a)(2) provides that a court "should freely give leave when justice so requires." The Supreme Court has held that this mandate means leave should be granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In the Eleventh Circuit, a proposed amendment is futile only

"when the complaint as amended would still be properly dismissed." *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)).

Here, Plaintiffs seek amendment for the limited purpose the Court ordered: to cure the pleading deficiencies identified at the February 11, 2026 hearing.. Granting leave will not prejudice Defendants, who will have a full opportunity to respond to the proposed amended pleading and to renew any Rule 12 arguments the Court permits.

In the shotgun-pleading context, Eleventh Circuit precedent requires that a litigant be given one opportunity to replead before dismissal with prejudice on non-merits shotgun-pleading grounds. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291 (11th Cir. 2018); *see also Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018). The Court's February 11 Order [Doc. 35] afforded Plaintiffs that opportunity.

**II.     The Proposed Complaint Cures Every Shotgun Pleading Deficiency.**

The Eleventh Circuit has identified four categories of shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). The proposed Amended Complaint addresses each one.

3

***First***: *Weiland*'s most common category—complaints where "each count adopts the allegations of all preceding counts"—has been eliminated. *Id.* at 1321. The proposed complaint contains no blanket incorporation of preceding paragraphs. Each count is self-contained. Where a count references a factual allegation from the general section, it does so by specific paragraph number.

***Second***: The complaint is not "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Each factual allegation identifies the specific defendant who acted, the specific act or omission, the date and context of the conduct, and the documentary source.

***Third***: Each cause of action occupies a separate count. *Id.* at 1322–23. The complaint separates the Fourth Amendment claims, the Fourteenth Amendment Due Process claims, and the conspiracy claim into individually numbered counts.

***Fourth***: The complaint does not "assert[] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Id.* at 1323. Each count heading names the specific defendant against whom the claim is brought. Each count targets a single defendant (or identified group of defendants) based on that defendant's individual conduct.

In short, the proposed complaint does what the original did not: it tells each defendant, count by count, exactly what that defendant is alleged to have done and why that conduct gives rise to liability.

**III.     Amendment Is Not Futile.**

Defendants will likely argue that amendment is futile because Defendant Hunsinger is entitled to judicial immunity. But this case does not begin and end with the bench warrant, or with Defendant Hunsinger.   The proposed complaint alleges a *chain* of constitutional violations, originating in orders the Probate Court had no jurisdiction to enter, escalating through criminal sanctions imposed without criminal procedure, and enforced through a coordinated scheme involving private actors who procured the court's unconstitutional action.  At the pleading stage, the question is whether the proposed complaint would "still be properly dismissed." *Coventry First*, 605 F.3d at 870.  It would not.  Four independent features of the proposed complaint demonstrate why.

    **A.**     *The proposed complaint pleads the "clear absence of all jurisdiction" exception to judicial immunity.*

Judicial immunity is broad. It protects judges from suit "even when the judge's acts are in error, malicious, or in excess of jurisdiction." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005).  That is true whenever a judge might

exercise "the **authority vested** in him", but the doctrine has never protected a judge who acts "in the clear absence of all jurisdiction." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1872); *accord Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978).

The distinction matters. "Excess of jurisdiction" presupposes that some jurisdiction exists; it means the court went too far within a domain over which it had authority. "Clear absence of all jurisdiction" means the court had no authority over the type of proceeding in the first instance. The Supreme Court's paradigmatic illustration of this distinction is a "probate judge, with jurisdiction over only wills and estates, [who] should proceed to try parties for public offences." *Bradley*, 80 U.S. at 352.

First and foremost, the proposed complaint alleges that Defendant Hunsinger - the Probate Judge of Oconee County—exercised criminal power that the Georgia Constitution, and the General Assembly, intentionally withholds from probate courts: the power to issue arrest warrants for criminal contempt.

> Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both. In the words of Mr. Justice Holmes: 'These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech.' Criminally contemptuous conduct may violate other provisions of the

6

criminal law; but even when this is not the case convictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same. Indeed, the role of criminal contempt and that of many ordinary criminal laws seem identical—protection of the institutions of our government and enforcement of their mandates. Given that criminal contempt is a crime in every fundamental respect, the question is whether it is a crime to which the jury trial provisions of the Constitution apply. We hold that it is, primarily because in terms of those considerations which make the right to jury trial fundamental in criminal cases, there is no substantial difference between serious contempts and other serious crimes. Indeed, in contempt cases an even more compelling argument can be made for providing a right to jury trial as a protection against the arbitrary exercise of official power.

Bloom v. State of Ill., 391 U.S. 194, 201–02, 88 S. Ct. 1477, 1481–82, 20 L. Ed. 2d 522 (1968)

The complaint alleges that the underlying orders were void for lack of subject matter jurisdiction, and there is no reason Defendants have provided to conclude otherwise. That is true because – contrary to any of Defendants' references to "inherent power" of Georgia probate courts that does not exist, Probate courts are courts of limited jurisdiction. Ga. Const. Art. VI, § 1, ¶ I. Probate courts are statutory courts, not constitutional courts — their contempt power is bounded by statute, not inherent. Bradley v. State, 111 Ga. 168 (1900); Cobb v. State, 59 Ga. App. 695 (1939) O.C.G.A. § 15-9-30(b) grants probate courts LIMITED criminal jurisdiction: traffic offenses, game/fish violations, criminal commitment hearings, and it is noteworthy that the General Assembly was permitted to give probate courts greater criminal jurisdiction, yet made the

decision not to do so. Presumably, that is attributable to the fact that probate courts and magistrate courts are – depending on county population – the only two Georgia courts allowing for the election of a citizen without a bar license, or even formal legal training of any kind. Furthermore, under Ga. Const. Art. VI, § 1, ¶ IV, only superior and appellate courts may issue process in the nature of injunction, such as the "protective order" forming the basis of the claims in this case entered in the clear absence of a statute and subject matter jurisdiction.

**Under Georgia law, probate courts cannot adjudicate disputed property ownership by giving an executor possession of personal property in the hands of a third party who claims to own it.** *In re Estate of Adamson*, 215 Ga. App. 611, 613 (1994). Defendant Hunsinger's own Protective Order acknowledged this limitation, stating that "the issue concerning ownership of the Subject Equipment shall be decided by the Superior Court of Oconee County as the Probate Court lacks jurisdiction to decide same." Yet the contempt finding and arrest were based on noncompliance with orders arising from that very property dispute. As *Adamson* holds, "[d]isobedience of a void mandate, order, or judgment . . . is not contempt of court." *Id.* at 613. The proposed complaint alleges that every order in the enforcement chain was void from its inception.

*Second*, the complaint alleges that the sanctions imposed were criminal in substance and nature, regardless of their label. The proposed complaint alleges open-ended incarceration with no expiration date, multiple purge conditions not simultaneously satisfiable, jail booking classified as "PRE TRIAL MISD," a warrant described by arresting officers as a "civil warrant"—an instrument that does not exist in Georgia law—and a warrant never entered in GCIC, the standard repository for criminal process. Under the objective-indicia test of *International Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 828–29 (1994), these facts support the inference that the sanction was criminal in substance. Every institution that touched the warrant recognized it did not belong in the criminal system - except the court that issued it.

*Third*, the complaint alleges that these criminal sanctions were imposed without any of the procedural protections the Constitution requires for criminal proceedings: no proof beyond a reasonable doubt, no jury trial, no right against self-incrimination, no appointed counsel, and no rule nisi or written notice of specific charges. None of these protections were afforded.

Whether these allegations ultimately establish the "clear absence of all jurisdiction" exception is a merits question. At this stage, the allegations, which

9

track the Supreme Court's own illustration of the exception, are sufficient to survive a futility challenge.

> **B.** *The proposed complaint alleges due process violations independent of immunity.*

The Fourteenth Amendment claims do not depend solely on the bench warrant. The proposed complaint alleges structural due process violations that are independently actionable.

The proposed complaint alleges that Defendant Hunsinger acted as both accuser and adjudicator - initiating contempt proceedings and adjudicating them— in violation of the principle established in *In re Murchison*, 349 U.S. 133 (1955). It further alleges that Defendant Hunsinger abandoned the role of neutral decisionmaker, aligning with Defendant Epps at hearings ("We have got to jump off"; "We have got to have something"), and permitting Defendant Epps to draft all contested orders for the court's signature. These allegations support a claim under *Bracy v. Gramley*, 520 U.S. 899, 904 (1997), that Plaintiffs were denied "a fair trial before a judge without actual bias . . . or an interest in the outcome."

The complaint also alleges that the arrest was deliberately timed to defeat a statutory protection. On the same day Defendant Hunsinger signed an Order for Continuance postponing the hearing - served on all counsel - he also signed a

10

Bench Warrant and Arrest Order commanding Jason Farmer's arrest and indefinite incarceration. The continuance was served on counsel. The warrant was not. The proposed complaint alleges this simultaneous issuance was designed to prevent Mr. Farmer from invoking automatic supersedeas under O.C.G.A. § 5-6-13 before the arrest could be executed. It further alleges that a $500,000 bond was imposed sua sponte, without motion by the appellee, without hearing, and without a bond schedule, in violation of O.C.G.A. § 5-6-46(a).

Additionally, the complaint alleges that contempt was initiated not by the court but by an interested party. Defendant Mills's ex parte Notice of Non-Compliance served as the sole trigger for the bench warrant. Georgia law prohibits incarceration based "merely " on "the averments of an interested party," because such a regime "places the keys to the jail" in the adverse party's hands. *Hall v. Doyle-Hall*, 284 Ga. 325 (2008); *see also Bauman v. Humphries*, 300 Ga. App. 263 (2009) (reversing contempt incarceration predicated on letter from opposing counsel). Defendant Mills had a direct financial interest in aggressive enforcement: a 2.5% administrator's fee on the estate.

These due process allegations: the absence of a neutral decisionmaker, the deliberate defeat of statutory protections, and the interested-party initiation of contempt, state claims that do not depend on immunity's applicability. They go to

11

whether the proceedings satisfied constitutional requirements, not whether the judge is amenable to suit.

### C. *The conspiracy count survives judicial immunity under Dennis v. Sparks.*

Even if this Court determines that Defendant Hunsinger is entitled to judicial immunity, the claims against the remaining defendants do not fall with him. In *Dennis v. Sparks*, 449 U.S. 24 (1980), the Supreme Court held unanimously that private parties who conspire with a judge to deprive others of constitutional rights are liable under § 1983 - *even though the judge himself is immune. Id.* at 27–29. The Court reasoned that judicial immunity is a personal defense; it shields the judge but does not "change the character of his action or that of his co-conspirators." *Id.* at 28.

The proposed complaint's conspiracy count alleges specific, non-conclusory facts supporting the existence of a conspiracy between a judge and three private parties. These include: courthouse surveillance video showing Defendant Epps directing deputies to arrest Mr. Farmer; a deputy confirming on radio that "Kevin got a piece of paper" to "go lock him up" and that a deputy asked Epps whether to "hold it and lock him up first after court"; the filing of an ex parte Notice of Non-Compliance by Defendant Mills that served as the sole trigger for the bench

warrant; Defendant James Farmer's verifications of multiple pleadings in multiple courts alleging that the same items of personal property were "estate property" or "trust property", depending on the circumstances.   These are not "bare assertions" of conspiracy. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). They are specific acts by specific defendants, documented in specific records, that together support a plausible inference of coordinated action.

Under *Dennis*, judicial immunity is a personal defense; it may shield the judge, but it does not bar § 1983 liability for private co-conspirators who allegedly procured the unconstitutional action. Dismissal of Defendant Hunsinger therefore does not require dismissal of the private defendants.

**D.** ***The proposed complaint alleges non-judicial acts that receive no immunity.***

Not every act by a judge is a "judicial act." The Supreme Court has held that absolute judicial immunity protects only acts that are judicial in nature, not administrative, executive, or prosecutorial functions performed by judicial officers. *Forrester v. White*, 484 U.S. 219 (1988). The official claiming absolute immunity bears the burden of demonstrating that the function in question warrants it; the presumption is qualified, not absolute, immunity. *Burns v. Reed*, 500 U.S. 478,

486–87 (1991) (the Court has been "quite sparing" in recognizing absolute immunity).

The proposed complaint alleges that Defendant Hunsinger performed a prosecutorial function. Georgia's own appellate courts review criminal contempt under the *Jackson v. Virginia* standard, evaluating evidence "in the light most favorable to the prosecution." If there is a "prosecution," someone must have performed the prosecutorial function. In the absence of a separate prosecutor, the proposed complaint alleges that Defendant Hunsinger himself initiated and pursued the contempt—acting as both accuser and adjudicator. Prosecution is a non-judicial function that does not receive judicial immunity. *Forrester*, 484 U.S. at 229–30.

The proposed complaint further alleges administrative acts performed through Defendant Hunsinger's deputyclerk, Julie Jackson, for which Defendant Hunsinger bears personal responsibility under O.C.G.A. § 15-9-36. These include: selectively serving the continuance on counsel while withholding the arrest warrant; retroactively file-stamping the warrant after the arrest was executed; transmitting the $500,000 bond order directly to the jail; omitting documents from the appellate record; and selectively excluding Plaintiffs' counsel from email service of court orders. **These are ministerial and administrative acts, not judicial acts, and they receive no absolute immunity under *Forrester*.**

## CONCLUSION

The proposed Amended Complaint cures the shotgun pleading deficiencies this Court identified. Each count names a specific defendant, states the factual basis for that defendant's liability, and is self-contained. The proposed complaint omits all state-law causes of action, which Plaintiffs intend to assert in state court.

The complaint is not futile. It alleges a chain of constitutional violations based on void underlying orders, criminal sanctions imposed without criminal jurisdiction or criminal procedure, the deliberate defeat of statutory protections, and coordinated action between a judge and private parties, all supported by documentary evidence at every link. The judicial immunity exception is pleaded with the Supreme Court's own paradigmatic example. The conspiracy count is structured to survive that immunity under binding precedent. And the complaint identifies non-judicial acts that fall outside the doctrine entirely.

WHEREFORE Plaintiff respectfully requests request that this Court grant leave to file the attached Amended Complaint.

Respectfully submitted this 23rd day of February, 2026.

> */s/ John Baker*
>
> John Baker
> Georgia Bar No. 033797
> John Baker Law
> 1551 Jennings Mill Rd., Suite 3100B
> Watkinsville, Georgia 30677
> Telephone: (706) 608-2406
> Email: john@johnbaker.law
>
> *Attorney for Plaintiff Jason Farmer*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of February, 2026, I caused a true and correct copy of the foregoing Motion for Leave to File Amended Complaint, together with the proposed Amended Complaint attached as Exhibit A, to be filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

Respectfully submitted this 23rd day of February, 2026.

*/s/ John Baker*
John Baker
Georgia Bar No. 033797
John Baker Law
1551 Jennings Mill Rd., Suite 3100B
Watkinsville, Georgia 30677
Telephone: (706) 608-2406
Email: john@johnbaker.law

*Attorney for Plaintiff Jason Farmer*

# EXHIBIT A

**Proposed Amended Complaint**