**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

JASON FARMER,

    Plaintiff,

v.

MIKE HUNSINGER, KEVIN EPPS,
JON MILLS, and JAMES FARMER

    Defendants.

3:25-cv-00154-TES

---

**SECOND AMENDED COMPLAINT
JURY TRIAL DEMANDED**

---

COMES NOW Plaintiff Jason Farmer, who asserts claims under 42 U.S.C. § 1983 for violations of the First, Fourth, Fourteenth, and First Amendments to the United States Constitution.

**1.** This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights jurisdiction).

**2.** Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Oconee County and Athens-Clarke County, Georgia, within the Athens Division of the Middle District of Georgia.

### PARTIES

**3.** Plaintiff Jason E. Farmer is a citizen and resident of Oconee County, Georgia. He was arrested on August 8, 2025, and incarcerated in the Oconee County Jail until August 12, 2025. At all relevant times he operated a construction business in Athens-Clarke County and Oconee County. He has a documented aortic dissection

and stroke, with physician's orders to avoid stress; Defendants knew of this condition, and even exploited it.

**4.** Defendant Mike Hunsinger is the elected Judge of the Probate Court of Oconee County, Georgia. He is sued in his individual capacity for actions taken in the clear absence of all jurisdiction. At all relevant times he acted under color of state law. Under O.C.G.A. § 15-9-36(a), probate judges are clerks of their own courts and "may appoint one or more clerks, for whose conduct they are responsible." Hunsinger appointed Julie Jackson as Deputy Probate Clerk; she serves at his pleasure and he is personally responsible for her non-judicial administrative acts.

**5.** Defendant Jon Mills is a licensed attorney and equity partner at Durden & Mills, P.C. He simultaneously <u>allegedly</u>[1] served as (a) the court-appointed Administrator of the Estate of Judy Lenora Farmer, (b) Temporary Trustee of the Irrevocable Trust of Judy Lenora Farmer, and (c) the Oconee County Administrator - all appointments creating relationships with Defendant Hunsinger extending beyond the estate proceedings. He is sued in his individual capacity.

**6.** Defendant Kevin Epps is a licensed attorney and partner at Epps, Holloway, DeLoach & Hoipkemier, LLC. He represented Defendant James Farmer in all Probate Court proceedings relevant to this action. He is sued in his individual capacity.

**7.** Defendant James Dale Farmer is the brother of Plaintiff Jason Farmer. He directed and financed the litigation campaign that resulted in Jason Farmer's arrest and incarceration. He told his siblings that he had more money that "God", and that he would keep them in court until their funds ran out. He is sued individually.

---

[1] Jon Mills is neither the lawful qualified representative of the Estate of Judy Lenora Farmer, nor lawful trustee for the Irrevocable Trust of Judy Lenora Farmer, despite Defendants' contentions to the contrary.

## COUNT I
## 42 U.S.C. § 1983 — FOURTH AMENDMENT: UNREASONABLE SEIZURE
### *(Against Defendant Mike Hunsinger)*

### *The Seizure*

**8.** On August 7, 2025, Defendant Hunsinger signed a "Bench Warrant and Arrest Order" commanding Jason Farmer's arrest and indefinite incarceration in the Oconee County Jail "until further order of this Court." (A26A0302, Record Volume 2.) Prior thereto, he issued similar indirect criminal contempt orders that were self executing, for Plaintiff, and even for his undersigned counsel, based on the objections to the exercise of judicial powers and jurisdiction Defendant Hunsinger did not have inherently, or by otherwise.

**9.** On August 8, 2025, Jason Farmer was subjected to a warrantless arrest at his place of business in Athens-Clarke County pursuant to Defendant Hunsinger's warrant. Jason Farmer was booked into the Oconee County Jail, where he remained incarcerated for four days until August 12, 2025.

**10.** The arresting officers described the warrant as a "civil warrant"—a category that does not exist in Georgia law as a basis for arrest. The warrant was not entered in the Georgia Crime Information Center ("GCIC") database. The jail classified Jason Farmer's detention as "PRE TRIAL MISD"—a criminal misdemeanor classification.

### *Clear Absence of All Jurisdiction (Bradley/Stump Exception)*

**11.** The Probate Court of Oconee County is a court of limited jurisdiction. Under Article VI, Section I, Paragraph IV of the Georgia Constitution and O.C.G.A. § 15-9-30, probate courts have no subject matter jurisdiction to enter orders unless they relate to property owned by a decedent at death, and are required to transfer any issues that relate to disputed property to superior court. Probate courts likewise lack any inherent or statutory power or jurisdiction to issue criminal arrest warrants, as opposed to attachments for contempt relating to property already "belonging to" an estate, or those interested in proceedings regarding the disposition of such property.

**12.** Defendant Hunsinger issued a Bench Warrant and Arrest Order on August 7, 2025, commanding indefinite incarceration from a court with no criminal

jurisdiction, only one year after entering a criminal contempt order with indefinite incarceration against Jason Farmer and his counsel falsely labeled as "interim."

**13.** Defendant Hunsinger entered a Contempt Order on September 3, 2024 (styled "Interim Order Finding Jason Farmer in Contempt of Court"), imposing criminal sanctions—open-ended incarceration with no expiration date and non-simultaneously-satisfiable purge conditions - while labeling them "civil."

**14.** Defendant Hunsinger entered and enforced a "Protective Order" on July 14, 2023, adjudicating disputed property ownership, a subject he himself acknowledged the Probate Court "lacks jurisdiction to decide." The Protective Order states: "The issue concerning ownership of the Subject Equipment shall be decided by the Superior Court of Oconee County as the Probate Court lacks jurisdiction to decide same."

**15.** Defendant Hunsinger held Jason Farmer in contempt for noncompliance with the Protective Order; a void order entered without subject matter jurisdiction over the property dispute it purported to adjudicate.

### Prosecutorial (Non-Judicial) Function (Forrester v. White)

**16.** Defendant Hunsinger served as both accuser and adjudicator in the contempt proceedings. No separate prosecutor existed, yet Georgia appellate courts review criminal contempt under the *Jackson v. Virginia* "prosecution" standard.

**17.** Defendant Hunsinger delegated arrest warrant drafting to Defendant Epps - the opposing party's private attorney. At the August 7, 2024 hearing, when Epps volunteered to draft bench warrants, Defendant Hunsinger responded: "Okay… That sounds good."

**18.** Defendant Hunsinger allowed Defendant Epps to prepare all substantive orders entered against Jason Farmer. The Protective Order, Contempt Order, all post-hearing orders, the Rule Nisi, and the Bench Warrant were all "PREPARED BY KEVIN EPPS" as stated on the face of the documents. The court signed what one party's attorney drafted.

### Administrative (Non-Judicial) Acts — via Julie Jackson (O.C.G.A. § 15-9-36)

**19.** Defendant Hunsinger directed (through his appointed clerk Julie Jackson) selective service of the August 7, 2025 Continuance Order to all counsel while simultaneously withholding the Bench Warrant. On the same day Defendant Hunsinger signed an order postponing the hearing, he also signed the warrant commanding Jason Farmer's arrest. The continuance was served on counsel. The warrant was not.

**20.** Defendant Hunsinger directed (through Jackson) exclusion of Baker from the September 3, 2024 Contempt Order email distribution. The order was emailed to Mills, Epps, and Stuckey—but not to Jason Farmer's counsel.

**21.** Service of the Bench Warrant was delayed until August 11, 2025 - three days after Jason Farmer was already arrested on August 8 - while Defendant Hunsinger's court requested that Jason's own counsel draft the proposed release order.

### Sua Sponte Acts Without Authority

**22.** On August 11, 2025, Defendant Hunsinger imposed a $500,000 supersedeas bond without any motion from any party, in violation of O.C.G.A. § 5-6-46(a), which provides that a supersedeas bond is available only upon the appellee's motion. The Georgia Court of Appeals found Defendant Hunsinger's bond order "seemingly in contravention" of the statute. (A26E0016, Order on Emergency Motion.)

**23.** On January 7, 2025, Defendant Hunsinger entered a sua sponte order directing the Clerk to transmit the appellate record in a manner that violated the mandatory record transmission procedures of the Appellate Practice Act, O.C.G.A. § 5-6-41, during the pendency of appeals challenging his own orders.

**24.** In February 2025, Defendant Hunsinger entered yet another ultra vires and void "corrective" order during supersedeas, when O.C.G.A. § 5-6-8 had divested the Probate Court of jurisdiction over matters covered by the pending appeal.

### *Due Process Violations (Destruction of Neutral Decisionmaker)*

**25.** Defendant Hunsinger coordinated with Defendant Epps on the timing and execution of the arrest. Deputy radio traffic confirms Defendant Epps directed "Go get their ass" and controlled the arrest sequencing. A deputy confirmed: "I asked Kevin, 'Hey, you want me to hold it and lock him up first after court?'"

**26.** At the August 7, 2024 hearing, Defendant Hunsinger aligned with Defendant Epps, adopting the adversary's urgency as the court's own.

**27.** Defendant Hunsinger denied jurisdictional motions filed by Jason Farmer's counsel without analysis - bare denials with no reasoning, preserving nothing for appellate review.

**28.** Defendant Hunsinger provided only three days' notice (via the August 5, 2025 Rule Nisi, prepared by Defendant Epps) for a proceeding that resulted in a void, yet executed, order for indefinite incarceration.

### *Systematic Mislabeling Pattern*

**29.** Defendant Hunsinger labeled a property adjudication as "protection" to circumvent jurisdictional limits on deciding ownership. The Protective Order adjudicated disputed property ownership - the very subject the order itself acknowledged the Probate Court "lacks jurisdiction to decide."

**30.** Defendant Hunsinger labeled criminal contempt as "civil contempt" to bypass the procedural protections required for criminal proceedings: jury trial, the right against self-incrimination, and proof beyond a reasonable doubt. The Contempt Order imposed open-ended incarceration with no expiration date and non-simultaneously-satisfiable purge conditions—the objective hallmarks of criminal contempt.

**31.** The arrest warrant was labeled and described as a "civil warrant" - a category that does not exist in Georgia law. It was not entered in GCIC because it did not fit any recognized criminal category.

### *Causation and Damages*

**32.** As a direct and proximate result of Defendant Hunsinger's actions, Jason Farmer was arrested and incarcerated for four days. During his incarceration, Jason

Farmer suffered loss of liberty, physical restraint, emotional distress, humiliation, lost income from his construction business, and reputational harm. Jason Farmer has a documented aortic dissection, and his arrest subjected him to precisely the physiological stress his physicians warned could be life-threatening.

## COUNT II
## 42 U.S.C. § 1983 — FOURTH AMENDMENT: UNREASONABLE SEIZURE
### *(Against Defendant Kevin Epps)*

### Color of State Law

**33.** Defendant Epps is a private attorney. Under *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980), private persons jointly engaged with state officials in prohibited action act "under color" of state law for purposes of 42 U.S.C. § 1983.

**34.** Defendant Epps conspired with Defendant Hunsinger (a state judicial officer) to procure Jason Farmer's arrest and incarceration through a court lacking jurisdiction, as set forth below.

### Epps Prepared Every Significant Order

**35.** Defendant Epps represented Defendant James Farmer in all Probate Court proceedings relevant to this action. In that capacity, Defendant Epps prepared every significant order entered against Jason Farmer: the Protective Order (July 14, 2023), the Contempt Order (September 3, 2024), all three post-hearing orders from the August 7, 2024 hearing, the Rule Nisi (August 5, 2025), and the Bench Warrant and Arrest Order (August 7, 2025). Each was "PREPARED BY KEVIN EPPS" as stated on the face of the documents. (A25A0690, Exhibit Volumes 12 and 14.)

**36.** No Georgia statute or rule authorizes a private attorney representing one party to prepare arrest warrants, contempt orders, or Rule Nisi orders for a court.

### Epps Acknowledged the Constitutional Risk

**37.** At the August 7, 2024 hearing, Defendant Epps acknowledged on the record that the proceedings raised "1983 claims" and "false arrest and false imprisonment—without judicial immunity." (A25A0690, Transcript Volume 15.) Despite this acknowledged risk, Defendant Epps procured the arrest one year later.

### *Epps Directed the Arrest*

**38.** Courthouse surveillance video captured Defendant Epps at the Oconee County courthouse instructing deputies to arrest Jason Farmer, stating: "Go get their ass." (Surveillance video transcript, "Epps in Courthouse.mp4.")

**39.** Defendant Epps physically brought the warrant to the sheriff's office and directed deputies on the arrest. A deputy confirmed: "Kevin got a piece of paper. He's bringing us to go lock him up." Another deputy asked: "What did he do this time?" The response: "I don't know."

**40.** Defendant Epps controlled the timing of the arrest. A deputy stated: "I asked Kevin, 'Hey, you want me to hold it and lock him up first after court?'"

**41.** Defendant Epps told deputies the warrant was "not a contempt" charge when a deputy correctly identified it as such, maintaining the mislabeling pattern in real time: "No, no, it's not. This is different."

### *Epps's Coordinated Sequence of Actions*

**42.** The arrest was the culmination of a coordinated sequence:

a. **August 1, 2025.** The Superior Court granted Defendant James Farmer's Motion to Dismiss Jason Farmer's Petition for Judicial Review (SUCV2024000326), filed through Defendant Epps—removing the last appellate obstacle to enforcement.

b. **August 5, 2025.** The Probate Court issued a Rule Nisi commanding Jason Farmer to appear on August 8 at 10:00 a.m. - providing only three days' notice. The Rule Nisi was prepared by Defendant Epps.

c. **August 6, 2025.** Defendant Epps personally supervised the seizure of a crane from Jason Farmer's business property before the hearing. Defendant Mills filed a Notice of Seizure reporting he "was able to secure one of the cranes." (A26A0302, Record Volume 2.)

d. **August 7, 2025.** Defendant Hunsinger signed the Bench Warrant and Arrest Order (prepared by Defendant Epps) and simultaneously signed the Continuance Order postponing the hearing. The continuance was served on counsel. The warrant was not.

e. **August 8, 2025.** Defendant Epps directed deputies to execute the warrant. Jason Farmer was arrested at his place of business in Athens-Clarke County.

### Epps Maintained Improper Relationships with Executing Deputies

**43.** Surveillance video captured Defendant Epps discussing exchanges of favors with executing deputies, including references to SEC Championship game tickets, Atlanta Falcons luxury box access, and concert tickets.

### Epps Authored the Constitutionally Erroneous Legal Theory

**44.** At the June 2023 hearing, Defendant Epps advanced the legal theory that the Probate Court possessed "inherent power" to enter orders beyond its statutory jurisdiction. This theory provided the constitutional justification for Defendant Hunsinger's exercise of powers the Probate Court does not possess.

### The Seizure Was Unreasonable

**45.** The Fourth Amendment prohibits unreasonable seizures. The seizure of Jason Farmer was unreasonable because: (a) the Bench Warrant was issued by a court without jurisdiction, rendering it void ab initio; (b) the warrant was not supported by probable cause for any criminal offense; (c) the warrant was executed on a day the hearing had been continued; (d) the warrant was not served on counsel; and (e) the warrant was issued for alleged noncompliance with a void order entered without jurisdiction.

### Causation and Damages

**46.** As a direct and proximate result of Defendant Epps's actions, Jason Farmer was arrested and incarcerated for four days. During his incarceration, Jason Farmer suffered loss of liberty, physical restraint, emotional distress, humiliation, lost income from his construction business, and reputational harm.

**COUNT III**

**42 U.S.C. § 1983 — FOURTH AMENDMENT: UNREASONABLE SEIZURE**
*(Against Defendant Jon Mills)*

### *Color of State Law*

**47.** Defendant Mills was illegally appointed by Defendant Hunsinger as Administrator of the Estate of Judy Lenora Farmer and Temporary Trustee of the Irrevocable Trust of Judy Lenora Farmer based on the intentional use of the incorrect "oath" to allow him to disregard Judy's Will, rather than swear to execute it. He simultaneously served as the Oconee County Administrator. Under *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980), and *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982), a private party acts under color of state law when the deprivation of rights is caused by the exercise of a right or privilege created by the State.

### *The Fabricated Consent Signature*

**48.** On July 14, 2023, Defendant Mills presented the Protective Order to the Probate Court bearing a consent signature attributed to Jason Farmer. Jason Farmer never signed the Protective Order and never consented to its entry. The fabricated consent signature foreclosed, or at the very least inhibited, Jason Farmer's ability to challenge the Probate Court's jurisdiction over the underlying property dispute.

### *Mills Filed the Contempt Petition on a Void Order*

**49.** On December 14, 2023, Defendant Mills filed a Petition for Citation of Contempt seeking Jason Farmer's incarceration for violating the Protective Order - the void order bearing the fabricated consent signature, entered by a court without jurisdiction over the property dispute it adjudicated.

### *Mills Filed the Trigger for the Arrest Warrant*

**50.** On August 7, 2025, Defendant Mills filed a sworn Notice of Non-Compliance alleging Jason Farmer had failed to: (a) identify equipment; (b) allow inspection; (c) pay $30,000; and (d) provide an accounting. This filing was the immediate and sole trigger for Defendant Hunsinger's issuance of the Bench Warrant and Arrest Order on the same date.

**51.** Defendant Mills filed the Notice of Non-Compliance ex parte - without prior notice to Jason Farmer or his counsel. Jason Farmer's counsel was not served with the Notice before the warrant secretly issued sufficiently to allow him to interpose objection for his client.

### Mills Seized Property Without Authorization

**52.** On August 6, 2025, Defendant Mills filed a Notice of Seizure with the Probate Court, reporting that he "was able to secure one of the cranes." This seizure occurred without a writ of execution or specific court authorization and without notice to Jason Farmer.

### Mills Exceeded His Stated Role

**53.** At his December 15, 2022 appointment hearing before the Oconee County Superior Court, Defendant Mills told Judge Haggard: "I'm not an investigator. I'm here to implement the Trust." His subsequent actions—filing contempt petitions, triggering arrest warrants, and seizing property—far exceeded the "implementation" role he described to the Superior Court.

### The Seizure Was Unreasonable

**54.** The Fourth Amendment prohibits unreasonable seizures. Defendant Mills caused Jason Farmer to be seized on August 8, 2025, by filing the Notice of Non-Compliance that directly triggered the Bench Warrant and Arrest Order. The seizure was unreasonable because it was based on a void warrant issued by a court without jurisdiction, based on contempt of a void order bearing a fabricated consent signature.

### Causation and Damages

**55.** As a direct and proximate result of Defendant Mills's actions, Jason Farmer was arrested and incarcerated for four days, suffering loss of liberty, emotional distress, humiliation, lost income, and reputational harm.

**COUNT IV**

**42 U.S.C. § 1983 — FOURTH AMENDMENT: UNREASONABLE SEIZURE**

*(Against Defendant James Dale Farmer)*

### Color of State Law

**56.** Under *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980), a private party who conspires with a state official to deprive another of constitutional rights acts under color of state law. Defendant James Farmer directed his counsel (Defendant Epps) to pursue the arrest of his brother through the Probate Court, as set forth below.

### Contradictory Sworn Statements for Forum Shopping

**57.** Defendant James Farmer verified under oath that the same construction equipment was "Trust property" in Superior Court proceedings and "Estate property" in Probate Court proceedings. (Oconee County Superior Court, SUCV2021000056; Oconee County Probate Court, Estate No. F-183.) By characterizing the property as "Estate property" in the Probate Court, Defendant James Farmer routed the dispute from a court of general jurisdiction (where Jason Farmer had full procedural rights) to a court of limited jurisdiction (where Defendants had secured cooperation from Defendant Hunsinger).

### Affirmative Participation in the Scheme

**58.** Defendant James Farmer's participation was not limited to being a named beneficiary. He took the following affirmative acts:

a. Filed contradictory sworn property characterizations in two courts to manipulate which court would adjudicate ownership.

b. Joined the contempt prosecution through Defendant Epps's Motion for Joinder on January 23, 2024, becoming a direct party to the proceedings that produced the arrest.

c. Directed and financed the entire litigation campaign. He stated: "I have more money than God and I will keep you in court till you run out!"

d. Separately stated that he "would not stop this litigation until [Christy, another sibling] was bankrupt and living in a cardboard box on the side of

the road," demonstrating that the litigation was designed to destroy family members financially—not to resolve legitimate legal disputes.

e. Secretly paid off Jon Mills with purported "Notes" to Judy Farmer's Estate and Trust, which then required Mills to advocate on his behalf and against his siblings as co-counsel with Epps.

g. Ratified every act by his counsel (Defendant Epps) by continuing to direct and finance the litigation campaign after Jason's arrest.

### *The Seizure Was Unreasonable*

**59.** Defendant James Farmer is jointly liable for the unreasonable seizure of Jason Farmer because he directed and financed the scheme through which the void warrant was procured and executed. The Fourth Amendment prohibits unreasonable seizures, and the seizure was unreasonable for the reasons stated above.

### *Causation and Damages*

**60.** As a direct and proximate result of Defendant James Farmer's actions, Jason Farmer was arrested and incarcerated for four days, suffering loss of liberty, emotional distress, humiliation, lost income, and reputational harm.

## COUNT V
## 42 U.S.C. § 1983 — FOURTEENTH AMENDMENT: DUE PROCESS
### *(Against Defendant Mike Hunsinger)*

**61.** The Fourteenth Amendment prohibits the deprivation of liberty without due process of law. Jason Farmer was incarcerated for four days - from August 8 through August 12, 2025 - in the Oconee County Jail.

### *Structural Due Process Violation: Court Lacked Jurisdiction*

**62.** The Probate Court of Oconee County lacked subject matter jurisdiction over the underlying property dispute. Defendant Hunsinger's own Protective Order acknowledged this: "The issue concerning ownership of the Subject Equipment shall be decided by the Superior Court of Oconee County as the Probate Court lacks jurisdiction to decide same." When the issuing court categorically lacks jurisdiction, no amount of process can cure the defect.

### *No Hearing Before Warrant Issued*

**63.** Defendant Hunsinger issued the Bench Warrant on August 7, 2025 without any hearing on the contempt allegations. The simultaneously-issued Continuance Order postponed the very hearing that should have preceded any sanctions.

### *Ex Parte Filing Without Notice*

**64.** Defendant Mills filed the Notice of Non-Compliance ex parte on August 7, 2025; the sole trigger for the warrant. Jason Farmer's counsel was not served with the Notice before the warrant issued.

### *Warrant Concealed from Counsel*

**65.** Defendant Hunsinger's appointed clerk (Julie Jackson) distributed the Continuance Order to all counsel on August 7, 2025, while simultaneously withholding the Bench Warrant. This created a trap: counsel relied on the continuance and had no notice of the warrant. The warrant was not served on counsel until August 11, three days after the arrest. Under O.C.G.A. § 15-9-36, Defendant Hunsinger is personally responsible for his appointed clerk's non-judicial administrative acts.

### *Criminal Contempt Without Criminal Protections*

**66.** The Contempt Order imposed open-ended incarceration with no expiration date and purge conditions that could not all be satisfied simultaneously. These are the objective hallmarks of criminal contempt. Criminal proceedings require proof beyond a reasonable doubt, the right to a jury trial, and the right against self-incrimination. None of these protections was provided.

### *$500,000 Bond to Prolong Incarceration*

**67.** After Jason Farmer's counsel filed an emergency appeal, Defendant Hunsinger imposed a $500,000 supersedeas bond on August 11, 2025, without any motion from any party and in violation of O.C.G.A. § 5-6-46(a). The Georgia Court of Appeals found this "seemingly in contravention" of the statute.

### *Destruction of the Neutral Decisionmaker*

**68.** Defendant Hunsinger was not a neutral decisionmaker. He coordinated with Defendant Epps on the timing and execution of the arrest. He adopted Defendant Epps's urgency as the court's own: "We have got to jump off" / "We have got to have something." He allowed Defendant Epps to prepare all orders, delegated warrant drafting to the opposing party's attorney, and denied jurisdictional motions without analysis.

### *State Remedies Were Inadequate*

**69.** Jason Farmer invoked every statutory protection designed to prevent this injury, supersedeas, emergency appeal, petition for judicial review, and was still jailed for four days. Emergency mandamus relief from the Georgia Court of Appeals was ultimately required to secure his release.

### *Clear Absence of All Jurisdiction*

**70.** Because Defendant Hunsinger acted in the clear absence of all jurisdiction, as set forth in Count I, he is not entitled to judicial immunity for the due process violations alleged herein.

### *Causation and Damages*

**71.** As a direct and proximate result of Defendant Hunsinger's actions, Jason Farmer was deprived of liberty for four days without due process of law, suffering the injuries described in Count I.

## COUNT VI
## 42 U.S.C. § 1983 — FOURTEENTH AMENDMENT: DUE PROCESS
### *(Against Defendant Kevin Epps)*

**72.** Jason Farmer was incarcerated for four days without constitutionally adequate process. Defendant Epps, acting under color of state law through his conspiracy with Defendant Hunsinger (as set forth in Count II), caused the following deprivations of due process:

    a. Defendant Epps prepared the Bench Warrant that authorized indefinite incarceration without a prior hearing.

b. Defendant Epps prepared every order in a proceeding where the underlying court lacked jurisdiction, making the entire process a structural nullity.

c. Defendant Epps directed the arrest on a day the hearing had been continued, defeating counsel's reliance on the continuance.

d. Defendant Epps advanced the constitutionally erroneous "inherent power" theory that justified the Probate Court's exercise of powers it does not possess.

e. Defendant Epps opposed Jason Farmer's release on the same day the Court of Appeals ordered emergency relief, filing a Motion for Reconsideration to prolong incarceration.

f. Defendant Epps volunteered to draft bench warrants at the August 7, 2024 hearing while simultaneously acknowledging on the record that the proceedings raised "1983 claims" and "false arrest and false imprisonment, without judicial immunity."

**73.** As a direct and proximate result of Defendant Epps's actions, Jason Farmer was deprived of liberty for four days without due process of law, suffering loss of liberty, emotional distress, humiliation, lost income, and reputational harm.

## COUNT VII
## 42 U.S.C. § 1983 — FOURTEENTH AMENDMENT: DUE PROCESS
### *(Against Defendant Jon Mills)*

**74.** Jason Farmer was incarcerated for four days without constitutionally adequate process. Defendant Mills, acting under color of state law (as set forth in Count III), caused the following deprivations of due process:

a. Defendant Mills presented the Protective Order to the Probate Court with a fabricated consent signature, which foreclosed Jason Farmer's ability to challenge the Probate Court's jurisdiction.

b. Defendant Mills filed the Petition for Citation of Contempt seeking Jason Farmer's incarceration for violating a void order.

c. Defendant Mills filed the ex parte Notice of Non-Compliance on August 7, 2025, the sole trigger for the Bench Warrant—without providing notice to Jason Farmer or his counsel.

d. Defendant Mills simultaneously had the scheduling conflict that provided the basis for the Continuance Order, which was used to conceal the warrant from counsel.

**75.** As a direct and proximate result of Defendant Mills's actions, Jason Farmer was deprived of liberty for four days without due process of law, suffering loss of liberty, emotional distress, humiliation, lost income, and reputational harm.

## COUNT VIII
## 42 U.S.C. § 1983 — FOURTEENTH AMENDMENT: DUE PROCESS
### *(Against Defendant James Dale Farmer)*

**76.** Jason Farmer was incarcerated for four days without constitutionally adequate process. Defendant James Farmer, acting under color of state law through his conspiracy with Defendant Hunsinger (as set forth in Count IV), caused the following deprivations of due process:

a. Defendant James Farmer directed and financed the litigation campaign that produced the void warrant, including $40,000 in secret payments to Jon Mills.

b. Defendant James Farmer filed contradictory sworn statements to route the dispute into a court of limited jurisdiction where he had secured cooperation.

c. Defendant James Farmer joined the contempt prosecution as a direct party, lending his weight to the proceedings.

d. Defendant James Farmer ratified every act by continuing to direct and finance the litigation after the arrest.

**77.** As a direct and proximate result of Defendant James Farmer's actions, Jason Farmer was deprived of liberty for four days without due process of law, suffering loss of liberty, emotional distress, humiliation, lost income, and reputational harm.

<h1 style="text-align:center">COUNT IX</h1>

<h1 style="text-align:center">42 U.S.C. § 1983 — FIRST AMENDMENT: RETALIATION FOR PROTECTED SPEECH</h1>

<h2 style="text-align:center">*(Against Defendant Kevin Epps)*</h2>

### *Protected Speech*

**78.** Jason Farmer posted on social media (Facebook and other platforms) criticizing the probate proceedings, Defendant Epps, Defendant Hunsinger, and the treatment of their family. Jason Farmer's Facebook post explicitly stated he was "exercising my right as a citizen to petition the government for redress." Criticism of judicial proceedings and public officials is constitutionally protected speech.

**79.** In September 2022, Defendant Epps sent a formal cease-and-desist letter regarding "defamatory statements" on Facebook, establishing a pattern of using legal process to suppress speech.

### *Adverse Action*

**80.** Defendant Epps procured Jason Farmer's arrest on August 8, 2025, and four-day incarceration—the quintessential adverse action.

### *Causal Connection — Defendant Epps's Own Words*

**81.** The causal connection between protected speech and the arrest is established by Defendant Epps's own recorded words, not inference. Courthouse surveillance video captured Defendant Epps, in the same exchange in which he directed deputies to execute the arrest warrant, referencing the Farmers' Facebook posts:

**82.** "Did you see what she posted about me last night in Judge Norris'?"

**83.** This was immediately followed by: "They took the [contempt] order... I won. Now it's back. Go get their ass. And then they're posting all over 411... about me and 801."

**84.** Defendant Epps's use of the first person—"I won"—reveals personal animus, not neutral enforcement of a court order. His reference to "Judge Norris" indicates the criticism extended beyond the probate proceedings. His directive to "go

get their ass" immediately after referencing social media posts is direct evidence of retaliatory motive.

### *Causation and Damages*

**85.** As a direct and proximate result of Defendant Epps's retaliation for protected speech, Jason Farmer was arrested and incarcerated for four days, suffering loss of liberty, emotional distress, humiliation, lost income, and reputational harm. The arrest was designed to chill Plaintiffs' exercise of their First Amendment rights.

## COUNT X
## 42 U.S.C. § 1983 — FIRST AMENDMENT: RETALIATION FOR PROTECTED SPEECH
### *(Against Defendants Hunsinger, Mills, and James Farmer as Co-Conspirators)*

**86.** As alleged in Count IX, Defendant Epps procured Jason Farmer's arrest in retaliation for protected speech. Each of the following Defendants participated in the scheme through which the retaliatory arrest was accomplished:

a. **Defendant Hunsinger** signed the warrant, concealed it from counsel, and imposed the $500,000 bond that prolonged incarceration.

b. **Defendant Mills** filed the ex parte Notice of Non-Compliance that triggered the warrant and presented the Protective Order with a fabricated consent signature.

c. **Defendant James Farmer** directed and financed the litigation campaign.

**87.** Under conspiracy liability principles, the retaliatory motive of one conspirator (Defendant Epps) is attributable to all who participated in the scheme. Each co-conspirator is jointly liable for acts done in furtherance of the conspiracy.

**88.** As a direct and proximate result of Defendants' retaliation for protected speech, Plaintiff suffered the damages described in Count IX.

<h1 align="center">COUNT XI</h1>

<h2 align="center">42 U.S.C. § 1983 — CONSPIRACY TO DEPRIVE CIVIL RIGHTS</h2>

<strong><em>(Against Defendants Epps, Mills, and James Farmer)</em></strong>

**89.** Under *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980), private persons who conspire with a state official to deprive another of constitutional rights are liable under 42 U.S.C. § 1983—even though the judge himself may be immune. "[T]he judge's immunity from damages liability will not be shared by those who corrupted him or procured his direction to perform acts in excess of his judicial authority." *Id.* at 28.

### The Agreement

**90.** Beginning no later than April 2023 - when Defendant James Farmer filed the contradictory sworn characterization of disputed property as "Estate property" in the Probate Court - and continuing through August 12, 2025, Defendants Epps, Mills, and James Farmer conspired with Defendant Hunsinger to deprive Jason Farmer of his constitutional rights under the Fourth, Fourteenth, and First Amendments.

**91.** The following circumstantial evidence, taken together, establishes the agreement:

a. **Contradictory sworn statements for forum shopping.** Defendant James Farmer verified under oath that the same equipment was "Trust property" in Superior Court and "Estate property" in Probate Court. This routed the dispute to a court of limited jurisdiction where Defendants had secured cooperation.

b. **Defendant Epps prepared all orders.** Every significant order entered against Jason Farmer was "PREPARED BY KEVIN EPPS." The court did not independently draft its own orders; it signed orders prepared by the opposing party's attorney.

c. **The fabricated consent signature.** Defendant Mills presented the Protective Order with a fabricated consent signature attributed to Jason Farmer. This foreclosed jurisdictional challenges.

d. **Selective email distribution excluding Baker.** Senior Probate Clerk Julie Jackson (Defendant Hunsinger's appointed clerk) selectively distributed court orders to exclude Jason Farmer's counsel. On September 3, 2024, she emailed the Contempt Order to Mills, Epps, and Stuckey but omitted Baker. On August 7, 2025, she distributed the Continuance Order to all counsel while withholding the Bench Warrant.

e. **Coordinated timing.** The sequence—dismissed appeal (Aug. 1), Rule Nisi with three days' notice (Aug. 5), pre-hearing seizure (Aug. 6), Notice of Non-Compliance and simultaneous warrant/continuance (Aug. 7), and arrest directed by Defendant Epps (Aug. 8)—reflects coordinated action, not coincidence.

f. **Retaliatory statements.** Surveillance video captured Defendant Epps connecting the arrest to the Farmers' protected speech on Facebook: "Did you see what she posted about me last night and Judge Norris'?"— immediately followed by "Go get their ass."

g. **Exchange of favors.** Defendant Epps maintained an ongoing exchange of favors with executing deputies, including sports tickets and luxury box access.

h. **Financial motive.** Defendant Mills received a 2.5% administrator's fee on estate assets, creating a direct financial incentive for aggressive enforcement. Defendant James Farmer stood to gain control of disputed property.

*Overt Acts by Each Defendant*

**92. Defendant Epps:** (1) Prepared all orders including the Bench Warrant; (2) acknowledged § 1983 risk then procured the arrest anyway; (3) personally directed deputies to arrest Jason Farmer; (4) controlled the timing of the arrest; (5) authored the "inherent power" legal theory; (6) personally supervised the pre-hearing crane seizure; (7) opposed Jason Farmer's release from jail; (8) sent cease-and-desist regarding Facebook posts; (9) maintained exchange of favors with executing deputies.

**93. Defendant Mills:** (1) Presented the Protective Order with a fabricated consent signature; (2) filed the Petition for Citation of Contempt on a void order; (3) filed the ex parte Notice of Non-Compliance that triggered the warrant; (4) seized property without authorization; (5) failed to exercise independent judgment as a court-appointed fiduciary.

**94. Defendant James Farmer:** (1) Filed contradictory sworn property characterizations; (2) joined the contempt prosecution as a direct party; (3) directed and financed the litigation campaign; (4) ratified all acts by continuing to direct and finance litigation after the arrest.

**95.** Each overt act in furtherance of the conspiracy is attributable to all co-conspirators, regardless of which Defendant personally performed it.

### *Constitutional Rights Violated*

**96.** The conspiracy resulted in the deprivation of Jason Farmer's rights under (a) the Fourth Amendment (unreasonable seizure), (b) the Fourteenth Amendment (deprivation of liberty without due process), and (c) the First Amendment (retaliation for protected speech).

### *Causation and Damages*

**97.** As a direct and proximate result of the conspiracy, Plaintiff suffered the damages described in the preceding counts.

## DAMAGES

**98.** As a direct and proximate result of Defendants' conduct as alleged herein, Plaintiff has suffered and continue to suffer the following damages:

a. Loss of liberty: four days' incarceration in the Oconee County Jail.

b. Physical harm and medical jeopardy: Jason Farmer has a documented aortic dissection with physician's orders to avoid stress. Defendants knew of this condition. The arrest subjected him to precisely the physiological stress his doctors warned could be life-threatening.

c. Emotional distress, including harm to Jason Farmer's marital relationship.

d. Lost income from disruption of Jason Farmer's construction business during and following incarceration.

e. Loss of consortium and family disruption during and following incarceration.

f. Reputational harm from public arrest and incarceration.

g. Attorney's fees and costs incurred in seeking emergency mandamus relief from the Georgia Court of Appeals, prosecuting multiple appeals, and bringing this federal action.

h. Ongoing litigation costs from abusive proceedings in multiple forums.

## PRAYER FOR RELIEF

**99.** WHEREFORE, Plaintiff respectfully request that this Court enter judgment against Defendants and award Plaintiff:

a. Compensatory damages in an amount to be determined at trial.

b. Punitive damages against all Defendants in an amount sufficient to punish Defendants for their willful, wanton, and outrageous conduct and to deter similar conduct in the future.

c. d. Attorney's fees and costs pursuant to 42 U.S.C. § 1988.

e. Pre-judgment and post-judgment interest as allowed by law.

f. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

**100.** Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 23rd day of February, 2026.

/s/ John Baker
John Baker
Georgia Bar No. 033797
John Baker Law
1551 Jennings Mill Rd., Suite 3100B
Watkinsville, Georgia 30677
Telephone: (706) 608-2406
Email: john@johnbaker.law

*Attorney for Plaintiff Jason Farmer*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of February, 2026, I caused a true and correct copy of the foregoing Second Amended Complaint to be filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

/s/ John Baker
John Baker
Georgia Bar No. 033797
John Baker Law
1551 Jennings Mill Rd., Suite 3100B
Watkinsville, Georgia 30677
Telephone: (706) 608-2406
Email: john@johnbaker.law

*Attorney for Plaintiff Jason Farmer*