# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

| | | |
|---|---|---|
| JASON FARMER, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | FILE NO. 3:25-cv-00154-TES |
| | ) | |
| MIKE HUNSINGER, in his individual | ) | |
| Capacity; KEVIN EPPS, individually; | ) | |
| JON MILLS, individually, JAMES | ) | |
| FARMER, individually; | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT JAMES FARMER'S RESPONSE IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

COMES NOW Defendant James Farmer ("Farmer"), and pursuant to the Court's order, submits this response in opposition to Plaintiff Jason Farmer's[1] ("Plaintiff") Motion for Leave to File Amended Complaint, [Doc. 37]. For the reasons stated below, Farmer requests that Plaintiff's motion be denied as futile.

## I. Introduction

Though the Court has requested only futility arguments regarding judicial immunity, due to Plaintiff's recent withdrawal of his state court appeal, the Court's

---

[1] Plaintiff purports to bring his motion as "Plaintiffs Jason Farmer and Misty Farmer." However, Misty Farmer is neither named in the current operative complaint as a party, ([Doc. 1]), nor is she named as a plaintiff in the second amended complaint Plaintiff seeks to file.

subject matter jurisdiction to hear Plaintiff's action is now in doubt under the *Rooker-Feldman* doctrine. Farmer therefore focuses this response on that doctrine.[2]

Plaintiff's proposed Second Amended Complaint brings claims under 42 U.S.C. § 1983 which attack the validity of the state probate court's contempt order and subsequent bench warrant and arrest order. In Farmer's original motion to dismiss, he argued that the Court should dismiss this action under the abstention set forth in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 756 (1971), and Sprint Communications, Inc. v. Jacobs, 571 U.S. 69, 134 S. Ct. 584 (2013), because the state court's contempt orders were on appeal. In response to that argument, Plaintiff has withdrawn his appeal from the contempt orders. In doing so, the state court's contempt orders became final. Because Plaintiff's § 1983 claims all purport to challenge the validity of the arrest order and bench warrant, the *Rooker-Feldman* doctrine applies to deprive this Court of subject matter jurisdiction to adjudicate Plaintiff's claims. Accordingly, Plaintiff's motion for leave to amend is futile because this Court no longer has subject matter jurisdiction.

---

[2] Farmer is also not certain claims against him may be dismissed based solely on the judicial immunity of his alleged co-conspirator. See Dennis v. Sparks, 449 U.S. 24, 28, 101 S. Ct. 183 (1980) (noting "private parties conspiring with the judge were acting under color of state law; and it is of no consequence in this respect that the judge himself is immune from damages liability"). However, Farmer does not waive his right to move for dismissal based on the allegations of the Second Amended Complaint failing to support the claim that he was engaged in a conspiracy with Defendant Judge Hunsinger.

## II.     Relevant Background[3]

On July 14, 2023, Defendant Judge Mike Hunsinger entered an order adjudicating disputed property in the underlying action (the "Probate Action"). After Plaintiff failed to comply with the order, Judge Hunsinger entered a contempt order against him on September 3, 2024.  ([Doc. 37-1] at ¶ 13.)  Upon Plaintiff's failure to comply with the requirements of the contempt order, Judge Hunsinger signed a "Bench Warrant and Arrest Order" in accordance with the contempt order, which commanded Plaintiff's arrest and incarceration.  (Id. at ¶ 8.)

Plaintiff alleges that Farmer is "liable for the unreasonable seizure of Jason Farmer because he directed and financed the scheme through which the void warrant was procured and executed," that he caused Plaintiff to be "deprived of liberty for four days without due process of law" because he "directed and financed the litigation campaign that produced the void warrant," and that he "participated in the scheme through which the retaliatory arrest was accomplished" by "direct[ing] and financ[ing] the litigation campaign" leading to the illegal issuance of the warrant. (Id. at ¶¶ 59, 76-77, 86.)

---

[3] Unless otherwise noted, Farmer recites the facts as alleged in the proposed Second Amended Complaint.  In doing so, Farmer does not waive his right to challenge these allegations or to file a motion under Rule 12(b) challenging the proposed Second Amended Complaint should leave to file be granted.

Plaintiff brings three claims under 42 U.S.C. § 1983 against Farmer, alleging Farmer violated his Fourth Amendment right against unreasonable seizure (Count IV), violated his Fourteenth Amendment due process rights (Count VIII), and his First Amendment right to free speech (Count X). (Id. at ¶¶ 56-60, 76-77, 86-88.) Plaintiff also pleads a separate claim under 42 U.S.C. § 1983 alleging a general conspiracy to deprive civil rights (Count XI). (Id. at ¶¶ 89-97.) Curiously, this conspiracy charge is not pled against Judge Hunsinger, but rather only against Farmer and Defendants Kevin Epps and Jon Mills.[4] (Id.)

After the filing of his Renewed Motion for Leave to File Amended Complaint, Plaintiff withdrew his pending appeal from the contempt order and his arrest. (See Exhibit A, Motion to Withdraw Appeal; Exhibit B, Order Granting Motion to Withdraw Appeal.)[5] In his motion in the Georgia Court of Appeals, Plaintiff admitted his state court appeal "include[d] overlapping parties, fact, and issues with those in" the current action before this Court. (Exh. A at 2.)

## III. Legal Standard

"[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." Hall v. United Ins. Co. of Am.,

---

[4] Plaintiff's failure to plead that Defendant Judge Hunsinger was a member of this conspiracy is likely in itself fatal Plaintiff's § 1983 claims.

[5] "[A] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Campo v. Granite Servs. Int'l, Inc., 584 F. Supp. 3d 1329, 1335 (N.D. Ga. 2022) (citation omitted).

367 F.3d 1255, 1262-63 (11th Cir. 2004) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227 (1962)). The Eleventh Circuit "has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." <u>Id.</u> at 1263 (quoting <u>Burger King Corp. v. Weaver</u>, 168 F.3d 1310, 1320 (11th Cir. 1999)).

In this case, Plaintiff's proposed Second Amended Complaint is futile because the Court no longer has subject matter jurisdiction to hear Plaintiff's claims under the *Rooker-Feldman* doctrine. "*Rooker-Feldman* raises a question about . . . subject matter jurisdiction, an issue [the Court] [is] always obliged to examine." <u>Target Media Partners v. Specialty Mktg. Corp.</u>, 881 F.3d 1279, 1284 (11th Cir. 2018) (citing <u>Reahard v. Lee Cty.</u>, 978 F.2d 1212, 1213 (11th Cir. 1992)). This doctrine places "a limitation on the jurisdiction of the inferior federal courts" and "is intended to prevent the federal courts from hearing what are essentially appeals from state court decisions." <u>Id.</u> "The doctrine is 'confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" <u>Id.</u> at 1285 (quoting <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284, 125 S. Ct. 1517 (2005)).

## IV. Argument

The contempt orders issued in the Probate Action were final orders in the contempt proceedings and, as such, were subject to direct appeal to the Georgia Court of Appeals. See Hamilton Cap. Grp., Inc. v. Equifax Credit Info. Servs., Inc., 266 Ga. App. 1, 3, 596 S.E.2d 656 (2004) (quoting Ramsey v. Ramsey, 231 Ga. 334, 336, 201 S.E.2d 219 (1999) (holding that an "order adjudging a person in contempt means the trial court has passed upon the merits of the case and the order, in effect, is a final disposition of the contempt matter by that court, whether it involves an interlocutory order or a final judgment"). In withdrawing his appeal of the contempt orders, Plaintiff has effectively abandoned any challenge to the validity of the orders, which are now final orders and not subject to any appeal. See Nicholson v. Shafe, 558 F.3d 1266, 1275 (11th Cir. 2009) (quoting Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 24 (1st Cir. 2005)) (citing the First Circuit for the contention that "if a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended"); see also Powell v. Powell, 80 F.3d 464, 467 (11th Cir. 1996) (holding "the [*Rooker-Feldman*] doctrine is not limited to state appellate court judgments" and "[a] litigant may not escape application of the doctrine by merely electing not to appeal an adverse state trial court judgment").

As with his original Complaint, each and every claim against Farmer in Plaintiff's proposed Second Amended Complaint is based on the initial contempt order and the contempt order styled as the "Bench Warrant and Arrest Order" entered by Defendant Judge Hunsinger in the Probate Action. Under Count IV, Farmer is alleged to be "liable for the unreasonable seizure of Jason Farmer because he directed and financed the scheme through which the void warrant was procured and executed." ([Doc. 37-1] at ¶ 59.) In Count VIII, Plaintiff alleges Farmer caused him to be "deprived of liberty for four days without due process of law" because he "directed and financed the litigation campaign that produced the void warrant." (Id. at ¶¶ 76-77.) Finally, Count X alleges Farmer "participated in the scheme through which the retaliatory arrest was accomplished" by "direct[ing] and financ[ing] the litigation campaign" leading to the illegal issuance of the "warrant." (Id. at ¶ 86.)

Each of the claims against Farmer require the Court to find the contempt orders to be invalid and maliciously entered against Plaintiff in order for Farmer to be liable for the alleged constitutional violations. In other words, the claims brought against Farmer in the proposed Second Amended Complaint ask this Court to review and reject the validity of the contempt orders, final orders from the state probate court. These claims are exactly the type of claim the *Rooker-Feldman* doctrine prohibits.

"The *Rooker-Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009) (citing D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S. Ct. 1303 (1983)). In Casale, the plaintiff filed claims under the Uniformed Services Former Spouses' Protection Act, challenging the domestication of a Georgia state court's contempt orders against him and arguing the divorce judgment against him violated federal law. Id. at 1259-60. Though the plaintiff argued he was challenging "only the state court's jurisdictional authority and not the merits of that decision," the Eleventh Circuit held his claims were "for the state appellate court to decide in a direct attack by Casale on the validity of the contempt orders." Id. at 1261. Because the plaintiff was "just the sort of 'state-court loser[]' the *Rooker-Feldman* doctrine was designed to turn aside," the district court lacked subject matter jurisdiction to hear his claims. Id.

Similarly here, Plaintiff seeks to litigate in this Court the validity of the contempt orders, the validity of which are "for the state appellate court to decide in a direct attack." See id. Like Casale, Plaintiff is "just the sort of 'state-court loser[]' the *Rooker-Feldman* doctrine was designed to turn aside." Id.

The application of the *Rooker-Feldman* doctrine in this case is not affected by the fact that Plaintiff is seeking monetary damages as opposed to a reversal of the

state court orders.  The applicable inquiry is "whether the plaintiff seeks relief from an injury 'caused by the judgment itself' or whether he seeks damages for some independent source of injury." Efron v. Candelario, 110 F.4th 1229, 1235 (11th Cir. 2024), cert. denied, 145 S. Ct. 1958, 221 L. Ed. 2d 738 (2025).  In Efron, the plaintiff brought claims under § 1983 seeking "monetary damages for injury to his business and property as a result of the corrupt decision" and not "seek[ing] to 'reverse and nullify' the Puerto Rican court's judgment." Id. at 1236.  The Eleventh Circuit held "Efron's efforts to distinguish his claim are unpersuasive and amount to filing a direct appear of the state court judgment while simultaneously trying to 'call the appeal something else.'" Id. at 1237 (quoting Behr v. Campbell, 8 F.4th 1206, 1211 (11th Cir. 2021)).  Though the plaintiff did not ask for a reversal of the state court's decision, he asked the federal court "to find that the court's determination that Candelario is entitled to $50,000 a year is the result of corruption, which amounts to the same thing." Id.  Therefore, the federal courts were deprived of subject matter jurisdiction under the *Rooker-Feldman* doctrine. Id.

Plaintiff's claims here ask the Court to find Defendant Judge Hunsinger's contempt orders are the result of corruption.  Like in Efron, the *Rooker-Feldman* doctrine applies to preclude such actions as Plaintiff's claims are merely an appeal of those orders repackaged into federal claims.  Moreover, Plaintiff himself admitted in his motion to withdraw in the Georgia Court of Appeals that his withdrawn appeal

was substantially similar to the action before this Court. (Exh. A at 2.) Because Plaintiff seeks relief for "an injury 'caused by the judgment itself,'" his claims against Farmer are barred by the *Rooker-Feldman* doctrine." Efron, 110 F.4th at 1235.

Because the Court does not have subject matter jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine, his proposed Second Amended Complaint is futile. Accordingly, Farmer requests that the Court deny Plaintiff's motion.

## V.    Conclusion

Based upon the foregoing, Defendant James Farmer requests that the Court deny Plaintiff's Renewed Motion for Leave to File Amended Complaint.

This 23rd day of March, 2026.

Respectfully submitted,

**MARSH ATKINSON & BRANTLEY, LLC**

By:    */s/ David Atkinson*
David M. Atkinson
Georgia State Bar No. 026460
Joseph J. Angersola
Georgia State Bar No. 890572
*Attorneys for James Farmer*

271 17th Street NW, Ste. 1600
Atlanta, GA  30363
Telephone 404-282-5050
david.atkinson@mablawfirm.com
joseph.angersola@mablawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing **DEFENDANT JAMES FARMER'S RESPONSE IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO FILE AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

This 23rd day of March, 2026.

Respectfully submitted,

**MARSH ATKINSON & BRANTLEY, LLC**

By: _/s/ David Atkinson_
David M. Atkinson
Georgia State Bar No. 026460
Joseph J. Angersola
Georgia State Bar No. 890572
_Attorneys for James Farmer_

271 17th Street NW, Ste. 1600
Atlanta, GA  30363
Telephone 404-282-5050
david.atkinson@mablawfirm.com
joseph.angersola@mablawfirm.com