# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### ATHENS DIVISION

JASON FARMER,

    Plaintiff,

v.

                                 Case No. 3:25-CV-00154-TES

MIKE HUNSINGER, KEVIN EPPS, JON MILLS, and JAMES FARMER,

    Defendants.

## DEFENDANT EPPS' RESPONSE IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

COMES NOW Defendant Kevin Epps and files this Response in Opposition to Plaintiff's Renewed Motion for Leave to File Amended Complaint. (Doc. 37). Plaintiff's latest rendition of his claims against Defendant Epps still fails to provide a sufficient factual basis to levy liability on Defendant for any purported civil rights violation. Plaintiff's proposed amendment to his claims against this Defendant accordingly is futile, and the Court should deny Plaintiff's motion seeking leave to file an amended complaint on that basis.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jason Farmer initiated this action on October 1, 2025, pursuant to 42 U.S.C. § 1983 and state law, alleging that Defendant Kevin Epps acted in concert with Defendants Oconee County Probate Court Judge Mike Hunsinger, County Administrator Jon Mills, and Plaintiff's brother James Farmer to conspire to deprive Plaintiff of his constitutional rights, causing him to be falsely arrested and imprisoned. The facts underlining Plaintiff's Complaint involve a complex web of estate-related litigation in the Oconee County Probate Court, the

Superior Court of Oconee County, and the appellate courts of Georgia.[1] In the course of those proceedings, Judge Hunsinger entered an Interim Order on September 3, 2024, finding Plaintiff—by his own admission—to be in willful contempt of a previously issued protective order. (Doc. 10-7). The order further warned Plaintiff that failure to purge himself of his contempt as outlined in the Interim Order would result in his arrest and detention pending further hearing. (*Id.*). Plaintiff elected not to heed the Probate Court's instructions, and on August 7, 2025, Judge Hunsinger issued a Bench Warrant and Arrest Order for Plaintiff's immediate arrest. (Doc. 10-8). Plaintiff's arrest forms the basis for the lawsuit filed in this Court. Plaintiff's original Complaint challenged the legitimacy of the bench warrant issued by Judge Hunsinger and alleged that Defendants conspired through *ex parte* communications prior to issuance of the warrant to deprive Plaintiff of his constitutional rights under the Fourth and Fourteenth Amendments.

Defendant Epps filed a motion to dismiss Plaintiff's Complaint on October 10, 2025, asserting under *Younger v. Harris*, 401 U.S. 37 (1971), that this Court should not interfere with ongoing state court proceedings through which Plaintiff has an adequate remedy to seek redress. (Doc. 4-1). The other Defendants soon followed suit. (Docs. 10-1, 11-1, 23-1). On February 10, 2026, Plaintiff filed an Amended Complaint. (Doc. 32). The Clerk of Court issued a Notice of Deficiency on February 11, 2026, informing Plaintiff that filing an amended complaint more than twenty-one days after an answer or motion under Fed. R. Civ. P. 12(b), (e), or (f) requires either the consent of all parties or the Court's permission. *See* Fed. R. Civ. P. 15(a). Plaintiff filed a Motion for Leave to File Second Amended Complaint that same day. (Doc. 33).

---

[1] Defendant Epps refers the Court to the prior motions to dismiss filed in this matter for a full recitation of the underlying court proceedings and asks the Court to take judicial notice of the state court proceedings. *See* Fed. R. Evid. 201. (Docs. 4-1, 10-1, 11-1, 23-1).

Following a hearing on February 11, 2026, the Court denied Plaintiff's motion for leave to amend, noting numerous deficiencies with Plaintiff's pleading, including the shot-gun nature of the proposed amended complaint. The Court afforded Plaintiff another opportunity to file a motion for leave to amend along with a revised amended complaint rectifying the prior pleading deficiencies within ten days of the hearing. The court further instructed Defendants to focus their briefs in response to Plaintiff's motion to the issue of whether application of the judicial immunity doctrine to Judge Hunsinger renders any proposed amended complaint futile.

Plaintiff filed his renewed motion to amend and proposed amended complaint as instructed on February 23, 2026. (Doc. 37). Plaintiff's proposed amended complaint eliminates any state law claims. However, Plaintiff still maintains Defendant Epps is liable under § 1983 for any actions he undertook in concert with Judge Hunsinger and the other named Defendants to effectuate Plaintiff's arrest and impede his constitutional rights. Plaintiff specifically asserts Defendant Epps is liable under § 1983 for alleged violations of Plaintiff's rights under the Fourth Amendment (Count II), the Fourteenth Amended (Count V), and the First Amendment (Count IX and Count X). In Count XI, Plaintiff asserts Defendants collectively conspired to deprive him of his civil liberties as guaranteed by the First, Fourth, and Fourteenth Amendments. Plaintiff's claims against Defendant Epps are futile as Plaintiff has not adequately alleged that Epps individually was a state actor acting under color of law nor that Epps was acting in concert with a state official to deprive Plaintiff of any constitutional rights such that he may be viewed as a state actor for § 1983 purposes.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. Motion to Amend Standard

Under Rule 15(a)(1), "[a] party may amend its pleading once as a matter of course" within 21 days of service. Fed. R. Civ. P. 15(a)(1). Thereafter, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R .Civ. P. 15(a)(2). Leave to amend shall be freely given "when justice so requires." *Id*. "[U]nless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989). Certain factors justify the denial of a motion to amend, including undue prejudice to the opposing party, undue delay, bad faith, repeated failure to cure deficiencies by previous amendments, or futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Laurie v. Ala. Ct. of Crim. App.*, 256 F.3d 1266, 1274 (11th Cir. 2001). A proposed amendment is futile "when the complaint as amended would still be properly dismissed." *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (citation omitted).

### B. Plaintiff's § 1983 claims against Defendant Epps are futile as Plaintiff failed to plead facts sufficient to establish a conspiracy between Defendant Epps and any state actor.

To state a claim under § 1983, a plaintiff must show that the defendant acted under color of state law to deprive him of a right secured by the constitution. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). "Only in rare circumstances can a private party be viewed as a 'state actor' for § 1983 purposes." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). "The Eleventh Circuit recognizes three tests for establishing state action by what is otherwise a private person or entity: the public function test, the state compulsion test, and the nexus/joint

action test." *Id.* (citing *NBC v. Commc'n Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988).

Defendant Epps' involvement in this action stems from his legal representation of Defendant James Farmer in the underlying probate court proceedings. To the extent Plaintiff seeks to impose § 1983 liability for any individual action taken by Defendant Epps as an attorney and an "officer of the court," Plaintiff's claims fail as a matter of law. Epps' status as an attorney and "officer of the court" alone do not subject him to § 1983 liability. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 318-319n.7 (1981) ("a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of law' within the meaning of § 1983"). Plaintiff's revised § 1983 claims asserted against Defendant Epps are likewise futile because Plaintiff's proposed Second Amended Complaint fails to plead facts sufficient to establish Epps acted in concert with Judge Hunsinger and the other Defendants to deprive Plaintiff of his constitutional rights.

Even the most deferential reading of Plaintiff's proposed Second Amended Complaint makes plain that Judge Hunsinger is entitled to absolute judicial immunity from suit for any actions alleged by Plaintiff, all of which were performed in his capacity as the Oconee County Probate Court Judge. *See McCullough v. Finley*, 907 F.3d 1324, 1330 (11th Cir. 2018). It is axiomatic that judges are entitled to absolute immunity from civil liability for acts performed pursuant to their judicial authority, even if done maliciously or corruptly. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (recognizing as a "well-established" principle of law "of the highest importance" that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly"); *see also Pierson v. Ray*, 386 U.S. 547,

553-54 (1967) ("Few doctrines are more solidly established at common law" than absolute judicial immunity.). "This absolute immunity is intended for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Stevens v. Osuna*, 877 F.3d 1293, 1301 (11th Cir. 2017) (citation and punctuation omitted). "A judge's errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation." *Id.* (citation and punctuation omitted).

To determine whether a judge is entitled to judicial immunity, the court should ascertain whether the judge interacted with the plaintiff in a judicial capacity and, if so, whether the judge acted in the absence of subject-matter jurisdiction. *See Simmons v. Conger*, 86 F.3d 1080, 1084 (11th Cir. 1996). Whether a judge enjoys absolute judicial immunity for a particular act requires examination of "the nature and function of his act, not the propriety of the act itself, and [takes into consideration] whether the nature and function of the particular act is judicial." *McCullough*, 907 F.3d at 1331 (citing *Mireles v. Waco*, 502 U.S. 9, 13 (1991)). "A judge's motivation is irrelevant to determining whether his act was judicial." *Id.* Rather than assessing a judge's motivation, a court determines whether the nature and function of the alleged acts are judicial by considering four factors:

> (1) the precise act complained of is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity.

*Id.* (quoting *Dykes v. Hosemann*, 776 F.2d 942, 946 (11th Cir. 1985)).

6

The first factor weighs heavily in favor of finding Judge Hunsinger's actions to be judicial in nature. The acts of which Plaintiff complains—the issuance of the interim contempt order with purge conditions and subsequent issuance of a bench warrant for failure to comply with those conditions—are without question a normal judicial function and plainly within Judge Hunsinger's jurisdiction. The remaining factors likewise indicate the judicial nature of Judge Hunsinger's actions in relation to Plaintiff. It is readily apparent from the face of Plaintiff's proposed amended complaint the actions about which Plaintiff complains transpired in the courthouse; centered around ongoing probate proceedings; and occurred in the aftermath of a hearing during which Plaintiff admitted to flagrantly disregarding the court's prior order.

Because Judge Hunsinger's acts were judicial, he enjoys absolute judicial immunity unless he acted in the "clear absence of all jurisdiction." *Stump*, 435 U.S. at 357. "A judge acts in 'clear absence of all jurisdiction' only if he lacked subject-matter jurisdiction." *McCullough*, 907 F.3d at 1332 (quoting *Dykes*, 776 F.2d 947-949). Plaintiff's insistence that Judge Hunsinger lacked subject-matter jurisdiction because a probate court cannot adjudicate title to disputed property is unavailing. Georgia law grants probate courts subject-matter jurisdiction over decedents' estates, including the administration of estate assets, appointing personal representatives, and issuing orders necessary to preserve and administer estate property. O.C.G.A. §§ 15-9-30(a); 53-7-40, et seq. Probate judges further have inherent and statutory authority to enforce their orders through contempt citations. O.C.G.A. § 15-9-34. Additionally, the underlying orders at issue here expressly defer final determinations of title to the Superior Court while preserving and managing the property of the estate as part of the ongoing administration. Plaintiff's assertion to the contrary lacks any legal merit. Judge Hunsinger accordingly is entitled to absolute judicial immunity.

Even though Judge Hunsinger is shielded by judicial immunity, Defendant Epps may nevertheless be subject to § 1983 liability if sufficient evidence exists demonstrating Epps' willful participation in joint activity with Judge Hunsinger to deprive Plaintiff of a constitutional protection:

> to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions.

*Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (finding a private party who corruptly conspired and bribed a judge to be acting under color of state law within the meaning of § 1983). "Such joint actors remain liable notwithstanding any immunity enjoyed by the state officials." *Swain v. Stewart*, No. CV619-003, 2019 WL 2176928, at *2 (S.D. Ga. May 20, 2019) (citing *Dennis*, 449 U.S. at 28 ("[T]he private parties conspiring with the judge were acting under color of state law; and it is of no consequence in this respect that the judge himself is immune from damages liability.")).

"To state a claim for conspiracy under § 1983, a plaintiff must allege that (1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1327 (11th Cir. 2015) (citation omitted); *see also Rowe v. Ft. Lauderdale*, 279 F.3d 1271, 1284 (11th Cir. 2002) (To establish a conspiracy, the plaintiff "must show some evidence of agreement between the defendants" to violate his rights.)). A plaintiff may allege sufficient facts to state a claim for § 1983 conspiracy where the plaintiff contends: (1) all defendants participated in the events leading up to the alleged constitutional violation; (2) all defendants "acted in concert" when the

constitutional violation was committed; and (3) all defendants "communicated with one another and actively participated with one another." *See Johnson v. Conway*, No. 1:13-CV-0524-RWS, 2013 WL 54933380, at *5 (N.D. Ga. Sept. 30, 2013) (citation and punctuation omitted). "The linchpin of [any] conspiracy is agreement, which presupposes communication." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992). "The mere allegation of an agreement, by itself, is conclusory" and insufficient to state a conspiracy claim. *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1148 (N.D. Ga. 2016) (citation omitted).

Paragraph 92 of Plaintiff's proposed Second Amended Complaint summarizes Plaintiff's allegations of Defendant Epps' alleged offensive conduct relating to Plaintiff's arrest:

> (1) Prepared all orders including the Bench Warrant; (2) acknowledged § 1983 risk then procured the risk anyway; (3) personally directed deputies to arrest Jason Farmer; (4) controlled the timing of the arrest; (5) authored the "inherent power" theory; (6) personally supervised the pre-hearing crane seizure; (7) opposed Jason Farmer's release from jail; (8) sent cease-and-desist regarding Facebook posts; (9) maintained exchange of favors with executing deputies.

(Doc. 37-1, p. 21).

Conspicuously absent from Plaintiff's proposed Second Amended Complaint are *any* allegations *any* communications evidencing *any* agreement between Defendant Epps and Judge Hunsinger or the other named Defendants. Stripping away the factual assertions of the actions taken by Defendant Epps in his zealous representation of his client in the underlying estate proceedings, all that remain are Plaintiff's conclusory allegations that Defendant Epps "conspired with Defendant Hunsinger (a state judicial officer) to procure [Plaintiff's] arrest"; "act[ed] under color of state law through his conspiracy with Defendant Hunsinger"; "participated in a scheme through which the retaliatory arrest was accomplished"; and "conspired with Defendant Hunsinger to deprive [Plaintiff] of his constitutional rights under the

Fourth, Fourteenth, and First Amendment." (Doc. 37-1, p. 7, 15, 19, 20). Plaintiff's references to a "conspiracy" thus are nothing more than mere conclusions, which should be identified then discarded "not on the ground that they are unrealistic or nonsensical but because their conclusory nature disentitles them to the presumption of truth." *McCullough v. Finley*, 907 F.3d at 1333 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)) (punctuation omitted). Absent allegations that Defendant Epps and Judge Hunsinger, the only named state actor, "reached an understanding or agreement" to "deny [Plaintiff] one of his constitutional rights," Plaintiff's claim of conspiracy thus cannot withstand scrutiny. The Court accordingly should find Plaintiff's § 1983 conspiracy claim futile and deny Plaintiff's request for leave to file his proposed second amended complaint.

C. **Plaintiff's claims are futile to the extent Plaintiff seeks review of a state court denial of relief.**

At the February 11, 2026 hearing, the Court instructed Defendants to limit their arguments in response to Plaintiff's Renewed Motion for Leave to File Amended Complaint to the issue of judicial immunity. In an abundance of caution, however, Defendant Epps reiterates his position that at its heart Plaintiff's proposed Second Amended Complaint is an impermissible attempt to convince this Court to overrule or otherwise to interfere in ongoing state court proceedings. Clear precedent counsels the Court to abstain from exercising its authority under these circumstances. *See Younger v. Harris*, 401 U.S. 37 (1971); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

III. **CONCLUSION**

For the foregoing reasons, Defendant Kevin Epps respectfully requests the Court deny Plaintiff Jason Farmer's Renewed Motion for Leave to File Amended Complaint (Doc. 37)

because the claims as presented in Plaintiff's proposed Second Amended Complaint are futile and otherwise subject to dismissal.

Respectfully submitted this 23rd day of March, 2026.

/s/ *Lee M. Gillis, Jr.*
LEE M. GILLIS, JR.
Georgia Bar No. 217515
*Attorney for Defendant*
*Kevin Epps*

HALL, BLOCH, GARLAND & MEYER, LLP
577 Mulberry Street, Suite 1500
P. O. Box 5088
Macon, GA 31201-5088
(478) 745-1625 Telephone
(478) 741-8822 Facsimile
LeeGillis@hbgm.com

**CERTIFICATE OF SERVICE**

This is to certify that I have this date filed the foregoing ***Defendant Epps' Response in Opposition to Plaintiff's Renewed Motion for Leave to File Amended Complaint*** has been electronically transmitted to the Clerk's Office using the CM/ECF System which will automatically send notification of such filing to all counsel of record.

Respectfully submitted, this 23rd day of March, 2026.

/s/ *Lee M. Gillis, Jr.*

LEE M. GILLIS, JR.
Georgia Bar No. 217515
*Attorney for Defendant*
*Kevin Epps*

HALL, BLOCH, GARLAND & MEYER, LLP
577 Mulberry Street, Suite 1500
P. O. Box 5088
Macon, GA 31201-5088
(478) 745-1625 Telephone
(478) 741-8822 Facsimile
LeeGillis@hbgm.com