IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| JASON FARMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 3:25-cv-00154-TES |
| MIKE HUNSINGER, | ) | |
| KEVIN EPPS, | ) | |
| JON MILLS, | ) | |
| JAMES FARMER, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF RENEWED MOTION
FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

This reply addresses five points. First, Rooker-Feldman does not apply, and even if it did, judicial estoppel forecloses Defendants' invocation of it. Second, Defendants have not, and certainly cannot, identify a statute conferring on the Probate Court authority to injunctively "protect" property not belonging to a decedent, or – far worse - enforce that adjudication through open-ended imprisonment. That gap is dispositive. Third, the Second Amended Complaint plausibly defeats a finding of clear futility on the judicial immunity question when the Court assumes the facts pled in the complaint, rather than Defendants attempts to reframe them, or even rewrite them. Fourth, the private-defendant claims are independently viable *regardless* of Hunsinger's immunity. Fifth, at minimum, leave should be granted as to the private defendants.

Plaintiff respectfully preserves his position that leave was not required by the Rules. Assuming *arguendo* that it was in deference to the Court's finding to the contrary, the renewed motion did precisely what the Court directed, and rightly so.  It jettisoned the state-law counts, separated each federal claim by defendant and constitutional provision, and alleged the operative facts in a defendant-specific way. Doc. 37-1 ¶¶ 8–97.

Defendants must show more than that they expect to win later Rule 12 motions. They must show dismissal is certain now. Instead, they invoke a judicial immunity defense requiring analysis of the Probate Court's subject-matter jurisdiction.   At the same time, they argue that Rooker-Feldman bars that analysis.   The contradiction is structural, and fatal to any defense of judicial immunity.   The Court need not take Plaintiff's word for that, since it can confirm or deny it by asking Defendants to point to the portion of the Georgia Code that might give a non-article 6 probate court equitable powers, as well as the power to issue criminal contempt orders for indefinite incarceration of a person, rather than "attachment."

## I.

## <u>THERE ARE NO ROOKER-FELDMAN CONCERNS.</u>

Two independent grounds defeat Defendants' Rooker-Feldman argument. Either is sufficient.

First, Plaintiff's appeal from the arrest-and-contempt proceedings remained pending when the complaint in this action was filed. Rooker-Feldman does not reach state-court orders that are still under active appellate review. There is no completed state-court judgment for the doctrine to protect.

Second, and separately, judicial estoppel forecloses Defendants from invoking the doctrine here. Defendants Farmer and Epps argued in the Georgia Court of Appeals - successfully - that the Probate Court's orders were not final judgments: "The probate court's orders here are not final judgments, as the estate administration proceedings remain pending before that court." A25A0690, A25A0691 (Nov. 26, 2024). Relying on that position, they obtained dismissal of the petition for review for want of appellate jurisdiction.

They cannot have it both ways. Having prevailed by arguing the orders were nonfinal - blocking appellate review on that ground - Defendants cannot now recast those same orders as the kind of final, completed state-court adjudications that trigger Rooker-Feldman and supplied all process due before the August 2025 arrest. Whatever the precise scope of judicial estoppel, the position-switching here falls squarely within it.

**II.**

**DEFENDANTS CANNOT IDENTIFY THE STATUTE THAT AUTHORIZED THE PROBATE COURT TO ADJUDICATE THIS PROPERTY DISPUTE OR TO ENFORCE IT THROUGH OPEN-ENDED ARREST.**

Georgia confers subject-matter jurisdiction on its courts by statute. Courts of limited jurisdiction - like the Probate Court - exercise only the powers the legislature expressly granted. That power cannot be inferred, assumed, or expanded by agreement of the parties. O.C.G.A. § 15-1-2. The statute means what it says: consent cannot confer subject-matter jurisdiction, and nothing Defendants contend to be "inherent" might ever change it.

The legislature drew the line clearly. O.C.G.A. § 15-9-30 enumerates the Probate Court's subject-matter jurisdiction. Georgia cases interpreting that enumeration are equally clear: probate courts do not adjudicate conflicting claims of title to real or personal property. *Cunningham v. Estate of Cunningham*, 304 Ga. App. 608, 609(1), 697 S.E.2d 280 (2010); *Ray v. Nat'l Health Investors, Inc.*, 280 Ga. App. 44, 47(1), 633 S.E.2d 388 (2006).

Enforcement is similarly constrained. O.C.G.A. § 15-9-34 authorizes enforcement of *lawful* orders by attachment for contempt and caps punishment at a $500 fine or twenty days' imprisonment. Authority to issue penal arrest warrants is reserved – by explicit statute - to judges of superior, city, state, and magistrate courts. O.C.G.A. § 17-4-40. Bench warrants run only against persons accused or charged with crimes. O.C.G.A. § 17-7-90. **The Probate Court fits none of these categories.**

Now the detail that closes the case at this stage. The August 7, 2025 instrument did not function as an attachment to secure a court appearance. It commanded arrest and incarceration "until further order of this Court." Doc. 37-1 ¶¶ 8, 63–68. When counsel filed a notice of appeal, the response was not to schedule a prompt hearing  -  it was to set a $500,000 supersedeas bond sua sponte. Id. ¶¶ 66–68. Open-ended incarceration conditioned on multiple prerequisites the contemnor cannot simultaneously satisfy is criminal contempt, not civil. *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 828–29 (1994). Criminal contempt – such as that judicially admitted in Defendant Epps' Answer - requires criminal procedure. A probate court cannot provide it because the General Assembly never conferred it with jurisdiction or power to do so.

**Not one opposition brief identifies the statute authorizing any of this. That is not instructive. It is dispositive.**

- 5 -

Defendants also conflate two distinct judicial acts: the attachment that *initiates* a contempt proceeding, and the adjudication that *concludes* it. These are not the same power. They are procedurally and constitutionally distinct. An attachment is a summons to appear and answer. An adjudication is a finding followed by punishment. The legislature authorized probate courts to use the first. The second - followed by open-ended imprisonment without a hearing - required criminal jurisdiction the Probate Court never had.

The settlement theory cannot rescue the analysis. Four features confirm this. First, O.C.G.A. § 15-1-2 makes consent irrelevant: subject-matter jurisdiction cannot be conferred by agreement.  Second, the record allegations show there was no actual consent: Plaintiff's text was a conditional counteroffer whose conditions were never incorporated, and the signature line referenced "See Transcript 6-14-23", not counsel's actual signature, in violation of Georgia Uniform Court Rule 5.3.4.  Third, the order adjudicated ownership *in substance*: stripping every incident of ownership from the record titleholder - possession, use, income, management, exclusion - is an ownership adjudication regardless intentional mislabeling.  Fourth, and **most important, the settlement theory cannot reach the enforcement mechanism.**  A protective order is enforced through civil contempt. Not through criminal arrest. Not through "PRE TRIAL MISD" booking. Whatever jurisdictional cover the settlement narrative might supply evaporates at the moment a criminal arrest warrant issues.   That act is governed by *Bradley* regardless of what preceded it, and it occurred in the clear absence of subject matter jurisdiction.

**III.**

**THE SECOND AMENDED COMPLAINT PLAUSIBLY DEFEATS CLEAR FUTILITY ON THE JUDICIAL IMMUNITY QUESTION.**

Amendment is futile only when a better-pleaded complaint might state a claim. That standard is not met here, and Plaintiff respectfully submits the stay of his ability to receive Defendants' initial disclosures could only highlight that.

Judicial immunity is broad. It protects judges even for grievous legal errors. *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978). But the doctrine has a precise outer limit: a judge acting in the "clear absence of all jurisdiction" receives no immunity. *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351–52 (1872). *Bradley* itself supplied the paradigm: "a probate judge, with jurisdiction over only wills and estates, [who] should try a criminal case." *Id.* at 352. That is not an analogy to this case. It *is* this case.

The *Bradley* test is objective. It asks whether the court had subject-matter jurisdiction, not what the judge knew or believed. Three features of the SAC's allegations make the jurisdictional question more than merely arguable.

First, the Probate Court's own protective order acknowledged that "the issue concerning ownership of the Subject Equipment shall be decided by the Superior Court of Oconee County, as the Probate Court lacks jurisdiction to decide same." Doc. 37-1 ¶¶ 11–15. The court identified its own jurisdictional limit in the very order it later cited to justify contempt and arrest. Its own document refutes its own jurisdictional claim. There is not a statute conferring the court with the power to enter a protective order over items of personal property neither belonging to a decedent – not in the possession of the decedent - when they died. There is not a statute permitting the

probate court to exercise injunctive power over items of personal property that someone – particularly a stranger to the will like Defendant James Farmer – claims to be estate property without any standing to do it. Second, if the protective order was void because it rested on a property adjudication exceeding the Probate Court's jurisdiction, the contempt resting on it was void as well.  A void order cannot form the link of a jurisdictional chain.

Third, the process used bore none of the hallmarks of lawful civil contempt. No hearing preceded the warrant. The triggering document was an ex parte notice from an interested party. Counsel received service of a continuance while the warrant itself was withheld. The jail classified the detention as "PRE TRIAL MISD." These objective indicia, taken together, describe criminal contempt, and the mislabeling permitted by previous courts stating otherwise should not be expected to be permitted in this one.

None of this establishes that Plaintiff will prevail on the immunity question at the merits stage. It does establish that dismissal is not certain now. That is the standard. Defendants' futility position fails unless they can connect the process complained of to an actual statute, not a purportedly "inherent" power, not the "ballpark" of a statute. They have not done so.

#### IV.

### <u>THE PRIVATE-DEFENDANT CLAIMS ARE INDEPENDENTLY VIABLE.</u>

A judge's immunity does not immunize those who conspired with him. *Dennis v. Sparks*, 449 U.S. 24, 27–29 (1980). The judge in *Dennis* was "properly dismissed" on immunity grounds; the private parties who conspired with him remained subject to § 1983 liability. Their liability is independent of the judge's immunity.

The SAC pleads that theory with specificity. As to Epps: the SAC alleges that he drafted the challenged orders and warrant, volunteered to prepare bench warrants, personally directed deputies to arrest Plaintiff, controlled the timing of the arrest, and connected the arrest to Plaintiff's Facebook posts. Doc. 37-1 ¶¶ 35–45, 72, 78–85, 92.

As to Mills: the SAC alleges that he presented the protective order with an unauthorized consent signature, filed the ex parte notice that immediately triggered the warrant, and seized property while acting under a court-conferred appointment. Id. ¶¶ 47–55, 74, 93.

As to James Farmer: the SAC alleges that he joined the contempt prosecution, financed and directed the litigation campaign, filed contradictory sworn property characterizations to steer the dispute into probate court, and ratified the acts that produced the arrest. Id. ¶¶ 56–60, 76–77, 86–97, 94. These are concrete factual allegations, not formulaic recitation.

The SAC further alleges that Athens-Clarke officers detained Plaintiff in another county without any warrant in hand, and held him until Oconee deputies arrived, after the process had been described as a "civil warrant," a category that does not exist in Georgia law. Id. ¶¶ 61–68. That is not merely resort to the courts.  It is joint participation in a completed unconstitutional seizure.

*Harvey* and *Polk County* do not require denial of leave.  Those cases reject § 1983 liability for ordinary resort to the courts or for a lawyer's traditional adversarial functions. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992); *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981). They do not foreclose claims based on alleged participation with a judge and law enforcement in the challenged seizure itself.  *Twombly* requires only plausible grounds to infer an agreement. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Count XI expressly alleges that Epps, Mills,

and James Farmer conspired with Defendant Hunsinger, while seeking relief in that count only against the private participants. Doc. 37-1 ¶¶ 89–97. That is not enough at this stage, it is more than enough.

## V.

## AT MINIMUM, LEAVE SHOULD BE GRANTED
## AS TO THE PRIVATE DEFENDANTS.

Even if the Court later concludes that Judge Hunsinger is entitled to dismissal on immunity grounds, that personal defense does not justify denying the amendment in its entirety. A defendant's right to assert an individual defense in later proceedings does not, at the Rule 15 stage, collapse the claims of all other parties. The proper course is to allow the SAC to become operative and address any defendant-specific Rule 12 issues in the ordinary course.

The renewed motion gave the Court the defendant-specific, non-shotgun pleading it requested. Defendants have not shown that the SAC is clearly barred by Rooker-Feldman, judicial immunity, or any private-defendant futility theory.

The Court should grant the Renewed Motion for Leave to File Second Amended Complaint. If any discrete issue warrants further attention before ruling, it is this: What statute authorized the Probate Court to adjudicate this property dispute and then jail Plaintiff until further order of this Court? Defendants have not answered that question.

Respectfully submitted this 6th day of April, 2026.

**JOHN BAKER LAW**

*/s/ John H. Baker*
John H. Baker, Esq.
Georgia Bar No. 033797
john@johnbaker.law
1551 Jennings Mill Road
Suite 3100B
Watkinsville, GA 30677
(706) 608-2406

*Counsel for Plaintiff Jason Farmer*

## CERTIFICATE OF SERVICE

I certify that I have filed the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF RENEWED MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** using the Court's CM/ECF system, which will send electronic notice of such filing to all counsel of record.

Respectfully submitted this 6th day of April, 2026.

**JOHN BAKER LAW**

*/s/ John H. Baker*
John H. Baker, Esq.
Georgia Bar No. 033797
john@johnbaker.law
1551 Jennings Mill Road
Suite 3100B
Watkinsville, GA 30677
(706) 608-2406

*Counsel for Plaintiff Jason Farmer*