IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| JASON FARMER,<br><br> *Plaintiff*,<br><br>v.<br><br>Hon. MIKE HUNSINGER, *et al.*,<br><br> *Defendants*. | CIVIL ACTION NO.<br>3:25-cv-00154-TES |

ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT AND GRANTING DEFENDANTS' MOTIONS TO
DISMISS

Before the Court is Plaintiff Jason Farmer's renewed motion for leave to file an amended complaint. [Doc. 37]. As explained in further detail below, the Court **DENIES** Plaintiff's motion to amend. [Doc. 37]. That makes Plaintiff's original complaint and its corresponding motions to dismiss the operative pleadings. The Court then **GRANTS** Defendants' motions to dismiss Plaintiff's original complaint. [Doc. 4]; [Doc. 10]; [Doc. 11]; [Doc. 23].

A. <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 15(a)(1), a plaintiff may amend his complaint once as a matter of course within 21 days after serving it, or within 21 days after service of a motion under Federal Rule of Civil Procedure 12(b). Outside of those windows, a plaintiff must seek leave of court to amend. Fed. R. Civ. P. 15(a)(2); *see also*

*Allen v. Vintage Pharms. LLC,* No. 5:18-cv-00329-TES, 2019 WL 542981, at *3 (M.D. Ga. Feb. 11, 2019) (stating that the window to amend without leave does not restart with each new responsive filing). This leave should be freely given but only "when justice so requires." *Id.*

That said, district courts may deny a motion to amend for numerous reasons. *Foman v. Davis*, 317 U.S. 178, 182 (1962). This includes when the amendment is futile. *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)). An amendment is considered futile if the complaint, as amended, "would still be properly dismissed." *Silberman v. Mia. Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019) (citing *Cockrell*, 510 F.3d at 1310). Put differently, where a proposed claim would not withstand a motion to dismiss, that claim is futile. *Downing v. Thompson*, No. 5:23-cv-00501-TES, 2024 WL 3700199, at *3 (M.D. Ga. Aug. 7, 2024) (citing *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996)); *see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999) (explaining that futility is another way of saying "inadequacy as a matter of law"). Taking it all together, "justice," under Rule 15(a)(2), doesn't "require" leave to amend if a proposed claim cannot withstand a motion to dismiss. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008); Fed. R. Civ. P. 15(a)(2).

In a motion to dismiss, a defendant may "test the facial sufficiency" of a complaint. *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2

(11th Cir. June 5, 2023) (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997)). Such a "motion is an 'assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint still fails as a matter of law to state a claim upon which relief may be granted.'" *Barreth v. Reyes 1, Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). However, a complaint will survive a Rule 12(b)(6)-based motion if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

Whether a complaint states a claim for relief is measured by reference to the pleading standard of Federal Rule of Civil Procedure 8—a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Barreth*, 2020 WL 4370137, at *2 (citation omitted). Rule 8 doesn't require detailed factual allegations, but it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough*, 907 F.3d at 1333 (citation omitted) (alterations adopted). Its sole purpose is to provide a defendant "with 'fair notice' of the claims and the 'grounds' for entitlement to relief." *Barreth*, 2020 WL 4370137, at *2 (citation omitted); *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 555–56 (2007). When ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), it is a cardinal rule that district courts must accept the factual allegations set forth in a complaint as true. *Twombly*, 550 U.S. at 572. In accepting the factual allegations as true, courts are to construe the

reasonable inferences from them in the light most favorable to a plaintiff. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

Therefore, to decide whether a complaint survives a motion to dismiss, courts use a two-step framework. *McCullough*, 907 F.3d at 1333 (citation omitted). The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.*

Finally, the issue to be decided when considering a motion to dismiss "is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The issue is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Id.* The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[ ] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555. A complaint that tenders "'naked assertions' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (cleaned up). To survive, a complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

4

B.    **Background**[1]

Let's start from the beginning. Bobby Farmer and Judy Farmer had four children:

James Farmer (Defendant James), Christie Mitchell, Jeremy Farmer, and Plaintiff. *Farmer*

*v. Mitchell*, 921 S.E.2d 482, 486 (Ga. Ct. App. 2025). Bobby passed away in April of 2020,

leaving Judy as his sole beneficiary. *Id.* Judy executed a trust and named Christie as the

trustee. *Id.* Judy had specific instructions for how Christie was to distribute her property

upon her death. *Id.* Under those instructions, Plaintiff and Jeremy were to get six acres

of land. *Id.* Plaintiff, Defendant James, and Jeremy were supposed to get firearms,

knives, tractors, and Bobby's construction equipment "as possessed by Judy at the time

of her death." *Id.* Judy passed away three months after executing the trust. *Id.* As a

result, both Bobby and Judy's estates were in the Probate Court of Oconee County

simultaneously under Probate Judge Defendant Hunsinger. *Estate of Bobby James Farmer*,

Estate No. F-183 (Prob. Ct. Oconee Cnty. Ga., April 14, 2020); *Estate of Judy Lenora*

*Farmer*, Estate No. F-189 (Prob. Ct. Oconee Cnty. Ga., Aug. 9, 2021).

The issue in this case arose from Bobby's construction equipment. Plaintiff uses

Bobby's equipment in his steel building business and has done so since before Bobby

---

[1] The full context of this case is important and not contained in Plaintiff's proposed complaint attached to his motion to amend. So, the Court draws much of its factual background from the probate court records—including those orders and filings from the Superior Court of Oconee County and the Georgia Court of Appeals that are on the probate court's docket. The Court notes that it may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. *McCone v. Thorpe*, 828 F. App'x 697, 698 (11th Cir. 2020); Fed. R. Evid. 201(b). So, the Court takes judicial notice of the Probate Court of Oconee County's docket for Estate Nos. 183 and 189.

passed. *Protective Order – Construction Equipment*, Estate No. F-183, p. 3 (Prob. Ct. Oconee Cnty. Ga., July 12, 2023). He would pay Bobby $5,000 for each successful job he completed in exchange for using the equipment. *Id.* When Bobby passed, Plaintiff agreed to continue paying Judy for the equipment. *Id.* Plaintiff continued to use the equipment, but, inconsistent with his past practice and habit, he did not immediately pay Judy (or her estate after she passed) for completed jobs. *Id.* Additionally, Plaintiff took equipment from Judy and Bobby's property that Defendant James argued was trust property. *Farmer*, 921 S.E.2d at 486.

Christie refused to pursue recovery of the equipment. *Id.* Defendant James filed a motion in the Probate Court to compel surrender of the equipment Plaintiff took, arguing the equipment was property of Bobby's estate. *Id.* at p. 487 n.4. The Probate Court found Christie unfit to serve as the personal representative of Judy's estate and removed her. *Id.* The Probate Court then appointed Defendant Mills—the county administrator who was already serving as the representative of Bobby's estate—to serve as the personal representative of Judy's estate. *Id.* at n.2.

After back and forth, the parties agreed to and jointly submitted a proposed consent protective order concerning Plaintiff's use of the disputed equipment as well as

6

the payment for that use.[2] *Protective Order – Construction Equipment*, Estate No. F-183, p. 1 (Prob. Ct. Oconee Cnty. Ga., July 12, 2023). At the hearing on the proposed order, Plaintiff's then-attorney indisputably approved the terms of the order. *Id.* Relying on that agreement, the Probate Court issued the consent protective order. *Id.*

After the hearing, Plaintiff hired new counsel. *Id.* at n.1; *see also Entry of Appearance*, Estate No. F-183 (Prob. Ct. Oconee Cnty. Ga., July 7, 2023). His new counsel attempted to argue that Plaintiff's former attorney did not have the authority to agree to the terms of the order. *Protective Order – Construction Equipment*, Estate No. F-183, p. 1 (Prob. Ct. Oconee Cnty. Ga., July 12, 2023). In response, the Probate Court held a status conference and found that attorneys in Georgia have apparent authority to enter agreements on behalf of clients. *Id.* (citing O.C.G.A. § 15-19-5).

The protective order allowed the estate representative to "take possession and safeguard" the equipment "for the benefit of the Estate until the ownership issue is resolved." *Id.* at pp. 2–3. The order permitted Plaintiff to continue to use the equipment for his business, but required him to, among other things, continue paying rent to the estate representative in the amount of $5,000 per job, with a monthly minimum of $2,500. *Id.* at pp. 3–4. He also had to make a monthly report about the location of the

---

[2] This was not the first time the parties agreed to a consent protective order related to disputed property of the Farmer estates. The probate court previously issued a consent protective order for silver, collector coins, and a vehicle in Christie's possession. *Consent Protective Order*, Estate No. F-183 (Prob. Ct. Oconee Cnty. Ga., May 23, 2023). Notably, Plaintiff apparently did not then and does not now contend that the same Oconee County Probate Court *substantively* decided title to those items of personal property. The Court notes his significant inconsistency.

equipment and allow inspection of the equipment. *Id.* Put simply, the protective order memorialized the arrangement that Plaintiff and Judy made regarding Plaintiff's use of Bobby's equipment and the payment to Judy's estate for its use. Critically, Plaintiff, through his lawyer, agreed to it. *Transcript of Proceedings heard before the Honorable Mike Hunsinger – June 14, 2023*, Estate No. F-183, pp. 22–23 (Prob. Ct. Oconee Cnty. Ga., June 14, 2023).

Apparently still unhappy with the deal he had made, Plaintiff swapped attorneys again, hiring his current counsel. *Order Permitting Withdrawal of Counsel*, Estate No. F-183 (Prob. Ct. Oconee Cnty. Ga., Sept. 22, 2023); *Entry of Appearance*, Estate Nos. F-183, F-189 (Prob. Ct. Oconee Cnty. Ga., Jan. 16, 2024). Months had passed since the protective order and Plaintiff had not complied with its terms, so Defendant Mills attempted to enforce it by securing the equipment's transfer. *Petition For Citation of Contempt and Other Relief*, Estate Nos. F-183, 189, pp. 48–59 (Prob. Ct. Oconee Cnty. Ga., Dec. 13, 2023) (containing email exchanges between Defendant Mills and Plaintiff's counsel regarding transfer of the equipment and insurance). After five months of effort to enforce the order, Defendant Mills filed a petition for citation of contempt. *Id.* at p. 1. Plaintiff's new counsel filed his entry of appearance, and then Plaintiff immediately responded to the petition by arguing that the Probate Court did not have jurisdiction to

issue the protective order.[3] *See Response to Petition for Citation of Contempt*, Estate Nos. F-183, 189, pp. 3–5 (Prob. Ct. Oconee Cnty. Ga., Jan. 16, 2024) (containing a section titled "The Court had no jurisdiction to enter the protective order"); *Order for Hearing*, Estate Nos. F-183, 189, p. 1 (Prob. Ct. Oconee Cnty. Ga., Jan. 26, 2024) (detailing motion for contempt); *Entry of Appearance*, Estate Nos. F-183, 189 (Prob. Ct. Oconee Cnty. Ga., Jan. 16, 2024).

The day before the scheduled hearing on the contempt motion, Plaintiff, once again, tried to argue lack of jurisdiction to issue the protective order because, according to Plaintiff, the Probate Court cannot decide issues of ownership, hear or decide the issue of contempt based on the allegedly void protective order, or "issue any orders of any kind in connection with the petition for contempt." *Objection to Hearing and Notice of Intention to Specially Appear to Contest Subject-Matter Jurisdiction*, Estate Nos. F-183, 189,

---

[3] Although Plaintiff's argument changes slightly over the course of the Probate Court proceedings, the basic premise remains the same. Plaintiff asserts that the Probate Court lacked jurisdiction to issue the protective order because it cannot decide title to the equipment and lacked the ability to give possession of the equipment. *See Response to Petition for Citation of Contempt,* Estate Nos. F-183, 189, pp. 3–5 (Prob. Ct. Oconee Cnty. Ga., Jan. 16, 2024). The Court will address Plaintiff's title argument later. For possession, the personal representative of an estate is "entitled to possess and administer the entire estate." O.C.G.A. § 53-7-2. Plaintiff does not directly address this statute, but he does argue about what happens when ownership is disputed. *Response to Petition for Citation of Contempt*, Estate Nos. F-183, 189, p. 2 (Prob. Ct. Oconee Cnty. Ga., Jan. 16, 2024). His argument seems to rest on *In re Est. of Adamson*, 451 S.E.2d 501, 502 (1994). But, the portion of *Adamson* that Plaintiff relies upon interprets the pre-1998 Georgia Probate Code. 451 S.E.2d at 502. More importantly, the Georgia Supreme Court approved of a probate court finding attorneys in contempt when they refused to return attorney's fees they had received prior to the probate court formally awarding them. *See Gnann v. Woodall*, 511 S.E.2d 188, 189 (Ga. 1999) (probate court had authority to require attorneys to return attorney's fees they unilaterally decided were proper before the court's decision and hold attorneys in contempt for failure to do so). *Gnann* demonstrates that a probate court can determine and allow a personal representative of the estate to possess disputed estate property while a court of competent jurisdiction determines legal title.

pp. 2–5 (Prob. Ct. Oconee Cnty. Ga., Jan. 23, 2024). The Probate Court continued the hearing upon unrelated good cause from Plaintiff. *Order of Continuance*, Estate Nos. F-183, 189 (Prob. Ct. Oconee Cnty. Ga., Jan. 23, 2024). The other parties filed an amended motion for contempt, so Plaintiff responded—once again the day before the hearing—by arguing, unsurprisingly, a lack of subject matter jurisdiction to issue the protective order because it allegedly decided ownership of the property. *Response to Petition for Citation of Contempt*, Estate Nos. F-183, 189 (Prob. Ct. Oconee Cnty. Ga., Mar. 5, 2024).

The Probate Court finally held the hearing on March 6, 2024. *Order Denying Jason Farmer's Special Appearance to Contest Jurisdiction and Quash Subpoenas*, Estate Nos. F-183, 189, p. 1 (Prob. Ct. Oconee Cnty. Ga., Sept. 3, 2024). During the hearing, both Plaintiff and his attorney admitted that he was in contempt of the protective order. *Interim Order Finding Jason Farmer in Contempt of Court*, Estate Nos. F-183, 189, pp. 1–2 (Prob. Ct. Oconee Cnty. Ga., Sept. 3, 2024) ("the hearing . . . began on March 6, 2024, wherein counsel for Jason Farmer, John Baker, admitted that his client was in contempt of this Court's July 14, 2023 order . . . during the testimony of Jason Farmer he admitted that he

was in willful non-compliance . . . .").[4] The court then took a recess for Plaintiff's health and ultimately continued the rest of the hearing.[5] *Id.*

Literally four minutes before the rescheduled hearing, Plaintiff's attorney filed another special appearance to contest jurisdiction and quash subpoenas, arguing—you guessed it—a lack of subject matter jurisdiction for the July 14, 2023, protective order. *Special Appearance to Contest Jurisdiction and Quash Subpoenas*, Estate Nos. F-183, 189 (Prob. Ct. Oconee Cnty. Ga., Aug. 7, 2024). The Probate Court once again denied the last-second motion and held the hearing. *Order Denying Jason Farmer's Special Appearance to Contest Jurisdiction and Quash Subpoenas*, Estate Nos. F-183, 189, p. 2 (Prob. Ct. Oconee Cnty. Ga., Sept. 3, 2024). Although Plaintiff's counsel had time to file the Hail Mary motion to contest jurisdiction, he failed to show up for the hearing, despite clearly having notice. After the hearing, the Probate Court issued an order finding Plaintiff in contempt, hardly a surprise since Plaintiff and his lawyer had already admitted to being in contempt. *Interim Order Finding Jason Farmer In Contempt of Court*, Estate Nos. F-183, 189, p. 2 (Prob. Ct. Oconee Cnty. Ga., Sept. 3, 2024). It told Plaintiff he could purge the

---

[4] *See also Transcript of Pretrial Proceedings – March 6, 2024*, Estate Nos. F-183, 189, p. 27 (Prob. Ct. Oconee Cnty., Ga. Mar. 6, 2024) (". . . whether my client disobeyed what the order - - I have already said that he did . . . .").

[5] In 2023, Plaintiff suffered an aortic dissection with hyperfusion of the left kidney and right leg. *Motion for Stay of Action*, Estate No. F-189, p. 1 (Prob. Ct. Oconee Cnty. Ga., Aug. 22, 2023). At that time, Plaintiff's doctor advised that "stress-induced hypertension could have acute adverse consequences." *Id.* at p. 3. During the March 6, 2024, hearing, the Probate Court "took a recess in accommodation of a request by [Plaintiff] to get some water." *Interim Order Finding Jason Farmer in Contempt of Court*, Estate Nos. F-183, 189, p. 2 (Prob. Ct. Oconee Cnty., Ga., Sept. 3, 2024).

contempt by providing the location of the equipment, allowing inspection of the equipment, paying $30,000 to the estate of Judy Farmer, and producing an accounting of his use of the equipment. *Id.* at pp. 2–3. Basically, the Oconee County Probate Court told Plaintiff to comply with the very order to which he had initially agreed. It also warned Plaintiff that if he did not purge the contempt, he "shall" be arrested. *Id.* at p. 3.

Plaintiff appealed the order finding him in contempt, the consent protective order regarding the construction equipment and another order to the Georgia Court of Appeals two days later. *Notice of Appeal*, Estate Nos. F-183, 189 (Prob. Ct. Oconee Cnty. Ga., Sept. 5, 2024). On appeal, he again raised the question of jurisdiction. *Id.* at p. 2 ("it concerns questions of law regarding the Probate Court's jurisdiction and a final judgment of contempt in a civil proceeding."). He also appealed the Probate Court's order denying his motion to quash subpoenas. *See In Re Estate of Bobby James Farmer, Deceased et al.*, Case Nos. A25A0690, A25A0691 (Ga. Ct. App., Nov. 26, 2024). Plaintiff also filed an application to challenge the Probate Court's jurisdiction and for discretionary review of the Probate Court order denying his motion to quash the subpoenas. *See id.* at p. 1 n.1. The Georgia Court of Appeals dismissed all of Plaintiff's appeals for lack of jurisdiction. *See id.* at p. 3; *Farmer v. Farmer*, Case No. A25D0084, p. 1 (Ga. Ct. App. Oct. 28, 2024). But Plaintiff wasn't nearly done.

Simultaneous with his filing of appeals in the Georgia Court of Appeals, Plaintiff filed a petition for review in the Oconee County Superior Court. *Notice to Probate Court*

12

*of Petition for Review to Superior Court*, Estate Nos. F-183, 189 (Prob. Ct. Oconee Cnty. Ga., Sept. 6, 2024). Almost one year later, prompted by motions, the Superior Court dismissed the appeal and remanded the case back to the Probate Court. *Farmer v. Farmer*, No. SUCV2024000326 (Super. Ct. Oconee Cnty. Ga., Aug. 1, 2025).

Four days after the Superior Court's order remanding the case back to the Probate Court—after all of his appeals had been dismissed—the Probate Court issued a rule nisi ordering Plaintiff to appear three days later for a hearing on the interim order finding Plaintiff in contempt. *Rule Nisi*, Estate Nos. F-183, 189 (Prob. Ct. Oconee Cnty. Ga., Aug. 5, 2025). Defendant Mills filed a notice of non-compliance stating that Plaintiff had not followed the interim order to purge himself of contempt in the year since it had been filed. *Notice of Non-Compliance*, Estate Nos. F-183, 189 (Prob. Ct. Oconee Cnty. Ga., Aug. 7, 2025). In response, the Probate Court followed through on its earlier warning to Plaintiff and issued a bench warrant and arrest order for Plaintiff's arrest "until further order of this Court." *Bench Warrant and Arrest Order*, Estate Nos. F-183, 189, p. 2 (Prob. Ct. Oconee Cnty. Ga., Aug. 7, 2025). Plaintiff was arrested the next day—the same day the hearing was scheduled—and incarcerated in the Oconee County jail. [Doc. 37-1, ¶ 3]; [Doc. 1, ¶¶ 68–71].

The Probate Court continued the hearing due to scheduling conflicts. *Order for Continuance*, Estate Nos. F-183, 189 (Prob. Ct. Oconee Cnty. Ga., Aug. 7, 2025). On August 11, 2025, Plaintiff filed a Rule 40 emergency motion for supersedeas bond or

mandamus order in both the Superior Court of Oconee County, Georgia, and in the Georgia Court of Appeals. *Farmer v. Probate Court of Oconee County* (Super. Ct. Oconee Cnty. Ga., Aug. 11, 2025). That same day, Defendant Hunsinger imposed a $500,000 supersedeas bond. *Order for Supersedeas Bond*, Estate Nos. F-183, 189 (Prob. Ct. Oconee Cnty. Ga., Aug. 11, 2025). The Georgia Court of Appeals ordered Plaintiff's release. *Farmer v. Hunsinger*, No. A26E0016 (Ga. Ct. App. Aug. 12, 2025). He was released on August 12, 2025, after four days of incarceration. [Doc. 37-1, ¶ 72(e)]; [Doc. 1, ¶ 86].

On August 28, 2025, Plaintiff filed an appeal in the Georgia Court of Appeals making many of the same arguments he makes here. [Doc. 46-1, p. 2]. Notwithstanding his numerous filings and appeals in various Georgia courts, Plaintiff expanded his attacks on the Probate Court's order finding him in contempt to the federal courts when he filed his Complaint in this Court on October 1, 2025. [Doc. 1, ¶¶ 1–2]. He sued Defendants Mills, Epps, Hunsinger, and James in their individual capacities seeking damages for his incarceration when he failed to comply with the protective order to which he had agreed. [*Id.* at p. 1]. Defendants filed motions to dismiss Plaintiff's complaint, arguing judicial immunity and *Younger* abstention, among other arguments. [Doc. 4]; [Doc. 10]; [Doc. 11]; [Doc. 23]. The Court scheduled a hearing for February 11, 2026, on the motions to dismiss.

Consistent with his practice in state courts, Plaintiff filed an emergency motion to continue two days before the hearing. [Doc. 25]. The Court denied that motion, so

Plaintiff filed his first amended complaint the day before the hearing. [Doc. 28].

Defendant Hunsinger immediately responded with a motion to strike that first

amended complaint, arguing that it was untimely. [Doc. 31]. Plaintiff then attempted to

refile the exact same complaint, which the Court will title his second amended

complaint here. [Doc. 32]. The clerk's office noticed Plaintiff of the second amended

complaint's deficiency—namely, that he could only file an amended complaint once as

a matter of right, and subsequent amendments required leave of Court. [*Id.*]. So,

Plaintiff filed a motion for leave to file his third[6] amended complaint. [Doc. 33].

The Court held the February 11, 2026, hearing. [Doc. 36]. After hearing from the

parties, the Court ruled that Plaintiff's first amended complaint as a matter of right was

untimely as it wasn't filed within 21 days of the *first* answer or motion to dismiss as

opposed to the last one.[7] [Doc. 38, p. 7:1–9]. The Court then informed Plaintiff that it

found his third amended complaint to be a shotgun pleading and denied that motion to

amend on those grounds. [*Id.* at p. 41:14–17]; [Doc. 33]. But, it gave Plaintiff one final

opportunity to correct his deficiencies and file a proposed fourth amended complaint.

[Doc. 37, p. 41:16–22]. The Court then heard arguments on judicial immunity and told

---

[6] Plaintiff's motion says "Second" amended complaint, but for purposes of clarity, the Court is labeling each filing—even if two are substantively identical—as a new amended complaint. Therefore, for purposes of this Order, Doc. 28 is Plaintiff's first amended complaint. [Doc. 28]. Doc. 32 is his second amended complaint. [Doc. 32]. Doc. 33 is his third amended complaint. [Doc. 33-1]. Doc. 37 is his fourth amended complaint. [Doc. 37-1].

[7] The same reasoning applies to Plaintiff's second amended complaint, which was filed the same day as the first amended complaint. [Doc. 32]. The second amended complaint was also untimely.

all the parties to brief that issue in response to Plaintiff's upcoming motion for leave to amend. [*Id.* at p. 42:1–18]. The parties followed suit. [Doc. 37]; [Doc. 44]; [Doc. 45]; [Doc. 46].

Defendant James did not just argue judicial immunity; he also argued the *Rooker-Feldman* doctrine. [Doc. 46, p. 2]. In his view, when Plaintiff withdrew his appeal from the Georgia Court of Appeals in response to the Defendants' *Younger* abstention[8] arguments, that withdrawal implicated the *Rooker-Feldman* doctrine. [*Id.*]. So, the Court

---

[8] In *Younger v. Harris*, the Supreme Court held that federal courts should abstain from suits aimed at restraining pending state criminal prosecutions. 401 U.S. at 41. The Court expanded the doctrine to include "civil proceedings which implicate state courts' 'important interests in administering certain aspects of their judicial systems,'" including the state contempt process. *Green v. Jefferson Cnty. Comm'n*, 563 F.3d 1243, 1251 (11th Cir. 2009) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)); *Juidice v. Vail*, 430 U.S. 327, 334 (1977). The Court must consider "the likelihood" that this case will "seriously disrupt[] the legitimate functioning of the judicial system of the state." *Wells v. Mulholland*, No. 24-12535, 2025 WL 1860248, at *1 (11th Cir. July 7, 2025). Here, Plaintiff did have a pending appeal in the Georgia Court of Appeals over largely the same issues in this case. [Doc. 46-1, p. 2]. Plaintiff has since withdrawn that appeal. [Doc. 46-2]. Furthermore, none of the *Younger* exceptions are applicable to Plaintiff's case. *See Wells*, 2025 WL 1860248, at *2 (listing exceptions) (quoting *Johnson v. Florida*, 32 F.4th 1092, 1099 (11th Cir. 2022)). Plaintiff has exercised an alternative adequate forum to raise his constitutional issues: the Georgia Court of Appeals. Having exercised his right to appeal, this Court cannot conclude that irreparable injury would occur if it addresses Plaintiff's case. There is also no evidence of bad faith in Plaintiff's appeal. Therefore, the Court's *Younger* concerns are mitigated. *See Canty v. State*, No. A25A2115, 2026 WL 656341, at *2 (Ga. Ct. App. Mar. 9, 2026) (stating that litigants only are entitled to one appeal).

16

instructed the parties to file supplemental briefs on the applicability of *Rooker-Feldman*.[9] The parties once again followed suit. [Doc. 48]; [Doc. 49]; [Doc. 50]; [Doc. 51]; [Doc. 52].

Amid the multiple cases in multiple courts, and the complicated procedural posture of this case, the central issues remain the same: did the Probate Court have jurisdiction to enter the protective order and the contempt order? If it did, then Judge Hunsinger enjoys absolute immunity and is due to be dismissed from the suit. Moreover, a finding of judicial immunity likely shields the non-state actors from liability as well. The Court starts with Judge Hunsinger's claim of judicial immunity.

### C.    Judicial Immunity

To be clear about what the Court is doing, a decision on Plaintiff's renewed motion for leave to file an amended complaint determines the operative pleading in this case. If the Court grants Plaintiff's motion, then the attached complaint—Plaintiff's fourth amended complaint—becomes operative. [Doc. 37-1]. Should the Court deny

---

[9] Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction to review the final judgment of a state court." *Springer v. Wells Fargo Bank, N.A.*, 784 F. App'x 721, 725 (11th Cir. 2019). The doctrine is "confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* (quoting *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1072 (11th Cir. 2013)). The doctrine does not apply to cases where "a plaintiff [seeks] damages for a procedural-due-process violation arising from state-court proceedings." *Carter v. City of Montgomery*, 108 F.4th 1334, 1342 n.3 (11th Cir. 2024). Here, Plaintiff seeks damages for a due process violation arising from state court proceedings. [Doc. 37-1, pp. 13, 22–23]; [Doc. 1, pp. 15, 19]. Furthermore, the state court proceedings did not end before Plaintiff commenced this federal action. *Springer*, 784 F. App'x at 725; *Doll v. Sec'y, Fla. Dep't of Corr.*, 715 F. App'x 887, 891 (11th Cir. 2017) ("For *Rooker-Feldman* to apply, the state-court proceedings must have ended before the federal action was commenced."); *Nicholson v. Shafe*, 558 F.3d 1266, 1278 (11th Cir. 2009) (holding that filing a federal action while the state court action continued through appeals meant the state court proceedings had not ended). Accordingly, *Rooker-Feldman* does not apply.

Plaintiff's motion, then Plaintiff's original complaint becomes the operative pleading, along with Defendants' respective motions to dismiss.[10] [Doc. 1]; [Doc. 4]; [Doc. 10]; [Doc. 11]; [Doc. 23]. As explained below, the Court **DENIES** Plaintiff's motion to file his fourth amended complaint.

With that roadmap in mind, the linchpin of this case, both substantively and procedurally, remains judicial immunity. The cornerstone of Plaintiff's argument against judicial immunity is, unsurprisingly, that Defendant Hunsinger acted in the *complete absence* of all jurisdiction by issuing an order that *substantively* decided

---

[10] Why does Plaintiff's original complaint become the operative pleading? At the February 11, 2026, hearing, the Court denied Plaintiff's motion for leave to file a third amended complaint because it was a prohibited shotgun pleading. [Doc. 33]. It also told Plaintiff that his first amended complaint and its accompanying motion to strike were moot because of the motion to amend. [Doc. 38, p. 41:7–13]]; [Doc. 28]; [Doc. 29]. Substantively, the Court also explained to Plaintiff that it found his first amended complaint untimely. [Doc. 38, p. 7:6–9]; [Doc. 28]. Plaintiff's second amended complaint, filed on the same day as his first, was also untimely. [Doc. 32]. That eliminates Plaintiff's first, second, and third amended complaints, meaning the only valid operative pleading left to revert to is Plaintiff's original complaint. [Doc. 1].

18

property ownership and by imposing criminal contempt.[11] [Doc. 37, pp. 5–9]. Plaintiff is wrong on both counts.

First, the protective order did not decide property ownership, regardless of how Plaintiff tries to spin it. Starting with his pleading, Plaintiff's proposed fourth amended complaint does not contain *any* non-conclusory allegations about the protective order. Instead, it contains a myriad of legal conclusions like "[the protective order] adjudicate[ed] disputed property ownership." [Doc. 37-1, ¶ 14]. Or, the protective order was "a void order entered without subject matter jurisdiction over the property dispute it purported to adjudicate." [*Id.* at ¶ 15]. Plaintiff has not alleged a single fact to show *how* the protective order adjudicated disputed property ownership. Instead, the only part of the protective order Plaintiff provides to support this argument clearly shows

---

[11] Plaintiff also argues that Defendant Hunsinger acted in the clear absence of all jurisdiction because he imposed sanctions "without any of the procedural protections the Constitution requires for criminal proceedings." [Doc. 37, p. 9]. However, not making a legally or procedurally correct decision doesn't mean a judge acts without *all* jurisdiction in making that decision. It just means that he or she didn't get it right on that occasion – and that is exactly why judges get appealed, not sued.

Specifically, Plaintiff alleges there was "no proof beyond a reasonable doubt, no jury trial, no right against self-incrimination, no appointed counsel, and no rule nisi or written notice of specific charges." [*Id.*]. But, the protections required for sanctions do not include the things Plaintiff alleges were missing. *See Inquiry Concerning Peterson*, 903 S.E.2d 645, 656 (Ga. 2024) (quoting *Ramirez v. State*, 608 S.E.2d 645, 646–47 (2005)); *see also Carlson v. Carlson*, 748 S.E.2d 304, 308 (Ga. Ct. App. 2013) (no right to jury trial and even if there had been, the defendant did not raise it in response to contempt motion). Defendant Hunsinger held two hearings on Plaintiff's contempt—during one of which Plaintiff admitted he was in contempt—gave Plaintiff conditions to purge the contempt and issued a rule nisi. [Doc. 37-1, ¶¶ 35, 42]; *Order Denying Jason Farmer's Special Appearance to Contest Jurisdiction and Quash Subpoenas*, Estate Nos. F-183, 189 (Prob. Ct. Oconee Cnty. Ga., Sept. 3, 2024); *Interim Order Finding Jason Farmer in Contempt of Court*, Estate Nos. F-183, 189 (Prob. Ct. Oconee Cnty. Ga., Sept. 3, 2024); *Rule Nisi*, Estate Nos. F-183, 189 (Prob. Ct. Oconee Cnty. Ga., Aug. 5, 2025); *Protective Order – Construction Equipment*, Estate No. F-183 (Prob. Ct. Oconee Cnty. Ga., July 12, 2023). These are adequate protections.

19

the opposite: "[t]he issue concerning ownership of the Subject Equipment shall be decided by the Superior Court of Oconee County as the Probate Court lacks jurisdiction to decide the same." [*Id.* at ¶ 14]. Without any other non-conclusory factual allegations, Plaintiff has not adequately pled that the protective order decided ownership in his fourth amended complaint.

Looking at the fourth amended complaint alone does not fully address Plaintiff's argument on the substance of the protective order. The Court turns to the consent protective order itself. On its face, the protective order repeatedly declares that the issue of ownership will be decided in another court, clearly showing the Probate Court's acknowledgement that it lacked the jurisdiction to decide legal ownership of the disputed property and that it was not deciding ownership. *See Protective Order – Construction Equipment*, Estate No. F-183, p. 3 (Prob. Ct. Oconee Cnty. Ga., July 12, 2023). Plaintiff attempts to work his way around the protective order's explicit language by arguing that "the order adjudicated ownership *in substance*: stripping every incident of ownership from the record titleholder[12] – possession, use, income, management,

---

[12] Plaintiff's Complaint offers no facts to show why he labeled himself the "record titleholder" of the disputed equipment. It doesn't describe any deed, bill of sale, completed contract or any of the sort. It just says he is the "record titleholder." Aside from the first motion filed under his current attorney in the Probate Court, Plaintiff hasn't mentioned holding actual title to the property again. *Compare Response to Petition for Citation of Contempt*, Estate Nos. F-183, 189 (Prob. Ct. Oconee Cnty. Ga., Jan. 16, 2024), *with Response to Petition for Citation of Contempt*, Estate Nos. F-183, 189 (Prob. Ct. Oconee. Cnty. Ga., Mar. 5, 2024), *and Special Appearance to Contest Jurisdiction and Quash Subpoenas*, Estate Nos. F-183, 189 (Prob. Ct. Oconee Cnty. Ga., Aug. 7, 2024). However, even if he claims to hold title to the property, his defendant brother can still contest that title in the Superior Court, exactly as the Probate Court acknowledged in his order. And, the Probate Court can decide who possesses that disputed property until the Superior Court resolved the legal issues surrounding the title.

exclusion - is an ownership adjudication regardless of intentional mislabeling." [Doc. 53, p. 5]. Plaintiff's argument simply fails.

Substantively, the protective order allowed the estate representative to possess the equipment "until the issuance of an order entered by the Oconee County Superior Court declaring the proper owner." *Id.* at p. 2. Allowing someone to possess property—especially with temporal restrictions—is not the same as passing title to the property under Georgia law. *See, e.g.*, *Woods v. State*, 495 S.E.2d 282, 285 (Ga. 1998) (drawing a distinction between legal possession, constructive possession, and title). Even if possession was the same as ownership, the protective order did not strip Plaintiff of "possession, use, income, management, [and] exclusion" as Plaintiff alleges. [Doc. 53, p. 4]. The protective order clearly allowed Plaintiff the right to continue to use and possess the equipment—to make money in the course of his business—subject to rent, inspection, insurance, and communication requirements. *Id.* at p. 3. The Probate Court noted that should the Superior Court decide Plaintiff legally owned the equipment, he would get the rent proceeds back. *Id.* at p. 5.

In other words, the protective order did not substantively determine ownership, rather, it merely preserved the status quo—Plaintiff paying his parents for the use of the equipment—with additional safeguards to protect the equipment until the appropriate court could decide who was the legal owner. Preserving assets by preserving the status quo is within the Probate Court's subject matter jurisdiction. *See* O.C.G.A. § 15-9-30

(giving probate courts jurisdiction over many matters, including "[a]ll other matters and things as appertain or relate to estates of deceased persons . . . ."); *Gnann*, 511 S.E.2d at 189 (affirming the probate court's order to return attorney's fees to the registry of the court until ownership could be determined and ability to hold the attorneys in contempt for refusal to do so); *Ray v. Nat'l Health Inv., Inc.*, 633 S.E.2d 388, 391 (Ga. Ct. App. 2006) (affirming a probate court's order to return sales proceeds to the estate because of an ownership dispute). And, preserving assets falls well within the duties of Defendant Mills as the personal representative of both estates. O.C.G.A. § 53-7-2 (personal representative may "possess and administer the entire estate"); *Dismuke v. Abbott*, 505 S.E.2d 58, 61 (Ga. Ct. App. 1998) ("a personal representative has a general duty to preserve and protect the value of an estate"). In fact, one of the primary duties of any personal representative is to preserve the estate for the benefit of the heirs or beneficiaries. It is what they do.

Bottom line, just because ownership of certain property is in dispute does not mean that the property is unprotectable or unable to be possessed by anyone, subject to the whims of the claiming party. Under Georgia law, a Probate Court clearly has the authority and duty to protect estate property. It identified the construction equipment as disputed estate property subject to the actual determination of ownership by another court and ordered the protection of the equipment through the protective order—to

which Plaintiff consented.[13] *See Transcript of Proceedings heard before the Honorable Mike Hunsinger*, Estate No. F-183, p. 23 (Prob. Ct. Oconee Cnty. Ga., June 14, 2023). The Probate Court had subject matter jurisdiction to enter the consent protective order protecting and preserving the disputed estate property until a court of competent jurisdiction could definitively decide who legally owned the property. The consent protective order did not substantively decide ownership. Plaintiff's repeated attempts to argue otherwise are meritless and unpersuasive.

Plaintiff's next argument is dispensed with just as easily.

Clearly, the Probate Court had subject matter jurisdiction to find Plaintiff in contempt. "*Every court* has power to compel obedience to its judgments, orders, and processes." *Jacob v. Koslow*, 644 S.E.2d 857, 858 (Ga. 2007) (quoting *Goodrum v. Goodrum*, 42 S.E.2d 450, 451 (Ga. 1947)). "Every court" means every court. And "every court" undoubtedly includes probate courts.[14] O.C.G.A. § 15-9-34(a); *Gnann v. Woodall*, 511 S.E.2d 188, 189 (Ga. 1999) ("We conclude that the probate court's jurisdiction [over the merits] confers upon that court the authority . . . to hold them in contempt . . . .").

---

[13] If Plaintiff had prevailed in his arguments to the Probate Court, then apparently, he would have had the right to "possession, use, income, management, exclusion" of the construction equipment, all of which he describes as the indices and markers of ownership. *See* [Doc. 53, p. 5]. However, Plaintiff makes no attempt to explain exactly how the Oconee County Probate Court would not have *substantively* decided that he owned the property in that case. The only apparent difference is that in that scenario, he would have agreed with the decision.

[14] To argue that a probate court lacks jurisdiction to hold one in contempt for violating its orders lacks seriousness and may certainly be considered frivolous. However, that question remains for another day. *See* 42 U.S.C. § 1988.

Furthermore, the distinction between civil and criminal contempt is irrelevant here, as probate courts in Georgia routinely issue both kinds of contempt orders without jurisdictional challenge. *See Matter of Davis*, 885 S.E.2d 771, 773 (Ga. 2023) (where the probate court entered a criminal contempt order); *In re Est. of Banks*, 793 S.E.2d 451, 452 (Ga. Ct. App. 2016) (where the probate court held Banks in contempt and incarcerated him); *Gnann*, 511 S.E.2d at 189.

Because the Probate Court had jurisdiction to enter contempt, it obviously did not and could not act in the absence of all jurisdiction. Whether Defendant Hunsinger correctly found Plaintiff in contempt, or procedurally did so correctly, is a matter for appeal, not a § 1983 lawsuit. *See Inquiry Concerning Peterson*, 903 S.E.2d 645, 657-58 (Ga. 2024) (finding that a judge engaged in judicial misconduct when she intentionally held citizen in contempt without regard to constitutional rights). Since Defendant Hunsinger did not act in the absence of all jurisdiction when he (1) issued the consent protective order, or (2) held Plaintiff in contempt of his order (especially after Plaintiff admitted to being in contempt), the Court easily concludes he is entitled to judicial immunity. That means Plaintiff's fourth amended complaint shields Defendant Hunsinger from suit and any liability for his judicial decisions. *Fitzgerald v. Child Support Receiver*, No. 5:21-cv-00071-TES, 2021 WL 5413662, at *3 (M.D. Ga. Mar. 16, 2021) ("Judicial immunity is an immunity 'from suit, [so] it shields a judicial actor from constitutional claims and state-law claims alike."). Plaintiff's proposed amendment is futile as to Defendant Hunsinger.

**D.    Conspiracy**

The only way this Court has subject matter jurisdiction over this case—being a non-diversity 42 U.S.C. § 1983 case—is if all parties were state actors. *See* 42 U.S.C. § 1983; *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). The Eleventh Circuit has defined three tests to determine whether a private party is a state actor under § 1983: "(1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test." *Jackson v. Jones*, No. 1:26-cv-782-TWT, 2026 WL 561148, at *5 (N.D. Ga. Feb. 27, 2026) (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003)). "The nexus/joint action test applies where the state has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the enterprise." *Id.* (quoting *Focus on the Family*, 344 F.3d at 1277). Courts evaluate the issue of whether there was sufficient state action from a non-state actor on a case-by-case basis. *Id.* Under this standard, a private party is a state actor if "the governmental body and private party" are "intertwined in a symbiotic relationship" that involves the specific conduct at issue. *Id.* (quoting *Focus on the Family*, 344 F.3d at 1278). Importantly, "[o]nly in rare circumstances can a private party be viewed as a state actor for section 1983 purposes." *Id.* (quoting *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001)).

Since Defendant Hunsinger has judicial immunity, that leaves Defendants Mills, James, and Epps. Plaintiff alleges that the remaining Defendants are state actors solely

25

because they allegedly conspired with Defendant Hunsinger to deprive Plaintiff of an established constitutional right. [Doc. 37, p. 12]. But, Plaintiff's fourth amended complaint does not include any real facts sufficient to establish an agreement between Defendant Hunsinger and any of the other Defendants to violate Plaintiff's constitutional rights. *See* [Doc. 37-1, ¶¶ 92–94 (summarizing the fourth amended complaint's allegations of conspiratorial actions for each Defendant)]. Absent allegations of an agreement with Defendant Hunsinger, the remaining Defendants cannot be state actors for § 1983 purposes. Therefore, Plaintiff's conspiracy allegations fail.[15] Without the state-actor requirement, all of Plaintiff's § 1983 claims against Defendants Mills, James, and Epps fail, too. With no remaining claims or Defendants, Plaintiff's proposed amendment is futile, so the Court **DENIES** Plaintiff's motion to file a fourth amended complaint. [Doc. 37].

### E.    The Motions to Dismiss

Since the Court denies Plaintiff's motion to file an amended complaint, Plaintiff's original complaint becomes the operative pleading. [Doc. 1]. So, Defendants' motions to

---

[15] Plaintiff cites *Dennis v. Sparks*, 449 U.S. 24 (1980) to show that conspiracy claims survive against co-conspirators even when a judge-conspirator has judicial immunity. [Doc. 37, p. 12]. In *Dennis*, the judge accepted bribes—something clearly illegal and beyond all jurisdiction. 449 U.S. at 28. However, even in *Dennis*, the obviously corrupt judge still received judicial immunity because he had jurisdiction to make the judgment for which he took a bribe. Here, Defendant Hunsinger acted within his jurisdiction, and Plaintiff has not pled that he did or accepted anything as patently illegal as taking a bribe. It is simply too much of a stretch to say that Defendants here should be held liable like the defendants in *Dennis* when it was Plaintiff's disobedience of a court order and failure to show up to hearings that landed him in jail. Holding Defendants liable for Plaintiff's actions is in no way equivalent to the Court in *Dennis* holding its defendants liable for their own bribery.

dismiss Plaintiff's original complaint are ripe for review. [Doc. 4]; [Doc. 10]; [Doc. 11]; [Doc. 23]. For the following reasons, the Court **GRANTS** Defendants' motions to dismiss.

Defendant Hunsinger enjoys judicial immunity under Plaintiff's original complaint. Like the proposed fourth amended complaint, Plaintiff's original complaint only makes conclusory allegations to show the consent protective order actually adjudicated property ownership. *See, e.g.*, [Doc. 1, ¶¶ 43, 97]. The original complaint does not show that the order made any ownership determination – nor could it. The closest Plaintiff comes is when he says the protective order "purported to prevent [Plaintiff] from using, moving, or transferring certain equipment and property that [Plaintiff] claimed to own . . . ." [*Id.* at ¶ 37]. But, like the Court explained above, nothing about that language adjudicates ownership. Looking beyond Plaintiff's original complaint, the Court's analysis of the protective order itself and the Probate Court's jurisdiction to enter contempt orders remains unchanged. Defendant Hunsinger is entitled to judicial immunity under the original complaint. Therefore, the Court **GRANTS** Defendant Hunsinger's motion to dismiss **with prejudice**. [Doc. 10].

For his conspiracy claim, Plaintiff's original complaint fails to make any non-conclusory allegations about communications or any agreement between Defendants Hunsinger, Mills, and James to violate Plaintiff's constitutional rights. *See* [Doc. 1, ¶ 123]. Without an agreement with Defendant Hunsinger to do so, the purely private

27

defendants cannot properly be considered state actors for purposes of § 1983. Plaintiff's original complaint does, however, allege that Defendant Epps met privately with Defendant Hunsinger. [*Id.* at ¶ 123(d)]. Allegations of one meeting without any allegations of what occurred in that meeting do not establish a conspiracy. But, accepting Plaintiff's facts as true, his conspiracy allegations in his original complaint still fail because, as has been repeatedly discussed, Plaintiff suffered no **_constitutional_** violation. *Valentine v. Robinson*, 601 F. App'x 778, 783 (11th Cir. 2015) (stating that the plaintiff's § 1983 conspiracy claim failed because there was no underlying constitutional violation).

In short, the supposed "constitutional violation" at issue is Plaintiff's arrest, which the Court has shown was within the Probate Court's subject matter jurisdiction. To go into the specifics, Plaintiff alleges two constitutional violations in his original complaint: Fourth Amendment false arrest and imprisonment, and Fourteenth Amendment procedural due process violations. [Doc. 1, pp. 14–15]. For the Fourth Amendment, Plaintiff asserts he was arrested without probable cause because it was based on a "*void ab initio*" arrest warrant "due to Defendant Hunsinger's complete lack of subject matter jurisdiction over the underlying dispute." [*Id.* at ¶ 105]. But, as shown above, the Probate Court had subject matter jurisdiction over the underlying dispute. Therefore, the warrant was not "*void ab initio*" and provided grounds to arrest Plaintiff.

28

For his Fourteenth Amendment violations, Plaintiff alleges Defendants had him arrested without "prior notice or an opportunity for a hearing regarding whether he should be arrested and detained." [*Id.* at ¶ 115]. But, as the timeline of events above shows, these allegations are not true. Plaintiff had two hearings prior to his arrest where he could have argued against a contempt finding. *Order for Hearing*, Estate Nos. F-183, 189 (Prob. Ct. Oconee Cnty. Ga., Jan. 26, 2024); *Order Denying Jason Farmer's Special Appearance to Contest Jurisdiction and Quash Subpoenas*, Estate Nos. F-183, 189, p. 2 (Prob. Ct. Oconee Cnty. Ga., Sept. 3, 2024). Instead, he admitted to being in contempt and didn't even bother to attend the final hearing. *Interim Order Finding Jason Farmer in Contempt of Court*, Estate Nos. F-183, 189, pp. 1–2 (Prob. Ct. Oconee Cnty. Ga., Sept. 3, 2024). Plaintiff can hardly complain about not receiving notice and an opportunity to be heard when he voluntarily skipped the hearing where he would have received exactly what he supposedly wanted. After the hearing, the Probate Court gave him the opportunity to purge his contempt and expressly warned him that if he did not comply with the order, he would be arrested. *Interim Order Finding Jason Farmer in Contempt of Court*, Estate Nos. F-183, 189, p. 3 (Prob. Ct. Oconee Cnty. Ga., Sept. 3, 2024). He had prior notice that he would be arrested, and opportunities to argue against contempt. Instead, he admitted to being in contempt and continued to repeatedly make the same subject matter jurisdiction arguments.

29

Additionally, in order to recover for a Fourteenth Amendment due process violation in federal court, Plaintiff must invoke all of the "available state or local remedies at its disposal." *See Philex, Inc. v. Davis*, No. 5:22-cv-00420-TES, 2025 WL 2484019, at *4 (M.D. Ga. Aug. 28, 2025). Here, Plaintiff sought review from the Georgia Court of Appeals, but did not see it all the way through. He cannot "pass up [an] opportunity for state-law relief and then expect a federal claim to save [his] case." *Id; see also Ashraf v. United States Drug Enf't Admin.*, 153 F.4th 1161, 1168 (11th Cir. 2025) (cannot claim due process violation when adequate state remedy available and didn't take advantage of it). Therefore, Plaintiff's Fourteenth Amendment arguments are unsupported and fail.

Without any underlying constitutional violation, Plaintiff's conspiracy allegations in his original complaint fail. Defendants Mills, James, and Epps cannot be state actors, so Plaintiff's § 1983 claims against them fail, too. Without any remaining federal claims, "there remains no independent original federal jurisdiction to support the Court's exercise of supplemental jurisdiction over the state claims against Defendant[s]." *Brightman v. Robins*, No. 5:13-cv-00468 (LJA), 2016 WL 5662035, at *6 (M.D. Ga. Sept. 29, 2016) (quoting *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997)). Therefore, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and **GRANTS** Defendants Mills, James, and Epps's motions to dismiss. [Doc. 4]; [Doc. 10]; [Doc. 11]; [Doc. 23].

30

F.      **Conclusion**

The United States Supreme Court summarized this case perfectly when it said:

> If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.

*Maness v. Meyers*, 419 U.S. 449, 458 (1975). Perhaps even more on point for Plaintiff's arguments, the Georgia Supreme Court has explained that "the disobedience of an unsuperseded order within the jurisdiction of a court is a contempt of court, even though the order is erroneous." *In re Brinson*, 791 S.E.2d 804, 805 (Ga. 2016) (citing *Britt v. State*, 653 S.E.2d 713 (Ga. 2007) (citations and punctuation omitted). Here, although Plaintiff tries his best to manufacture a constitutional mountain out of a state-court molehill he expressly created, the Court easily sees through his unserious allegations. Plaintiff's attorney bound him to an agreement to which he didn't like. Rather than take that up with that attorney (or his malpractice carrier), he hired new lawyers to try to get him out of it. When that didn't work, Plaintiff just decided on his own that the Court lacked jurisdiction to enter the protective order, and he decided to ignore it and take his chances. In the process, he has made the same subject matter jurisdiction argument at least seven times in three different state courts before it reached this Court. Plaintiff has chosen to literally try to make a federal case out of his unhappiness with the agreement

31

he voluntarily made through his lawyer and the Probate Court's resulting order that relied on his word.

What Plaintiff should have done is file an appeal in the state courts to have the Probate Court's consent protective order reversed and his criminal contempt conviction overturned, not sue anyone he unilaterally blamed for his decision not to abide by the order to which he had agreed. *See Inquiry Concerning Peterson*, 903 S.E.2d at 650 (appeal of contempt order). Choices have consequences – and sometimes those consequences include a stint in the county jail. But, Plaintiff brought this all on himself. He alone is to blame for his predicament.

Accordingly, the Court **DENIES** Plaintiff's renewed motion for leave to file amended complaint. [Doc. 37]. The Court then **GRANTS** Defendants' motions to dismiss. [Doc. 4]; [Doc. 10]; [Doc. 11]; [Doc. 23].

**SO ORDERED**, this 14th day of May, 2026.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

32