**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | |
|---|---|
| JASON FARMER,<br><br>      Plaintiff,<br><br>v.<br><br>MIKE HUNSINGER, in his<br>individual capacity; KEVIN EPPS,<br>individually; JON MILLS,<br>individually; and JAMES FARMER,<br>individually,<br><br>      Defendants. | CIVIL ACTION<br>**FILE NO. 3:25-cv-00154-TES** |

**PLAINTIFF'S MOTION TO RECUSE PURSUANT TO 28 U.S.C. § 455(a)**
**AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW Plaintiff Jason Farmer ("Plaintiff"), by and through undersigned counsel, and respectfully moves for the recusal of the presiding District Judge from all further proceedings in this action pursuant to 28 U.S.C. § 455(a) and Canons 2 and 3 of the Code of Conduct for United States Judges; for vacatur of the Court's May 14, 2026 Order [Doc. 54] pursuant to Federal Rule of Civil Procedure 60(b)(6) and *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988); and for reassignment of this action to a different judge. This motion is brought respectfully, in good faith, and upon documentary evidence - principally the presiding judge's own sworn Questionnaire for Judicial Nominees submitted to the United States Senate Committee on the Judiciary (the "Senate Questionnaire," excerpts attached as Exhibit A) and a December 12, 2016 Gridiron Secret Society circular letter and member distribution roster (attached as Exhibit B).

**I.**

## INTRODUCTION

Plaintiff does not contend, and need not contend, that the Court harbors actual bias against him or in favor of any Defendant. Section 455(a) is not addressed to actual bias; it is addressed to appearance. A federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The statute's command is objective and structural, and it is violated even where the judge is subjectively certain of his own impartiality. *Liljeberg*, 486 U.S. at 859–61.

Three documented facts, each drawn from the judge's own sworn Senate submission or from the Gridiron Secret Society's own correspondence, together create an appearance that requires recusal:

*First*, the presiding judge has been a continuous member of the Gridiron Secret Society - in his own sworn words, a "secret society" and "student-run fraternal organization at the University of Georgia" - since 1997. (Ex. A, Senate Questionnaire ¶ 11(a) ("Gridiron Secret Society (1997 – present)"); ¶ 11(b).) That membership was current when he was sworn as a United States District Judge and, on information and belief, continues today - a tenure of nearly three decades.

*Second*, J. Edward "Ed" Allen, Jr. - a partner, or former partner, of Defendant Kevin Epps in the firm Epps, Holloway, DeLoach & Hoipkemier, LLC - is a fellow member of the same secret society. A December 12, 2016 Gridiron circular letter from attorney David B. Bell, soliciting seconding letters for a membership nominee and directing correspondence to "gridironsecretsociety@gmail.com," was distributed to a closed roster of members that includes both "The Hon. Tilman E. Self, III" and "Mr. J. Edward Allen, Jr." (Ex. B.) The two men's names appear on the same mailing list of the same secret society.

*Third*, the relationship between the presiding judge and Mr. Allen is not incidental. When asked by the United States Senate to identify the ten most significant cases over which he presided in his entire judicial career, the presiding judge selected *Crisler v. Farr*, Civil Action No. 10-CV-17 (Ga. Super. Ct. Jan. 12, 2012) - a legal-malpractice action in which Mr. Allen, together with Jeffrey DeLoach, both partners of Defendant Epps's firm, served as counsel for the plaintiffs. (Ex. A, Senate Questionnaire ¶ 13(c), No. 5.) The judge described with evident pride the ruling he issued in that case: "In a detailed ruling, I denied the fabricating attorney's motion for summary judgment and required him to stand trial alone." (*Id.*) That ruling - featured to the United States Senate as a career highlight - was a ruling substantially in favor of clients represented by the judge's fellow Gridiron member. According to the limited docket available online in "Peachcourt" for the case in Sumter County, Judge Self – who acted as a Superior Court Judge for Bibb County at the time - was brought into the case originally assigned to Judge W. James Sizemore, Jr. According to the docket, it appears that Mr. Allen requested a ruling for his Client in connection with expert testimony by none other than attorney David B. Bell, who is the same Gridiron member who circulated the above-referenced mailing.

In the instant action, the presiding judge entered an order dismissing with prejudice all of Plaintiff's claims, including the claims against Defendant Epps - Mr. Allen's law partner - while characterizing Plaintiff's allegations as "unserious" and declaring that Plaintiff "alone is to blame for his predicament." [Doc. 54, pp. 31–32]. Plaintiff confirmed the Gridiron connection only after that Order issued. A reasonable, fully informed lay observer - the observer the Eleventh Circuit instructs must guide this analysis - would entertain significant doubt about the impartiality of

- 3 -

those proceedings. Recusal is therefore required, and under *Liljeberg*, vacatur of the May 14, 2026 Order is the appropriate remedy.

## II.

## FACTUAL BACKGROUND

**A. The Presiding Judge's Sworn Disclosure of Nearly Three Decades of Continuous Membership in the Gridiron Secret Society.**

In connection with his nomination to this Court, the presiding judge submitted a public Questionnaire for Judicial Nominees to the United States Senate Committee on the Judiciary. In response to Question 11(a), which requires disclosure of all fraternal and other organizational memberships since law school, the judge listed: "Gridiron Secret Society (1997 – present)." (Ex. A.) In response to Question 11(b), concerning organizations that discriminate or formerly discriminated in membership, the judge described the organization in these words: "The Gridiron Secret Society is a student-run fraternal organization at the University of Georgia. There is a corresponding organization for women." (*Id.*)

The Senate Questionnaire thus establishes, on the judge's own oath: (1) the organization is a secret society, by its own name; (2) the judge joined in 1997, the year he graduated from the University of Georgia School of Law; and (3) his membership remained current - "present" - while he sat as a Georgia appellate judge awaiting confirmation to this Court.

**B. The Gridiron Secret Society Is an Active Alumni Network - and Its Private Roster Includes Both the Presiding Judge and Defendant Epps's Law Partner.**

Whatever its "student-run" character on campus, the Gridiron Secret Society maintains an active, organized alumni network. A circular letter dated December 12, 2016, on the letterhead of the Law Office of David B. Bell, P.C., and captioned "Athens Gridiron," solicited members to write letters seconding the nomination of a prospective member, directed that such letters be sent to the society's student president, and provided the society's email address: "gridironsecretsociety@gmail.com." (Ex. B.) The letter references organized alumni "Chapter[s]" and closes with the society's motto: "Sic vos non vobis." (*Id.*)

The distribution roster of that private letter - a closed list of society members spanning the Georgia bench and bar - includes, among others, "The Hon. Tilman E. Self, III." (*Id.*) The very first name on the roster is "Mr. J. Edward Allen, Jr." (*Id.*)

J. Edward Allen is a current or former partner in Epps, Holloway, DeLoach & Hoipkemier, LLC, of 1220 Langford Drive, Building 200, Suite 101, Watkinsville, Georgia - the same firm, at the same address, as Defendant Kevin Epps. (Ex. A, Senate Questionnaire ¶ 13(c), No. 5 (listing "J. Edward Allen / Jeffrey DeLoach / Epps, Holloway, DeLoach & Hoipkemier, LLC / 1220 Langford Drive / Building 200, Suite 101 / Watkinsville, Georgia 30677").) Defendant Epps practices at that firm, and appeared from that address throughout the underlying probate litigation at issue in this case.

**C. The Presiding Judge Featured a Ruling in Favor of Mr. Allen's Clients as One of the Ten Most Significant Cases of His Judicial Career.**

Question 13(c) of the Senate Questionnaire required the nominee to identify "the 10 most significant cases over which you presided" and, for each, the counsel who played a significant role. As Case No. 5 - selected from the hundreds or thousands of matters he handled in a decade on the Superior Court - the judge chose

*Crisler v. Farr,* a legal-malpractice case in which the "Counsel for the Plaintiffs" were "J. Edward Allen" and "Jeffrey DeLoach" of "Epps, Holloway, DeLoach & Hoipkemier, LLC." (Ex. A.)

The judge's sworn capsule summary recounts the ruling he considered significant: "In a detailed ruling, I denied the fabricating attorney's motion for summary judgment and required him to stand trial alone." The case then "settled . . . while it was pending in the court of appeals." (*Id.*) In substance: the presiding judge identified, as a career-defining accomplishment presented to the United States Senate, a dispositive ruling that allowed the case brought by Mr. Allen's clients to proceed to trial against the principal defendant - a ruling of substantial benefit to the clients of his fellow Gridiron member and to the firm in which Defendant Epps is a name partner.

**D. This Litigation, the May 14, 2026 Order, and the Post-Order Discovery of the Gridiron Connection.**

In this action, Plaintiff sued Kevin Epps individually under 42 U.S.C. § 1983 and Georgia law in connection with Plaintiff's arrest and four-day incarceration arising out of probate-court contempt proceedings in which Mr. Epps served as counsel for Defendant James Farmer. The conduct of the Epps, Holloway, DeLoach & Hoipkemier firm - the firm Mr. Allen co-owns - is at the center of the case.

On May 14, 2026, the Court entered its Order denying Plaintiff leave to amend and dismissing every claim against every Defendant, including Defendant Epps, with the federal claims resolved on the merits. [Doc. 54]. The Order went beyond the legal rulings to characterize Plaintiff personally: his allegations were "unserious"; he "tries his best to manufacture a constitutional mountain out of a state-court molehill he expressly created"; "[h]e alone is to blame for his predicament." [*Id.* at pp. 31–

- 6 -

32]. The Order also explicitly invited Defendants to seek an award of attorney's fees: "To argue that a probate court lacks jurisdiction to hold one in contempt for violating its orders lacks seriousness and may certainly be considered frivolous. However, that question remains for another day. See 42 U.S.C. § 1988." In doing so, the Court did not merely portend an award of fees to Defendants based on a finding that Plaintiff had taken a frivolous position. Instead, the Court appeared to create a "strawman" attenuated from the position Plaintiff actually took in the record as to the scope of a probate court's powers; and, forecasted sanctions based solely on the "strawman" position Plaintiff did not take. In particular, Plaintiff alleged the probate court issued a void protective order without subject matter jurisdiction, before allegedly punishing Plaintiff for criminal contempt without due process, and outside the "attachment for contempt" permissible by a probate court judge. Plaintiff did not at any point in the proceedings allege that a probate court "lacks jurisdiction to hold one in contempt for violating its orders", which means that the Court forecasted sanctions against Plaintiff for asserting a frivolous position that – according to the record – Plaintiff never took.

Undersigned counsel discovered the Gridiron connections - the judge's sworn "1997 – present" membership, Mr. Allen's presence on the same society roster, and the featured *Crisler* ruling in favor of Mr. Allen and Mr. Bell - through investigation following the entry of the May 14, 2026 Order. The circumstances of the Order triggered investigation because the Order provided for the appearance that it was not only unconventional when compared to similar orders entered by district court judges, in general, but incomparable to any previous orders entered by Judge Self since he took the federal bench. At no point in this litigation was the relationship disclosed on the record by the Court, by Defendant Epps, or by anyone else. This motion follows promptly upon that discovery.

### III.

### ARGUMENT AND CITATION OF AUTHORITIES

**A. The Governing Standard: Recusal Is Required Whenever a Fully Informed, Objective Lay Observer Would Entertain Significant Doubt About the Judge's Impartiality - and All Doubts Are Resolved in Favor of Recusal.**

Section 455(a) provides that a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The test in the Eleventh Circuit is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1524 (11th Cir. 1988); *accord United States v. Patti,* 337 F.3d 1317, 1321 (11th Cir. 2003). "[A]ny doubts must be resolved in favor of recusal." *United States v. Kelly,* 888 F.2d 732, 744 (11th Cir. 1989); *Murray v. Scott,* 253 F.3d 1308, 1310 (11th Cir. 2001).

The duty is self-executing: it binds the judge whether or not a party moves, and it does not depend on the judge's subjective awareness that the disqualifying circumstance exists. *Liljeberg,* 486 U.S. at 859–61 & n.8 ("Scienter is not an element of a violation of § 455(a)."). And the inquiry is conducted from the perspective of the public, not the bench: "a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street." *Potashnick v. Port City Constr. Co.,* 609 F.2d 1101, 1111 (5th Cir. 1980).

Canon 2 of the Code of Conduct for United States Judges independently commands that a judge "avoid impropriety and the appearance of impropriety in all activities," and Canon 3C(1) repeats the § 455(a) standard verbatim. The Canons

confirm what the statute requires: where the appearance exists, the judge's actual state of mind is beside the point.

**B. A Fully Informed Lay Observer Would Entertain Significant Doubt Here.**

**1. An undisclosed, decades-long secret-society bond between the presiding judge and the defendant's law partner is precisely the relationship-driven appearance § 455(a) polices.**

The former Fifth Circuit held in *Potashnick* that a judge's ongoing relationships with a lawyer or law firm appearing before him - there, financial and familial ties to counsel's firm - required disqualification under § 455(a) without any showing of actual favoritism, because "the protection of the integrity and dignity of the judicial process from any hint or appearance of bias is the palladium of our judicial system." 609 F.2d at 1111–13. The relationship documented here is of a different kind but of equal or greater concern to the average person on the street: the presiding judge and the law partner of a defendant share a nearly thirty-year membership in an organization whose defining characteristic - announced in its own name - is secrecy.

This is not membership in a bar association, a Rotary Club, or an alumni booster organization, whose rosters are public and whose joint memberships are ordinary and discoverable. A secret society's membership is, by design, unknown and unknowable to outsiders - including to litigants whose cases place them across the table from fellow members. The fraternal bond is real (the society solicits nomination and seconding letters from its members, maintains chapters, and corresponds through a private roster, Ex. B), but it is structurally invisible. When such a bond connects the presiding judge to the law firm whose name partner is a

- 9 -

defendant - and whose firm's litigation conduct is the gravamen of the complaint - the ordinary citizen has no way to learn of it, no way to evaluate it, and no reason to suspect it. That is the precise evil at which the appearance standard is aimed: "people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges." *Liljeberg*, 486 U.S. at 864–65.

**2. The presiding judge's own Senate submission demonstrates that the relationship with Mr. Allen is professionally meaningful to him.**

If the Gridiron membership stood alone, one might debate its weight. It does not stand alone.[1] Of the thousands of cases the presiding judge handled in a decade on the Superior Court, he selected for the United States Senate - as one of the ten most significant of his career - a case litigated by Mr. Allen and Mr. DeLoach, the name partners of Defendant Epps's firm, and he featured as its centerpiece his own "detailed ruling" that sent their adversary "to stand trial alone." (Ex. A, ¶ 13(c), No. 5.) The judge's own curation tells the observer two things: he knows Mr. Allen professionally; and he regards a ruling benefiting Mr. Allen's clients as a defining achievement of his judicial service.

To be clear, Plaintiff does not suggest there was anything improper in *Crisler* itself. The point is narrower and stronger: the combination - (i) a secret fraternal bond with Mr. Allen since 1997, (ii) a self-selected career highlight benefiting Mr. Allen's clients, and (iii) a wholesale, with-prejudice dismissal in this case of every claim against Mr. Allen's partner, accompanied by personal condemnation of the plaintiff - would lead an objective, fully informed lay observer to entertain significant doubt

---

[1] Judge Self was also the subject of a previous request for recusal in a 2025 case based on an undisclosed affiliation with the defendant in that case. *See Goldstein v. NCAA*, Middle District Court of Georgia Case No. 3:25-cv-00027. As is the case here, the basis underlying the request for recusal surfaced following the issuance of an order in favor of the affiliated party. *Id.*, "Order Denying Plaintiff's Motion for Preliminary Injunction" filed February 28, 2025, Doc. 26.

about whether the playing field was level. Under *Parker* and *Kelly*, that doubt resolves in favor of recusal.

### 3. Secrecy aggravates, rather than mitigates, the appearance problem.

Courts assessing § 455(a) routinely note that undisclosed relationships are more corrosive of public confidence than disclosed ones, because the litigant learns of them - if at all - only after judgment, and is left to wonder what else was not disclosed. *See Liljeberg*, 486 U.S. at 866–67 (vacating judgment under Rule 60(b)(6) where the disqualifying relationship surfaced only after final judgment); *Murray*, 253 F.3d at 1312–13. Here, the relationship established by a "secret society" could not have been discovered through ordinary diligence during the litigation. Plaintiff litigated this entire case - through four motions to dismiss, a hearing, and final judgment – and no disclosure of the affiliation was ever made. The appearance created by that silence is independent of, and additional to, the appearance created by the membership itself.

### 4. The character of the May 14, 2026 Order, viewed through the lens of the undisclosed relationship, deepens the reasonable observer's doubt.

Plaintiff's pending Rule 59(e) motion details the legal errors in the May 14, 2026 Order, including its resolution of the central disputed fact - "consent" - against the pleader at the Rule 12(b)(6) stage, and its use of judicial notice to credit contested state-court recitations for their truth, contrary to *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). Those arguments stand on their own. For present purposes, the relevant observation is different: every contested inference in the Order runs in one direction - against Plaintiff and in favor of the Defendants, including Mr. Allen's law partner - and the Order closes by blaming Plaintiff personally for his own false arrest and imprisonment. [Doc. 54, pp. 31–32]. An observer who knew of the

Gridiron bond would not need to conclude that the relationship caused those rulings; under § 455(a), it is enough that the observer would reasonably question whether it did. *Patti*, 337 F.3d at 1321.

### C. Timeliness.

A § 455(a) motion must be brought with reasonable promptness after the ground for it is discovered. Plaintiff discovered the facts set out above regarding Gridiron membership of Judge Self, Mr. Allen, and Mr. Bell, the Sumter County case involving Defendant Epps' law firm, Mr. Allen and Mr. Bell, and the previous request for recusal under seemingly identical circumstances, after entry of the May 14, 2026 Order, through post-judgment investigation, and files this motion promptly thereafter, while his timely Rule 59(e) motion remains pending and before any further proceedings. *Liljeberg* itself affirmed relief granted on a § 455(a) violation raised ten months after final judgment, where the movant neither knew nor should have known of the relationship earlier. 486 U.S. at 850, 867–70. The motion is timely.

### D. Remedy: Recusal, Vacatur Under *Liljeberg*, and Reassignment — or, at Minimum, Full Disclosure on the Record.

Recusal under § 455(a) extends to "any proceeding," including the pending Rule 59(e) motion. Where, as here, the disqualifying appearance attached before and at the time of judgment, *Liljeberg* directs courts to weigh three factors in deciding whether the judgment should be vacated under Rule 60(b)(6): "the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." 486 U.S. at 864.

All three favor vacatur. *First*, the May 14, 2026 Order resolved disputed factual questions against Plaintiff at the pleading stage and with prejudice; the injustice of leaving that judgment in place - entered in proceedings now shown to bear an undisclosed structural appearance problem - is concrete. *Second*, denying relief would signal that secret decades-long ties between judges and counsel's partners are immune from § 455(a) so long as they remain secret until after judgment - an incentive structure that rewards non-disclosure. *Third*, public confidence is the core value: a citizen who learns that his case against a lawyer was dismissed, with prejudice and with personal rebuke, by a judge who shares a secret-society bond with that lawyer's partner - never disclosed - would not have confidence in the proceeding. Vacatur and reassignment are necessary to restore it.

In the alternative, and at minimum, Plaintiff respectfully requests that the Court make complete disclosure on the record of the nature, extent, and history of the relationship between the Court and Mr. Epps, Mr. Allen, and between the Court and the Epps, Holloway, DeLoach & Hoipkemier firm - including the Court's Gridiron membership history, any Gridiron communications, gatherings, or activities attended in common with Mr. Allen, and any social or professional contacts with Mr. Allen or Defendant Epps - so that the parties may assess the record and, if appropriate, the question of waiver under 28 U.S.C. § 455(e). Section 455(e) permits waiver of a § 455(a) ground only "preceded by a full disclosure on the record of the basis for disqualification." No such disclosure has occurred here.

## IV.

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Plaintiff respectfully requests that the Court:

(1) Make full disclosure on the record, pursuant to 28 U.S.C. § 455(e) and Canon 3D of the Code of Conduct for United States Judges, of the relationship between the Court and Defendant Epps,[2] J. Edward Allen, Jr., and the Epps, Holloway, DeLoach & Hoipkemier firm;

(2) RECUSE from all further proceedings in this action pursuant to 28 U.S.C. § 455(a);

(3) VACATE the May 14, 2026 Order [Doc. 54] pursuant to Federal Rule of Civil Procedure 60(b)(6) and *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988);

(4) DIRECT reassignment of this action, including Plaintiff's pending Rule 59(e) motion, to a different United States District Judge; and

(5) GRANT such other and further relief as is just and proper.

Respectfully submitted this 10th day of June, 2026.

JOHN BAKER LAW

/s/ John H. Baker
John H. Baker, Esq.
Georgia Bar No. 033797
2053 Experiment Station Rd.
Building 1100
Watkinsville, GA 30677
(706) 543-7777
John@JohnBaker.Law

*Attorney for Plaintiff*

---

[2] In the absence of the requisite disclosure, it is not verifiable whether Defendant Epps is a member of Gridiron, as well, based on an admission to membership subsequent to 2016 subject to approval by existing members.

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing **PLAINTIFF'S MOTION TO RECUSE PURSUANT TO 28 U.S.C. § 455(a) AND INCORPORATED MEMORANDUM OF LAW** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record, including:

Casey J. Crumbley, Esq.
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
Highbridge Centre, 3920 Arkwright Rd., Ste. 375
Macon, GA 31210
*Attorney for Defendant Mike Hunsinger*

Lee S. Gillis, Jr., Esq.
577 Mulberry Street, Suite 1500
Macon, GA 31201
*Attorney for Defendant Kevin Epps*

Jason C. Waymire, Esq.
4330 South Lee Street, 400-A
Buford, GA 30518
*Attorney for Defendant Jon Mills*

David W. Atkinson, Esq.
1420 Peachtree Street NE, Suite 800
Atlanta, GA 30309
*Attorney for Defendant James Farmer*

Respectfully submitted this 10th day of June, 2026.

JOHN BAKER LAW

/s/ John H. Baker
John H. Baker, Esq.
Georgia Bar No. 033797
2053 Experiment Station Rd.
Building 1100
Watkinsville, GA 30677
(706) 543-7777
John@JohnBaker.Law

*Attorney for Plaintiff*

- 15 -