IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| **JASON FARMER,**<br>***Plaintiff,***<br>**v.**<br>**Hon. MIKE HUNSINGER, *et al.*,**<br>***Defendants.*** | **CIVIL ACTION NO.**<br>**3:25-cv-00154-TES** |

**ORDER DENYING PLAINTIFF'S MOTION TO ALTER JUDGMENT AND GRANTING DEFENDANT MILLS'S MOTION FOR ATTORNEY'S FEES**

Before the Court is Plaintiff Jason Farmer's Motion to Alter Judgment [Doc. 57], and Defendant Mills's Motion for Attorney's Fees [Doc. 56]. In Plaintiff's motion, he alleges that the Court committed manifest errors of law in dismissing his case. [*Id.* at p. 2]; [Doc. 54]. For the following reasons, the Court **DENIES** Plaintiff's motion. [Doc. 57]. The Court then **GRANTS** Defendant Mills's motion. [Doc. 56].

**A. Background**

Rather than rehash the full background of this case, the Court will keep it simple. This case arose from estate litigation in the probate court of Oconee County, Georgia. There, Defendant Hunsinger—a probate judge in Oconee County, Georgia—entered a Consent Protective Order governing how disputed estate property would be preserved and used while the superior court decided actual and legal title to the property. Later,

Defendant Hunsinger held Plaintiff in contempt and had him arrested for violating the Protective Order to which his then-attorney consented. Plaintiff spent four days in jail.

After litigation in multiple Georgia courts, Plaintiff filed a complaint in this Court on October 1, 2025. [Doc. 1]. In it, he alleges that Defendant Hunsinger acted in a complete absence of all jurisdiction when he jailed him for his admitted contempt, and the other Defendants conspired with Defendant Hunsinger to violate Plaintiff's constitutional rights. *See, e.g.*, [*id.* at ¶¶ 93, 122]. In sum, Plaintiff's allegations go like this: (1) Judge Hunsinger lacked jurisdiction to enter the consent order at issue; (2) without jurisdiction, his consent order was void; (3) Judge Hunsinger can't hold him in contempt of a void order; (4) because he did, Judge Hunsinger can be sued in his individual capacity; (5) other Defendants conspired with Judge Hunsinger, not to enforce his order, but to specifically deny Plaintiff his Constitutional rights; and (6) because they did, they get sued too.

Defendants filed motions to dismiss, and the court set a hearing for February 11, 2026. [Doc. 10]; [Doc. 11]; [Doc. 23]. Two days before the hearing, Plaintiff filed an emergency motion to continue the hearing. [Doc. 25]. The Court denied the motion. [Doc. 26]. The day before the hearing, Plaintiff attempted to file an untimely amended complaint. [Doc. 32]. The Court held the hearing as scheduled and allowed Plaintiff to file a motion to amend his complaint. [Doc. 37]. The parties filed responses opposing Plaintiff's requested amendment. [Doc. 44]; [Doc. 45]; [Doc. 46]; [Doc. 47]. The Court

subsequently denied Plaintiff's motion to amend his complaint and granted Defendants' motions to dismiss his original complaint. [Doc. 54].

A few weeks after the Court's order dismissing his claims, Plaintiff filed a Motion for Recusal along with his Motion to Alter Judgment. [Doc. 58]; [Doc. 57]. Defendant Mills filed a Motion for Attorney's Fees. [Doc. 56]. The Court held a hearing on July 23, 2026. [Doc. 71]. There, the Court afforded Plaintiff the opportunity to argue both of his motions. The Court subsequently denied Plaintiff's Motion for Recusal. [Doc. 73]. It now moves to Plaintiff's Motion to Alter Judgment [Doc. 57] and Defendant Mills's Motion for Attorney's Fees [Doc. 56].

### B. Plaintiff's Motion to Alter Judgment

First, the Court addresses two preliminary issues. In his motion, Plaintiff criticized the Court's taking judicial notice of his related cases "[d]espite Plaintiff's unambiguous request for a hearing . . . ."[1] [Doc. 57, pp. 6–7]. Federal Rule of Evidence 201 states, in relevant part, that "[o]n timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed." Importantly, "Rule 201 does not require courts to warn parties before taking judicial notice of some fact, but, upon the party's request, it does require an opportunity to be heard after the court takes notice." *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652

[1] In his Motion to Dismiss, Defendant Mills asked the Court to take judicial notice of the records in related cases. [Doc. 11, p. 1]. The Court did not take judicial notice sua sponte.

(11th Cir. 2020); *see also* Fed. R. Evid. 201(e) ("If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard."). At the July 23, 2026, hearing, the Court complied with Rule 201(e) and gave Plaintiff an "opportunity to be heard." *Paez*, 947 F.3d at 652. The Court so informed him at the hearing. With the hearing requirements of FRE 201 satisfied, Plaintiff offers no other basis under this rule for the court to modify its judgment.

Next, Plaintiff complained that the Court did not address his First Amendment claim in its previous order. To be sure, the Court did not explicitly mention Plaintiff's First Amendment Claims when it denied his Motion to Amend and dismissed his complaint. But, it didn't explicitly mention any of Plaintiff's other constitutional claims in his Proposed Amended Complaint. Rather, because Plaintiff brought his constitutional claims under 42 U.S.C. § 1983, the Court addressed the fact that *any* viable § 1983 claim necessarily requires a state actor, which he lacked. [Doc. 54, pp. 25–26]; *Charles v. Johnson*, 18 F.4th 686, 693–94 (11th Cir. 2021).

To reiterate the reasoning from that order, the only way Defendants Epps, Mills, and Farmer could properly be considered state actors under either of Plaintiff's Complaints is if they conspired with Defendant Hunsinger—a judge who is indisputably a state actor.[2] But Plaintiff only pled conclusory allegations of conspiracy. [Doc. 54, pp. 25–26]. Without sufficient allegations to substantiate a conspiracy with

[2] For Defendant Mills, specifically, *see infra* note 11.

Judge Hunsinger, any § 1983 claims against Defendants Epps, Mills, and Farmer necessarily failed. This specifically includes his § 1983 First Amendment Retaliation claims. So, the Court did address Plaintiff's First Amendment Claims, just not as explicitly as Plaintiff apparently wanted. With those cursory issues addressed, the Court moves on to the substantive part of Plaintiff's motion.

Plaintiff brings his motion under Federal Rule of Civil Procedure 59(e). [Doc. 57, p. 1]. This rule states that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." *Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022) (quoting Fed. R. Civ. P. 59(e)). "The only grounds for granting [a Rule 59] motion are newly[ ]discovered evidence or manifest errors of law or fact." *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999). "A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Samara*, 38 F.4th at 149 (quoting *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007)) (cleaned up).

"[A] Rule 59(e) motion 'is not a vehicle for rehashing arguments already rejected by the court or for refuting the court's prior decision.'" *Easterwood v. Carnival Corp.*, No. 19-CV-22932, 2021 WL 3473184, at *2 (S.D. Fla. Aug. 6, 2021) (quoting *Wendy's Int'l, Inc. v. Nu-Cape Constr., Inc.*, 169 F.R.D. 680, 686 (M.D. Fla. 1996)). Put differently, "[a] party's disagreement with the Court's treatment of facts and legal conclusions is not a proper basis for a Rule 59(e) motion." *Id.* (citing *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408

F.3d 757, 763 (11th Cir. 2005)). "[W]hen a litigant simply thinks a district court's ruling is wrong, the proper remedy is to appeal the ruling, not to seek reconsideration." *Meir v. Westchester Surplus Lines Ins. Co.*, No. 22-61502-CIV, 2024 WL 2797364, at *3 (S.D. Fla. May 3, 2024) (citing *Jacobs v. Tempur-Pedic International, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010)).

"Reconsideration of a prior order is an extraordinary remedy and should be employed sparingly." *Bell v. Houston Cty.*, No. 5:04-cv-390 (HL), 2007 WL 4146205, at *2 (M.D. Ga. Nov. 19, 2007) (citing *Am. Assoc. of People with Disabilities v. Hood*, 278 F. Supp. 2d. 1337, 1339–40 (M.D. Fla. 2003)). The decision whether to alter or amend a judgment pursuant to Rule 59(e) is "committed to the sound discretion of the district judge." *Mincey v. Head*, 206 F.3d 1106, 1137 (11th Cir. 2000) (citation omitted).

Plaintiff argues that the Court committed manifest errors of law or fact in its order dismissing his claims. [Doc. 57, p. 4]. Despite Rule 59 not being an appropriate vehicle to simply disagree with the Court's treatment of facts and legal conclusions, Plaintiff complains that the Court accepted "disputed facts" through its use of judicial notice via Rule 201 before he had the benefit of discovery. [*Id.*]. During the hearing, he tried to provide specific instances where he thought the Court committed manifest error in the factual background section of its dismissal order.

For example, Plaintiff disputed the Court's citation to a Georgia Court of Appeals opinion in its order. *See Farmer v. Mitchell*, 921 S.E.2d 482, 486 (Ga. Ct. App.

2025). Plaintiff argued that the Court viewed the facts in the Georgia Court of Appeals case in a light most favorable to James Farmer, the nonmovant-appellant there. *See id*. Plaintiff seems to argue that the Court accepted facts pulled from the Georgia Court of Appeals case as true, especially when he may have plead contradictory facts in his complaint. However, Plaintiff never identified the specific *material* facts he contends that the Court accepted that impacted the accuracy of the Court's decision.

As a specific case in point, one of the supposedly troublesome facts from this Court's dismissal order reads: "Plaintiff, Defendant James, and Jeremy were supposed to get firearms, knives, tractors, and Bobby's construction equipment as possessed by Judy at the time of her death." [Doc. 54, p. 5]. Plaintiff says that sentence was incorrect because Judy Farmer allegedly gifted equipment to Plaintiff in 2021, so it wasn't Bobby's construction equipment. He also disputes parts of the Court's factual background section that cite to sources other than the Court of Appeals case. For example, he disputes the sentence: "Plaintiff uses Bobby's equipment in his steel building business and has done so since before Bobby passed." [*Id.* at pp. 5–6 (citing the protective order)]. Once again, he says this is incorrect because he claims it was not Bobby's equipment after Judy gifted it to Plaintiff.

To redirect Plaintiff away from minor, unimportant details that Plaintiff disagreed with, the Court asked Plaintiff to point to specific paragraphs in his complaints that he thought the Court did not accept as true. Instead, Plaintiff continued

to point out other issues he found in the factual background section of the Court's dismissal order.

To be clear, the "facts" from his complaint that Plaintiff pointed to during the hearing he claims the Court did not accept as true are neither material, central, or critical to this case, nor were they dispositive to the Court's decision to dismiss Plaintiff's case.[3] They were included as background and context for readers unfamiliar with the case, not to decide disputed issues like property ownership. That is for another court and another day.

Plaintiff also dedicated a significant portion of his motion to whether he had actually authorized his then-attorney to consent to the protective order in question. [Doc. 57, pp. 7–13]. He insisted that he had never given his then-attorney permission to consent to the consent order but, in his opinion, the Court had improperly determined that he had.[4] *Id.* During the hearing—reiterated in writing here—the Court made it very clear that the Court *did* accept Plaintiff's allegations as true in its dismissal order,

[3] Take Plaintiff's disputes with the above examples. Whether the equipment was Judy's, Bobby's, or Plaintiff's had no bearing on the Court's decision in this case and has no bearing on his motion to alter judgment. In fact, the Court does not know if Georgia courts have definitively ruled on the ownership issue and if so, to whom they awarded equipment. Plaintiff's meticulous nitpicking of the Court's factual background section in no way furthers his claim that the Court committed a manifest error so that it would change the reasoning or result of the Court's order.

[4] During the hearing, Plaintiff did not spend much time on the issue of consent. Instead, he cited O.C.G.A. § 15-1-2 and argued that the issue of consent does not matter since the probate court lacked subject-matter jurisdiction to enter the consent protective order in the first place. Regardless, the Court addresses consent here since Plaintiff devoted such a substantial part of his written motion to it.

notwithstanding that his plead allegations appeared to directly contradict the record in the underlying probate case.[5] Specifically, the Court accepted as true the allegations in Plaintiff's complaint that he did not give his former lawyer actual consent to enter the protective order.[6] At the hearing, the Court explained that the issue of Plaintiff's actual consent to the order held no sway on the central issue of Plaintiff's motion: whether Defendant Hunsinger is entitled to judicial immunity.

After all, unassailable blackletter law clearly shows that Plaintiff's former lawyer had *apparent* authority to consent to the protective order and Defendant Hunsinger rightfully relied on the lawyer's word. *See Meeks v. Newcomb*, 822 F. App'x 865, 867 (11th Cir. 2020) ("Georgia law accepts '[a]n attorney of record [as a] client's agent,' such that 'an act of an agent within the scope of his apparent authority binds the principal.'") (quoting *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999)); *see also Oldaker v. Giles*, No. 7:20-CV-00224 (WLS), 2020 WL 12656029, at *3 (M.D. Ga. Dec. 22, 2020)

[5] To the extent that Plaintiff argues that the Federal Rules of Civil Procedure allow a party to plead facts that are directly contradictory to a previous fact finding in a case that has not been appealed, the Court rejects that proposition, especially without any acknowledgement of the previous adverse judicial finding or ruling or the previous taking of a different position. In fact, Rule 11 demands as much.

[6] The top of page 23 of the Court's previous order says that "Plaintiff consented . . . ." [Doc. 54, p. 23]. Elsewhere in the order, the Court consistently stated, albeit in slightly differing terms, Plaintiff, *through his lawyer,* consented. *See, e.g.*, [*id.* at p. 32]. To be sure, the Court clearly meant that Plaintiff consented to the order through his lawyer on page 23 as well. The Court provided a citation on page 23 to the transcript of the hearing where Plaintiff's lawyer consented to the protective order, as Plaintiff himself was absent. [*Id.* at p. 23]. While the Court thinks its meaning was clear then, it nonetheless clarifies it again now: the Court accepted that Plaintiff did not give his attorney the authority to consent to the protective order. However, the Court found that inconsequential because his attorney unequivocally consented on his behalf and the probate court was absolutely allowed and right to rely upon an attorney's consent on behalf of his client.

(enforcing a consent scheduling order over party's objection because "[u]nder Georgia law, '"an attorney is cloaked with apparent authority to enter into a binding agreement on behalf of a client."' The client is therefore 'bound by his attorney's agreement . . . if the opposing party was unaware of any limitation on the attorney's apparent authority'") (quoting *Ford v. Citizens & S. Nat'l Bank*, 928 F.2d 1118, 1120 (11th Cir. 1991)).

Furthermore, the actual injury underlying Plaintiff's alleged constitutional violations (and therefore his claims) stems from his imprisonment for contempt. What really matters in this case is not whether Plaintiff personally consented to the order he later intentionally ignored, or whether Plaintiff gave explicit authority to his lawyer to agree to the consent order in the first place, or whether the Court correctly articulated the nuances of immaterial background facts. No, what matters in this case is whether Judge Hunsinger could enforce an order that—rightly or wrongly—he concluded was valid when he issued it.

It should go without saying that a judge who issues an order, especially one that the parties agreed to, has a right to enforce that order.[7] O.C.G.A. § 15-1-3. Plaintiff, instead, argues that he had no obligation to follow the Protective Order because he, Plaintiff, decided the order was void. And how was Judge Hunsinger supposed to

---

[7] It is clear from the hearing that Plaintiff and the Court simply disagree on whether probate courts in Georgia possess any inherent power to issue or enforce contempt orders. *See* [Doc. 54, p. 23].

know that his order was void? Simple. Plaintiff told him, and Judge Hunsinger enforced it anyway. Think about that and let it sink in. Plaintiff has literally argued to this court and several others that because Judge Hunsinger had no authority to issue the consent order, he had no obligation to follow it. And Judge Hunsinger knew it was void because Plaintiff unilaterally decided it was.

Plaintiff's position is the epitome of a frivolous and groundless argument. Such a contention simply cannot be true. If it were, any litigant who unilaterally decides a judge issued an order in error need not follow that order and appeal; no, he can just ignore it and not only escape any consequences but potentially reap a financial windfall by taking the judge's personal assets via a § 1983 suit. Plaintiff's breathtaking contentions would not only undermine centuries of precedent, but they would also inject pure, unadulterated chaos into the legal system.

Just because Plaintiff decided Judge Hunsinger got it wrong[8] with his order doesn't mean that Judge Hunsinger got it wrong so that he could potentially be sued and lose his house.[9] If Plaintiff disagreed with the Consent Protective Order and thought it was void, his only recourse was to comply with the order and properly appeal it. *Maness v. Meyers,* 419 U.S. 449, 458 (1975); *In re Brinson*, 791 S.E.2d 804, 805

---

[8] During the hearing, Plaintiff's counsel told the Court he had told Judge Hunsinger that he was wrong seven times.

[9] The Court can only imagine the fit that Plaintiff would pitch had Judge Hunsinger (or any judge for that matter) ruled against Plaintiff simply because the other side told him he was right to do so.

(Ga. 2016). Here, Plaintiff's attorney candidly admitted during the hearing that he advised Plaintiff to ignore the order. Furthermore, during this litigation, Plaintiff dismissed his then-pending appeal of Judge Hunsinger's order in the Georgia Court of Appeals. [Doc. 46-2]. Plaintiff blatantly and unapologetically disregarded clear precedent about what to do when you disagree with a judge's order and then, he sued the judge, seeking to take his personal assets.

Bottom line, no arguments that Plaintiff made in his motion or during the hearing meet Rule 59's requirements. All of the factual issues Plaintiff takes with the Court's taking of judicial notice of related proceedings in another court were neither material to the Court's previous ruling nor central to his case in this Court. At the end of the day, Plaintiff bet it all on his unilateral determination that the consent protective order was void because Judge Hunsinger didn't have jurisdiction to enter it and he alone decided he didn't have to follow void orders. So, he just ignored Judge Hunsinger's order. He then effectively doubled down and dismissed his appeal of the issues—the proper way one disagrees with a judicial order. When Plaintiff willfully and intentionally disobeyed the consent protective order, he suffered the natural consequence of that action, just as Judge Hunsinger told him he would: he went to jail for four days. If Plaintiff disagreed with Judge Hunsinger's order, clear precedent required him to follow the order and appeal. *Brinson*, 791 S.E.2d at 805. If he felt that Judge Hunsinger acted inappropriately, his proper forum was the Judicial

Qualifications Commission of Georgia.[10] What he couldn't do is exactly what he did: decide the judge's order was wrong, ignore it and then sue the judge for a Constitutional violation.

Ultimately, Plaintiff's Motion to Alter Judgment lacks any substance and is nothing more than Plaintiff taking the chance to lecture the Court on how it could have done better. *Bryan v. Murphy*, 264 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003). Without more, the Court easily **DENIES** Plaintiff's Motion to Alter Judgment. [Doc. 57].

### C. Defendant Mills's Motion for Attorney's Fees

Defendant Mills filed a Motion for Fees and Expenses pursuant to 42 U.S.C. § 1988. [Doc. 56]. The relevant language of § 1988 reads: "In any action or proceeding to enforce a provision of section . . . 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988. Since the Court dismissed all of Plaintiff's claims, Defendant Mills is a prevailing party. *See Beach Blitz Co. v. City of Miami Beach, Fla.*, 13 F.4th 1289, 1297 (11th Cir. 2021) (a defendant is a prevailing party "whenever the plaintiff's challenge is rebuffed," even if "for a nonmerits reason.") (quoting *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 431 (2016)). Therefore, the question is whether

[10] Plaintiff filed a formal complaint with the Georgia Judicial Qualifications Commission ("JQC") regarding Judge Hunsinger's alleged ex-parte meetings and his treatment of him. The JQC has yet to take up Plaintiff's complaint according to what Plaintiff's counsel reported to the Court during the July 23 hearing.

the Court should allow Defendant Mills to recover attorney's fees.

"Because Congress intended for prevailing defendants to recover fees only when forced to defend suits 'having no legal or factual basis,'. . . a defendant may recover attorney's fees 'only if the District Court finds that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Beach Blitz*, 13 F.4th at 1296–97 (first quoting *Christiansburg Garmet Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 420 (1978); and then quoting *Hughes v. Rowe*, 449 U.S. 5, 14 (1980)). Frivolity is a case-by-case determination. *Beach Blitz*, 13 F.4th at 1302.

With that said, the Eleventh Circuit has identified several factors that aid courts in a frivolity determination. They are: "'(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; . . . (3) whether the trial court dismissed the case prior to trial or had a full-blown trial on the merits;'" and (4) "whether there was enough support for the claim to warrant close attention by the court." *Id.* (quoting *Sullivan v. Sch. Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1189 (11th Cir. 1985)). For the last factor, the Eleventh Circuit has held that a plaintiff's § 1983 claims "'should not be considered groundless or without foundation for the purpose of an award of fees in favor of the defendants when the claims are meritorious enough to receive careful attention and review.'" *Id.* (quoting *Busby v. City of Orlando*, 931 F.2d 764, 787 (11th Cir. 1991)).

Finally, "[i]n determining whether a suit is frivolous, 'a district court must focus

on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful.'" *Id.* at 1296–97 (quoting *Jones v. Tex. Tech Univ.*, 656 F.2d 1137, 1145 (5th Cir. 1981)). "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Hughes*, 449 U.S. at 14. "Even if a plaintiff's allegations are ultimately 'legally insufficient to require a trial,' that alone is not enough to render the plaintiff's cause of action 'groundless' or 'without foundation.'" *Beach Blitz*, 13 F.4th at 1302 (quoting *Hughes*, 449 U.S. at 15–16).

Here, the first several factors weigh in favor of imposing attorney's fees. First, Plaintiff did not establish a prima facie case for his federal claims against Defendant Mills. As explained above, the only way Defendant Mills could properly be considered a state actor under § 1983 was if he conspired with Defendant Hunsinger, and Plaintiff did not adequately plead such a conspiracy.[11] Therefore, Plaintiff failed to establish any

[11] During the hearing, Plaintiff briefly tried to rebut the Court's state-actor position with his pleading that Defendant Mills was the County Administrator for Oconee County, Georgia. But, Plaintiff candidly admitted that he did not know whether a County Administrator is a state actor. To be sure, the Court can find three places where Plaintiff pled that Defendant Mills was the County Administrator, all in his Proposed Amended Complaint (which the Court did not allow him to file). [Doc. 37-1, ¶¶ 5, 47, 74]. Only two of those allegations are connected to claims, with one allegation only referencing the other. [*Id.* at ¶¶ 47, 74]. The only bearing Plaintiff's allegation has on whether Defendant Mills was a state actor is that Plaintiff pled it in his "color of state law" paragraph. [*Id.*]. Even then, Plaintiff's entire allegation about the County Administrator is one sentence: "He simultaneously served as the Oconee County Administrator." [*Id.*]. The rest of the paragraph discusses Plaintiff's conspiracy theory for the state-actor title, which was his only allegation for every other claim across his Proposed Amended Complaint and his original Complaint. *See* [*id.* at ¶¶ 47, 74]; [Doc. 1, ¶¶ 89, 107, 125]. Even granting that merely alleging in a single sentence that Defendant Mills served as the Oconee County Administrator is a sufficient allegation that he acted under color of state law, it does not warrant the Court to alter its judgment. Plaintiff did not provide, and the Court cannot find, any caselaw stating that a County Administrator is a state actor

prima facie § 1983 claim against Defendant Mills. Second, there is nothing on the record indicating that Defendant Mills offered to settle. Third, the Court dismissed the case prior to trial.

That leaves the fourth factor. Upon first glance, the Court's previous order looks like Plaintiff's claims must have warranted "close attention" because it was 32 pages long with several lengthy footnotes. *See Spillers v. Crawford Cnty., Ga.*, No. 5:11-cv-324-MTT, 2011 WL 6385808, at *2 (M.D. Ga. Dec. 20, 2011) (where a "21 page opinion" was "evidence that the [p]laintiff's claims were not so lacking in arguable merit as to be groundless."); *see also* [Doc. 54]. But it was that long because it addressed a motion to amend based on the proposed amended complaint and three motions to dismiss a different complaint. [Doc. 37]; [Doc. 10]; [Doc. 11]; [Doc. 23]. Furthermore, the Court went into extensive detail—almost half the order—detailing the complicated history of this case. [Doc. 54, pp. 5–17]. That means the Court substantively spent 16 pages addressing four motions concerning two possible complaints.

Naturally, the length of an order doesn't determine whether there was support

under 42 U.S.C. § 1983. In fact, once appointed, the estate administrator's duty is to the estate and to act in the best interests of all persons interested in the estate. O.C.G.A. § 53-7-1; *see also In re Estate of Long*, 706 S.E.2d 704, 710 (Ga. Ct. App. 2011). This applies regardless of the position the administrator held prior to appointment, meaning an estate administrator does not act as a functionary of the state. *Thomas v. Myers*, 2:22-CV-147, 2023 WL 3819186, at *3 (S.D. Ga. June 5, 2023) (holding that a county attorney was not a state actor because "personal representatives are acting in *a private capacity and not as functionaries of the state*.") (quoting *Loyd v. Loyd*, 731 F.2d 393, 398 (7th Cir. 1984)); *see also Banks v. Banks*, No. 1:17-cv-5247-TCB, 2018 WL 10229508, at *2 (N.D. Ga. Jan. 19, 2018) ("a court-appointed personal representative of an estate is not a state actor for purposes of 42 U.S.C. § 1983"). Therefore, Defendant Mills's appointment as Oconee County administrator did not convert him into a state actor in this case for § 1983 purposes.

for Plaintiff's claims. If that were true, courts would be dissuaded from writing detailed opinions and parties would be incentivized to plead complicated or numerous issues to necessitate a detailed opinion from a court to avoid attorney's fees. Just because the Court wrote a detailed opinion in this case does not mean the issues in the opinion warranted close attention.

Turning to Plaintiff's claims themselves, he failed to sufficiently support his claims enough to warrant close attention. To be sure, Plaintiff's scattershot approach to the case threw many arguments at both Defendants and the Court, making the case more complicated and lengthy than necessary. But, at its core, Plaintiff's claims really rest on a single question: did the probate court have subject matter jurisdiction to hold Plaintiff in contempt? That question requires also taking a step back to look at the subject matter jurisdiction over the order the probate court held Plaintiff in contempt for violating—the consent protective order.

As the Court stated repeatedly, the probate court did have the ability to hold Plaintiff in contempt. His arguments to the contrary based on criminal and civil contempt were unfounded, as probate courts routinely hold people to both kinds of contempt. *See Matter of Davis*, 885 S.E.2d 771, 773 (Ga. 2023) (where the probate court entered a criminal contempt order); *In re Est. of Banks*, 793 S.E.2d 451, 452 (Ga. Ct. App. 2016) (where the probate court held Banks in contempt and incarcerated him). As for the Consent Protective Order, during the hearing Plaintiff made it clear that he—to use

the Court's words, not Plaintiff's—hung his subject matter jurisdiction hat on one case: *In re Est. of Adamson*, 451 S.E.2d 501, 501 (Ga. Ct. App. 1994).

Georgia courts do not appear to have consistently followed *Adamson*—specifically, the part Plaintiff relies on concerning the probate court's authority to give possession of property—especially after the Georgia probate code changed. *See Gnann v. Woodall*, 511 S.E.2d 188, 189 (Ga. 1999) (probate court had authority to require attorneys to return attorney's fees they unilaterally decided were proper before the court's decision and hold attorneys in contempt for failure to do so). Similar issues to the one Plaintiff argues had already been decided against Plaintiff's position by the time Plaintiff filed his lawsuit. *See, e.g.*, *Price v. Payne*, No. 4:16-cv-0298-HLM, 2016 WL 10537384, at (N.D. Ga. Dec. 15, 2016) (probate judge did not act "in the clear absence of all jurisdiction" when he ordered police to remove furniture from the decedent's home without a hearing or notice or an order, sold property to non-heirs, and personally converted property). The fourth factor weighs in favor of granting attorney's fees.

With that said, the frivolity review for § 1988 attorney's fees is not limited to the above four factors. The other piece of this case that the Court weighs is Plaintiff's refusal to follow the simplest of precedent when it comes to orders a party disagrees with. The United States Supreme Court has plainly held that, when a party disagrees with an order, the party's remedy is to obey the order and appeal it. *Maness*, 419 U.S. at 458. So has the Georgia Supreme Court. *Brinson*, 791 S.E.2d at 805 (stating that "the

disobedience of an unsuperseded order within the jurisdiction of a court is a contempt of court, even though the order is erroneous.") (quoting *Britt v. State*, 653 S.E.2d 713, 717 (Ga. 2007)). Plaintiff's attorney admitted that he advised Plaintiff not to comply with the probate court's protective order since he thought it was void, but he has provided this Court with no good reason why he did not follow through with his appeal in accordance with precedent, rather than filing another lawsuit. During the July 23, 2026, hearing, the parties disclosed that Plaintiff continued his pattern of unrelenting litigation by filing yet another lawsuit in a Georgia court the night prior to the hearing against the same Defendants for many of the same claims.

Appellate remedies exist for a reason. No matter how passionately Plaintiff may have disagreed with Judge Hunsinger's order, he was bound to follow it and then properly appeal it. He did neither. Instead, he chose to sue everyone involved in the case. The Court finds his complaint to be "frivolous, unreasonable, [and] without foundation . . . ." *Beach Blitz*, 13 F.4th at 1296–97 (quoting *Hughes v. Rowe*, 449 U.S. 5, 14 (1980)). So, Defendant Mills is entitled to his attorney's fees under § 1988.

That brings the Court to a lodestar analysis to determine the reasonableness of Defendant's requested fees. In the Eleventh Circuit, "[t]he starting point for determining the amount of 'reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

"The product of these two figures is the lodestar and there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." *Id*. (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1987)). The Court may adjust the lodestar amount based upon the results obtained. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). Defendant Mills's attorney has a rate of $215 per hour and provided an uncontested breakdown of the hours he worked on this case, including an uncontested addendum at the July 23, 2026, hearing. [Doc. 56-1]; [Doc. 72].

The Court has reviewed each of Defendant Mills's attorney's time entries, including the line-item entries that go into specific detail about what he did. His time entries include emails, coordinating with other attorneys on the case, reviewing orders and responses from other parties, preparing his client's motions, preparation for the Court's hearings, travel, etc. *See, e.g.*, [Doc. 56-1]. In total, Defendant's attorney's hours are:

6.9 hours at $205 per hour through December 15, 2025. [*Id.* at p. 4].

28.2 hours at $215 per hour through May 22, 2026. [*Id.* at p. 7].

4.6 hours at $215 per hour through July 22, 2026. [Doc. 72].

4 hours at $215 per hour for the July 23, 2026, hearing, including travel.

Total: 43.7 hours.

Plaintiff does not dispute the reasonableness of Defendant's attorney's hours or his hourly rate. Fees from Defendant's uncontested exhibits total $8,538.05. Adding the four hours at $215 per hour for travel to and from the July 23, 2026, hearing, and the hearing itself, as well as $71.55 for mileage and parking [Doc. 56-1, p. 7], the total comes to $9,398.05. Upon review of Defendant Mills' attorney's time entries and hourly rate, the Court finds that both are reasonable.

Accordingly, the Court **DENIES** Plaintiff's Motion to Alter Judgment [Doc. 57], and **GRANTS** Defendant Mills' Motion for Attorney's Fees [Doc. 56] **against** Plaintiff in the amount of $9,398.05.

**SO ORDERED**, this 12th day of August, 2026.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**